

FILED

DEC 2 9 2006

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

06 - 945 L

NAVAJO NATION, )
f.k.a NAVAJO TRIBE OF INDIANS, )
)
     **Plaintiff,** )
**v.** )
)
UNITED STATES OF AMERICA, )
)
     **Defendant.** )

## COMPLAINT

Plaintiff, by and through its undersigned attorney, for its complaint, hereby alleges as follows:

### INTRODUCTION

1.    Plaintiff, the Navajo Nation (formerly known as the Navajo Tribe of Indians and hereinafter referred to as "Navajo"), a federally recognized Indian tribe situated within the States of New Mexico, Arizona, and Utah, brings this action to obtain compensation for losses and damages to any and all Navajo trust funds under the custody and control of Defendant resulting from mismanagement of Navajo trust assets including funds and resources.  The losses and damages are due to Defendant's breaches of fiduciary duties arising under treaties, executive orders, federal statutes and regulations, and contractual documents, and include without limitation failure to collect proper amounts due and to secure performance under federally authorized, drafted, approved, comprehensively supervised leases for oil and gas, coal, uranium, and other minerals and purposes, timber permits, rights-of-ways, and other similar documents authorizing the use or disposition of Navajo revenue-producing trust assets.  All of Defendant's duties that have been breached are specific, enforceable, money-mandating fiduciary duties that arise under federal law.

1

2.      These specific breaches of fiduciary duties include, *inter alia*, Defendant's failures in its exercise of comprehensive supervision, control and management over Plaintiff's trust funds and other revenue-producing trust assets.  Plaintiff asserts rights under federal law to recover damages from the Defendant caused by Defendant's numerous and repeated failures to fulfill numerous fiduciary duties that Defendant owes Plaintiff concerning the proper management and accounting by Defendant of various trust assets that were placed under Defendant's custody, control, and care pursuant to federal treaties, executive orders, statutes, and regulations governing the management of, and accounting for, Indian trust funds and other trust assets by the United States as a trustee.

3.      Plaintiff also seeks an accounting by Defendant, as required under federal law regarding Indian trust funds and other trust assets to aid the Court in quantifying the damages caused by Defendant's failures to manage those trust funds and other trust assets in accordance with its specific fiduciary duties as mandated under federal law.   During the period covered by this Complaint (August 14, 1946, to the present, except as may be provided otherwise below), Defendant has never provided Plaintiff with a complete, accurate and acceptable accounting due to Plaintiff by Defendant detailing and accounting for transactions concerning all of Plaintiff's trust funds and other trust assets under the custody and control of Defendant.

4.      Plaintiff asks this Court, in aid of its jurisdiction to render a money judgment, to require Defendant to provide Plaintiff with a complete and accurate accounting of all of Plaintiff's trust funds and other trust assets that were at any time relevant hereto in the custody or control of Defendant from August 14, 1946, to the present; to further find that Defendant has breached its fiduciary duties with regard to the management of, and the accounting for, such trust funds and other

2

trust assets; to require that the Defendant preserve any and all records relevant to such trust funds and other trust assets; to award Plaintiff damages occasioned by Defendant's fiduciary failures in the amount of Nine Hundred Million Dollars or as Plaintiff may establish at trial; to award Plaintiff interest as the law may provide; and to further award Plaintiff attorneys fees and costs against the Defendant as the law may provide.

### JURISDICTION

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1491 and 1505, and because this is an action arising under the Constitution, treaties, and laws of the United States, *inter alia*:

a.      The several Acts of Congress between December 22, 1987 (Pub. L. 100-202, 101 Stat. 1329), and August 2, 2005 (Pub. L. 109-54, 119 Stat. 499), including the Act of September 27, 1988, Pub. L. No. 100-446, all of which require the Bureau of Indian Affairs ("the Bureau") to audit and reconcile tribal trust funds and to provide tribes with an accounting of such funds.

b.      The Act of October 23, 1989, Pub. L. 101-121, the Act of November 5, 1990, Pub. L. 101-512, and the Act of November 13, 1991, Pub. L. 102-154, all of which require the Bureau to audit, reconcile, and certify through an independent party the results of a reconciliation of tribal trust funds as the most complete reconciliation of such funds possible and to provide tribes with an accounting of such funds.

