# Exhibit 9

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NAVAJO NATION,<br>f.k.a. NAVAJO TRIBE OF INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:06-cv-00945-L |

## DECLARATION OF OMAR BRADLEY

I, **Omar Bradley,** as Regional Director of the Navajo Regional Office, do hereby declare and state, pursuant to 28 U.S.C. § 1746:

1. I have been an employee of the Bureau of Indian Affairs ("BIA") since October 1978. I am currently assigned to the Navajo Region with Navajo Nation and individual trust responsibilities. I was the Deputy Regional Director for Trust Services from December 1999 and have been acting Regional Director at various times since 1999. I was appointed to the position of Regional Director on February 4, 2007.

2. This declaration is based, in part, on information I have gathered from a BIA Program Analyst whom I supervise.

3. As Regional Director, I am ultimately responsible for overseeing the maintenance of Navajo documents. These documents and records are maintained at the main regional office in Gallup, New Mexico; regional program offices in Fort

Defiance, Arizona and Window Rock, Arizona; and at Agency offices in Crownpoint, New Mexico; Chinle, Arizona; Shiprock, New Mexico; Tuba City, Arizona, and Fort Defiance, Arizona. Document types include correspondence, memoranda, leases, permits, and other records required to carry on the business of the BIA on the reservation.

4. I am aware of the litigation filed by the Navajo Nation against the United States of America on December 29, 2007. **Navajo Nation f.k.a. Navajo Tribe of Indians v. United States of America**, No. 06-945L (C.F.C.), and I have reviewed the Plaintiff's motion for the entry of a record retention order in this case and proposed order.

5. In its document retention policy, the Department of Interior requires that all Indian fiduciary trust records be preserved indefinitely, and forbids their destruction in any case. On April 24, 2007, to emphasize the importance of that policy, the Deputy Regional Director of Indian Services, in the role of acting Regional Director, published and sent a written directive to all Navajo Region Employees reiterating the existing policy, advising them of the pending litigation, and directing them to preserve all potentially relevant material, including documents and electronically stored information. A true and correct copy of the directive is attached to this declaration.

6. The Navajo Regional Office has already taken steps to preserve all potentially relevant documents and electronically stored information and will continue to do so whether or not a court order is entered directing BIA to do so in the above-captioned lawsuit.

7. I have particular concerns about the provisions of the proposed order that go beyond preservation, because, among other consequences, to require the retention and production of documents on-site would severely disrupt the Navajo Region's ability to conduct its normal activities of providing services to the Tribe and its members. Implementation of plaintiff's proposed "record retention order," or an order with similar provisions, would virtually disable the various offices within this Region because it most likely would require that the scarce resources currently available for Tribal programs be diverted instead, to compliance with the provisions of the order. The burdens and disruptions to Agency operations and services caused by the proposed order would be particularly severe with respect to active trust records.

<u>Inactive Records in the Navajo Region</u>

8 BIA policy requires that inactive Navajo records be transferred to the American Indian Records Repository ("AIRR"), in Lenexa, Kansas, for safe-keeping, indexing, and research.

9. I understand that the process of transferring records to the AIRR is described in a Declaration of Ethel Abeita to be submitted to the Court at the same time as this Declaration.

10. The vast majority of inactive Navajo records from the Regional Office and agencies listed above in this declaration have already been transferred to the AIRR.

11. Currently, there are approximately 1,000 boxes of inactive trust records within the Navajo Region, at the regional office and the five agencies. (This number is

not inclusive of inactive non-trust records).The bulk of the inactive records are at the regional program office in Window Rock, Arizona, which handles all of the realty functions for the Tribe. The realty functions include maintenance and oversight of the Tribe's and individuals' Rights of Way, leases, permits, unresolved rights, mortgages, trespasses, and minerals. The realty program office is located in a historic building with 15 employees. There are no conference rooms or any room that would accommodate persons inspecting documents.

12. The remainder of the inactive records are located at the Fort Defiance, Crownpoint, Chinle, Tuba City and Shiprock Agencies and at the Gallup Regional office. The agencies have very limited space and staff available to them. In addition, the Gallup office building houses BIA, OST and Indian education programs, which leaves virtually no space available for examination of documents or research, much less bringing in additional copying equipment, scanners, and the like.

13. We do not have the space to store and maintain inactive records indefinitely, or for long periods of time, at the regional and agency offices.

14. In addition, as explained below in this Declaration, our space and staffing limitations are not conducive to an orderly and systematic records inspection and production of the inactive records at the regional and agency offices.

15. To ensure that inactive trust records are moved to the AIRR as soon as possible, in March 2007 my office communicated, through the BIA Program Analyst referred to in Paragraph 2, above, with the Office of Trust Records ("OTR") regarding

moving the boxes of inactive Navajo trust records described above from the Navajo Reservation and the various agencies and offices described above, to the AIRR for safe-keeping, indexing, and archiving in accordance with BIA policy.

16. Since March 2007, my office has continued to be in contact with OTR regarding moving the boxes of inactive trust records referred to above in this Declaration, and we expect, and want, to transfer those boxes to the AIRR as soon as OTR's schedule for doing so can be established.

17. Pending OTR's informing us of a firm date for the movement of those inactive trust records, we have been preparing, and continue to prepare, the inactive trust records for transfer to the AIRR.

18. Delaying the shipment of inactive records to the AIRR indefinitely, as contemplated by plaintiff's proposed order, will increase the chances that the safety and security of the records might be compromised, because the regional and agency offices are designed and staffed to provide services to the Tribe and its members on an ongoing basis, and not primarily as record repositories or research facilities.

19. In addition, access to a regional or agency office cannot be controlled to the degree it is controlled at the AIRR nor can the integrity of individual boxes be preserved to the extent it can once the boxes are in OTR's control and at the AIRR. This, in addition to severe space and staffing limitations, is another reason the regional and agency offices are much less appropriate venues than the AIRR for storage, inspection, review, and copying of inactive records.

20. In addition, shipping inactive records to the AIRR for indexation and storage (rather than attempting to keep them, or index them, on site) prevents major disruption of my staff's normal activities ( providing services to the Tribe) and to their work environment.

21. The staff of the Navajo Regional Office is limited, and I estimate that to comply with the provisions plaintiff has requested regarding review and production of inactive records on-site where they currently reside would require pulling up to ten (10) full-time employees from their regular assignments to perform tasks relating to the production and inspection of inactive Navajo records instead, depending on the time frame within which documents had to be produced for inspection by plaintiff.

22. Although, given the many factors and varied, unknown, component costs involved, I cannot presently provide a dollar estimate of the cost, I believe the cost of implementing at the regional office and program and agency offices the measures necessary to safeguard the documents during a full-scale document production would be astronomical, well beyond the budgets for those offices. As I note elsewhere, neither the regional office nor the agencies or program offices are designed or equipped to serve as sites for large-scale review, inspection, or copying of trust records.

23. I estimate that to identify potentially responsive documents, segregate them appropriately, and monitor the inspection and production of inactive records should the Court enter the proposed order, would require the work of many full-time employees for an indefinite and undetermined period of time. The staff hours required would pressure

already strained agency and regional offices to put aside normal day-to-day programmatic and administrative tasks to instead to the work required to comply with the terms of the order that plaintiff has proposed.

