# Exhibit 26

# National Archives and Records Administration

8601 Adelphi Road
College Park, Maryland 20740-6001

Tel. 301-837-1499
Fax 301-837-0293
Email: jason.baron@nara.gov

September 28, 2005

By Facsimile 202-318-2372
Dennis Gingold, Esq.
607 14th St. N.W.
Box 6
Washington, D.C. 20005

Re: *Cobell v. Norton*

Dear Dennis:

I am writing to provide you with an update about the matters that we discussed in our telephone conversation on Wednesday, September 21, 2005, concerning the recent series of what appear to be several unsuccessful attempts at improper disposal of records at the National Archives. See my letter dated September 13, 2005, to Interior Assistant Deputy Secretary Haspel. I base the following update on specific information that NARA's Office of Inspector General (IG) has provided me and on my own research into the incidents, including viewing the recovered records.

As I told you over the telephone on September 21, NARA's IG is presently conducting an investigation into a series of incidents that have occurred over the past three weeks, involving what appear to be the attempted disposal of various types of permanent records of different federal agencies, including the Departments of Interior and Veterans Affairs, that were stored in the stacks at the Main Archives Building in downtown Washington, D.C. It appears that, in each of the incidents under investigation, an attempt was made to improperly dispose of record and non-record materials in various trash baskets (or in boxes designated as trash) located within restricted areas of the building. In the first incident on September 1, after a NARA staffer noticed the records in a trash basket, NARA staff found and recovered additional records in a dumpster and trash compactor (also located in a restricted area of the Main Archives Building). Since September 1, there appears to have been as many as six additional attempted disposal incidents, all of which are currently under investigation by our IG.

Letter to Dennis Gingold, Esq.
September 28, 2005
Page 2

A point that I made during our September 21 telephone conversation bears re-emphasis: these attempted disposal incidents involve federal agency records that have passed into both the physical *and* legal custody of the National Archives, as the permanent records of the United States. Neither Secretary Norton nor any other agency head controls the preservation of such records. Accordingly, it is NARA's responsibility to ensure, among other things, that a proper and thorough criminal investigation into the incidents proceeds apace and that all reasonable steps are taken to maintain the continued integrity of NARA's permanent record holdings.

It is important to note that the person or persons responsible for these attempted disposal incidents has not or have not focused solely on the records of the Bureau of Indian Affairs (BIA) or of the Interior Department. Rather, it appears that the perpetrator(s) of the actions randomly removed records that either were being worked on as part of NARA's "preservation processing," or that were otherwise easily available (*i.e.*, within easy reach) on the stacks of the Main Archives Building. It is also important to note that some of what has been recovered consists of "non-record" materials, such as old, empty file jackets (fronts and backs); old, empty folders; out cards, and empty envelopes.

Based on currently available information, the NARA's IG has recovered the following record and non-record materials in connection with the attempted disposal incidents. The materials are listed below in descending order of volume. The listing is not intended to be comprehensive.

*Department of Veterans Affairs*

- Over 3,000 VA Form "40-1330s" (applications for a headstone or marker)

*Department of the Interior*

- One entire file (cover and 105 pages) marked "Blackfeet," dated 1946, consisting of an Annual Credit Report of the Northern Plains Indian Crafts Association
- Various partial files from the Consolidated Chippewa tribe (BIA Record Group 75), circa 1940s and 1950s, including timber sales contracts and correspondence, heirship files, receipts for fee/trust patents, transmittals of patents (approx. 200 pages of record material in different boxes)
- Numerous file covers and other assorted nonrecord file jackets and empty folders associated for the Consolidated Chippewa tribe
- One bound volume of Bureau of Land Management "Letters re Surveyors General," dated March 13-April 16 1883

- One file consisting of Flathead Agency loans for the purchase of land circa 1950
- Two files consisting of Billings area office correspondence circa 1957

*U.S. Army*

- Bound volume of the U.S. Army Continental Command, 1821-1920, Whipple Barracks Area

*War Department*

- One page of War Department correspondence dated July 13, 1918 (possible duplicate or nonrecord material)

*Navy Department*

- A published engineering report on the electrical equipment on the "Mauretania," from Attache Registers (reports), Record Group 38, Records of the Office of Naval Intelligence.

NARA staff are presently in the process of determining whether there are any "gaps" in NARA's existing holdings at the Main Archives Buildings, which may indicate that other records, in addition to those recovered above, might have been subject to improper disposal.

The Archivist of the United States, Allen Weinstein, has ordered that NARA staff increase security measures at the Main Archives Building immediately to safeguard NARA's permanent record holdings in the building. These measures include increasing security in not only the stack areas but also on the loading dock, and in monitoring trash disposal. As noted above, the stack areas, the loading dock, and the trash disposal areas are among those to which access is restricted to NARA staffers only.

If you deem it necessary, it may be possible to make special arrangements for you to view the documents recovered by the IG, consistent with other demands on our IG's time and resources.

I will provide you with additional updates, as circumstances warrant. Please feel free to

contact me if you have any questions or concerns.

Sincerely,

JASON R. BARON
Director of Litigation
Office of General Counsel

cc:
Abraham E. Haspel, Ph.D.
Assistant Deputy Secretary
U.S. Department of the Interior

# Exhibit 26 A

# National Archives and Records Administration

8601 Adelphi Road
College Park, Maryland 20740-6001

Tel.: 301-837-1499
Fax: 301-837-0293
Email: jason.baron@nara.gov

September 13, 2005

By Facsimile

Abraham E. Haspel, Ph.D.
Assistant Deputy Secretary
Office of the Secretary
U.S. Department of the Interior
1849 C Street, N.W.
MS 7229
Washington, D.C. 20240

Re: *Cobell v. Norton*

Dear Abe:

I am writing to memorialize my conversations with members of the Department of Justice *Cobell* trial team over the past two weeks regarding one or more incidents at the National Archives involving what may be intentional acts aimed at unlawfully removing or disposing of permanent records from the Interior Department, and to provide both you and the Justice Department with an update suitable for filing with the Court as to what National Archives and Records Administration (NARA) staff are currently doing to investigate these incidents.

On Thursday morning, September 1, 2005, NARA staff at Main Archives (our headquarters building on Pennsylvania Avenue) noticed that what appeared to be federal records had been discarded in one of the dumpsters on the premises of Main Archives. NARA officials on the scene immediately alerted Paul Brachfeld, NARA's Inspector General (IG), who dispatched a team of investigators to retrieve the records and begin a formal inquiry. Both the Archivist and Deputy Archivist of the United States were also notified of this event on that Thursday morning, as was I. I am informed that on the following Tuesday (September 6, 2005), NARA's Inspector General notified the United States Attorney's Office for the District of Columbia, and an Assistant U.S. Attorney was assigned to the case.

A preliminary examination of the records in question by Inspector General staff revealed that at least a portion of the records constituted records of the Bureau of Indian Affairs dating from the 1950s that were among NARA's permanent holdings. After being apprised of this further information, on Thursday afternoon, September 1, I called John Siemenkowtski, a member of the *Cobell* trial team, to alert him to this

development, and to request that he in turn notify appropriate DOJ staff. I provided John with contact information for Ross Weiland, an attorney in NARA's Office of Inspector General, as our IG has the lead on investigating this matter.

Subsequently, I have on several occasions apprised DOJ attorneys that NARA's Inspector General was continuing to conduct a thorough investigation of this incident. I am informed that during the course of the OIG's investigation, more of what appear to be Indian records were discovered in a wastebasket in the stack areas at Main Archives. It is not known, at this time, whether these two incidents are related.

The NARA OIG's investigation into these matters is ongoing and they continue to work directly with the U.S. Attorney's Office. On behalf of Archivist of the United States Allen Weinstein, Deputy Archivist Lewis Bellardo, and NARA's General Counsel Gary M. Stern, I will continue to keep the Interior and Justice Departments informed of all developments in my capacity as "of counsel" in this litigation and as an officer of the Court.

Sincerely,

Jason R Baron

JASON R. BARON
Director of Litigation
Office of General Counsel

D.C. Bar Member 366663

cc:

J. Christopher Kohn, Esq.
Branch Director
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875

# Exhibit 27

# National Archives and Records Administration

8601 Adelphi Road
College Park, Maryland 20740-6001

Tel. 301-837-1499
Fax 301-837-0293
Email: jason.baron@nara.gov

December 9, 2005

By Facsimile 202-318-2372
Dennis Gingold, Esq.
607 14th St. N.W.
Box 6
Washington, D.C. 20005

Re: *Cobell v. Norton*

Dear Dennis:

In my September 28, 2005 letter to you, I stated that I would provide you with a further update concerning the incidents of attempted records disposal at Main Archives which occurred in September 2005. This letter serves as that update.