c.      The Act of October 25, 1994 (the American Indian Trust Fund Management Reform Act of 1994), Pub. L. No. 103-412, codified at 25 U.S.C. §§ 4001-4061, pertinent sections of which require the following, among other things:

i.      Section 101 charges the Secretary of Interior ("Secretary") with a duty to provide periodic, timely reconciliations of tribal trust funds to assure the accuracy of accounts and with a duty to determine accurate cash balances of tribal trust funds;

ii.      Section 102(c) requires the Secretary to cause an annual audit of all tribal trust funds to be conducted;

iii.      Section 301 provides for appointment of a Special Trustee for the American Indians to provide for more effective management of and accountability for the proper discharge of trust responsibilities to Indian tribes, and to oversee and coordinate reforms within the Department of the Interior of practices relating to the management and discharge of such responsibilities;

iv.      Section 303(b)(2)(A) charges the Special Trustee with a duty to monitor the reconciliation of trust accounts to ensure that the Bureau provides account holders with a fair and accurate accounting of all trust funds;

v.      Section 303(d) charges the Special Trustee with a duty to provide such guidance as necessary to assist Department personnel in identifying problems and options for resolving problems;

vi.      Section 304(2)(A) and (B) charge the Secretary with a duty to report to Congress, identifying for each tribal trust fund a balance reconciled as of September 30, 1995, including an attestation by each tribe that the Secretary has provided the account holder with as full and complete an accounting as possible and that the tribe accepts the balance as reconciled by the Secretary, or that the tribe

disputes the balance as reconciled and, if so, the report must provide an explanation why the tribe disputes the Secretary's balance; and

      vii.    Section 304(3) charges the Secretary with a duty to provide a statement outlining the efforts the Secretary will undertake to resolve the tribe's dispute.

      d.    Other statutes describe specifically and generally the United States' duties as a fiduciary to Plaintiff: in managing Plaintiff's trust funds (*e.g.*, 25 U.S.C. §§ 161a, 161b, 162a), in leasing and accounting for the proper disposition of Plaintiff's trust mineral estate including without limitation oil and gas, coal, uranium, vanadium, sand and gravel, and "red dog" (*e.g.*, the Indian Mineral Leasing Act of 1938, 25 U.S.C. § 396a *et seq.*; the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1701 *et seq.*), in managing and contracting for the sale of Plaintiff's timber (*e.g.*, the Act of June 25, 1910, 36 Stat. 857, codified as amended at 25 U.S.C. §§ 406, 407; the Act of Mar. 1, 1907, 34 Stat. 1018, codified as amended at 25 U.S.C. § 405; section 6 of the Indian Reorganization Act of 1934, 48 Stat. 986, codified at 25 U.S.C. § 466; and the National Indian Forest Resources Management Act of 1990, codified at 25 U.S.C. § 3101 *et seq.*), in leasing Plaintiff's lands (*e.g.*, 25 U.S.C. § 415 *et seq.*), and in granting rights-of-way over and across Plaintiff's lands (*e.g.*, 25 U.S.C. § 323 *et seq.*).

      e.    Other relevant treaties, executive orders, statutes, and regulations form additional jurisdictional bases for Plaintiff's claims regarding the trust funds and other trust assets managed by Defendant. Among other authorities, these include the Trade and Intercourse Act, 25 U.S.C. § 177; the 1849 treaty between Defendant and Plaintiff, 9 Stat.