24. As a result of the diversion of experienced staff and other resources to the tasks described above, the time to "turn around" or complete other tasks that are part of the agencies' day-to-day work, such as working with the Tribe and its members to ensure that leases and permits are active and appropriately renewed, will greatly increase.

25. New full-time staff members or new contractors would potentially have to be hired for each office where inactive records currently reside, to assist in such a large document inspection and production effort. Between five and seven current staff or new staff or contractors might be needed depending in part on the volume of inactive trust records plaintiff designates for inspection, and the time-frames involved.

26. We have a very limited budget, and even if we could hire personnel to assist in the tasks contemplated or required by the proposed order, budget constraints would force us to borrow funds from other BIA programs to pay for the costs incurred in doing the work required by the order. Also, there is a danger that the work needed to comply with the proposed order would displace trust reform initiatives, which currently are priorities for our office.

27. Even if new staff or contractors could be hired to perform the tasks required by the proposed order, experienced employees with the best knowledge of the contents

of the active and inactive records within their areas of responsibility would have to devote time and attention to assisting and supervising the new staffers, all to the detriment of their day-to-day operational mission.

28. We have considered how the entry of the order as proposed could affect us. The potential need for purchase of additional copiers, scanners, paper, ink, file folders for records, boxes, equipment maintenance and additional space for storage and inspections could run over $100,000.

Active Records in the Navajo Region

29. Currently, there are approximately 2,600 boxes of active trust records within the Navajo Region, at the regional office and the five agencies. Review of the active records at the agency as discussed in the Plaintiff's proposed Records Retention Order would cause an even greater disruption to our agency and regional offices through the Navajo Region. As with any inspection or review of the inactive records, any review of active records would require staffing, space, and adequate resources. All of the offices in this region have limited resources as indicated above.

30. Furthermore, allowing review of active records during regular business hours while employees are attempting to conduct normal business with the Tribe and individual Indians would severely disrupt daily business affairs and severely encumber the regional and agency offices.

31. Active records must be constantly accessed and used by employees for ongoing work assignments. To have to make bodies of active records available for

inspection and copying would interfere with, slow down, and increase turnaround time for the ongoing business of the agency.

32. The prospect of document production and inspection at the Window Rock regional realty agency identified above serves as an example of some of the severe burdens and problems presented by the prospect of retention, production, and on-site review of active and inactive trust records at the regional offices or agencies described above.

33. As of the date of this declaration, approximately 1,500 boxes of active and inactive Navajo trust records are located at the Window Rock regional realty agency. That agency is located in an historic building. It is at capacity now, in terms of accommodating people and documents. It does not have the structure of a warehouse facility, e.g., reinforced flooring, to support large amounts of people and documents, much less additional copying or scanning equipment. It does not have a conference room, per se; there is a small meeting room also used for storage, leaving very little room for people to move around. This environment is not conducive to the production of documents in an efficient and expeditious way while providing the safeguards due to trust documents.

OMAR BRADLEY
Regional Director
Navajo Region

Executed this 21st day of June, 2007

**United States Department of the Interior**
**Bureau of Indian Affairs**
**Navajo Region**
**P. O. Box 1060**
**Gallup, New Mexico 87305**

In response, reply to:
N101/Regional Director

APR 2 4 2007

Memorandum

To ALL NAVAJO REGION EMPLOYEES

From : ACTING Regional Director, BIA Navajo Region

Subject: **Litigation Hold: Preservation of Information in Tribal Trust Case for the Navajo Nation v. United States**

As you are aware, the Navajo Nation recently filed their complaint against the United States, claiming a breach of trust and mismanagement of tribal resources. Consequently, the Department of Interior Solicitor's Office issued a memo dated March 12, 2007, (see attached) emphasizing the importance for individual employees, including contractor employees to preserve material that is or may be relevant to this litigation.

All DOI employees are directed to preserve materials or information which consists of "all documents, data, and tangible things" in the possession, custody or control of program offices that are or may be relevant to this litigation. Tribal trust assets are identified as the management and accounting of tribal resources and funds held in trust by the Department. As such, information or materials that is or may be relevant to this case includes, without limitation, anything reflecting, referring or relating to:

1. any asset, such as funds, land, minerals, forestry, sand and gravel, or other resources, that is or at any time has been, held in trust by the United States or its agents for Tribes or Indian groups ("trust asset");
2. policies, procedures, guidelines, or correspondence relating to any aspect of the management or administration of trust assets;
3. proceeds, interest, or income from trust assets; or disbursement, disbursement, distribution, disposition or transfer of any trust assets;
4. reports, appraisals, reconciliations, or evaluations of trust assets; and
5. information that serves to identify, locate, or link any relevant information, such as file inventories, file folders, and indices.

Information include electronically stored information (ESI), including, but not limited to: E-mail (including attachments); Instant messages; Electronic calendars, tasks lists, or other organizational aids; Word processing documents; Spreadsheets; Databases; Audio and video recordings; and Voicemail. ESI may be stored on network systems and servers, local hard drives, laptops, storage media (including flash drives, diskettes,

and CD-ROMs), as well as PDAs (such as Blackberries) and cell phones. Personal home computers, cell phones, and other devices used for work may also contain relevant or potentially relevant information that must be identified and preserved.

The timeframe of preserving and safeguarding information relevant to this case has a yet-to-be-determined beginning date to the present; therefore, any information created in the future must also be preserved. In general, **<u>in no case shall BIA NRO employees delete nor destroy any relevant information related to the Navajo Nation v. United States.</u>**

Supervisors are directed to provide a copy of this memorandum to each employee within their program offices as it is imperative to ensure that all BIA NRO employees are informed that relevant litigation records are preserved and safeguarded.

For technical assistance regarding preserving records, please contact Lois Cunha or Claudeen Crank, OTR Regional Records Liaisons for the Navajo Region at (505) 863-8240/8422. If you have questions pertaining to the litigation, please contact Deborah S. Benally at (505) 863-8394. Thank you.

Attachment

cc: OTR Regional Records Liaisons, BIA Navajo Region
Program Analyst (Trust Coordination), BIA Navajo Region

# United States Department of the Interior

OFFICE OF THE SOLICITOR

MAR 1 2 2007

MEMORANDUM

**Office of the Secretary**
**Office of the Solicitor**
**Office of the Special Trustee**
  **Office of Historical Trust Accounting**
**Office of the Inspector General**
**Office of Assistant Secretary - Indian Affairs**
  **Bureau of Indian Affairs**
**Office of Assistant Secretary - Policy, Management, and Budget**
  **Office of Hearings and Appeals**
**Office of Assistant Secretary - Land and Minerals**
  **Minerals Management Service**
  **Office of Surface Mining**
  **Bureau of Land Management**
**Office of Assistant Secretary - Fish, Wildlife, and Parks**
  **Fish and Wildlife Service**
**Office of Assistant Secretary - Water and Science**
  **Bureau of Reclamation**
  **U.S. Geological Survey**

**Lawrence J. Jensen**
**Deputy Solicitor**

Subject: **Litigation Hold: Preservation of Information in Tribal Trust Cases**

As you may know, eighty Tribal plaintiffs, including some Indian groups that are not federally recognized, recently filed actions against the Department of the Interior ("Department") asserting claims of breach of trust and/or asset mismanagement (collectively, "Tribal Trust cases"). This gives rise to an extremely important obligation under Federal law to preserve material that is or may be relevant to the Tribal Trust cases.