On Friday, December 9, 2005, Archivist Allen Weinstein issued the attached notice to all National Archives and Records Administration (NARA) staff. As the notice states, and as you are aware from my prior correspondence, a series of seven incidents occurred on and after September 1, 2005, involving the attempted disposal of various types of permanent records amongst our agency's holdings at the Main Archives building in Washington, D.C. The documents involved included those from the Department of Veterans Affairs, the U.S. Army, Navy Department, and War Department, as well as from the Department of Interior.

As the notice goes on to state, NARA took swift action to investigate and cure the situation that led to those September incidents. NARA's Inspector General gathered evidence, and based on that evidence, on September 28, 2005, NARA management barred one NARA employee (an archives technician) from having further access to the secured, nonpublic stack areas in the Main Archives building. NARA also placed that individual on administrative leave. The employee subsequently resigned from NARA, effective November 18, 2005. Most importantly, no additional incidents of attempted disposal of records have been reported since the September 2005 incidents referred to above.

In my September 28 letter to you I noted that NARA staff were taking steps to discover whether there were any "gaps" in NARA's existing holdings corresponding to the records

that the former employee was processing for preservation, in addition to the records recovered in the September 2005 incidents. The Archivist's notice reaffirms that NARA staff are continuing to review records holdings in this regard. Based on the review conducted to date, I am in a position to supply you with the following additional facts.

Other than with respect to VA records, the employee in question who has resigned was most recently involved in processing Consolidated Chippewa record holdings (including being tasked to replace old, nonrecord file covers and jackets with new covers). To date, NARA staff have determined that approximately 250 of the actual files that correspond to the approximately 275 Consolidated Chippewa nonrecord file covers and jackets recovered from various trash areas in September are, in fact, intact, in NARA's permanent holdings. As stated above, NARA's review process is ongoing, and NARA staff members are continuing to search for the remaining 25 or so files. In the event these additional records are located, NARA will provide you with a further update.

Please call me if you have further questions or concerns.

Sincerely,

JASON R. BARON
Director of Litigation
Office of General Counsel

Enclosure

cc:
Abraham E. Haspel, Ph.D.
Assistant Deputy Secretary
U.S. Department of the Interior

# Exhibit 28

# Status Report to the Court
# Number Twenty-Five

**For the Period**
**January 1, 2006 through March 31, 2006**

**May 1, 2006**

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
A. INFORMATION TECHNOLOGY ..... 2
B. CADASTRAL SURVEY ..... 11
C. MINERALS MANAGEMENT SERVICE ..... 13
D. OFFICE OF HISTORICAL TRUST ACCOUNTING ..... 14
II. OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS ..... 17
A. TRUST REVIEW AND AUDIT ..... 19
B. OST-OFFICE OF THE CHIEF INFORMATION OFFICER ..... 21
1. RECORDS MANAGEMENT ..... 21
C. TRUST ACCOUNTABILITY ..... 24
1. TRUST BUSINESS PROCESS MODELING ..... 24
2. TRUST DATA QUALITY AND INTEGRITY ..... 26
3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM ..... 28
4. RISK MANAGEMENT ..... 30
5. REGULATIONS, POLICIES AND PROCEDURES ..... 32
D. FIELD OPERATIONS ..... 34
1. APPRAISAL ..... 34
E. TRUST SERVICES ..... 37
1. CURRENT ACCOUNTING ACTIVITIES ..... 37
III. BUREAU OF INDIAN AFFAIRS ..... 41
A. TRUST REGULATIONS, POLICIES AND PROCEDURES ..... 41
B. FRACTIONATION ..... 43
C. PROBATE ..... 45
ACRONYMS AND ABBREVIATIONS ..... 47

## A. INFORMATION TECHNOLOGY

**<u>Introduction</u>**

This section describes the status of Interior IT systems, particularly the systems that house or provide access to IITD or provide various computing capabilities, including functions critical to the proper administration of the individual Indian trust responsibilities within Interior. In addition, this section describes various efforts being made to improve IITD security within Interior, pursuant to OMB Circular A-130 Appendix III, and the status of Internet connectivity.

**<u>Accomplishments and Completions</u>**

**Computer Security:**

The primary focus for this reporting period has been remediation of weaknesses, reduction of open POA&M items, and IT security policy. Interior continued to make progress in enhancing IT security, through continuous monitoring of Internet-accessible systems and implementing corrective actions for weaknesses identified by the Interior penetration tests and audits of financial systems. The most noteworthy accomplishments, completions and challenges during the reporting period are described below.

***ESN:***

- Two Internet gateway routers were replaced with newer and more capable equipment. This upgrade is expected to enhance security and increase availability of Internet services.

- BLM reconfigured Denver and Portland interfaces to the ESN to create a more consistent, layered approach to the perimeter security, including intrusion prevention systems, firewalls, routers, and application firewalls.

***Prevention and Monitoring:***

- Interior continued its external perimeter extended vulnerability scan testing of Internet-accessible systems, using capabilities established at ESN. As of the end of this reporting period, all identified critical or major vulnerabilities in trust systems were either remediated or were identified as false positives.

- Interior continued deployment of the Interior-wide internal scanning tool for BOR, NPS, FWS and OST. Interior also continued refining the internal scanning process in order to reduce the number of false positives. Reducing false positives should allow Interior to focus on remediating actual vulnerabilities.

- BLM procured, configured and implemented a security event log consolidation and evaluation program that provides increased security response, including custom coding an automated quarantine tool to deny access to BLM resources to all potentially hostile contacts.

- There were no successful security incidents detected during this reporting period that resulted in the compromise of trust systems or data.

***Policies and Guidance***

- The Interior CIO issued "Information Resources Management (IRM) Internal Control Review (ICR) Guidance for FY 2006" to the heads of bureaus and offices on January 31, 2006. This directive transmitted Interior's "Guidelines for FY 2006 Internal Control and Audit Follow-up Programs," dated November 4, 2005, that requires performing annual ICR assessments by evaluating the security controls in place for all IT systems contained in Interior's IT system C&A master list.

- The Interior Chief Information Security Officer and OIG agreed to "Rules of Engagement for IT Security Penetration Testing" on February 9, 2006. This document provides a framework of procedures and guidelines to be followed by OIG, its contractor and Interior in performing the independent evaluation of Interior's public-facing network infrastructure and ESN. It establishes the test objective, scope, timeframe, rules, and points of contact.

- The Interior CIO issued "Software Piracy" to the heads of bureaus and offices on February 14, 2006. This directive sets Interior's policy for the prevention of software piracy.

- The Interior CIO issued "Fiscal Year 2006 (FY06) Annual End-user Federal Information Systems Security Awareness Training" on February 17, 2006, and "Fiscal Year 2006 (FY 2006) Annual End-user Federal Information Systems Security Awareness Training" on March 10, 2006, to the assistant secretaries and heads of bureaus and offices. These memoranda require that all personnel, including contractors and other external authorized users, with access to DOI information systems complete training that satisfies the annual FISMA requirement. It also mandates the use of a centralized source to standardize the training across Interior.

- The Interior Deputy Secretary issued "Approval of the Interior's Enterprise Architecture" to the heads of bureaus and offices on February 27, 2006. This memorandum endorses the Interior's IT Investment Review Board approval of the IEA as outlined in Version 2.0 of the ETP. The ETP provides a sequencing plan that describes the business transformation efforts required to move Interior from its current state to the target architecture. The ETP is in alignment with guidance from OMB.

- The Interior CIO issued "Plan of Action and Milestones (POA&M) Process Standard" to the heads of bureaus and offices on February 27, 2006. This revised guidance provides a set of standards and procedures for developing and maintaining

bureau and office POA&Ms for identifying weaknesses, managing remediation, and providing quarterly reporting to OMB.

- The Interior CIO issued "Interim Guidance for the Certification and Accreditation of Information Technology Systems" to the heads of bureaus and offices, SOL, OIG, and bureau and office CIOs on March 14, 2006. This directive provides guidance on the C&A process to be used throughout Interior regarding implementation of the NIST Special Publications 800-37, 800-18, 800-30, 800-34, 800-47, 800-53, 800-60, and FIPS Publications 199 and 200.