974 (under which Plaintiff submitted to Defendant's "sole and exclusive right of regulating the trade and intercourse" with Plaintiff); the 1868 Treaty between Defendant and Plaintiff, 15 Stat. 667 (which established a homeland for Plaintiff); various Executive Orders and statutes which added land to Plaintiff's reservation and confirmed title to such land (*e.g.*, Executive Order of May 17, 1884, available at I Charles J. Kappler, *Indian Affairs, Laws and Treaties* 876 (1904); Act of June 14, 1934, ch. 521, 48 Stat. 960-62); the Treaty of Guadalupe Hidalgo, Feb. 2, 1848, 9 Stat. 922 (securing to Indians in the Mexican Cession area, including Arizona and New Mexico, preexisting rights under Mexican and Spanish land grants and law to land, water, and other property); the Budget and Procedures Act of 1950, 31 U.S.C. § 66b, as amended 31 U.S.C. §§ 3511-15, 3521 (which requires the Treasury Department of the United States to maintain all accounts (including Indian trust funds) and to make reports on all receipts and disbursements of the federal government); the Navajo and Hopi Rehabilitation Act, 25 U.S.C. §§ 631-638; the Treasury Fiscal Requirements Manual (through which the Department of the Treasury issues codified instructions for the guidance of federal departments and agencies, including without limitation the requirement of 1 TFRM 4020 that the deposit of all funds received for credit to the account of the United States Treasury should be made without delay, generally no more than one or two days at the most); the Department of the Interior's Departmental Manual (including Chapter 1, Section 337(D), which states that whoever, having money of the United States in his possession or under his control, fails to deposit it when required to do so by the Secretary of the Treasury or the head of any other proper department or agency of the General Accounting Office is guilty of embezzlement); 31 U.S.C. §§ 3511 and 3512 (which require that the head of each executive

agency observe the accounting principles, standards, and related requirements as stated by the Comptroller General of the United States, and the related requirements of the Comptroller in the Government Accounting Manual, Appendix III, and other relevant requirements); 25 C.F.R. Part 115 (trust funds for tribes and individual Indians); and 25 C.F.R. Part 1200 (regulations under the American Indian Trust Fund Reform Act).

6.    This Court also has jurisdiction over the subject matter of this action under a well-developed body of federal case law describing and defining the fiduciary relationship between Defendant and Plaintiff, created by the statutes listed above and by other relevant federal law, including treaties and regulations, and leases and other agreements approved by Defendant concerning management and disposition of various assets held by Defendant in trust for Plaintiff.

## PARTIES

7.    Defendant owes numerous enforceable, money-mandating fiduciary duties to the Plaintiff with respect to Plaintiff's trust assets, including trust funds and various trust resources. Defendant employs various federal agencies to perform these fiduciary duties owed to Plaintiff. The Bureau of Indian Affairs ("the Bureau") is the federal agency within the Department of the Interior most directly responsible for generally discharging Defendant's fiduciary duties to Plaintiff. The Office of Trust Funds Management ("OTFM"), is the office within the Bureau most directly responsible for specifically discharging the Secretary's and the Bureau's responsibilities with respect to Plaintiff's trust funds at issue herein. The Special Trustee for American Indians ("the Special Trustee"), duly appointed by the Secretary, is charged by Congress with the duties and responsibilities enumerated in the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4001-4061.

8.     Plaintiff is a federally recognized Indian tribe, recognized by the Secretary as a sovereign Indian Tribe with legal rights and responsibilities, eligible for the special programs and services provided by the United States to Indians because of its status as an Indian tribe, and recognized as possessing powers of limited self-government.

## BACKGROUND

ESTABLISHMENT AND ADMINISTRATION OF PLAINTIFF'S TRUST FUNDS

9.     Historically, Plaintiff was recognized by Defendant as the reservation titleholder of approximately 19,000,000 acres of land, and its subsurface, in the States of Arizona, Utah, and New Mexico.  The reservation historically contained, and still contains, large deposits of oil and gas reserves, coal deposits, uranium, vanadium, sand and gravel, and "red dog" (certain material that is mined or collected for commercially valuable applications, such as road base construction, etc.) which have had, and continue to have, great economic value.  The reservation also contained a very large ponderosa pine forest, grazing land, and other valuable resources.

10.     Upon information and belief, from the middle 1800's until the present, the United States held in trust for Plaintiff proceeds derived from the use or disposition of its reservation timber and gravel resources or leases of its lands or other uses of its lands (all under the direct supervision and control of Defendant under the authority of federal statutes and regulations).  These activities through appropriate leases or permits generated revenue to the benefit of Plaintiff.  These monies were held in trust and managed exclusively by Defendant for Plaintiff's benefit.