The purpose of this Litigation Hold is to inform you of the scope of this obligation and what actions are required to comply with it. The preservation of information will primarily be carried out by individual employees and contractors (any reference herein to "employees" includes contractor employees). **Therefore, it is imperative that a copy of this Litigation Hold reaches every employee who may possess relevant information in your bureau or office.**

**Information To Be Preserved:**

The information that must be preserved consists of all "documents, data, and tangible things" in the possession, custody, or control of your bureau or office that are or may be relevant to the subject matter of the Tribal Trust cases. "Documents, data, and tangible things" encompass paper documents, electronically stored information (discussed below), and other materials, such as maps, videos, calendars, charts, and similar items.

Attached is a list identifying the individual Tribal plaintiffs whose information must be preserved. Additionally, the Native American Rights Fund has filed an action purporting to be on behalf of all other Tribes that received materials as part of the Tribal Reconciliation Project. Therefore, this Litigation Hold covers information concerning any Tribe or group of Indians for which the Department administers or has administered assets in trust.

The Tribal Trust cases concern the management and accounting of tribal resources and funds held in trust by the Department. Accordingly, information that is or may be relevant to these cases includes, without limitation, anything reflecting, referring or relating to:

1. any asset, such as funds, land, minerals, forestry, sand and gravel, or other resources, that is, or at any time has been, held in trust by the United States or its agents for Tribes or Indian groups ("trust asset");
2. policies, procedures, guidelines, or correspondence relating to any aspect of the management or administration of trust assets;
3. proceeds, interest, or income from trust assets; or disbursement, distribution, disposition or transfer of any trust assets;
4. reports, appraisals, reconciliations, or evaluations of any trust assets; and
5. information that serves to identify, locate, or link any relevant information, such as file inventories, file folders, and indices.

The timeframe of information that must be preserved is from a yet-to-be-determined beginning date through the present, which means that information created in the future must also be preserved.

**General Preservation Requirements:**

Employees are required to take "reasonable steps" to preserve the information described above. Reasonable steps, at a minimum, include ensuring that information is not purged pursuant to a records disposition schedule or otherwise inadvertently destroyed. This obligation also extends to records maintained in off-site storage facilities, which may include, in some instances, Federal Records Centers. At the present time, this obligation is only to identify and preserve the information. You will be notified if anything additional is required as the Tribal Trust cases proceed.

**Preservation of Electronically Stored Information ("ESI"):**

Under new amendments to the Federal Rules of Civil Procedure, the preservation requirement explicitly relates to electronically stored information. ESI can include, but is not limited to:

E-mail (including attachments);
Instant messages;
Electronic calendars, task lists, and other organizational aids;
Word processing documents;
Spreadsheets;
Databases;
Audio and video recordings; and
Voicemail.

ESI may be located on network systems and servers, local hard drives, laptops, storage media, (including flash drives, diskettes, and CD-ROMs), as well as on PDAs (such as Blackberries) and cell phones. Note that home computers, cell phones, and other devices used for work may also contain relevant or potentially relevant information that must be identified and preserved. Further, the hard drive and network files of departing employees must be identified and preserved.

Your IT personnel will be responsible for taking steps to preserve ESI from a technical standpoint. Employees should seek assistance from the IT personnel as necessary to preserve their ESI, and in no case should they delete any relevant information.

**Conclusion:**

Immediate compliance with this Litigation Hold is essential to protect the Department from lengthy—and avoidable—discovery disputes that consume bureau time and resources and other negative consequences, such as monetary sanctions and evidentiary inferences that would limit the Department's ability to defend against the claims in the cases. This Litigation Hold also protects individual managers and employees by providing them basic guidance on how to comply with their legal requirements.

Thank you for your prompt attention to this matter. Please direct any questions about this memorandum to Paul Smyth, Counselor to the Solicitor, (202-208-4307).

Attachment

# Exhibit 10

**Anne Meister**
04/01/2004 06:47 PM

To: All - BPD (Business use only!)
cc: Tribal Mail@BPD
Subject: SPECIAL NOTICE TO ALL EMPLOYEES

**MEMORANDUM FOR** **All BPD EMPLOYEES**

FROM: ANNE MEISTER

SUBJECT: RETENTION OF DOCUMENTS AND DATA RELATING TO INDIAN TRIBES

DATE: April 1, 2004

On March 22, 2004, we received two court orders that require BPD employees to retain documents and data relating to claims brought by the Jicarilla Apache Nation and the Pueblo of Laguna tribe. To ensure compliance with these court orders, and orders we may receive in cases with other Indian tribes, BPD is instituting an additional document retention policy. This policy applies to documents and data relating to Indian tribes that we handle in our role as a trustee, and supplements our existing policy for documents in the *Cobell* case.

Until further notice, please retain **all documents and data**, including duplicates, e-mails, and voice mails, that relate to the following subjects:

- The receipt, investment, and disbursement of trust funds belonging to Indian tribes.
- Procedures for managing Indian tribal trust funds, including procedures relating to the payment of interest.
- Accounting for Indian tribal trust funds.
- Litigation concerning the government's trust responsibilities towards Indian tribes.
- Treasury's trust responsibilities towards Indian tribes.
- Management of Indian tribal assets, such as land, timber, oil, and mineral rights.
- Document retention policies and practices pertaining to the subjects above.

Where possible and consistent with your normal business practices, please segregate the material you are retaining from other documents and data. This will help us to identify information pertaining to the litigation, as well as documents that can be safely destroyed at the end of the normal retention cycle.

To assist you in this effort, we have set up dedicated mailboxes for e-mails and voice mails. To retain existing and future e-mails, you should forward them to this address: **Tribal Mail.** If the e-mails pertain to a particular tribe, please put the tribe's name in the subject heading. To retain voice messages, please use the following procedure:

(1) Press 1 at the end of the message.

(2) Press 2 to forward the message with comments.

(3) Add your comments to the recording by saying the information in the message's header (e.g., the time and date of the message and the duration of the message). The voice mail system provides this information before each recorded message. If the message relates to a particular tribe, please mention that as well. Then press #.

(4) Enter extension 2000, then press #.

(5) Press # twice. When the message has been forwarded, you may delete it from your personal voice mailbox.

You may find it helpful to put this procedure by your phone. You may also wish to inform your colleagues that, because of the additional complications in retaining voice mail, you prefer to receive messages on Indian tribal matters by e-mail.

Please interpret your obligations under this policy broadly. If you need clarification or assistance, please contact BPD's Chief Counsel, Brian Ferrell (x3715), or Paul Wolfteich (x3715) or Brian Self (x3670) of his staff. Thank you for your continued cooperation and assistance with this policy.

# Exhibit 11

**FMS Insider**

You are here: Home > News > Cobell Litigation > Cobell/Tribal Litigation-01 -- Cobell/Tribal Litigation Home Page

## Cobell/Tribal Litigation Home Page

FMS is under continuing court orders to preserve certain documents indefinitely for purposes of the Cobell and tribal trust lawsuits. All employees must adhere to the instructions contained in the following documents, until further notice.