- The Interior CIO issued "Information Technology (IT) System Inventory Requirements" to the heads of bureaus and offices on March 20, 2006. This directive provides supplemental guidance to OCIO Directive 2004-010 "Population and Maintenance of the Department of the Interior Enterprise Architecture Repository" on system inventory requirements.

- The Interior CIO issued "Instant Messaging, Internet Relay Chat, Web Conferencing, and Peer-to-Peer Usage Policy" to the assistant secretaries, and heads of bureaus and offices on March 20, 2006. This directive establishes usage policy and procedures for various collaborative programs. It also mandates standardization and technical controls to ensure the computing environment and data remain secure.

- MMS issued security requirements for all network users to read and acknowledge the FY2006 MMS IT rules of behavior, which apply to all MMS IT systems.

***Training and Awareness***

- Training was held for users of DEAR's new reporting and C&A self-guided capabilities in DC and Denver, a step-by-step process that allows for standardized and consistent input of data. The new enhancements to DEAR provide for one authoritative data source that links each information system to an overall C&A boundary, thus improving oversight and reporting with respect to FISMA requirements. Training focused on:
    - Assuring roles, processes, and tasks for collecting and maintaining information were clearly defined and reviewed;
    - Performing quality assurance checks on the information contained in DEAR using the new reporting features;
    - Using NIST Special Publication 800-60 guidance to assess the appropriate confidentiality, integrity and availability ratings of an accreditation boundary.

**Plans of Action and Milestones:**

- Interior reduced POA&M weaknesses by 9.6 percent during this reporting period. Interior remediated and closed out 327 weaknesses. Interior continues to address the remaining 1,211 open weaknesses.

**A-130 Certification and Accreditation:**

- BIA reviewed and updated all trust system security plans to be compliant with NIST Special Publications 800-60 and 800-53 standards. This included following the FIPS Publication 199 guidelines to determine the appropriate security categorization (high, medium, or low) for each system. NIST Special Publication 800-53 requires the selection and employment of appropriate security controls for an information system based upon the security categorization of the system.

- BIA performed tests on a new document scanning module for TAAMS. The test results will be evaluated to assess the impacts, if any, that the introduction of the module will have on the system as a whole.

- BIA completed the ST&E and C&A documentation of the Trust Network Root Enterprise Active Directory system and is reviewing for submission to the DAA.

**E-Authentication and HSPD-12:**

- BLM has transferred existing Smartcard technology to NBC for implementation of HSPD-12 Personal Identification Verification (PIV-II) requirements.

**Staffing:**

- Interior filled several key positions this reporting period, including a Deputy CIO, IT Security Project Manager, IT Enterprise Security Architect, IT Security Trust Officer and an Information Systems Security Officer, OST Deputy CIO, and BIA IT Security and Privacy Deputy Office Director and Security Engineer.

**<u>Current Status</u>**

**A-130 Certification and Accreditation:**

- All trust systems have full ATO status except for one. The one exception is a BIA legacy system called the Land Ownership Tracking System. The system was operating under an IATO valid for 90 days from December 19, 2005. The IATO for this system is expected to be renewed and remain valid until the system is retired, which is expected by the end of CY2006. The risk of continued operation under an IATO has been determined to be necessary since the system is required for BIA to conduct its business.

**ZANTAZ:**

- The contract to restore the ZStage tapes was awarded. All bureaus and offices affected by the ZStage issue from the last reporting period sent their tapes to ZANTAZ.
  - OST sent 112 backup tapes and all were restored without incident.
  - SOL sent 97 backup tapes and restoration is expected to be complete by the end of June 2006.
  - NBC Denver sent 57 backup tapes and restoration is expected to be complete by the end of June 2006.

- NBC DC sent 409 backup tapes and restoration is expected to be complete by the end of June 2006. Three tapes have not been sent because of national security issues.
- BIA sent 280 backup tapes. Of the 280 tapes sent, 268 of these tapes are blank and 12 tapes have only partial data. BIA sent a technician to ZANTAZ in an attempt to confirm whether the tapes were blank. On March 31, 2006, BIA sent ZANTAZ one tape that it believes may contain some of the data that would have been captured on the 280 tapes.

- The NBC Denver servers were upgraded on January 27, 2006, to correct the ZStage issues reported in the last reporting period.

- BLM shipped a new router to the ZANTAZ Las Vegas data center for the connection to the archive servers. The new router is part of a technology refresh effort and will include implementing a buffer server between the BLM forwarder and the ZANTAZ data center. This will provide up to two weeks of buffer space in the event that connectivity to the datacenter is interrupted for an extended period.

- BIA deployed a ZStage Alert script in late November 2005. During this period, the ZStage Alert script noted problems in three areas have been referred to ZANTAZ for further investigation.
  - A misconfiguration by one user caused that user's messages not to reach ZANTAZ. BIA expects to coordinate with ZANTAZ to deliver whatever messages can be recovered to the digital safe.
  - Notification messages informing the user of e-mail delivery failures were not being captured by ZANTAZ. Messages which the user attempted to send, but which were not actually sent, were captured by ZANTAZ. Therefore, ZANTAZ will show a discrepancy between the senders' and receivers' e-mail collections.
  - A process irregularity occurred whereby an incorrect ZStage value indicated that the e-mail was not captured when it actually has been. This created a false negative in the ZStage value.

**REPORTS:**
These reports were among those issued during this reporting period.

***FISMA***

- OMB issued "FY 2005 Report to Congress on Implementation of The Federal Information Security Management Act of 2002," on March 1, 2006. This report informs Congress and the public of the Federal government's security performance, and provides OMB's assessment of government-wide information technology security strengths and weaknesses and a plan of action to improve performance. It provides key security performance measures from FY2002 through FY2005 for each agency, based on the report issued by each agency's OIG. While Interior does not believe the FISMA report reflects the current status of Interior's information technology security, Interior

acknowledges that the report identified some important areas that need improvement. These areas include, but may not be limited to network security, POA&M, and C&A.

- The House Government Reform Committee issued the "Federal Computer Security Grades - 2001-2005" on March 16, 2006. This document is compiled by the Committee from FISMA reports submitted to Congress by agency CIOs and OIGs. The Committee report, based on the FY2005 report issued by Interior's OIG, indicates Interior's grade moved from "C+" in FY2004 to an "F" in FY2005. Interior is concerned that the FY2005 congressional FISMA report card did not reflect the current status of its information technology security.

- The Interior CIO, in a letter to Congressman Davis, Chairman of the House Government Reform Committee, stated that the FISMA report "did not reflect the current status of [Interior's] information technology security … despite further improvements to [Interior's] IT security." The letter notes the following "accomplishments that strengthened [Interior's] IT security":
  - Provided $1.1 million to OIG for penetration testing in all bureaus;
  - Certified and accredited 98 percent of IT systems, with 100 percent quality assurance reviews;
  - Trained 98.7 percent of the workforce in user security awareness;
  - Ensured that 67 percent of IT security specialists completed role-based training;
  - Increased the number of certified security professionals from 63 to 86;
  - Survived 650 million probes and attacks, with only a couple of web defacements, through sophisticated vulnerability scanning and enhanced intrusion detection and prevention devices;
  - Consolidated 13 networks into one with added security services;
  - Reduced Internet Service Providers from 35 to 5, which created simpler and more effective perimeter security;
  - Developed eight enterprise software and hardware agreements for standardization, cost efficiencies, and increased security;
  - Received OMB's top ranking for Interior's enterprise architecture with an integrated security architecture;
  - Submitted 60 IT investment proposals to OMB: each received passing IT security scores and OMB approval, and security was given special review in each case;
  - Established qualified project managers on major IT projects;
  - Maintained a privacy program recognized as a best practice by the Industry Advisory Council; and,
  - Completed the first departmental IT security assessment through an independent contractor. The nine major program areas received ratings of four good, four satisfactory and one unsatisfactory.

- GAO issued "INFORMATION TECHNOLOGY: Agencies Need to Improve the Accuracy and Reliability of Investment Information (Report No. GAO-06-250)," to Congressional Requesters on January 12, 2006. The report responds to a Congressional

request to determine the extent to which selected agencies have underlying support for their FY2006 investment information. It emphasizes the use of the GAO-developed IT Investment Management framework in implementing capital planning processes and notes Interior to be among those agencies using the IT Investment Management Framework. Interior was cited as having made significant improvements.