11.     Beginning in the early 1950's and continuing to the present, Defendant as Plaintiff's trustee has authorized and managed hundreds of leases and agreements regarding oil and gas, coal, uranium, vanadium, sand and gravel, "red dog,"  and other trust resources on Plaintiff's trust lands.

12.     Pursuant to 25 U.S.C. §§ 161a, 161b, and 162a, Defendant deposited royalties, made disbursements, and accrued interest and investment income on undisbursed amounts of Plaintiff's trust accounts and engaged in all other aspects of its exclusive management of Plaintiff's trust funds.

## DEFENDANT'S DUTIES TO RECONCILE, ACCOUNT, AND AUDIT PLAINTIFF'S TRUST FUNDS

13.     Throughout the entire approximate 200-year history of Defendant's unilaterally imposed trusteeship for Indian tribes, with the concomitant assumption of fiduciary duties concerning trust funds and resources, Defendant has never rendered a complete and accurate audit or accounting of trust funds to any such beneficiary tribes, including Plaintiff, pursuant to generally accepted audit standards or accounting principles. *See, e.g., Misplaced Trust: the Bureau of Indian Affairs' Mismanagement of the Indian Trust Fund*, H.R. Rep. No. 102-499 (1992).

14.     Throughout the period August 14, 1946, to the present, Defendant has never provided Plaintiff a complete and accurate accounting or audit of the disposition and status of its trust funds consistent with generally accepted accounting principles and audit standards which are mandated for governmental departments and agencies, including the Departments of Treasury and the Interior.

15.     Upon information and belief, in the mid-1980's, the United States entered into contract negotiations with Mellon Bank to have the latter take over from the Bureau and perform all deposit, crediting, disbursing, investment, and other administrative activities of tribal and individual Indian trust funds, including Plaintiff's trust funds.

16.     Upon information and belief, the terms of a contract with Mellon Bank were never completed because pursuant to the Act of December 22, 1987, Pub. L. 100-202, Congress required that before any of the United States' fiduciary duties as trustee for the administration of tribal and

individual Indian trust funds could be transferred to another entity, the Bureau must audit and reconcile tribal trust funds and provide tribes with an accounting of such funds.

17.     By the Act of October 23, 1989, Pub. L. 101-121, the Act of November 5, 1990, Pub. L. 101-512, and the Act of November 3, 1991, Pub. L. 102-154, Congress reaffirmed the mandates of the Act of December 22, 1987. In the above-referenced statutes, Congress added the additional requirement that the Bureau must certify through an independent party the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

18.     On October 25, 1994, Congress enacted the American Indian Trust Fund Management Reform Act, codified at 25 U.S.C. §§ 4001-4061 (hereinafter "the Trust Fund Reform Act"). Among other responsibilities, Congress required in the Trust Fund Reform Act the following:

> a.      the Secretary has a duty to provide periodic, timely reconciliations to assure the accuracy of tribal and individual Indian trust accounts;

> b.      the Secretary has a duty to determine accurate cash balances in tribal and individual Indian trust accounts;

> c.      the Secretary shall cause an annual audit of all trust funds to be conducted;

> d.      a Special Trustee for the American Indians (hereinafter "the Special Trustee") is appointed to provide for more effective management of and accountability for the proper discharge of trust responsibilities to Indian tribes, and to oversee and coordinate reforms within the Department of Interior of its practices relating to the management and discharge of such responsibilities;

e.    the Special Trustee has a duty to monitor the reconciliation of trust accounts to ensure that the Bureau provides account holders with a fair, accurate, and complete accounting of all trust accounts; and

f.    the Special Trustee has a duty to provide such guidance as necessary to assist Department personnel in identifying problems and options for resolving problems.

THE "TRUST FUND RECONCILIATION PROJECT" AND THE RESULTS THEREFROM

19.    On May 24, 1991, the United States entered into a contract with Arthur Andersen, LLP ("the Bureau/Andersen Contract") for the latter to perform accounting activities to assure that the Bureau's accounting records and account balances in the tribal and individual trust accounts were reconciled as accurately as possible back to the earliest date practicable, using available accounting records and transaction data. The services actually performed by Andersen are herein referred to as "the Reconciliation Project."