Cobell:

1. **Commissioner Richard L. Gregg's August 30, 1999 memorandum** directing all FMS employees to preserve indefinitely all documents and data relating to IIM trust monies. This memorandum includes the court's August 12, 1999 retention order and a list of the types of records FMS must preserve. *Note that the records FMS must retain for the Cobell litigation include not only IIM-related records but certain entire categories of records that FMS agreed to retain, regardless of whether they are IIM-related (for example, all Treasury checks).*
2. **The Deputy Chief Information Officer's July 2, 1999 guidelines** for utilizing the "Archive" Cobell mailbox.
3. **The Deputy Chief Information Officer's May 30, 2000 e-mail** which reiterates the policy for using the "Archive Cobell" mailbox. It also provides guidance for using the mailbox with Lotus Notes e-mail.
4. **Deputy Commissioner Kenneth R. Papaj's March 3, 2000 memorandum** (revised and reissued March 24, 2000) to Assistant Commissioners, entitled "Maintenance of Data on FMS Systems."
5. **Chief Counsel Debra N. Diener's March 7, 2000 memorandum** to Assistant Commissioners, outlining the requirements for seeking approval to dispose of documents not pertinent to pending litigation.
6. **Commissioner Gregg's February 14, 2006 memorandum** reminding All FMS Employees of records retention requirements, including the rule that no documents, data or tangible things can be destroyed without written approval from the Chief Counsel (with the exception of "obvious non-record materials"). Includes a copy of the "Quick Reference Guide" describing "obvious non-record materials".

Tribal:

1. **Commissioner Gregg's April 2, 2002 memorandum to Assistant Commissioners** directing that all tribal trust fund documents be preserved.
2. **Commissioner Gregg's March 26, 2004 memorandum to Assistant Commissioners and Chief Counsel**, requiring that email and voicemail messages related to two tribes (The Pueblo of Laguna and Jicarilla Apache Nation) be forwarded to dedicated "Tribal" mailboxes, and providing detailed instructions for using those mailboxes.

All questions should be directed to the Office of Chief Counsel at 874-6680.

**OCC Welcome Page**

# Exhibit 12

## Tribal Litigation

Please make sure that you are familiar with the following memoranda regarding document retention.

**Document Retention**

April 1, 2004. Meister E-Mail. Subject: SPECIAL NOTICE TO ALL EMPLOYEES

March 19, 2004. Jicarilla and Laguna Document Retention Orders.

# Exhibit 13

Nancy Fleetwood/BPD
02/23/2007 03:09 PM

To All - BPD (Business use only!)
cc
bcc
Subject IMPORTANT REMINDER TO ALL EMPLOYEES

I'd like to remind all employees that BPD remains subject to a court order that governs the retention of records relating to the Individual Indian Money (IIM) trust fund and IIM trust assets. To ensure compliance with this court order, you should not destroy any documents or data pertaining to the following subjects without written approval from the Chief Counsel or his designee:

- IIM deposit fund investment records
- IIM accounts and accounts held in trust by the Department of the Interior
- Savings bonds held in trust form of registration by the Department of the Interior
- Correspondence (internal and external) relating to Individual Indian Money
- Electronic communications, such as e-mails and Internet messages, relating to the subjects above, unless those communications have been forwarded to the *Cobell* mailbox.

You should continue to copy or forward all e-mails relating to the IIM trust fund, IIM trust assets, and the *Cobell* litigation to the dedicated IIM Mailbox. To insert the mailbox address on an e-mail, simply type "IIM Mailbox" and press the "Enter" key.

The Federal Reserve Banks have also been instructed not to destroy any fiscal agency records unless they have received specific permission in writing from Treasury authorizing the destruction. Please refer any inquiries from FRB personnel regarding record retention to Jimmy Phillips at (202) 504-3683, fax number (202) 504-3630. Don't attempt to give guidance on record retention matters to any FRB employee.

I appreciate your continued compliance with these instructions and encourage you to occasionally review the pertinent memoranda and e-mails, which are posted on PD Web under the Office of the Chief Counsel's (OCC) website. Just click on the office link "OCC" and then click on " *Cobell v. Kempthorne* ," which appears in the "Litigation" section.

Thanks again for the great support you have shown in helping Public Debt comply with a very challenging court order.

Nancy

# Exhibit 14

**Attachment F**

# Official FMS Business

[<BR>]

| | |
|---|---|
| **To:** | Office of the Commissioner Agency Services Debt Management Services Federal Finance Financial [illegible] Governmentwide Accounting Information Resources AC Management Regional Operations HQ Aust[illegible] Birmingham Kansas City Philadelphia San Francisco |
| **Date:** | 02/14/2006 |
| **From:** | William Higgins |
| **Subject:** | Cobell and Tribal Trust Litigation - FMS Retention Requirements |

Date: February 14, 2006

To: All FMS Employees

From: Richard L. Gregg
Commissioner

Subject: Cobell and Tribal Trust Litigation – FMS Retention Requirements

All FMS employees are again reminded that FMS remains subject to continuing court orders and Treasury directives, requiring us to retain and safeguard all documents, data and tangible things that relate to Individual Indian Money (IIM) and Tribal trust funds and assets, indefinitely. To ensure that we remain in compliance with the court orders and directives, **please continue to adhere to the following FMS requirements:**

1. Do not destroy any documents, data or tangible things unless you have received written approval from the Chief Counsel. This rule applies to all documents, data and tangible things, whether litigation-related or not. Prepare a disposition request, following the instructions contained in the Chief Counsel's March 7, 2000 memorandum entitled "Process for Obtaining Disposition Approval" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page). The only exception to this rule is for "obvious non-record materials," as described in the attached "Quick Reference Guide."

2. Continue copying or forwarding all Cobell-related and Tribal-related e-mail and other electronic documents to their respective dedicated mailboxes ("Cobell Archive@fms" for Cobell-related e-mail/electronic documents and "Tribal Mailbox@fms" for Tribal-related e-mail/electronic documents). To insert a mailbox address on an e-mail, simply type "Cobell" or "Tribal" and press the "Enter" key. You may delete your copy of any e-mail or other electronic document sent to these mailboxes.

3. Promptly forward any voicemail messages that relate to the Jicarilla Apache Nation or The Pueblo of Laguna Tribe to FMS' dedicated "Tribal" voicemail repository. Step-by-step instructions for forwarding voicemail messages to the repository are provided in my March 26, 2004 memorandum (posted on the FMS intranet on the "Cobell/Tribal Litigation" page).

4. Do not archive (move) data from any FMS electronic production systems that contain litigation-related data, except pursuant to a written archive plan that has been approved by the Commissioner's Office. Please refer to the Deputy Commissioner's March 24, 2000 memorandum entitled "Maintenance of Data on FMS Systems" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page) for more information about this requirement.

5. Do not attempt to give guidance on record retention matters to Federal Reserve Bank personnel. Please refer all such questions to Terri Dawson at (202) 874-6877 or to Beth Kramer at (202) 874-7036.

I appreciate your continued compliance with these instructions and encourage you to review the pertinent memoranda posted on the FMS intranet. To locate the memoranda, double click on the icon for Netscape Navigator. This moves you to FMS' intranet. Under "News" or "Hot Topics," click on "Cobell/Tribal Litigation."

If you have questions or need assistance regarding any of these retention requirements, please do not hesitate to contact Terri Dawson at (202) 874-6877 or Beth Kramer at (202) 874-7036.

Thank you.