- The Interior IG issued "Security Vulnerabilities at the Information Technology Center Place Sensitive Data at Risk (Report No. NSM-EV-OSS-0004-2006)," on January 17, 2006. The report details IT security vulnerabilities that would allow unauthorized users access to sensitive data located on the NBC network. The concern was that the Information Technology Center could be physically entered by anyone with access to the Main Interior Building. NBC has developed and implemented corrective actions for a majority of the vulnerabilities. Corrective actions have been developed and prioritized as POA&Ms for the remaining vulnerabilities identified in the report.

- OMB issued "Report to Congress on the Benefits of the President's E-Government Initiatives," on January 20, 2006. This report provides a status update to Congress on E-Government initiatives which were approved by the President's Management Council. Initiatives included E-Authentication and the security line of business.

- BIA and ESN issued "NBC Network Security Recommendations Report." The report, developed in collaboration with NBC, provides recommendations for improving the security of BIA connections to NBC applications and is intended to prevent the possibility of access to sensitive BIA data and systems from users on the NBC network. This has a low risk of occurrence and a configuration change has been developed and programmed for implementation to correct the weakness.

***MRM Legacy Media***

As previously reported, MRM expected to dispose of 30,000 legacy backup tapes that contain data redundant to data in the new MRMSS. Due to objections by tribal litigants, MRM has postponed the disposal of these tapes pending resolution of objections.

## <u>Delays and Obstacles</u>

Like other federal agencies, Interior must address many challenges regarding the integration, performance, funding, security, and data integrity of IT systems. Interior initiated or completed steps to address some of the challenges reported in this and previous reporting periods. However, delays and obstacles listed below impede progress in achieving Interior's IT management goals.

### Litigation

- Delays caused by last summer's extensive collection and production of documents and by Court appearances continue to put Interior several months behind in completing many required IT and IT security activities. These include completing corrective actions from

audits and on POA&Ms, updating of required security policies and procedures, and implementing initiatives critical to continued improvements in IT security.

- Employee fears about becoming personally implicated in the *Cobell* litigation continue to undermine communication and decision-making, and are contributing factors to low employee morale.

**Staffing**

- Interior is experiencing high staff and management turnover in critical IT positions, particularly IT security. Recruitment challenges to attract qualified candidates continue, particularly in light of litigation impacts. The CISO position remains vacant and the Department's IT security staff is at 70 percent.

**Funding and Resources**

- OCIO, along with Interior bureaus and offices, is responding to an extraordinary level of scrutiny, including OIG evaluations and audits, GAO evaluations and audits, and OMB required reviews. With the significant increase in review, Interior is expending considerable efforts in data collection, document production and related workloads, which diminishes the resources available for IT security-related activities. For example, staff has less time to implement and test security controls.

- Funding availability will continue to dictate the timing of IT-related initiatives. Interior's FY2006 budget will require managing a variety of IT-related requirements and tradeoffs. Interior continues to prioritize its IT security needs in its budget requests within fiscal constraints.

**Denied Internet Access**

- Several Interior bureaus and offices (BIA, OHA, OST and SOL) have not been permitted by the Court to have Internet access since December 5, 2001. Lack of Internet access impedes work processes and the ability to communicate effectively, both internally and externally. For example:
  - Coordination and dissemination of new policies and training is delayed due to the need to deliver material physically. Even after receipt, considerable re-work is required to tailor web-based training programs to run locally.
  - Policy discussion is hampered due to additional time required in coordinating group discussions via teleconferencing when e-mail collaboration would be more appropriate and timely.
  - Ensuring Continuity of Operations and Continuity of Government through the implementation of contingency plans requires rapid notification of an event. The lack of Internet access degrades Interior's capabilities to notify all of its bureaus and offices in a timely and efficient manner.

  - Maintaining security on internal systems is more difficult without access to the Internet for research, reporting, and patch management.

- The concerns over potential future Court-ordered Internet shutdowns or other Court-ordered disruptions create uncertainty over how to proceed with enterprise initiatives and security improvements. Contingency planning for either external or internal disconnections (and all potential permutations) takes resources from planned and daily activities.

**Assurance Statement**

I concur with the content of the information contained in the Information Technology section of the *Status Report to the Court Number Twenty-Five*. The information provided in this section is accurate to the best of my knowledge.

Date: April 20, 2006

Name: *Signature on File*
W. Hord Tipton
Interior Chief Information Officer

## B. OST-OFFICE OF THE CHIEF INFORMATION OFFICER

### 1. RECORDS MANAGEMENT

**Introduction**

The Office of Trust Records was established in 1999 to develop and implement a program for the economical and efficient management of trust records, consistent with the 1994 Act, the Federal Records Act, and other statutes and implementing regulations. The OTR records management program has been developed and implemented, and continues to evolve, to ensure that necessary Indian records are maintained, records retention schedules are consistent with retention needs, and records are safeguarded throughout their life-cycles.

**Accomplishments and Completions**

**American Indian Records Repository**

Approximately 136,471 indexed boxes are located in the AIRR as of the end of this reporting period. As previously reported, OTR has historically reported the number of boxes transferred to AIRR for storage. However, NARA uses cubic feet as the measure for records stored. Thus far, NARA reports that they are currently storing 142,433 cubic feet of indexed inactive records at AIRR. Some boxes are larger than one cubic foot (e.g., map boxes).

**Records Indexing Project**

Indexing of approximately 138,425 boxes has been completed as of the end of this reporting period. The number of completed boxes (indexed and quality reviewed) differs from the number of boxes stored at AIRR because not all completed boxes were sent to AIRR from the Annex before the end of the reporting period.

Approximately 3,890 boxes of inactive records were moved from BIA/OST field locations to the Lenexa Annex for indexing during this reporting period. Once indexed, these boxes will be stored in the AIRR.

**Training**

OTR provided records management training for 121 BIA and OST identified records contacts and 51 tribal employees during this reporting period.

**Equipment Purchases**

242 pieces of fireproof filing equipment were delivered to BIA, OST and tribal offices during this reporting period.

## Current Status

### Safeguarding Records

As reported, 283 boxes of inactive records that were or may have been damaged or contaminated by mold, mildew, mouse droppings or other adverse elements were shipped to NARA for remediation in June 2005. As reported in the OTR Activity Report for November 2005, the number of boxes increased to 289 as a result of holdings maintenance being performed. Some boxes cannot hold the entire contents of the original box and are placed in an "overflow box" which is kept with the original box.

OTR reported in December 2005 that 145 boxes were released by NARA and sent for indexing and storage in the AIRR. NARA subsequently informed OTR that the number released in December 2005 was actually 146 boxes. Of the 143 boxes (289 – 146) [2] remaining to be treated by NARA, 48 of 60 boxes requiring holding maintenance were completed; 12 of 21 boxes requiring humidification flattening were completed; and 37 of 54 boxes requiring conservation treatment were completed. The completed boxes have been sent to the Annex for indexing. NARA anticipates that the remaining 46 original boxes will be completed by the end of April 2006, except for those materials which are beyond NARA's capabilities to repair.

### Records Retention Schedules

During this reporting period, OTR received approval from the Archivist of the United States for the following five BIA electronic systems records schedules: MADS, Keyfile System, GLADS, Alaska Title Plant Data Base, and Land Title Mapper. The Archivist also approved the Box Index Search System records schedule.

### Records Evaluation

As previously reported, 31 boxes set aside for evaluation remain at OTR in Albuquerque pursuant to a litigation hold. There has been no change during this reporting period.

### Records Management Policies and Procedures

As reported in the OTR Activity Report for February 2006, OTR was notified of allegations of destruction of trust and non-trust records at the BIA Fort Defiance Agency. OTR and OTRA conducted a joint examination of the allegations and concluded that approximately one cubic foot of documents, comprised of original incomplete sand and gravel permits (which were considered to be records) and non-record duplicate copies of archaeological clearances and reports were shredded by Agency staff. As a follow-up to the destruction of records at the BIA Fort Defiance Agency, OTR provided records management briefings specifically targeted to the

[2] The OTR Monthly Activity Reports for January and February 2006 inadvertently referenced the original number of 283 boxes.

managers of BIA programs in the BIA Navajo Region. The purpose of the training was to reinforce the record keeping responsibilities of managers.