20.    The purpose of the Bureau/Andersen Contract was for the Bureau to fulfill its statutory obligation to provide tribes an audit, reconciliation, and accounting of all trust funds, as described above in paragraphs 16 through 18.

21.    Upon information and belief, from 1991 to 1995 Andersen performed certain accounting procedures agreed upon between the Bureau and Andersen, purportedly to fulfill obligations of the Bureau/Andersen Contract described in paragraph 19, with respect to Plaintiff's trust funds.

22.    On or some time after February 14, 1996, the Special Trustee delivered to Plaintiff a report prepared by Andersen and entitled "Agreed-Upon Procedures and Findings Report for the Navajo Nation, July 1, 1972 Through September 30, 1992" ("the Andersen Report"). On or some

time after February 14, 1996, the Special Trustee delivered to Plaintiff a Compact Disc ("CD") containing electronic scans of a small sampling of documents that purportedly are transactional records pertaining to Plaintiff's trust funds.

23.     On or some time after February 14, 1996, the Bureau delivered to Plaintiff a "Summary and Detail of Trust Funds Report, Fiscal Years 1993 - 03/31/95; Asset and Transaction Statement, 04/01/95 - 09/30/95" ("the Bureau Report"), containing the Bureau's accounting, reconciliation, and reconstruction procedures for the period October 1, 1992 through September 30, 1995 to arrive at the September 30, 1995 balances reported.   The tribal trust fund account reconciliation work performed by the Bureau utilized as starting balances the amounts that Andersen generated as ending balances on September 30, 1992.

24.     In the Andersen Report, Andersen made the following statements to Plaintiff with regard to its findings:

        a.      the primary objective of the Reconciliation Project was to reconstruct historical transactions, to the extent practicable, for all years for which records are available for all tribal trust funds managed by the Bureau, such that Andersen did not state that a primary objective was to reconcile the balances of tribal trust funds;

        b.      because the procedures utilized by Andersen in the Reconciliation Project did not constitute an audit made in accordance with generally accepted auditing standards, Andersen did not express an opinion on the accuracy of any of its findings; and

        c.      furthermore, contrary to the Andersen assertion, the so-called Reconciliation did not include a number of Plaintiff's trust accounts, such as its IIM accounts, its IMPL account, Special Deposit Accounts, and the Bennett Freeze Account, for example.

25. On January 12, 1996, Defendant informed Plaintiff that despite its duty described above in paragraph 17, the United States had not obtained an independent certification from the accounting firm of Coopers & Lybrand, LLP, in the form of an attest, service, examination, compilation or agreed-upon procedures report certifying that the procedures performed and findings made by Andersen in the Andersen Report were adequate, reliable, and complete.

26. On June 11, 1996, the Special Trustee testified before the Senate Committee on Indian Affairs that the Reconciliation Project was concluded in December 1995.

27. On August 19, 1996, the United States entered into a contract with Andersen for the latter to provide support services, including, among others, access and presentation of Andersen's work papers to tribal representatives.

28. Section 304 of the Trust Fund Reform Act, 25 U.S.C. § 4044, states that the Secretary has a duty to report to Congress, identifying for each tribal trust fund a balance reconciled as of September 30, 1995. It further states that the Secretary's report shall include an attestation by each tribe that the Secretary has provided the account holder with as full and complete an accounting as possible and that the tribe accepts the balance as reconciled by the Secretary, or that the tribe disputes the balance as reconciled, and provides an explanation why the tribe disputes the Secretary's balance.

29. In order to fulfill the Secretary's duty described above in paragraph 17, on or some time after February 14, 1996, the Special Trustee requested that Plaintiff state in an "Acknowledgement" form provided by the Special Trustee whether the Plaintiff accepted the findings of the Andersen Report as a full and complete accounting, and whether Plaintiff accepted the balances of its trust funds, reflected in the Andersen Report findings, as reconciled by the Secretary. Plaintiff disagreed, and still disagrees, with those posited balances.