Attachment

# "A Quick Reference Guide"

**REMEMBER: PRESERVE ALL INTERIOR/INDIAN-TRUST-RELATED MATERIAL!!**

## OBVIOUS NONRECORD MATERIALS

These may be destroyed without the approval of the Chief Counsel

| CATEGORIES | EXAMPLES |
|---|---|
| **1. Non-Treasury/FMS Material** | • Office supply catalogs<br>• vendor marketing materials<br>• non-FMS publications/manuals, such as phone books, Federal Register, dictionaries, "Lotus Notes for Dummies," etc. |
| **2. Treasury/FMS Distribution/ Reference Material** | • attendee's copy of handouts received at meetings, training, etc.<br>• employee's copy of work-related organization charts, phone lists, Treasury Correspondence Manual, etc.<br>• employee's copy of FMS publications, such as "Fiscal Scene"<br>• excess stocks of FMS marketing materials, such as Direct Deposit brochures<br>• notices received re: IT security, scheduling of meetings & van rides, training, "acting" managers, voting leave, etc. |
| **3. Personal Papers** | • notices received re: retirements, deaths, TSP, CFC, PTI, Flex Account, etc.<br>• employee's copy of T&A, payroll, personnel, etc. records (<u>except</u> travel records/receipts)<br>• printouts of non-Federal Web pages that were not used for FMS business<br>• non-FMS-related calendars/reminders<br>• recipes, poems, cartoons, etc. |
| **4. Other** | • printer banner pages and printer failure reports<br>• interim drafts created but never circulated to anyone<br>• duplicates of any of the examples in these four categories. |

**Click here for more information on Cobell Litigation**

# Exhibit 15

**Attachment G**

# Official FMS Business

| | |
|---|---|
| **To:** | Office of the Commissioner Debt Management Services Federal Finance Financial Operations Governmentwide Accounting Information Resources AC Management Regional Operations HQ Austir Birmingham Kansas City Philadelphia San Francisco |
| **Date:** | 08/10/2006 |
| **From:** | William Higgins |
| **Subject:** | Cobell and Tribal Trust Litigation - FMS Retention Requirements |

Date: August 10, 2006

To: All FMS Employees

From: Kenneth R. Papaj
Commissioner

Subject: Cobell and Tribal Trust Litigation – FMS Retention Requirements

All FMS employees are again reminded that FMS remains subject to continuing court orders and Treasury directives, requiring us to retain and safeguard all documents, data and tangible things that relate to Individual Indian Money (IIM) and Tribal trust funds and assets, indefinitely. To ensure that we remain in compliance with the court orders and directives, **please continue to adhere to the following FMS requirements:**

1. Do not destroy any documents, data or tangible things unless you have received written approval from the Chief Counsel. This rule applies to all documents, data and tangible things, whether litigation-related or not. Prepare a disposition request, following the instructions contained in the Chief Counsel's March 7, 2000 memorandum entitled "Process for Obtaining Disposition Approval" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page). The only exception to this rule is for "obvious non-record materials," as described in the attached "Quick Reference Guide."

2. Continue copying or forwarding all Cobell-related and Tribal-related e-mail and other electronic documents to their respective dedicated mailboxes ("Cobell Archive@fms" for Cobell-related e-mail/electronic documents and "Tribal Mailbox@fms" for Tribal-related e-mail/electronic documents). To insert a mailbox address on an e-mail, simply type "Cobell" or "Tribal" and press the "Enter" key. You may delete your copy of any e-mail or other electronic document sent to these mailboxes.

3. Promptly forward any voicemail messages that relate to the Jicarilla Apache Nation or The Pueblo of Laguna Tribe to FMS' dedicated "Tribal" voicemail repository. Step-by-step instructions for forwarding voicemail messages to the repository are provided in my March 26, 2004 memorandum (posted on the FMS intranet on the "Cobell/Tribal Litigation" page).

4. Do not archive (move) data from any FMS electronic production systems that contain litigation-related data, except pursuant to a written archive plan that has been approved by the Commissioner's Office. Please refer to the Deputy Commissioner's March 24, 2000 memorandum entitled "Maintenance of Data on FMS Systems" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page) for more information about this requirement.

5. Do not attempt to give guidance on record retention matters to Federal Reserve Bank personnel. Please refer all such questions to Terri Dawson at (202) 874-6877 or to Beth Kramer at (202) 874-7036.

I appreciate your continued compliance with these instructions and encourage you to review the pertinent memoranda posted on the FMS intranet. To locate the memoranda, double click on the icon for Netscape Navigator. This moves you to FMS' intranet. Under "News" or "Hot Topics," click on "Cobell/Tribal Litigation."

If you have questions or need assistance regarding any of these retention requirements, please do not hesitate to contact Terri Dawson at (202) 874-6877 or Beth Kramer at (202) 874-7036.

Thank you.

Attachment

**FMS Insider**

You are here: Home > News > Cobell Litigation > -- Commissioner Papaj (August 10, 2006 memo) - Attachment

# Commissioner Papaj (August 10, 2006 memo) - Attachment

Previous Page | Next Page

## "A Quick Reference Guide"

**REMEMBER: PRESERVE ALL INTERIOR/INDIAN-TRUST-RELATED MATERIAL!!**

### OBVIOUS NONRECORD MATERIALS

These may be destroyed without the approval of the Chief Counsel

| CATEGORIES | EXAMPLES |
|---|---|
| **1. Non-Treasury/FMS Material** | • Office supply catalogs<br>• vendor marketing materials<br>• non-FMS publications/manuals, such as phone books, Federal Register, dictionaries, "Lotus Notes for Dummies," etc. |
| **2. Treasury/FMS Distribution/ Reference Material** | • attendee's copy of handouts received at meetings, training, etc.<br>• employee's copy of work-related organization charts, phone lists, Treasury Correspondence Manual, etc.<br>• employee's copy of FMS publications, such as "Fiscal Scene"<br>• excess stocks of FMS marketing materials, such as Direct Deposit brochures<br>• notices received re: IT security, scheduling of meetings & van rides, training, "acting" managers, voting leave, etc. |
| **3. Personal Papers** | • notices received re: retirements, deaths, TSP, CFC, PTI, Flex Account, etc.<br>• employee's copy of T&A, payroll, personnel, etc. records (<u>except</u> travel records/receipts)<br>• printouts of non-Federal Web pages that were not used for FMS business<br>• non-FMS-related calendars/reminders<br>• recipes, poems, cartoons, etc. |
| **4. Other** | • printer banner pages and printer failure reports<br>• interim drafts created but never circulated to anyone<br>• duplicates of any of the examples in these four categories. |

Previous Page | Next Page

# Exhibit 16

**Attachment F**

# Official FMS Business

| | |
|---|---|
| **To:** | Office of the Commissioner Debt Management Services Federal Finance Financial Operations Governmentwide Accounting Information Resources AC Management Regional Operations HQ Austir Birmingham Kansas City Philadelphia San Francisco . |
| **Date:** | 02/16/2007 |
| **From:** | William Higgins |
| **Subject:** | Cobell and Tribal Trust Litigation - FMS Retention Requirements |

Date: February 16, 2007

To: All FMS Employees

From: Kenneth R. Papaj
Commissioner

Subject: Cobell and Tribal Trust Litigation – FMS Retention Requirements

All FMS employees are again reminded that FMS remains subject to continuing court orders and Treasury directives, requiring us to retain and safeguard all documents, data and tangible things that relate to Individual Indian Money (IIM) and Tribal trust funds and assets, indefinitely. To ensure that we remain in compliance with the court orders and directives, **please continue to adhere to the following FMS requirements:**

Do not destroy any documents, data or tangible things unless you have received written approval from the Chief Counsel. This rule applies to all documents, data and tangible things, whether litigation-related or not. Prepare a disposition request, following the instructions contained in the Chief Counsel's March 7, 2000 memorandum entitled "Process for Obtaining Disposition Approval" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page). The only exception to this rule is for "obvious non-record materials," as described in the attached "Quick Reference Guide."