Also as reported in the OTR Activity Report for March 2006, OTR received a request from the OST Northwest Regional Fiduciary Trust Administrator to conduct an investigation into possible unauthorized destruction of federal records or non-records material stored at the OST field office in Portland, on or about February 16, 2006. OTR and OTRA conducted a joint examination March 28 – 30, 2006. It is anticipated that a report will be prepared in the next reporting period.

**Delays and Obstacles**

Lack of Internet access continues to hinder OTR's ability to provide remote access to the record index database for authorized users of the records. If Internet access were available, authorized researchers could conduct their searches from their respective work sites and only visit AIRR when necessary to inspect specific boxes or request documents from specific boxes.

**Assurance Statement**

I concur with the content of the information contained in the Records Management section of the *Status Report to the Court Number Twenty-Five.* The information provided in this section is accurate to the best of my knowledge.

Date: April 20, 2006

Name: *Signature on File*
Ethel J. Abeita
Director, Office of Trust Records
Office of the Special Trustee for American Indians

## 3. INDIAN FIDUCIARY TRUST TRAINING PROGRAM

**Introduction**

Interior has a continuing responsibility to provide adequate staffing, supervision and training for trust fund management and accounting activities. Fiduciary trust training is essential to the success of Interior's trust reform efforts and forms an integral part of all training for Interior employees who are involved in the management of Indian trust assets.

**Accomplishments and Completions**

OST offered two sessions of the course, *Fiduciary Overview Program*, presented by Cannon Financial Institute, with 57 OST, BIA and tribal personnel attending during this reporting period. A total of 793 people have attended this course since March 2003. This course compares and contrasts the federal Indian trust administered through Interior with private sector trusts administered through banks and other financial institutions.

During this reporting period, Cannon Financial Institute personnel presented all six of the specialty courses to 100 OST, BIA and tribal personnel. The specialty courses, *Risk Management, Probate*, *Trust Accounting*, *Asset Management*, *Fiduciary Behavior* and *Guardianships* are part of the *Certified Indian Fiduciary Trust Specialist* certification program as described in previous reports.

During this reporting period, OST training staff conducted 10 training sessions in TFAS, CSS, StrataVision and the historical query database for 60 OST, BIA and contractor staff.

OST and BIA staff presented the three-day course, *Trust Fundamentals*, to 21 OST, BIA and tribal staff. This course includes such topics as the history and policy of Indian trust, current trust reform activities, job roles and responsibilities, and organization and working relationships.

**Current Status**

During this reporting period, 11 OST personnel attended the *Certified Indian Fiduciary Trust Specialist* review and exam session, and are expected to receive their certifications during the next reporting period.

Dedication ceremonies for the NIPTC are scheduled for Thursday, April 27, 2006.

**Delays and Obstacles**

The lack of Internet access inhibits electronic communication with other governmental agencies and contractors, hinders the research of training tools and potential contractors, and restricts OST's ability to access online training programs.

**Assurance Statement**

I concur with the content of the information contained in the Indian Fiduciary Trust Training Program section of the *Status Report to the Court Number Twenty-Five.* The information provided in this section is accurate to the best of my knowledge.

Date: April 19, 2006

Name: *Signature on File*
Dianne M. Moran
Director, Trust Training
Office of the Special Trustee for American Indians

# Exhibit 29

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELOUISE PEPION COBELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:96CV01285 |
| | ) | (Judge Robertson) |
| DIRK KEMPTHORNE, Secretary of the Interior, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NOTICE OF FILING OF THE THIRTIETH QUARTERLY REPORT FOR THE DEPARTMENT OF THE TREASURY**

The Department of the Treasury has prepared its *Thirtieth Quarterly Report on Actions Taken By the Department of the Treasury to Retain IIM-Related Documents Necessary For an Accounting* and submits it to the Court in accordance with this Court's Order of December 21, 1999.

A copy of the report is attached hereto.

Dated: June 1, 2007

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General
MICHAEL F. HERTZ
Deputy Assistant Attorney General
J. CHRISTOPHER KOHN
Director

/s/ John J. Siemietkowski
ROBERT E. KIRSCHMAN, Jr.
(D.C. Bar No. 406635)
Deputy Director
JOHN J. SIEMIETKOWSKI
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Phone (202) 514-3368
Fax (202) 514-9163

CERTIFICATE OF SERVICE

I hereby certify that, on June 1, 2007 the foregoing *Notice of Filing of the Thirtieth Quarterly Report for the Department of the Treasury* was served by Electronic Case Filing, and on the following who is not registered for Electronic Case Filing, by facsimile:

Earl Old Person (*Pro se*)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
Fax (406) 338-7530

/s/ Kevin P. Kingston
Kevin P. Kingston

DEPARTMENT OF THE TREASURY
BUREAU OF THE PUBLIC DEBT
WASHINGTON, DC 20239-0001

June 1, 2007

MEMORANDUM FOR: PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION
U.S. DEPARTMENT OF JUSTICE

FROM: PAUL G. WOLFTEICH
CHIEF COUNSEL
BUREAU OF THE PUBLIC DEBT
DEPARTMENT OF THE TREASURY

SUBJECT: THIRTIETH QUARTERLY REPORT
*COBELL v. KEMPTHORNE*

Included with this cover memorandum is the Thirtieth Quarterly Report on Actions Taken by the Department of the Treasury to Retain IIM-Related Documents Necessary for an Accounting (the Report). The Report has been prepared by the Department of the Treasury pursuant to the Court Order and Opinion in *Cobell v. Babbitt* (D.D.C. CV No. 96-1285), filed December 21, 1999.

The Report includes information concerning the Financial Management Service ("FMS"), the Bureau of the Public Debt ("BPD"), and certain Departmental Offices ("DO"). The Report was prepared based on information provided by a number of program offices from the above-described organizations. The preparation of the Report included circulation of drafts of the Report to program offices that are responsible for the actions described in the Report. Comments were received from those offices and incorporated in the Report. Senior officials of FMS, BPD and DO reviewed the Report before it was submitted to the Department of Justice.

The Department of the Treasury stands ready to respond to any questions or concerns the Court may have after reviewing the Report.

**THIRTIETH QUARTERLY REPORT ON ACTIONS TAKEN BY THE DEPARTMENT OF THE TREASURY TO RETAIN IIM-RELATED DOCUMENTS NECESSARY FOR AN ACCOUNTING**

*Cobell v. Kempthorne*

June 1, 2007

This is the Thirtieth Quarterly Report filed by the Department of the Treasury ("Treasury") pursuant to the Court's December 21, 1999 Order ("Order") in the above-captioned case. It covers activities occurring over a three-month period from March 1, 2007 through May 31, 2007. The Order requires Treasury to report on the steps it has taken since the last quarterly report to preserve IIM-related documents.

As reported in Treasury's Twenty-Seventh Quarterly Report filed September 1, 2006, several boxes of FMS and BPD records were affected by a water sprinkler incident at the Washington National Records Center (WNRC) in July 2006, and NARA sent the boxes to a contractor to be freeze-dried. As of the date of this report, all of the boxes have been dried and returned to the WNRC.

As also reported in Treasury's Twenty-Seventh Quarterly Report, a portion of FMS' working copy set of microfilm copies of negotiated Treasury checks was exposed to water when the basement of FMS' Hyattsville, Maryland office flooded on June 25, 2006. The water exposure is believed to have affected the quality of the check images on at least portions of some of the water-exposed microfilm cartridges. FMS procured the services of a contractor to wash approximately 2,000 (roughly one-sixth) of the water-exposed cartridges, because those cartridges contain check copies for which original checks may not be available. Washing the microfilm should remediate any adhesions (film layers sticking together), thereby preventing further damage to the images on the microfilm and restoring the functioning of the microfilm (i.e., by enabling it to be fed through a microfilm reader). The microfilm washing services are expected to be completed by the end of June 2007.

On March 1, 2007, Kenneth E. Carfine was appointed Treasury Fiscal Assistant Secretary, replacing Donald V. Hammond who resigned that position in January 2007. The Fiscal Assistant Secretary oversees the Financial Management Service and the Bureau of the Public Debt.