30.     Plaintiff alleges that the Bureau/Andersen Report findings do not reflect reliable, accurate, and complete amounts of the losses incurred in Plaintiff's trust funds from their dates of inception through 1995, which losses are the result of Defendant's mismanagement of trust funds and other trust assets. Among the Bureau/Andersen Report deficiencies are the following:

a.     The reconciliation and reconstruction procedures designed by the Bureau and Andersen contain a significant design flaw, namely, the assumption utilized by the Bureau and Andersen that an accurate accounting of Plaintiff's trust funds will result from the summation of those entries recorded by the Bureau in its accounting system which are supported by accomplished source documents. The design does not adequately address the possibility that transactions not recorded by the Bureau in its accounting system may occur and be material in amount to Plaintiff, or that the allocations and calculations performed by the Bureau's staff were inaccurate, unauthorized, or improperly recorded. This design flaw is significant and apparent because the internal control structure and accounting and financial management systems utilized by the Bureau to account for tribal trust funds historically contain significant deficiencies.

b.     Most significantly, the reconstruction and reconciliation procedures performed by Andersen fail to adequately address the accounting inaccuracies that might result from Defendant's failure to credit Plaintiff's trust account with the complete royalty amounts due from hundreds of producing oil and gas leases, coal leases, uranium leases, vanadium leases, sand and gravel leases, and other such resource leases, contracts, or permits on Plaintiff's trust lands or trust lands in which Plaintiff has an interest, and which are administered, controlled, and managed by Defendant.

c.      Defendant has a well documented history of failure to enforce Plaintiff's natural resource lease terms and other rights arising under treaties, executive orders, statutes, and federal law, resulting in undercollection by Defendant and a loss, therefore, to Plaintiff's trust funds of amounts that should have been collected by Defendant and deposited to the credit of Plaintiff's trust funds.

d.      Upon information and belief, Defendant similarly has failed to fulfill its fiduciary trust duties arising under treaties, executive orders, statutes, regulations, and contractual documents to collect the full amounts available or due with respect to other trust resources of the Plaintiff.

e.      Based upon the extensive inadequacies in the Bureau's internal control structure, as reported by the independent public accountants of Griffin and Associates, P.C. on May 17, 1996, which existed during the period when the Bureau was performing the reconstruction and reconciliation procedures for 1992 to 1995 for Plaintiff's trust funds, it is not prudent for Plaintiff to rely, and Plaintiff therefore does not rely, on any work product produced by Bureau personnel, including the Bureau Report findings.

f.      The procedures performed in the Reconciliation Project were exclusively designed and agreed upon by Andersen and the Bureau. The procedures were not consistent with generally accepted auditing standards. Based upon the inadequate historical performance of the Bureau in managing and accounting for tribal trust funds and the extent of its involvement in the Andersen procedures, Plaintiff concludes that it is not prudent for Plaintiff to accept the procedures designed by Andersen and the Bureau as being sufficient to produce an accounting that would be complete and accurate.

g.      The certification contract with Coopers & Lybrand might have compensated for the weakness described in the previous sub-paragraph, but the certification process was terminated by the Bureau before it was completed.  However, even if the contract had been completed, there is no assurance that Coopers & Lybrand would have been able to conclude that the procedures performed were adequate to produce a complete and full accounting to Plaintiff.  In fact, upon information and belief, Plaintiff asserts that the Coopers & Lybrand contract was terminated precisely because it was about to attest to the wholesale inadequacies of the Bureau/Andersen Reconciliation Project and the fact that the "account balances" asserted therein for Plaintiff and other tribes could not be relied upon and were not in compliance with the Congressional mandate in the Trust Reform Act of 1994.

h.      The Andersen Report contains scope limitations, including a limited time period, beginning only from 1972, and Andersen's assertion of its inability to perform basic reconciliation procedures because of missing transactional records, and due to the fact that Andersen did not even purport to have audited or reconciled all of Plaintiff's trust accounts, such as the IIM accounts in which Plaintiff had an interest, Plaintiff's IMPL acccount, Plaintiff's Special Deposit Accounts, and the Bennett Freeze Account in which Plaintiff had an ownership interest.