Continue copying or forwarding all Cobell-related and Tribal-related e-mail and other electronic documents to their respective dedicated mailboxes ("Cobell Archive@fms" for Cobell-related e-mail/electronic documents and "Tribal Mailbox@fms" for Tribal-related e-mail/electronic documents). To insert a mailbox address on an e-mail, simply type "Cobell" or "Tribal" and press the "Enter" key. You may delete your copy of any e-mail or other electronic document sent to these mailboxes.

Promptly forward any voicemail messages that relate to the Jicarilla Apache Nation or The Pueblo of Laguna Tribe to FMS' dedicated "Tribal" voicemail repository. Step-by-step instructions for forwarding voicemail messages to the repository are provided in a March 26, 2004 memorandum (posted on the FMS intranet on the "Cobell/Tribal Litigation" page).

Do not archive (move) data from any FMS electronic production systems that contain litigation-related data, except pursuant to a written archive plan that has been approved by the Commissioner's Office. Please refer to the Deputy Commissioner's March 24, 2000 memorandum entitled "Maintenance of Data on FMS Systems" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page) for more information about this requirement.

Do not attempt to give guidance on record retention matters to Federal Reserve Bank personnel. Please refer all such questions to Terri Dawson at (202) 874-6877 or to Beth Kramer at (202) 874-7036.

I appreciate your continued compliance with these instructions and encourage you to review the pertinent memoranda posted on the FMS intranet. To locate the memoranda, double click on the icon for Internet Explorer. This moves you to FMS' intranet. Under "News" or "Hot Topics," click on "Cobell/Tribal Litigation."

If you have questions or need assistance regarding any of these retention requirements, please do not hesitate to contact Terri Dawson at (202) 874-6877 or Beth Kramer at (202) 874-7036.

Thank you.

Attachment

# "A Quick Reference Guide"

**REMEMBER: PRESERVE ALL INTERIOR/INDIAN-TRUST-RELATED MATERIAL!!**

## OBVIOUS NONRECORD MATERIALS

These may be destroyed without the approval of the Chief Counsel

| CATEGORIES | EXAMPLES |
|---|---|
| **1. Non-Treasury/FMS Material** | • Office supply catalogs<br>• vendor marketing materials<br>• non-FMS publications/manuals, such as phone books, Federal Register, dictionaries, "Lotus Notes for Dummies," etc. |
| **2. Treasury/FMS Distribution/ Reference Material** | • attendee's copy of handouts received at meetings, training, etc.<br>• employee's copy of work-related organization charts, phone lists, Treasury Correspondence Manual, etc.<br>• employee's copy of FMS publications, such as "Fiscal Scene"<br>• excess stocks of FMS marketing materials, such as Direct Deposit brochures<br>• notices received re: IT security, scheduling of meetings & van rides, training, "acting" managers, voting leave, etc. |
| **3. Personal Papers** | • notices received re: retirements, deaths, TSP, CFC, PTI, Flex Account, etc.<br>• employee's copy of T&A, payroll, personnel, etc. records (<u>except</u> travel records/receipts)<br>• printouts of non-Federal Web pages that were not used for FMS business<br>• non-FMS-related calendars/reminders<br>• recipes, poems, cartoons, etc. |
| **4. Other** | • printer banner pages and printer failure reports<br>• interim drafts created but never circulated to anyone<br>• duplicates of any of the examples in these four categories. |

FMS Insider



# Commissioner Papaj (February 16, 2007 memo) - Page 2

Previous Page | Next Page

5. Do not attempt to give guidance on record retention matters to Federal Reserve Bank personnel. Please refer all such questions to Terri Dawson at (202) 874-6877 or to Beth Kramer at (202) 874-7036.

I appreciate your continued compliance with these instructions and encourage you to review the pertinent memoranda posted on the FMS intranet. To locate the memoranda, double click on the icon for Internet Explorer. This moves you to FMS' intranet. Under "News" or "Hot Topics," click on "Cobell/Tribal Litigation."

If you have questions or need assistance regarding any of these retention requirements, please do not hesitate to contact Terri Dawson at (202) 874-6877 or Beth Kramer at (202) 874-7036.

Thank you.

Attachment

Previous Page | Next Page

Cobell/Tribal Litigation Page | OCC Welcome Page

Content Owner: Margaret Marquette
Last Modified on February 16, 2007
Add Document (Infobrokers only)

## "A Quick Reference Guide"

REMEMBER: PRESERVE ALL INTERIOR/INDIAN-TRUST-RELATED MATERIAL!!

### OBVIOUS NONRECORD MATERIALS

These may be destroyed without the approval of the Chief Counsel

| CATEGORIES | EXAMPLES |
|---|---|
| 1. Non-Treasury/FMS Material | • Office supply catalogs<br>• vendor marketing materials<br>• non-FMS publications/manuals, such as phone books, Federal Register, dictionaries, "Lotus Notes for Dummies," etc. |
| 2. Treasury/FMS Distribution/ Reference Material | • attendee's copy of handouts received at meetings, training, etc.<br>• employee's copy of work-related organization charts, phone lists, Treasury Correspondence Manual, etc.<br>• employee's copy of FMS publications, such as "Fiscal Scene"<br>• excess stocks of FMS marketing materials, such as Direct Deposit brochures<br>• notices received re: IT security, scheduling of meetings & van rides, training, "acting" managers, voting leave, etc. |
| 3. Personal Papers | • notices received re: retirements, deaths, TSP, CFC, PTI, Flex Account, etc.<br>• employee's copy of T&A, payroll, personnel, etc. records (except travel records/receipts)<br>• printouts of non-Federal Web pages that were not used for FMS business<br>• non-FMS-related calendars/reminders<br>• recipes, poems, cartoons, etc. |
| 4. Other | • printer banner pages and printer failure reports<br>• interim drafts created but never circulated to anyone<br>• duplicates of any of the examples in these four categories. |

Previous Page | Next Page

Cobell/Tribal Litigation Page | OCC Welcome Page

Content Owner: Margaret Marquette
Last Modified on February 16, 2007
Add Document (Infobrokers only)

# Exhibit 17

(5) At least 60 days before this extension ends on September 17, 2006, the Secretary of Homeland Security, after consultation with appropriate agencies of the Government, will review the designation of Somalia for TPS and determine whether the conditions for designation continue to be met. 8 U.S.C. 1254a(b)(3)(A). Notice of that determination, including the basis for the determination, will be published in the **Federal Register**. Id.

(6) Information concerning the extension of designation of Somalia for TPS will be available at local USCIS offices upon publication of this Notice and on the USCIS Web site at *http://www.uscis.gov.*

Dated: July 15, 2005.

**Michael Chertoff,**

*Secretary.*

[FR Doc. 05–15001 Filed 7–26–05; 10:25 am]

BILLING CODE 4410–10–P

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. FR–4980–N–30]**

### Federal Property Suitable as Facilities to Assist the Homeless

**AGENCY:** Office of the Assistant Secretary for Community Planning and Development, HUD.

**ACTION:** Notice.

**SUMMARY:** This Notice identifies unutilized, underutilized, excess, and surplus Federal property reviewed by HUD for suitability for possible use to assist the homeless.