# Exhibit 30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELOUISE PEPION COBELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:96CV01285 |
| | ) | (Judge Lamberth) |
| DIRK KEMPTHORNE, Secretary of the Interior, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NOTICE OF FILING OF THE TWENTY-SEVENTH QUARTERLY REPORT FOR THE DEPARTMENT OF THE TREASURY**

The Department of the Treasury has prepared its *Twenty-Seventh Quarterly Report on Actions Taken By the Department of the Treasury to Retain IIM-Related Documents Necessary For an Accounting* and submits it to the Court in accordance with this Court's Order of December 21, 1999.

A copy of the report is attached hereto.

Dated: September 1, 2006

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General
STUART E. SCHIFFER
Deputy Assistant Attorney General
J. CHRISTOPHER KOHN
Director

/s/ John J. Siemietkowski

ROBERT E. KIRSCHMAN, Jr.
(D.C. Bar No. 406635)
Assistant Director
JOHN J. SIEMIETKOWSKI
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station

Washington, D.C. 20044-0875
Phone (202) 514-3368
Fax (202) 514-9163

CERTIFICATE OF SERVICE

I hereby certify that, on September 1, 2006 the foregoing *Notice of Filing of the Twenty-Seventh Quarterly Report for the Department of the Treasury* was served by Electronic Case Filing, and on the following who is not registered for Electronic Case Filing, by facsimile:

Earl Old Person (*Pro se*)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
Fax (406) 338-7530

/s/ Kevin P. Kingston
Kevin P. Kingston

DEPARTMENT OF THE TREASURY
BUREAU OF THE PUBLIC DEBT
WASHINGTON, DC 20239-0001

September 1, 2006

MEMORANDUM FOR: PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION
U.S. DEPARTMENT OF JUSTICE

FROM: PAUL G. WOLFTEICH
CHIEF COUNSEL
BUREAU OF THE PUBLIC DEBT
DEPARTMENT OF THE TREASURY

SUBJECT: TWENTY-SEVENTH QUARTERLY REPORT
*COBELL v. KEMPTHORNE*

Included with this cover memorandum is the "Twenty-Seventh Quarterly Report on Actions Taken by the Department of the Treasury to Retain IIM-Related Documents Necessary for an Accounting" (the Report). The Report has been prepared by the Department of the Treasury pursuant to the Court Order and Opinion in *Cobell v. Babbitt* (D.D.C. CV No. 96-1285), filed December 21, 1999.

The Report includes information concerning the Financial Management Service ("FMS"), the Bureau of the Public Debt ("BPD"), and certain Departmental Offices ("DO"). The Report was prepared based on information provided by a number of program offices from the above-described organizations. The preparation of the Report included circulation of drafts of the Report to program offices that are responsible for the actions described in the Report. Comments were received from those offices and incorporated in the Report. Senior officials of FMS, BPD and DO reviewed the Report before it was submitted to the Department of Justice.

The Department of the Treasury stands ready to respond to any questions or concerns the Court may have after reviewing the Report.

**TWENTY-SEVENTH QUARTERLY REPORT ON ACTIONS TAKEN BY THE DEPARTMENT OF THE TREASURY TO RETAIN IIM-RELATED DOCUMENTS NECESSARY FOR AN ACCOUNTING**

*Cobell, et al. v. Kempthorne, et al.*

September 1, 2006

This is the Department of the Treasury's ("Treasury") Twenty-Seventh Quarterly Report, pursuant to the Court's December 21, 1999 Order ("Order") in the above-captioned case. It covers activities occurring over a three-month period from June 1, 2006 through August 31, 2006. The Order requires Treasury to report on the steps it has taken since the last quarterly report to rectify a single breach of its trust responsibilities, namely the destruction of IIM trust materials after their age exceeded six years and seven months. Cobell, et al. v. Babbitt, et al., 91 F.Supp. 2d 1, 50, 59 (D.D.C. 1999).

Treasury continues to preserve IIM-related documentation pursuant to the Court's August 12, 1999 Order, which defines the trust records that Treasury must retain. During the past quarter, Treasury again issued reminders to ensure the retention of required records. The reminders issued this quarter include letters reminding banks (see Attachments A and B), Secret Service (see Attachment C), the National Archives and Records Administration (NARA) (see Attachments D and E), and a contractor (see Attachment F), to continue retaining pertinent records. In addition, employees of the Financial Management Service (FMS) and the Bureau of the Public Debt (BPD) were again reminded to continue preserving records related to this litigation (see Attachments G and H), and retention instructions to pertinent Departmental Office (DO) employees continue to be posted on DO's intranet site (see Attachment I).

On June 14, 2006, Federal Reserve Bank (FRB) attorneys representing each FRB district participated in a conference call, during which representatives of the FMS Chief Counsel's Office provided an update on the Indian trust litigation and a reminder that no FRB fiscal agency records may be destroyed unless approved in writing by Treasury.

During this reporting period, FMS experienced two incidents in which certain of its records were exposed to water. One occurred as a result of unprecedented rainfall at the end of June 2006; the other occurred as a result of a sprinkler system water main break.

The basement of FMS' Hyattsville, Maryland office flooded on June 25, 2006, exposing to water the bottom drawers of a large group of file cabinets containing FMS' working-copy set of microfilm copies of negotiated Treasury checks. This working copy set was created to be used by FMS' Check Claims Branch personnel to obtain copies of checks needed for carrying out business functions without having to access original negotiated checks from the Federal Records Centers. The water exposure is believed to have affected the quality of the check images on at least portions of some of the water-exposed microfilm cartridges. FMS is continuing to investigate the extent of any damage, but it is believed that much of the information on those microfilms is available from other FMS records.

On July 14, 2006 and July 17, 2006, NARA informed FMS and BPD, respectively, that boxes from several accessions of their paper records stored at the Washington National Records Center in Suitland, Maryland (WNRC) became wet as the result of a sprinkler that burst due to a water main break on July 2, 2006. Approximately 124 boxes of FMS records were affected by the water leak, some of which contain types of records that could include IIM-related records (e.g., Treasury checks and check claims documents). Approximately 18 boxes of BPD records were affected, all of which contain Savings Bond records. NARA has advised FMS and BPD that it sent all affected boxes to a remediation contractor, to be dried using freeze-drying techniques, and that it expects all of the boxes to be returned in good condition to the WNRC, possibly by the end of November 2006.

**INDEX TO ATTACHMENTS**
*The Department of the Treasury's Twenty-Seventh Quarterly Report*
*September 1, 2006*

| | |
|---|---|
| **Attachment A** | August 1, 2006 letters mailed by FMS to Mellon Bank and Bank of America, reminding them to continue preserving all records pertinent to two lockbox accounts used to process IIM deposits (the account at Mellon Bank is open; the account at Bank of America is closed). |
| **Attachment B** | Examples of August 2, 2006 Business Alert Message sent by FMS to all banks that act as Treasury's financial agents and August 11, 2006 letter sent by FMS to all banks that formerly acted as Treasury's financial agents, reminding them to continue to retain, indefinitely, records associated with Interior's deposits to the Treasury General Account. |
| **Attachment C** | August 11, 2006 letter issued by FMS, reminding the U.S. Secret Service to continue preserving, until further notice, all Treasury checks that FMS forwards for investigation and related information and records. |
| **Attachment D** | August 14, 2006 letter from BPD to NARA, reminding NARA to continue the "freeze" on BPD records at Federal Records Centers. |
| **Attachment E** | August 14, 2006 letter from FMS to NARA, reminding NARA to continue the "freeze" on FMS records at Federal Records Centers. |
| **Attachment F** | August 30, 2006 letter from FMS to Didlake, Inc., reminding Didlake, Inc. to continue retaining closed check claims case records indefinitely. |
| **Attachment G** | Global e-mail issued August 10, 2006 to all FMS employees, and posted on FMS' intranet site, reminding employees to continue retaining records related to this litigation indefinitely and to continue utilizing the "Cobell Archive" mailbox to retain all IIM-related e-mail. |
| **Attachment H** | Global e-mail issued August 21, 2006 to all BPD employees, and posted on BPD's intranet site, reminding employees to continue preserving IIM-related records indefinitely and sending all IIM-related e-mail to BPD's dedicated mailbox. |
| **Attachment I** | Retention instructions issued to DO employees and posted on DO's intranet site, including steps for sending e-mail documents to DO's dedicated "Cobell" mailbox. |

Attachment A
(1 of 2)

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

August 1, 2006

Ms. Elaine Friedman, Vice President
Mellon Bank
Mellon Client Service Center
Suite 1260
Pittsburgh, PA 15259-0001

Re: Minerals Management Service Lockbox Account
Agency Location Code 14170001, Lockbox Number 911-4258

Dear Ms. Friedman:

As you know, FMS remains under a continuing court order in Cobell, et al. v. Norton, et al. to preserve, indefinitely, all records relating to Individual Indian Money (IIM) trust funds and trust assets. Accordingly, please continue to retain all documentation pertaining to the above-referenced lockbox account until further notice. You have confirmed that the records for this account include:

Standard Form 215
Standard Form 5515
ACH Receiving Remittance/Payment Report
Demand Deposit Account Activity Statements
any forms used to facilitate internal processing, such as the CA$H-LINK II Deposit Report Form

You must retain the records for this account IN ALL FORMS AND MEDIA generated for the account. This includes paper, electronic, microfilm, microfiche, or any other media. If you create the same record in multiple media, you must retain the record in all media.