31.     Plaintiff alleges that in order to know complete and accurate balances to its trust funds an audit is required, and in order to perform the audit a review is necessary of all records in the possession, custody, or control of the Defendant, including any of it agencies and agents, Andersen, and other available sources pertaining to the management of Plaintiff's trust funds and other trust assets, including but not limited to the calculations of royalty amounts for the volume, quality and

value of oil and gas, coal, uranium, and other minerals, and of the value of timber severed and removed from Plaintiff's trust lands.

### THE SPECIAL TRUSTEE AND THE SECRETARY SEEK CLOSURE ON DEFENDANT'S MISMANAGEMENT OF TRIBAL TRUST FUNDS BASED ON ANDERSEN'S FINDINGS IN THE RECONCILIATION PROJECT

32.     On December 11, 1996, the Secretary informed the Chairmen of the House Resources Committee and the Senate Committee on Indian Affairs that the Reconciliation Project accounting activities were completed.

33.     On December 11, 1996, the Secretary submitted to the Chairmen of the House Committee on Resources and the Senate Committee on Indian Affairs a report entitled "Department of the Interior's Proposed Legislative Options in Response to the Tribal Trust Fund Reconciliation Project Results." The proposed options are based upon the Andersen Report findings for Plaintiff and all other tribes.

34.     In the report described in the previous paragraph, the Secretary stated that he intended to present final tribal trust fund settlement options to Congress by April 1997.

### **FIRST CLAIM FOR RELIEF**

35.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 34, above.

36.     Throughout all time periods relevant here, Defendant has possessed and exercised and continues to exercise comprehensive authority, control, and supervision over Plaintiff's trust assets (i.e., funds and resources including land, minerals, and timber) as a fiduciary pursuant to applicable and governing treaties, statutes, regulations, executive orders, and other federal law, which establish and impose a full range of specific enforceable, money-mandating fiduciary duties on Defendant

of the highest order concerning the management and disposition of Plaintiff's trust assets.

37.    Defendant routinely failed (and continues to fail) to fulfill Defendant's fiduciary duties concerning Plaintiff's trust assets, causing economic loss to Plaintiff, Plaintiff's trust funds, and other trust assets of Plaintiff.

38.    Defendant's breaches of the fiduciary obligations detailed above have resulted in (and continue to result in) losses to, as well as mismanagement of, Plaintiff's trust funds and other trust assets.

39.    Due to Defendant's failure to fulfill its fiduciary duties to Plaintiff arising under treaties, executive orders, statutes, regulations, and other federal law in the proper management of Plaintiff's trust assets, on the basis of information made available to Plaintiff, Plaintiff has suffered damage caused by Defendant's breach of fiduciary obligations in the amount of Nine Hundred Million Dollars ($900,000,000.00).

## SECOND CLAIM FOR RELIEF

40.    Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 39, above.

41.    Because Defendant has failed to provide an accounting consistent with the requirements of generally accepted accounting principles and auditing standards, Plaintiff is entitled to an order of this Court compelling such an accounting to aid the Court in a final determination of damages to which Plaintiff is entitled.

42.    Ancillary to this demand for an accounting, Plaintiff is entitled to an order from this Court directing Defendant to assure the preservation and production at Defendant's expense of all records relating to Plaintiff's trust funds as well as all records pertaining to the underlying royalty

income stream into the trust funds, namely, those relating to volume, quality, and value of natural resources used, severed, or removed from Plaintiff's reservation or other trust lands wherein Plaintiff has an interest held in trust by Defendant.

43.     Under applicable federal trust law principles between the United States as trustee and Plaintiff as a beneficiary, explicitly and implicitly under the federal statutes that require the Bureau to perform an audit, reconciliation, and certification, Plaintiff is entitled to all information for which Plaintiff has any reasonable use concerning its trust funds and income-producing trust assets and the Bureau's administration of Plaintiff's trust funds.  This includes all relevant information in the custody, possession, or control of Defendant or its agents about the terms of the trust, its present status, past acts of management, or other incidents of the administration of the trust, including investments. Defendant is obliged to give Plaintiff all such requested information at Defendant's sole and exclusive expense.  Plaintiff is accordingly entitled to an order of this Court compelling Defendant to provide Plaintiff at Defendant's sole and exclusive expense with this information to aid the Court in a final determination of damages to which Plaintiff is entitled.