**DATES:** July 29, 2005.

**FOR FURTHER INFORMATION CONTACT:** Kathy Ezzell, Department of Housing and Urban Development, Room 7262, 451 Seventh Street, SW., Washington, DC 20410; telephone (202) 708–1234; TTY number for the hearing- and speech-impaired (202) 708–2565, (these telephone numbers are not toll-free), or call the toll-free Title V information line at 1–800–927–7588.

**SUPPLEMENTARY INFORMATION:** In accordance with the December 12, 1988 court order in *National Coalition for the Homeless* v. *Veterans Administration*, No. 88–2503–OG (D.D.C), HUD publishes a Notice, on a weekly basis, identifying unutilized, underutilized, excess and surplus Federal buildings and real property that HUD has reviewed for suitability for use to assist the homeless. Today's Notice is for the purpose of announcing that no additional properties have been determined suitable or unsuitable this week.

Dated: July 21, 2005.

**Mark R. Johnston,**

*Director, Office of Special Needs Assistance Programs.*

[FR Doc. 05–14742 Filed 7–28–05; 8:45 am]

BILLING CODE 4210–29–M

## DEPARTMENT OF THE INTERIOR

### Office of the Secretary

### Privacy Act of 1974, As Amended; Addition of a New System of Records

**AGENCY:** Office of the Secretary, U.S. Department of the Interior.

**ACTION:** Proposed addition of a new system of records.

**SUMMARY:** The Office of the Secretary, Department of the Interior is issuing public notice of its intent to add a new Privacy Act system of records to its inventory of records systems subject to the Privacy Act of 1974 (5 U.S.C. 552a). This action is necessary to meet the requirements of the Privacy Act to publish in the **Federal Register** notice of the existence and character of records systems maintained by the agency (5 U.S.C. 552a(e)(4)). The new system of records is called the Box Index Search System (BISS)—Interior, OS–3.

**EFFECTIVE DATE:** 5 U.S.C. 552a (e) (11) requires that the public be provided a 30-day period in which to comment on the agency's intended use of the information in the system of records. The Office of Management and Budget, in its Circular A–130, requires an additional 10-day period (for a total of 40 days) in which to make these comments. Any persons interested in commenting on this proposed amendment may do so by submitting comments in writing to the Department of the Interior, Office of the Secretary Privacy Act Officer, Sue Ellen Sloca, U.S. Department of the Interior, Mail Stop (MS)–1413, Main Interior Building (MIB), 1849 C Street, NW., Washington, DC 20240. Comments received within 40 days of publication in the **Federal Register** will be considered. The system will be effective as proposed at the end of the comment period unless comments are received which would require a contrary determination. The Department will publish a revised notice if changes are made based upon a review of comments received.

**FOR FURTHER INFORMATION CONTACT:** For information on the BISS—Interior, OS–3, please contact Ethel Abeita, Director, Office of Trust Records, 4400 Masthead NE, Albuquerque, NM, 87109, (505) 816–1600.

**SUPPLEMENTARY INFORMATION:** The purpose of the Box Index Search System (BISS) is to create a file-level listing of the contents of boxes of inactive records as a quick finding aid when records are retired, and to provide authorized parties with a tool to search all inactive records at the file-level that are stored at the American Indian Records Repository (AIRR) in Lenexa, KS. The BISS will provide an enhanced research capability over the existing paper Standard Form 135s, and other multiple partial inventory databases that currently exist. This improvement will enable DOI to centrally manage access to records and allow BIA and OST staff direct access to information about records that have been retired.

Dated: July 25, 2005.

**Robert McKenna,**

*Chief Information Officer, Office of the Special Trustee for American Indians.*

#### INTERIOR/OS–3

##### SYSTEM NAME:

Box Index Search System (BISS)—Interior, OS–3.

##### SYSTEM LOCATION:

This system is located in the Office of the Chief Information Officer, Office of the Special Trustee for American Indians (OST), 4400 Masthead NE, Albuquerque, NM. Information contained in the system will be made available electronically to OST offices in Albuquerque, NM; at the American Indian Records Repository (AIRR) in Lenexa, KS; and at OST and Bureau of Indian Affairs (BIA) field offices.

##### CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals whose names and other identifying information appear in file folders from inactive BIA and OST records being retired to the American Indian Records Repository. Future information may include individual Indian-related financial records from other Departmental bureaus or offices.

##### CATEGORIES OF RECORDS IN THE SYSTEM:

The system consists of (1) Indices bearing the names of the individuals and/or any other identifiers that were included on the file folder label created by the originating office; (2) the type of records in the folder: (3) where the records originated; (4) date ranges of the information; (5) records management information; and (6) miscellaneous information associated with the storage box. It is noted that this system does not maintain the contents of the administrative or program file folder. Its purpose is to identify folders in boxes and provide brief summaries of the

document types in file folders for financial records only.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

This system of records is maintained under the authority 44 U.S.C. 3101; 44 U.S.C. 3102; and 5 U.S.C. 301.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:

The system's main purposes are to: (1) Create a file level listing of the contents of boxes containing inactive records as a quick finding aid, complementing the Standard Form 135 Records Transmittal and Receipt created when records are retired; and (2) provide authorized parties with a tool to search a file level index of all inactive records stored at the American Indian Records Repository (AIRR) in Lenexa, KS.

DISCLOSURES OUTSIDE THE DOI MAY BE MADE TO:

(1) Indian Tribal account holders or their heirs, if deceased; (2) contractors who service and maintain the system for the Department; (3) an expert, consultant, or contractor (including employees of the contractor) of DOI that performs, on DOI's behalf, research and other services requiring access to these records in order to fulfill the purposes for which the underlying documents were created; (4) parties authorized to perform searches to locate official files in order to fulfill the purposes for which the underlying files were created ; (5)(a) any of the following entities or individuals, when the circumstances set forth in (b) are met:

(i) The Department of Justice (DOJ);

(ii) A court, adjudicative or other administrative body;

(iii) A party in litigation before a court or adjudicative or administrative body; or

(iv) Any DOI employee acting in his or her individual capacity if DOI or DOJ has agreed to represent that employee or pay for private representation of the employee;

(b) When

(i) One of the following is a party to the proceeding or has an interest in the proceeding:

(A) DOI or any component of DOI;

(B) Any DOI employee acting in his or her official capacity;

(C) Any DOI employee acting in his or her individual capacity if DOI or DOJ has agreed to represent that employee or pay for private representation of the employee;

(D) The United States, when DOJ determines that DOI is likely to be affected by the proceeding; and

(ii) DOI deems the disclosure to be:

(A) Relevant and necessary to the proceeding; and

(B) Compatible with the purposes for which the records were compiled.

(6) To a congressional office in response to a written inquiry of an individual covered by the system, or the heir of such individual if the covered individual is deceased, has made to the congressional office about the individual.

(7) To the appropriate Federal agency that is responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation or order, when we become aware of an indication of a violation or potential violation of the statute, rule, regulation or order.

(8) To an official of another Federal agency to provide information needed in the performance of official duties related to reconciling or reconstructing data files, in support of the functions for which the records were collected and maintained.