Please distribute this letter to appropriate bank personnel, including records management personnel. If you have any questions regarding these retention instructions, please contact me at (202) 874-6847. Thank you for your continued cooperation.

Sincerely,

Sheryl R. Morrow

Sheryl R. Morrow, Director
General Revenue Collection Division

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

August 1, 2006

Mr. Stephen C. Herndon
Senior Vice President
Bank of America
Federal Government Banking Division
600 Peachtree Street, NE
Atlanta, GA 30308-2214

Re: Bureau of Indian Affairs - Palm Springs Lockbox Account (closed 11/1/05)
Agency Location Code 00004844, Lockbox Number 72758

Dear Mr. Herndon:

As you know, FMS remains under a continuing court order in Cobell, et al. v. Norton, et al. to preserve, indefinitely, all records relating to Individual Indian Money (IIM) trust funds and trust assets. Notwithstanding the fact that the above-referenced lockbox account was closed effective November 1, 2005, please continue to retain all documentation pertaining to the account until further notice. You have confirmed that the account records include:

Standard Form 215
Standard Form 5515
Check copies
Monthly Account Activity Reports (MAAR)
Monthly Account Analysis Statements (MAAS)
Standard Listing
Any forms used to facilitate internal processing, such as the Daily Balance Sheet

Your bank must continue to retain the records for this account IN ALL FORMS AND MEDIA that were generated. Accordingly, notwithstanding that your bank began generating photocopies of the checks associated with this account on October 1, 2001, you must continue retaining any duplicate copies on microfilm, unless and until FMS obtains court approval for your bank to retain only pre-October 2001 microfilm copies and post-September 2001 photocopies.

Please distribute this letter to appropriate bank personnel, including records management personnel. If you have any questions regarding these retention instructions, please contact me at (202) 874-6847.

Thank you for your continued cooperation.

Sincerely,

Sheryl R. Morrow

Sheryl R. Morrow, Director
General Revenue Collection Division

cc: Linda S. Corbett, Senior Vice President, Bank of America

**Attachment B**
**(1 of 2)**

[Business Alert Message (BAM) for Current TGAs]

This is a reminder to continue preserving records in accordance with FMS' prior instructions to your financial institution. As stated in our initial letter dated July 9, 1999 and each successive reminder letter, including the most recent Business Alert Message issued on February 16, 2006, due to ongoing litigation [Cobell, et al. v. Norton, et al., Civ. No. 1-96CV01285 (D.D.C.)], your financial institution must retain, until further notice:

> Standard Form 215, Standard Form 5515 and any supporting documentation, IN ALL FORMS AND MEDIA, associated with transactions relating to deposits received from the Department of the Interior for credit to the Treasury's General Account (TGA). This includes paper, electronic, microfilm, microfiche, or any other media.

If you have not already done so, please designate a point of contact at your financial institution to disseminate these record retention instructions to appropriate personnel at your organization (including records management personnel). Please ensure that an appropriate dissemination and compliance process is in place to ensure these instructions are being followed at your financial institution.

If these retention instructions create a problem for your operations, please send your concerns in writing to the Over-the-Counter Revenue Collection Division at 401 14th Street, S.W., Room 307C, Washington, DC 20227.

If you have any questions, contact the Federal Reserve Bank of St. Louis at 1-866-771-1842 or Ava Singleton on (202) 874-9986.

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

**Attachment B**
**(2 of 2)**

August 11, 2006

Dear Sir or Madam:

This is a reminder to continue preserving records in accordance with FMS' prior instructions to your financial institution. As stated in our initial letter dated July 9, 1999 and each successive reminder letter, including our most recent reminder letter dated February 24, 2006, due to ongoing litigation [Cobell, et al. v. Norton, et al., Civ. No. 1-96CV01285 (D.D.C.)], your financial institution must retain, until further notice:

> Standard Form 215, Standard Form 5515 and any supporting documentation, IN ALL FORMS AND MEDIA, associated with transactions relating to deposits received from the Department of the Interior for credit to the Treasury's General Account (TGA). This includes any such records formerly maintained by the financial institutions shown on the attached list, now in your possession, custody or control. This includes paper, electronic, microfilm, microfiche, or any other media.

If you have not already done so, please designate a point of contact at your financial institution to disseminate these record retention instructions to appropriate personnel at your organization, including records management personnel. Please ensure that an appropriate dissemination and compliance process is in place to ensure these instructions are being followed at your financial institution.

If these retention instructions create a problem for your operations, please send your concerns in writing to the Over-the-Counter Revenue Collection Division (OTCD) at 401 14th Street, S.W., Room 307C, Washington, DC 20227, as soon as possible.

Thank you for your continuing cooperation in this matter. If you have any questions, the first point of contact is the Federal Reserve Bank of St. Louis at 1-866-771-1842. Should you have further questions, feel free to contact Ava Singleton on (202) 874-9986.

Sincerely,

Michael D. Zeigler

for Corvelli A. McDaniel, Director
Over-the-Counter Revenue Collection Division
A/C Federal Finance

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
HYATTSVILLE, MD 20782

Attachment C

AUG 11 2006

Brian K. Nagel
Assistant Director,
Office of Investigations
U.S. Secret Service
950 H Street, N.W.
Washington, D.C. 20223

Re: Document Retention Order in Cobell, et al. v. Norton, et al.
Civ. No. 1-96CV01285 (D.D.C.)

Dear Mr. Nagel:

This is a reminder that Treasury remains subject to a continuing court order in the above-referenced lawsuit, requiring Treasury to retain, indefinitely, "all documents and data relating to Individual Indian Money trust funds and Individual Indian trust assets." Copies of the document retention order entered in the case on August 12, 1999 and Treasury's Stipulation filed with the court on July 6, 1999 were provided with some of our previous reminder letters to Secret Service, including our reminder letter dated August 26, 2003. Please let me know if you need copies of those documents.

As stated in our previous letters to Secret Service (dated January 14, 2000, October 13, 2000, February 28, 2001, August 29, 2001, August 28, 2002, February 12, 2003, August 26, 2003, January 16, 2004, August 2, 2004, February 2, 2005, August 10, 2005, and February 6, 2006), among the types of records that Treasury must preserve to comply with the court order and Stipulation are all Treasury checks and check-related records. Accordingly, please continue to preserve, until further notice, all Treasury checks that FMS forwards to your bureau for investigation and all information and records your bureau maintains relating to those checks. Please continue to take all steps necessary to determine and document that all such records in the possession of Secret Service are being preserved indefinitely.

If you have any questions concerning the Cobell document retention order and Stipulation, please contact Beth Kramer in the FMS Chief Counsel's office, at (202) 874-7036, or me, at (202) 874-7913.

Thank you for your continued cooperation and assistance.

Sincerely,

Ronald G. Cymbor

Ronald G. Cymbor, Director
Financial Processing Division

cc: Thomas Dougherty, Office of Chief Counsel, U.S. Secret Service – Fax #202/406-6544

DEPARTMENT OF THE TREASURY
BUREAU OF THE PUBLIC DEBT
PARKERSBURG, WV 26106-1328

August 14, 2006

National Archives and Records Administration
Life Cycle Management Division
Attention: Stephen Cooper
8601 Adelphi Road
College Park, MD 20740-6601

Re: Suspending Destruction

Dear Mr. Cooper:

As you are aware, the Bureau of the Public Debt (BPD), Department of the Treasury, has been under court order since August 1999 to preserve all documents relating to the pending litigation, Cobell v. Norton, et al., which challenges the government's management of the Individual Indian Monies (IIM).