### THIRD CLAIM FOR RELIEF

44.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 43, above.

45.     Congress directed the Bureau, the Special Trustee, and the Secretary to perform a reconciliation, audit, and certification to provide Plaintiff the most complete and accurate balances possible of its trust funds.  Defendant failed to do so and Defendant's actions constitute a breach of Defendant's duties of loyalty and due care owed to Plaintiff within the context of the fiduciary relationship as mandated by Congress.

46.     Plaintiff is entitled to review and copy any records in the possession, custody, or control of Defendant's agent Andersen concerning Plaintiff's trust funds, including all Andersen work papers.   Plaintiff is accordingly entitled to an order of this Court directing Defendant to forbid its agent Andersen or any successor in interest to Andersen from imposing any restrictions or fee requirements on Plaintiff's right to review and copy any records in Andersen's possession, custody, or control concerning Plaintiff's trust funds, including all Andersen work papers, all to aid the Court in a final determination of damages to which Plaintiff is entitled.

**WHEREFORE**, Plaintiff respectfully requests the Court to award the following relief:

1.     To take jurisdiction of this action;

2.     To award Plaintiff Nine Hundred Million Dollars ($900,000,000.00) in damages or such amount as Plaintiff may prove at trial in damages against Defendant;

3.     To order Defendant, in aid of the court's jurisdiction to render a money judgment, to perform a complete accounting for all trust funds and trust assets of Plaintiff, including but not limited to all IIM accounts wherein Plaintiff has an interest, Plaintiff's IMPL Account, all of Plaintiff's Special Deposit Accounts, the Bennett Freeze Account, and any other trust accounts in Defendant's care, custody, or control from August 14, 1946 to the present;

4.     To immediately order Defendant to preserve all records of any kind whatsoever concerning Plaintiff's trust assets during the pendency of this action, until further order of this Court, and to order Defendant to produce to Plaintiff at no cost to Plaintiff all relevant information in the custody, possession, or control of Defendant or its agents about the terms of the trust, its present status, past acts of management, or other incidents of the administration of the trust.

5.     To grant Plaintiff pre-judgment interest as a component of Plaintiff's damages, post judgment interest, costs and expenses, and attorneys fees as provided by law.

6.     To grant such other and further relief as the Court deems proper and appropriate.

Dated: December 29, 2006                    Respectfully submitted,

                                            *Alan R. Taradash*   by Jill Eric grant
                                            Alan R. Taradash
                                            Nordhaus Law Firm, LLP
                                            405 Dr. Martin Luther King Jr. Ave. NE
                                            Albuquerque, NM  87102
                                            telephone:  505-243-4275
                                            *Attorney of Record for Plaintiff*

                                            *Of Counsel*:
                                            Thomas J. Peckham
                                            Daniel I.S.J. Rey-Bear
                                            Deidre A. Lujan
                                            Nordhaus Law Firm, LLP
                                            405 Dr. Martin Luther King Jr. Ave. NE
                                            Albuquerque, NM  87102
                                            telephone:  505-243-4275

                                            *Of Counsel*
                                            Donald H. Grove
                                            Jill E. Grant
                                            Nordhaus Law Firm, LLP
                                            1401 K Street NW, Suite 801
                                            Washington, D.C. 20006
                                            telephone: 202-530-1270

                                            *Of Counsel*
                                            Louis Denetsosie, Attorney General
                                            Harrison Tsosie, Deputy Attorney General
                                            The Navajo Nation
                                            PO Box 2010
                                            Window Rock AZ 86515
                                            telephone:  928-871-6343

*Of Counsel*
Alan Balaran
Law Offices of Alan Balaran, PLLC
1717 Pennsylvania Ave. NW, Suite 700
Washington, DC 20006
telephone:  202-466-5010

*Of Counsel*
Leander Bergen
4110 Wolcott Ave. NE, Suite A
Albuquerque, NM 87109
telephone:  505-798-0114

*Of Counsel*
David C. Harrison
6739 Academy Rd. NE, No. 370
Albuquerque, NM 87109
telephone:  505-797-9800