(9) To representatives of the National Archives and Records Administration to conduct records management inspections under the authority of 44 U.S.C. 2903 and 2904.

(10) To state and local governments and tribal organizations to provide information needed in response to court order, and/or discovery purposes related to litigation.

DISCLOSURE TO CONSUMER REPORTING AGENCIES:

Pursuant to 5 U.S.C. 552a(b)12, records can be disclosed to consumer reporting agencies as they are defined in the Fair Credit Reporting Act.

STORAGE:

Records are stored in electronic media on hard disks, magnetic tapes and compact disks and paper media.

RETRIEVABILITY:

Information stored in BISS is full text indexed and can be searched by any significant textual item (words and/or numbers) or combination of textual items as well as by any field in the database.

ACCESS SAFEGUARDS:

Maintained in accordance with the Department of the Interior Privacy Act regulations for safeguarding of information (43 CFR 2.51). A Privacy Impact Assessment was completed. Management controls and Rules of Behavior were developed to ensure security controls.

RETENTION AND DISPOSAL:

Records relating to persons covered by this system are retained in accordance with the 16BIAM and other respective bureau/office records retention schedules. The system is scheduled for permanent retention.

SYSTEM MANAGER(S) AND ADDRESS:

Office of Trust Records, Department of the Interior, 4400 Masthead NE., Albuquerque, NM 87109.

NOTIFICATION PROCEDURES:

An individual requesting notification of the existence of records on him or herself in the BISS should address his/her request to the System Manager above. The request must be in writing and signed by the requester and include his or her mailing address and social security number (See 43 CFR 2.60). Note, this system does not maintain the contents of the administrative or program file folder that is being transferred to the records center, and serves solely as a locator tool.

RECORDS ACCESS PROCEDURES:

See procedures above and 43 CFR 2.63.

CONTESTING RECORD PROCEDURES:

See procedures above and 43 CFR 2.71.

RECORD SOURCE CATEGORIES:

Information in this system is obtained from BIA and OST administrative and program records. Future record holdings in AIRR may include Indian-related financial records from other Departmental bureaus or offices.

EXEMPTIONS CLAIMED FOR THE SYSTEM:

None.

[FR Doc. 05–14949 Filed 7–28–05; 8:45 am]

BILLING CODE 4310–RK–P

## DEPARTMENT OF THE INTERIOR

## Fish and Wildlife Service

## Information Collection Renewal to Be Sent to the Office of Management and Budget (OMB) for Approval Under the Paperwork Reduction Act; 1018–0113; Grants Program Authorized by the Neotropical Migratory Bird Conservation Act (NMBCA)

**AGENCY:** Fish and Wildlife Service, Interior.

**ACTION:** Notice; request for comments.

**SUMMARY:** We (Fish and Wildlife Service, Service) plan to send a request to OMB to renew approval for the collection of information described below under the provisions of the Paperwork Reduction Act of 1995. We use the information collected to conduct our NMBCA grants program in the manner prescribed by that Act. We also use the information to comply with Federal reporting requirements for grants awarded under the program.

# BISS

## (Box Index Search System)

**This introduction will assist the researcher in searching the box index database. When using the database, it is critically important to remember that this is a box index, not a coded document database. The database was designed to reduce the number of boxes to be reviewed when searching for responsive documents. It was not designed to search for specific documents.**

**All boxes have been indexed to the file level, including File Title. In addition, boxes in the collection that contain fiduciary trust records have been indexed down to the document type and date range level. This method allows you to search for a particular document type and date range and to retrieve IDs of boxes containing that particular document type and date range.**

**ArchivalWare is the application used to search for box information with a Google-type (or Boolean) search. This type of search may result in a large quantity of information being retrieved if the query is not refined. For more information regarding the Primary fields in ArchivalWare refer to the Primary Field Chart.**

The following chart defines the **Primary** fields that are used for searching, along with fields that are classified as supplemental data fields. Supplemental fields should not be used for searching. These supplemental fields contain data that was captured only if it was present (many times it was not), and system-generated information. Therefore, the field types listed as **Primary** should be searched in order to ensure consistent results. Many supplemental fields can be searched, but the researcher must realize that not all supplemental field data was available for indexing. In many instances, the supplemental fields are for perspective only.

**To repeat, the database contains box index information - not coded document information.**

| Field | Type | Description |
|---|---|---|
| ***Document Level*** | | |

| | | |
|---|---|---|
| DocType | **Primary** | One of the identified document types in the document tree. To avoid proliferation of document types, document type "buckets" were created. Multiple related documents are categorized in each "bucket". When searching, use the same wording found in the reference document tree. |
| Start Date | **Primary** | The earliest date of a range of documents of the same type in a file |
| End Date | **Primary** | The latest date of a range of documents of the same type in a file |
| Document Title | Supplemental | A document may have a Document Title present; if so, it is captured and it determines the Document Type. NOT ALL DOCUMENTS HAVE Document Titles. |
| Form Name | Supplemental | A document may have a Document Title present; if so, it is captured and it determines the Document type. NOT ALL DOCUMENTS HAVE Document Titles. |

***File Level***

| | | |
|---|---|---|
| File Title | **Primary** | Title on the file folder |
| File Type | **Primary** | One of the identified file types |
| Account Number | Supplemental | If there is an account number present it is captured from the file title and populated in this field. This field is not reliably searched because MANY FILES DO NOT HAVE ACCOUNT NUMBERS. |
| Record Series | Supplemental | If the record series is recorded on the file or box, or if it is transmitted by NARA or OTR it is captured. This field is intermittently populated because NOT ALL RECORD SERIES ARE KNOWN at the time of indexing. |
| Agency Code | **Primary** | This code identifies the agency whose records are in the box |
| Agency Name | **Primary** | The name of the agency where the documents originated |
| Probable Trust Records | Supplemental | Identifies if the records are likely trust records based on record series |
| Scanned | Supplemental | *(Not currently in use.)* Identifies if the records have been scanned. |
| Comments | Supplemental | *(Not currently in use.)* This field is used to record box, file, or document anomalies from a dropdown list, e.g. "Multiple Record Series" |
| QCed | Supplemental | Indicates the file has been QC'ed |
| Time Stamp | Supplemental | *(Not currently in use.)* Time and date the box was completed indexing and QC |

| | | |
|---|---|---|
| Record Number | Supplemental | Archivalware identifier of the record within the database |
| ***Box Level*** | | |
| Box Number | **Primary** | This is either an OST (Box) Number (NN-NNNNN), OST Accession Number (NNN-NN-NNNN or ANN-NN-NNNN) or FRC Number (NNN-NN-NNNN) that has been assigned to the box. See the indexing manual for variations on this number. |
| Box Title | **Primary** | The exact title as it appears on the box front, less accession number(s) |
| Box Location | Supplemental | Identifies where the box currently resides *(Not currently in use.)* |
| Box Source | **Primary** | The code for and name of the agency that sent the box to OTR or NARA |
| OST Number | **Primary** | OST Accession Number (e.g., NNN-NN-NNNN or ANN-NN-NNNN) |
| FRC Number | **Primary** | FRC Number (e.g., NNN-NN-NNNN) |
| Worksite | Supplemental | Where the box was indexed (KC or ABQ) |
| ***Tribe*** | | |
| Tribe Code | **Primary** | The tribe code of the tribe to which the documents/file/box relates |
| Tribe Name | **Primary** | The name of the tribe to which the documents/file/box relates |