The purpose of this letter is to remind you that BPD remains under court order to preserve records indefinitely for purposes of the Cobell litigation. Therefore, we request that the Federal Records Centers continue to implement the freeze on **all** records from BPD Record Groups 53 and 82 and preserve all such records until further notice.

Thank you for your cooperation in this matter.

Sincerely,

Vicki S. Thorpe

Vicki Thorpe, Manager,
Graphics, Printing, and Records Branch
Records Officer

Attachment E

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
HYATTSVILLE, MD 20782

August 14 , 2006

Thomas E. Mills
Assistant Archivist for Regional Records Services
National Archives and Records Administration
Office of Regional Records Services
8601 Adelphi Road, Suite 3600
College Park, MD 20740

Dear Mr. Mills:

The purpose of this letter is to remind you that Financial Management Service (FMS), a bureau of the U.S. Department of the Treasury, remains under court order to preserve records indefinitely for purposes of the Cobell, et al. v. Norton, et al. litigation. Therefore, we request that the Federal Records Centers continue to implement the freeze on **all** records from FMS Record Groups 39, 50 and 425 and preserve all such records until further notice.

If you have any questions, you may contact Charles Brett at (202) 874-6156. Thank you for your cooperation in this matter.

Sincerely,

Sharon M. King, Director
Administrative Programs Division

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

Attachment F

August 30, 2006

Didlake, Inc.
Attn: Victoria Tanner, Project Manager
3700 East-West Highway, Room B-014
Hyattsville, MD 20782

Re: FMS Contract Number TFMS-HQ-04-K-0001 (formerly FHQ99D51295)

Dear Ms. Tanner:

Please continue to ensure that appropriate personnel at your company who perform work For FMS under the referenced contract are aware of, and are complying with, FMS's longstanding instructions to retain, indefinitely, all check claims related records. Such Records include microfiche copies of closed check claims case files, original documents Contained in such files (including original TFS 1133 claim forms), and any supporting Information or documentation associated with same.

Our letter to you dated August 7, 2001 included a copy of the retention order issued August 12, 1999 in the Cobell, et al. v Norton, et al. litigation. If you need another copy of the retention order, please let me know.

Please make FMS aware of any concerns you may have regarding these instruction. You may contact the COTR, Marilyn Haynes, at (202) 874-8883 or Evelyn J. Daval at (202) 874-6979, if you have any questions.

Thank you for your continued cooperation.

Sincerely,

Evelyn J. Daval
Contracting Officer

Cc: Marilyn Haynes, COTR
Beth Kramer, Office of Chief Counsel

 Attachment G

# Official FMS Business

| | |
|---|---|
| **To:** | Office of the Commissioner Debt Management Services Federal Finance Financial Operations Governmentwide Accounting Information Resources AC Management Regional Operations HQ Austir Birmingham Kansas City Philadelphia San Francisco |
| **Date:** | 08/10/2006 |
| **From:** | William Higgins |
| **Subject:** | Cobell and Tribal Trust Litigation - FMS Retention Requirements |

Date: August 10, 2006

To: All FMS Employees

From: Kenneth R. Papaj
Commissioner

Subject: Cobell and Tribal Trust Litigation – FMS Retention Requirements

All FMS employees are again reminded that FMS remains subject to continuing court orders and Treasury directives, requiring us to retain and safeguard all documents, data and tangible things that relate to Individual Indian Money (IIM) and Tribal trust funds and assets, indefinitely. To ensure that we remain in compliance with the court orders and directives, **please continue to adhere to the following FMS requirements:**

1. Do not destroy any documents, data or tangible things unless you have received written approval from the Chief Counsel. This rule applies to all documents, data and tangible things, whether litigation-related or not. Prepare a disposition request, following the instructions contained in the Chief Counsel's March 7, 2000 memorandum entitled "Process for Obtaining Disposition Approval" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page). The only exception to this rule is for "obvious non-record materials," as described in the attached "Quick Reference Guide."

2. Continue copying or forwarding all Cobell-related and Tribal-related e-mail and other electronic documents to their respective dedicated mailboxes ("Cobell Archive@fms" for Cobell-related e-mail/electronic documents and "Tribal Mailbox@fms" for Tribal-related e-mail/electronic documents). To insert a mailbox address on an e-mail, simply type "Cobell" or "Tribal" and press the "Enter" key. You may delete your copy of any e-mail or other electronic document sent to these mailboxes.

Nancy Fleetwood/BPD
08/21/2006 12:44 PM

To All - BPD (Business use only!)
cc IIM Mailbox@BPD
bcc
Subject IMPORTANT REMINDER TO ALL EMPLOYEES

History: This message has been forwarded.

I'd like to remind all employees that BPD remains subject to a court order that governs the retention of records relating to the Individual Indian Money (IIM) trust fund and IIM trust assets. To ensure compliance with this court order, you should not destroy any documents or data pertaining to the following subjects without written approval from the Chief Counsel or his designee:

- IIM deposit fund investment records
- IIM accounts and accounts held in trust by the Department of the Interior
- Savings bonds held in trust form of registration by the Department of the Interior
- Correspondence (internal and external) relating to Individual Indian Money
- Electronic communications, such as e-mails and Internet messages, relating to the subjects above, unless those communications have been forwarded to the *Cobell* mailbox.

You should continue to copy or forward all e-mails relating to the IIM trust fund, IIM trust assets, and the *Cobell* litigation to the dedicated IIM Mailbox. To insert the mailbox address on an e-mail, simply type "IIM Mailbox" and press the "Enter" key.

The Federal Reserve Banks have also been instructed not to destroy any fiscal agency records unless they have received specific permission in writing from Treasury authorizing the destruction. Please refer any inquiries from FRB personnel regarding record retention to Jimmy Phillips at (202) 504-3683, fax number (202) 504-3630. Don't attempt to give guidance on record retention matters to any FRB employee.

I appreciate your continued compliance with these instructions and encourage you to occasionally review the pertinent memoranda and e-mails, which are posted on PD Web under the Office of the Chief Counsel's (OCC) website. Just click on the office link "OCC" and then click on "*Cobell v. Norton*," which appears in the "Litigation" section.

Thanks again for the great support you have shown in helping Public Debt comply with a very challenging court order.

Attachment I

Image: DONet/Portal Image Banner

## Litigation Obligations and Directives

### Office of the General Counsel

**Directive From General Counsel To All Departmental Offices Employees Concerning Cobell Litigation**

By order of the Court in Cobell v. Norton, Departmental Offices employees must preserve all documents and records, whether in paper, electronic, or other form, that are relevant to any aspect of the government's responsibilities with respect to the individual Indian money trust. Such responsibilities include, but are not limited to, management, administration, collection, disbursement, investment, and accounting of trust funds.

To comply with the various court orders to which we are subject in Cobell v. Norton, to make it easier to manage and retrieve electronic mail as needed, and to help ensure that our electronic mail will continue to operate, I am requesting that you do the following things:

**Step One: Search for Previous E-Mails You Have Sent or Received**
Search your e-mail, including "Inbox," "Drafts," "Message Log," and all "Folders" and "Archives," for anything that relates in any way to the Cobell litigation, Individual Indian Monies, or Department of Interior investments on behalf of individual Indians. Forward any e-mails that you find on this subject (including attachments and retaining forwarding history) to "Cobell" or Cobell@do.treas.gov. In an effort to manage electronic mail, we have created this dedicated mailbox for Cobell-related and/or discussions relating to Individual Indian Money account.

**Step Two: E-Mails That You Send in the Future**
Beginning immediately, send a "cc" (not a "bcc") of all e-mails (including attachments) that you initiate, that relate in any way to the Cobell litigation, Individual Indian Monies or Department of Interior investments on behalf of individual Indians, to "Cobell."

**Step Three: E-Mails That You Receive in the Future**
Also beginning immediately, forward all e-mails that

**About Us**

Contacts
Page Owner

**Home**

you receive (including attachments and retaining forwarding history) that relate in any way to the Cobell litigation, Individual Indian Monies or Department of Interior investments on behalf of individual Indians, to "Cobell," unless you can tell from the message that the e-mail has already been sent to the "Cobell."

If you have questions on this process or the retention of documents, call Thomas McGivern, Counselor to the General Counsel, at 622-2317.

If you need help in formulating e-mail searches or forwarding messages, or have questions on the "Cobell" mailbox, contact the HelpDesk at 622-1111.

---