# Exhibit 8

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NAVAJO NATION, f.k.a. NAVAJO TRIBE OF INDIANS, Plaintiff | Case No. 1:06-cv-00945-L |
| | Judge Francis Allegra |
| v. | |
| UNITED STATES, Defendant | DECLARATION OF ETHEL ABEITA |

I, Ethel Abeita, as Director of the Office of Trust Records, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I have held the position of Director, Office of Trust Records (OTR), Office of the Special Trustee for American Indians (OST), Department of the Interior (Interior), since August 2002. OTR is responsible for the management of the Bureau of Indian Affairs (BIA) and OST records programs consistent with the requirements of 44 U.S.C. Chapter 31.

2. I have worked for the Federal Government for over twenty years. I was formerly the Assistant Regional Solicitor of the Southwest Regional Office in Albuquerque, New Mexico. In January 2000, I became the Deputy Regional Director for the BIA's Southwest Regional Office and held that position until I was detailed to the Office of Trust Records in August 2002.

3. In my new position at OTR, I immediately began working with the Assistant Deputy Secretary, Dr. Abraham Haspel, to develop a Strategic Plan ("OTR Work Plan") to identify and address specific weaknesses in BIA's and OST's records management programs.

4. A key component of the OTR Work Plan was to centralize all Indian Affairs records in a safe and secure storage facility. Centralization had already begun when I joined OTR. Indian Affairs records located at the various regional Federal Records Centers were being transshipped to the Federal Records Center at Lee's Summit, Missouri.

5. On September 12, 2003, Interior and the National Archives and Records Administration ("NARA") signed a Memorandum of Understanding ("MOU") to consolidate all inactive Indian records in the possession of BIA and OST, and related Interior fiduciary trust records at a new Federal Records Center, the American Indian Records Repository ("AIRR") in Lenexa, Kansas.

6. The AIRR was dedicated on May 4, 2004. It is a state-of-the-art facility, built to archive standards. This underground record center maintains the documents in a secure, climate-controlled environment, with controls for particulate matter and ultraviolet light. The AIRR has sufficient future capacity to hold Interior's American Indian records, as projected for the immediate future.

7. Access to the AIRR is strictly controlled. The stacks are closed to all but NARA staff members. An advance appointment is required to do research at the AIRR, and everyone is required to sign an agreement to handle the documents in accordance with

proper procedures. A copy of the Research Agreement is attached as Exhibit 1. All visitors must also watch a training video which advises on those procedures, and also the criminal penalties for theft or destruction of federal records.

8. All research at the AIRR is conducted in monitored rooms. Each researcher may work on only one box and one file at a time, to preserve the integrity of the boxes.

9. Because of the superior conditions for preserving records at the AIRR , Interior has a strong policy of shipping inactive records to the AIRR as soon as possible. This policy was articulated in a May 5, 2005 memorandum from James Cason, Associate Deputy Secretary, and reiterated in memoranda circulated in 2006 and 2007. Over 150,000 boxes of inactive BIA and OST records have been shipped to Lenexa, Kansas. These boxes have been indexed, including 14,086 boxes of records from the BIA Navajo Region.

10. Inactive records are moved from BIA and OST locations in compliance with "Guidance and Procedures" issued by OTR. A copy of The Guidance and Procedures is attached as Exhibit 3. These procedures include detailed instructions for completing a Move Request which must be approved before records can be sent to the AIRR and how each box is to be labeled, inventoried, and prepared for shipment.

11. When boxes of inactive records are received at the Lenexa Annex, the shipment is verified for completeness. The boxes are then indexed and the data is input in the Box Index Search System ("BISS"), an electronic file level index which lists the contents of the boxes. The index provides information at the file level for general trust program records (i.e., the Office of Law Enforcement Services).

12. Fiduciary trust program records are indexed at the document level, meaning that every document in a file folder, or where there are no folders, every document in a box is indexed. Each fiduciary trust document is assigned its own standard identifiers, such as document type, date and account number if available. The BISS classifies 5754 specific types of documents in 30 identified document categories.

13. Boxes of inactive records are shipped from the originating offices by accession, which could consist of a shipment of only one box. The indexers open each box within an accession, record box and file title information, determine the document types within the file/folder, and categorize these documents within the 30 document-type categories by date, when indexing trust records. All information on the outside of the box, typically including where it originated and its accession, is entered into the BISS as a part of the box title. The boxes undergo quality control as the indexers finish each box, and the contractor has a quality assurance process in place. Upon request, BISS training is provided to researchers at the AIRR.

14. OTR's contractor, Labat Andersen, provides assistance to the BIA and OST Offices in preparing inactive records for shipment to the AIRR. A move schedule is developed by OTR in consultation with the contractor. Several factors are considered in scheduling a site for shipping assistance, including readiness of the BIA/OST records in the field, any urgent needs to move documents at risk, and weather conditions as they relate to the working environment for the contractors that will be preparing the boxes for shipment. The BIA Navajo Region has communicated to OTR that it has approximately 2,000 boxes of inactive records to be transferred to the AIRR. Upon

availability of OTR contractor resources, we anticipate providing the BIA Navajo Regional staff with assistance to prepare the inactive records for shipment and arrange for delivery to the AIRR. This includes: inventorying, packing, shrink-wrapping and completion of move request paperwork. Once a firm moving date had been established for the Navajo inactive records, in part based on contractor availability, the contractor will be sent to complete those actions. Timely shipment to the AIRR of inactive records such as those currently in the BIA Navajo Region is an important priority of OTR.

15. Although the AIRR's principal purpose is not litigation-related, it provides a superior environment for the production and examination of documents in that context as well.

16. In addition to providing a safe storage and research facility for inactive records at the AIRR, OTR has taken steps to preserve and protect active records. 16 BIAM contains NARA-approved records retention schedules that call for the indefinite retention of all categories of Indian fiduciary trust records. Agency personnel are made well aware of this permanent institutional policy.

17. Additionally, in March 2007, I received a notice sent out by Larry Jensen, the Deputy Solicitor, advising of the new tribal trust litigation, including this case filed by the Navajo Nation. The notice was addressed to all employees and contractors at all Interior offices and bureaus that handle Indian trust documents, reminding them that all such records must be preserved, including electronically stored information.

18. OTR conducts records training for BIA and tribal personnel on the proper management of Indian trust records. Over 100 different training events were held last

year, at OTR headquarters and various locations around the country. Between October 2004 and May 2007, OTR trained 1,630 personnel from BIA and OST, and 586 tribal personnel. 156 records contacts were trained from the BIA Navajo Region. OTR trains new records contacts as they are identified, and also provides continuing training for those previously trained. An overview of OTR records training, the table of contents from OTR's records training manual, and a topical agenda are attached as Exhibit 2.

19. OTR has adopted and implemented policies and procedures that are intended to and succeed in preserving Indian trust records for future generations, and making them accessible in an organized way for all interested parties. These purposes would be thwarted by the entry of the order requested by plaintiff in this case, which would require BIA to maintain documents on the Navajo reservation for up to five months, whether or not OTR was ready to assist in moving them to the AIRR. Leaving the inactive records in the field locations would place the records at greater risk of destruction by accidental causes.

ETHEL J. ABEITA
Director
Office of Trust Records

Executed this 20th day of June, 2007

# Abeita Declaration

# Exhibit 1

**Office of the Special Trustee for American Indians**
**American Indian Records Repository**

**Research Agreement**

The purpose of this research agreement is to establish research requirements for individuals that use and handle records at the American Indian Records Repository (AIRR); ensure that records at the AIRR are safeguarded, preserved and prevent the destruction of federal records; to document the name and organization that access the AIRR for research purposes; and ensure that all researchers are subject to the provisions of 41 CFR subpart 101.20.3, Conduct on Federal Property, and to all rules and regulations issued and posted or distributed by the Office of the Special Trustee for American Indians (OST) and Office of Trust Records (OTR). Removal and mutilation of records is forbidden by law and is punishable by fine or imprisonment or both (18 U.S.C. 2071).

This information may be transferred to appropriate Federal, State, local or foreign agencies, when relevant to civil, criminal or regulatory investigations or prosecutions; the information may be disclosed by OST/AIRR to an expert, consultant, or a contractor of OST/OTR to the extent necessary for them to assist OST/OTR in the performance of its duties; the information may be disclosed to the U.S. Department of Justice or to a court or adjudicative body in cases involving the mutilation or unlawful removal of records.

**RESEARCH ROOM RULES (Public use of records will be made available in conformance with National Archives Records Administration guidelines)**

The following research requirements must be adhered to in order to conduct research at the AIRR. These requirements are:

1. The AIRR premises are protected by electronic and video surveillance systems. Upon arrival at the AIRR, all visitors are required to report to the main entrance. Thereafter, all authorized individuals will be informed to use designated entry points to enter and exit the facility.

2. Only authorized individuals are allowed access into the AIRR. No other visitors are allowed to accompany the authorized individual. A federal or state issued photo identification card must be presented upon entering the AIRR.

3. Authorized individuals are assigned an OTR AIRR Temporary Visitor's Badge which must be visible and worn above the waist at all times while in the facility.

4. Established research hours are Monday thru Friday from 8:00 a.m. – 4:30 p.m. Anyone scheduled to research earlier or later than the identified time will need to make prior arrangements with the Chief for the Division of Records Operations (or designee) of the AIRR.

5. Personal property is subject to inspection by the On-Duty Security Guard or an AIRR employee. (41 CFR 102.20.301) Personal property is defined as jackets, coats, purses, backpacks, handbags, brief cases, attaché bags, lunch bags, authorized laptop computers, etc. Weapons such as firearms, knives (including small pocket and steak knives), tazers, stun-guns, mace and pepper spray are not allowed in federal government facilities. Possession of a firearm or weapon in this Federal facility is a federal crime regardless if a license to carry a concealed handgun is authorized (Title 18 1SC, Sec. 930).

6. Personal property such as purses, backpacks, brief cases, etc., must be stored in lockers which are available in designated areas only. You will need to bring your own lock to secure your personal belongings. Coat racks are available to hang overcoats, raincoats and similar apparel.

7. At no time are personal computers, laptops, personal digital assistants (PDA's), tape recorders, and hand held photo taking devices allowed in the facility. Official use laptop computer must be authorized by the Chief for the Division of Records Operations (or designee) and subject to inspection upon entry into the AIRR.

8. Notes, references, lists of records to be consulted and other materials may be admitted if they are essential to the authorized individual's research work. However, the authorized individual must present these materials to the Chief for the Division of Records Operations (or designee) upon entrance into the AIRR. These materials will be subject to inspection by the On-Duty Security prior to exiting the AIRR.

9. Use of pens, markers, highlighters and colored pencils are prohibited. AIRR provides Number 2 pencils and paper upon request.

10. Eating, drinking, smoking, chewing gum, smokeless tobacco or disruptive behavior is prohibited.

11. Phone calls are limited to **brief <u>local calls only.</u>**

12. Researchers must exercise all possible care to prevent damage to the records. Prior to returning to the research room, authorized individuals must ensure hands are clean and free from lotions and hand sanitizers. Disposable gloves and masks are available upon request.

13. Records must not be leaned on, fastened with clips or rubber bands, written on, folded, traced, or handled in anyway to cause damage. Use only stainless steel staples or stainless steel paper clips to reassemble documents back together. If documents are rubber banded together, remove the rubber band then place documents into an accordion file then re-file back into the box. All of these supplies will be furnished upon request.

14. Limit your research to one box at a time. Further limit your researching to one folder within the box. Use a Charge-Out card as an indicator to return the research folder to its original order within the box. Do not leave folders out and boxes open for any period of time while away from the research room. Boxes must be returned to shelving at the end of the day.

15. Microfilm readers are limited. A researcher may use a reader as long as necessary if no one else is waiting. If others are waiting, a three (3) hour limit per day will be imposed, which may be reserved prior to the research. If others are waiting, a reservation will be held for 15 minutes before being relinquished to the next researcher. Microfilm must be handled with white or plastic gloves to avoid smudging the film.

16. Researchers whose duties require handling Privacy Act records shall take care to protect the integrity, security, and confidentiality of the records at all times. Researchers shall not disclose any information contained in a Privacy Act systems of record by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of the individual to whom the record pertains. The Privacy Act of 1974, Title 5, U.S.C. 552a, contains provisions for criminal penalties for knowingly and willfully disclosing information unless properly authorized.

17. Duplication fees can be obtained from the AIRR.

18. When in doubt on how to handle records within a box, consult an AIRR employee.

Failure to abide by these rules, written or reference above, or if a researcher by his/her actions demonstrates that they present a danger to the records or annoyance to other researchers or employees, may result in the revocation of the researcher's rights and privileges.

Researchers can have their research privileges revoked for sixty (60) days if they refuse to follow the rules of the AIRR records center. The researcher's organization will receive a written notice from the Director of OTR within five (5) working days of the decision to revoke the privilege. Revocations may be appealed to the Office of Trust Records within thirty (30) days of the effective date of revocation. If the revocation is upheld or if no appeal is made, the researcher's organization may apply for research privileges after the ending date of the revocation. Access to the AIRR will be denied during any appeal period.

**I HAVE READ AND AGREE TO ABIDE BY THE RULES AND REGULATIONS, AS IDENTIFIED IN THIS AGREEMENT.**

PRINTED NAME SIGNATURE DATE

ORGANIZATION CONTACT NUMBER

**FOR AIRR USE ONLY**
(DO NOT WRITE BELOW THIS LINE)

NOTES (Include identification credentials, letters of authorization, etc)

# Abeita Declaration

# Exhibit 2

Office of the Special Trustee
OFFICE OF TRUST RECORDS
**Division of Records Management Policies, Procedures and Training**
4400 Masthead, NE, Room 130I.
Albuquerque, NM 87109

## BIA/OST RECORD CONTACT RECORDS TRAINING - 2 ½ Days

This training is designed to provide Bureau of Indian Affairs and the Office of the Special Trustee for American Indian (OST) policy, guidance and support for records management activities within the BIA and OST. In January, 2004, OTR requested that BIA and OST name a Records Contact for their respective regional or program offices. The Records Contact must attend the Records Contact Records Training which will outline their responsibilities for Records Management Activities.

The responsibilities of these records contacts is to be the first point of contact for information regarding records management for their organization by being able to field general records questions; direct more complex records questions from staff to the appropriate OTR records contact; coordinate and assist the OTR Field Records Liaisons with any special projects or issues related to records; and disseminate all records management policy, guidance, instructions to all employees in their regional or program office. This training comprises of hands-on activities for identifying administrative and program records; preparing labels for folders; preparing a file maintenance and disposition plan; and preparing and submitting inactive records to the American Indian Records Repository (AIRR).

In this training session, Records Contacts will:

- Learn how to distinguish a record from a non-record
- Become familiar with record schedules
- Learn the basic principles of Files Management
- Learn how to identify a Trust Record
- Know what a Trust Record is
- Set up and maintain files
- Create a Files Plan
- Ship inactive records to the AIRR
- Prepare a Records Move Plan
- Research & Retrieve records form the AIRR

## TRIBAL RECORDS MANAGEMENT BRIEFING – 2 Days (Introduction to the Action Plan)

This briefing provides records management awareness on policy, guidance and support for records management activities for Tribal governments. This briefing is designed to inform tribal leaders, program managers and designated record keepers of the importance of creating a good recordkeeping program which will preserve and store important documents, pictures and other record types, and provide guidance on setting up and maintaining a records management program that will best fit the need of their organization. This briefing targets tribal governments that <u>have not</u> established a records management program but are interested in obtaining technical assistance from OTR in establishing and implementing a records management program.

Topic discussions include:

- **Office of Trust Record Responsibilities:** Overview on the Office of Trust Records (OTR) responsibility for providing policy, guidance and directives on records management programs to the Tribes.
- **Indian Affairs Records Management Manual:** Participants are provided recommendations on the use of policies and procedures.
- **Life Cycle of Records:** Concept discussion on records that are processed through the three stages of a lifecycle. These stages include creation, maintenance and use, and the disposition (storage or destruction) of records.
- **Records:** What is a record? Processes for identifying record material.

- **Non-Records:** Processes for identifying, and managing non-record materials within program offices.
- **Record Schedules:** An overview on the importance of developing, implementing and using a records schedule to cycle active and inactive records within a program office that will identify records to preserve and store and identify which records to destroy.
- **Storage and Safeguarding Records:** Discussion includes establishing and maintaining internal and external controls for the storing, preserving, and safeguarding active and inactive records.
- **Vital Records:** A summary on establishing and implementing a vital records program to ensure the continuity of program operations in the event of an emergency or disaster.
- **Litigation Records:** Participants will receive recommendations on handling and managing records that pertain to litigation cases.
- **Privacy Act Records:** The importance of establishing, maintaining and complying with tribal laws for records that contain Privacy Act information.

## TRIBAL RECORDS MANAGEMENT TRAINING – 2 Days (Utilizing the BIA/OST Records Training Workbook)

This training is designed for tribal governments that are interested in adopting the BIA and OST policy, guidance and recordkeeping requirements for establishing and implementing a records management program. This training comprises of hands-on activities for identifying administrative and program records; preparing labels for folders; and preparing a file maintenance and disposition plan.

In this training session, Records Contacts will:

- Learn how to distinguish a record from a non-record
- Become familiar with record schedules
- Learn the basic principles of Files Management
- Learn how to identify a Trust Record
- Know what a Trust Record is
- Set up and maintain files
- Create a Files Plan

## BEST RECORDS MANAGEMENT PRACTICES FOR AMERICAN INDIAN TRIBES (Implementation of Action Plan

This briefing provides basic records management recordkeeping requirements on developing and establishing policy, guidance and support for records management activities for Tribal governments. This course is designed to inform tribal leaders, program managers and designated record keepers of the basics of establishing and implementing sound recordkeeping requirements. **This training targets tribes that have an interest in further developing their own records management program based upon the assessment needs of the tribe and with technical assistance from the Office of Trust Records (OTR).**

Topic discussions include:

- **Employee Responsibilities:** Employees are taught in the briefing, of the responsibilities and accountability of ensuring adequate and proper documentation of organization, functions, policies, decisions, procedures and essential transactions of office operations and activities.
- **Life Cycle of Records:** Concept discussion on records that are processed through the three stages of a lifecycle. These stages include creation, maintenance and use, and the disposition (storage or destruction) of records.
- **Determine Records from Non-Records:** What is a record? Processes for identifying record material and managing non-record materials within program offices.
- **Record Schedules:** An overview on the importance of developing, implementing and using a records schedule to cycle active and inactive records within a program office that will identify records to preserve and store and identify which records to destroy.
- **Storage and Safeguarding Records:** Discussion includes establishing and maintaining internal and external controls for the storing, preserving, and safeguarding active and inactive records.

- **Vital Records:** A summary on establishing and implementing a vital records program to ensure the continuity of program operations in the event of an emergency or disaster.
- **Litigation Records:** Participants will receive recommendations on handling and managing records that pertain to litigation cases.
- **Privacy Act Records:** The importance of establishing, maintaining and complying with tribal laws for records that contain Privacy Act information.

# TABLE OF CONTENTS

| Section | Page No. |
|---|---|
| Terminology and Acronyms | *Pages 1-5* |
| Introduction | *Page 6-18* |
| Regional Records Liaisons | *6* |
| Records Contacts Responsibilities | *10* |
| Indian Affairs Records Management Manual (IARMM) | *15* |
| Teamwork | |
| Narrative | *Page 1* |
| MODULE A- Records Management (IARMM 1.1) | *Page A-1 thru A-19* |
| Records Management Goals | *A-2* |
| Record Life Cycle | *A-3* |
| Ways to Improve Records Management | *A-5* |
| Record Schedules | *A-6* |
| Narrative | *Pages 1-3* |
| MODULE B - Creation (IARMM 2.0) | *Page B-1 thru B43* |
| What is a Record? | *B-2* |
| What is an Indian Fiduciary Trust Record? | *B-4* |
| Personal Papers vs Government Papers | *B-34* |
| E-mail | *B-39* |
| Permanent vs. Temporary Records | *B-39* |
| Administrative vs. Program Papers | *B-40* |
| Files Types | *B-40* |
| *Activity 1 – Identifying Administrative Documents* | *Activity 1-1 thru 1-4* |
| *Activity 2 – Identifying Program Documents* | *Activity 2-1 thru 2-8* |
| Narrative | *Pages 1-5* |

| Section | Page No. |
|---|---|
| MODULE C - Records Maintenance and Use (IARMM 3.0) ......... | *C-1 thru C-44* |
| Record Maintenance Requirements | |
| File Folder Labels | *C-8* |
| Files Maintenance & Disposition Plans | *C-13* |
| Storing & Safeguarding | *C-21* |
| Records in Jeopardy | *C-30* |
| Freedom of Information Act | *C-40* |
| Privacy Act Records | *C-42* |
| *Activity 3 – Preparing Administrative Labels* ........................ | *Activity 3-1 thru 3-3* |
| *Activity 4 – Preparing Program Labels* ........................ | *Activity 4-1 thru 4-6* |
| *Activity 5 – Preparing a Files Maintenance & Disposition Plan* | *Activity 5-1* |
| Narrative ........................................................................ | *Pages 1-7* |
| MODULE D – Records Disposition (IARMM 4.0) ......................... | *Page D-1 thru D-61* |
| Records Transfer | *D-3* |
| Box Inventory | *D-7* |
| Record Move Plan Package | *D-19* |
| Interfiles | *D-30* |
| Records Retrieval | *D-33* |
| Removal and Destruction | *D-58* |
| *Activity 6 – Preparing an Inventory*............................. | *Activity 6-1 thru 6-17* |
| *Activity 7 – Preparing a Record Move Request Form*......... | *Activity 7-1* |
| Narrative........................................................................ | *Pages 1-7* |
| MODULE E - Vital, Frozen & Litigation Records (IARMM 5.0 & IARMM 8.0) ............................................ | *Page E-1 thru E-15* |
| Vital Records | *E-2* |
| Emergency Operating or Critical Period Records | *E-6* |
| Legal & Financial Rights Records | *E-6* |
| Litigation & Frozen Records | *E-8* |
| Narrative ........................................................................ | *Pages 1-3* |
| GLOSSARY......................................................................... | *PageG-1 thru G-11* |

# AGENDA
## RECORDS CONTACT TRAINING

| | |
|---|---|
| **DAY ONE** 8:30 a.m. – 4:30 p.m. | |
| 8:30 a.m. | Opening Remarks<br>(Housekeeping Rules, Introductions, Pre-Test ) |
| 9:00 a.m. | **MODULE A - RECORDS MANAGEMENT** |
| 10:00 a.m. | **MODULE B - CREATION**<br>*Quiz: Is it a Record?* |
| Lunch 11:30am – 12:45pm | |
| 12:45 p.m. | *Activity 1- Identifying General Admin. Documents*<br>*Activity 2 – Identifying Program Documents* |
| 2:00 p.m. | **MODULE C - RECORDS MAINTENANCE AND USE**<br>*Activity 3 – Preparing file labels (General Admin. Documents)*<br>*Activity 4 – Preparing file labels (Program Documents)* |
| **DAY TWO** 8:30 a.m. – 4:30 p.m. | |
| 8:30 a.m. | Records Maintenance continued |
| 10:00 a.m. | Files Maintenance and Disposition Plan<br>*Activity 5 – Preparing a Files Plan* |
| Lunch 11:30am – 12:45pm | |
| 12:45 p.m. | **MODULE D - RECORDS DISPOSITION**<br>*Activity 6 – Preparing an Inventory and an SF-135* |
| 2:30 p.m. | Records Disposition continued<br>*Activity 7 – Preparing a Record Move Plan* |
| **DAY THREE** 8:30 a.m. – 12:00 p.m. | |
| 8:30 a.m. | Records Disposition continued |
| 10:00 a.m. | **MODULE E - VITAL, FROZEN & LITIGATION RECORDS** |
| 11:00 a.m. – 12:00 p.m. | Wrap-Up, Review, Post-Test, Evaluations, Certificates |

** 10 minute breaks scheduled on the hour.*

# Abeita Declaration

# Exhibit 3

# United States Department of the Interior

OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS
Albuquerque, NM 87109

TAKE PRIDE IN AMERICA

Division of Records Management Policies, Procedures and Training

MAR 24 2006

Memorandum

To: Director, Bureau of Indian Affairs
Director, Office of Law Enforcement Services
Director, Office of Indian Education Programs

Through: Chief Information Officer, Office of the Special Trustee for American Indians

From: Director, Office of Trust Records (OTR)

Subject: Guidance and Procedures to Follow when Requesting Approval to Move Records

On July 19, 2004, OTR issued guidance and procedures to be used to obtain approval to move **inactive** records to the American Indian Records Repository (AIRR) – Annex in Lenexa, Kansas. Effective immediately, this memorandum supersedes the July 19, 2004 guidance. The Record Move Plan Package (Move Request form, Chain of Custody Plan, and records inventory) is to be used for all record moves that require approval from OTR. The only exceptions are identified as follows:

- Paragraph 19 Cobell Records
- Records of Tribes named in the Assistant Deputy Secretary's December 16, 2003 Memorandum:
  "Active and inactive Tribal records of the Standing Rock Sioux Tribes, the Assiniboine and Sioux Tribes of the Fort Peck Reservation, the Shoshone-Bannock Tribes of the Fort Hall Reservation, Jicarilla Apache Nation, Pueblo of Laguna, and the Delaware Tribe of Oklahoma."

Records for above listed Tribes still require the Associate Deputy Secretary's approval and use of the Associate Deputy Secretary's Record Move Request form and Chain of Custody Plan.

The attached guidance and procedures are to be used to obtain approval for moving **inactive** records to the AIRR-Annex in Lenexa, Kansas. The guidance and procedures are provided to assist you and your staff in preparing the Records Move Plan Package. The records inventory, Chain of Custody Plan and Record Move Request forms are available in electronic format on the BIA Intranet under category *Data Management*. **All Records Move Plan Packages must be forwarded to the OTR Regional Records Liaison (RRL) for processing and not directly to**

**the OTR office in Albuquerque, NM. This will provide the RRL the opportunity to review the Move Plan Packages prior to submission and to correct errors if necessary.**

OTR Records Management Specialists both in Albuquerque and in the field are available to provide technical assistance or any other information you may need as you develop and prepare your requests. Please contact your RRL or call the Division of Records Management Policies, Procedures and Training at (505) 816-1620 if you have any questions.

Attachments:

1. Guidance and Procedures to Follow when Requesting Approval to Move Records to the AIRR-Annex in Lenexa, Kansas
2. Instructions for Preparing a Records Inventory with two examples
3. Record Move Request **Revision 2** (form) – Director, OTR Approval and Chain of Custody Plan
4. Listing of Regional Records Liaison's (RRL's)

cc: Acting, Deputy Assistant Secretary for Information Resources Management – Indian Affairs
Director, Office of Information Policy – Indian Affairs
Central Office Directors
Regional Directors
Agency Superintendents

*Attachment 1*

**Guidance and Procedures to Follow when Requesting Approval to Move Records To the American Indian Records Repository**

1. The BIA Originating Responsible Official (ORO) will prepare the following (Records Move Plan Package) for submission to the Regional Records Liaison:

   1) Record Move Request form
   2) Chain of Custody Plan
   3) Records Inventory
   4) **The Records Transmittal and Receipt (SF-135) is not required by OTR but may be prepared as an option by the ORO.**

2. The ORO must forward all original documentation to the OTR/Regional Records Liaison (OTR/RRL) for processing:

3. The OTR/RRL will review the Record Move Request form, Chain of Custody Plan, and Records Inventory for completeness. The OTR/RRL will contact the ORO to discuss and clarify discrepancies and/or necessary changes.

4. After review, the OTR/RRL will forward all original documentation for approval to:

   Office of Trust Records
   Division of Records Management Policies, Procedures and Training
   4400 Masthead N.E.
   Albuquerque, NM 87109
   (505) 816-1620

*Note: The ORO should not seal box one of the accession. Upon receipt of approval, place the Move Plan Package in box one of each accession. The ORO may prepare the boxes for shipment but must not ship the boxes to AIRR without an approved Record Move Request form.*

5. When the Record Move Plan Package has been approved by the Director, OTR, a copy of the approved Records Move Request form will be provided to the OTR/RRL and the OTR/RRL will provide a copy to the ORO.

6. If the Record Move Request has been *disapproved* by the Director, OTR, the Records Management Specialist will fax a copy of the disapproved Record Move Plan Package along with a disapproval explanation to the OTR/RRL.

7. The OTR/RRL will contact the ORO to discuss the disapproval and, if applicable, clarify discrepancies and/or changes. The ORO will either complete a new Move Plan Package, or modify the existing Package.

8. The ORO will send the new or modified Record Move Plan Package to the OTR/RRL for review and processing.

9. The ORO must include a copy of the *approved* Record Move Request form and all supporting documentation (Chain of Custody Plan and Records Inventory) in box one of

the accession. After all required documents have been placed inside box one, the box should then be sealed.

10. The ORO will mark the boxes with the Accession Numbers provided on the Record Move Request form from OTR. The "Accession Number" should be written on the upper left hand corner and the "Agency Box Number(s)" should be written in the upper right hand corner of the FRC boxes.

11. **The ORO will notify the Destination Responsible Official (DRO), when the shipment has left its office and provide the DRO, with an approximate date for arrival at the destination office.**

Destination Responsible Officials:
Lena Mills, (913) 825-7800; Fax: (913) 825-7875

12. The DRO is responsible for certifying the successful move by completing and signing item 5 of the Record Move Request and ***within two working days of the successful move***, the DRO is responsible for forwarding a ***copy***, via fax, of the completed Record Move Request form to the ORO, respective RRL and to the Division of Records Management Policies, Procedures and Training Office at (505) 816-1653, Attention: Marsha Ruiz.

13. If for any reason the shipment is unsuccessful, the DRO must contact the ORO immediately. The ORO will contact the carrier immediately to initiate the trace for the boxes not received.

14. The ORO and DRO will document actions taken to resolve the unsuccessful shipment until the situation is corrected and include the documentation as part of the file to document the records transfer process as described in item 15 below.

15. The DRO will prepare a report with documentation to the Director, OTR, if the transfer cannot be corrected and is unsuccessful for more than 5 days from the date the shipment should have been received by the DRO.

16. The ORO and DRO are responsible for creating and maintaining a file to document the records transfer process. The Record Move Request form, Chain of Custody Plan, Records Inventory and other supporting documentation will be maintained in accordance with GRS 16 item 2a (2).

*Attachment 2*

# INSTRUCTIONS FOR PREPARING A RECORDS INVENTORY

1. The Records Inventory should be typed or generated with word processing software.
2. **You must choose one of the options below for the inventory of your boxes:**

   **Detailed Inventory.** The following information must appear on ***all pages when the detailed inventory option is selected (See attached Example 1):***

   a. Records Series Number (Schedule number); if there is no current Records Series Number, list as "Unscheduled" with a brief description of the records;
   b. Record Series Title. (If the title does not adequately describe the records, you should provide a brief description of the contents of the documents);
   c. The originating office names (i.e., Bureau of Indian Affairs or Office of the Special Trustee, Trust Funds Management, Region or agency office and program);
   d. City and State;
   e. Box number(s) that the inventory is for;
   f. Box contents listing. This listing includes important file folder identifiers such as dates, contract numbers, names, or any information that specifically identifies **all the file folders in the order they appear in the box.**

   **High-Level Inventory.** The following information must appear on ***all pages when the high level inventory option is selected (See attached Example 2):***

   a. Records Series Number (Schedule number); if there is no current Records Series Number, list as "Unscheduled" with a brief description of the documents;
   b. Record Series Title. (If the title does not adequately describe the records, you should provide a brief description of the documents);
   c. The originating office names (i.e., Bureau of Indian Affairs or Office of the Special Trustee, Trust Funds Management, Region or agency office and program);
   d. City and State;
   e. Box number(s) that the inventory is for;
   f. Box contents listing. This listing includes important file folder identifiers such as dates, contract numbers, names, or any information that specifically identifies the **first and last file folders as they appear in the box. Number the first and last file folder to indicate the total of file folders in each box.**

3. When determining the Records Category, Section 2 (a, b and c) on the Record Move Request form, please use the Trust Definition Matrices to make the determination. If a

file folder or record within a box is determined to be an Indian Fiduciary Trust Record (IFTA), the entire accession should be considered as trust records.

For example, the accession is comprised of 8 boxes of records/file folders. Box 2 contains IFTA records according to the Trust Definition Matrices. All 8 boxes are to be considered as trust records. Section 2a or 2b of the Record Move Request form should be checked. On the inventory you should write "TR" in bold letters next to the file or record identifier. It is only necessary to mark one file or folder identifier on the inventory with the "TR". (See Note in Example 2, *High Level Records Inventory*).

4. For records listed in the trust matrices with an asterisk (*), examine the files to determine if the records are trust or non-trust and following the guidance in item 3 above, check the appropriate box in Section 2 of the Record Move Request form (Trust or Non-Trust box).

**EXAMPLE 1** *Attachment 2*

DETAILED RECORDS INVENTORY

**2306-P3 [2a] (Indian Self-Determination Grant/Contract Files) [2b]**
**Bureau of Indian Affairs, [2c] Great Plains Regional Office [2d]**
**Aberdeen, South Dakota [2e]**

**BOX NUMBER 1** [2f]

[The below section is in reference to 2g]

FY 1985 Contract No. 12345678A Red Scaffold School Board
Lump Sum Incremental Cost Program

[The below bold section is in reference to 3 and 4]
**TR – FY 1985 Contract No. 23456781B Three Affiliated Tribes**
**Jailer/Dispatcher Program**

**FY 1985 Contract No. 34567812C Three Affiliated Tribes**
**Fish, Game and Recreation Program**

**FY 1985 Contract No. 45678123D Three Affiliated Tribes**
**Criminal Justice Program**

**FY 1985 Contract No. 56781234E Three Affiliated Tribes**
**Home Improvement Program**

**BOX NUMBER 2**
FY 1985 Contract No. 87654321G Three Affiliated Tribes
Social Service Program

FY 1985 Contract No. 76543218H Three Affiliated Tribes
Mineral Lease Compliance Program

FY 1985 Contract No. 65432178I Twin Buttes School District #37
Academic Instructional, Food, and Transportation Services Program

FY 1985 Contract No. 54321678J Twin Buttes School District #37
Facilities Management Services Program

FY 1985 Contract No. 43215678K Mandaree School District #36
Academic Instructional, Food, and Transportation Services Program

FY 1985 Contract No. 11145678L UTETC
Operation of UTETC

**EXAMPLE 2** *Attachment 2*

HIGH LEVEL RECORDS INVENTORY

**2306-P3 [2a] (Indian Self-Determination Grant/Contract Files) [2b]**
**Bureau of Indian Affairs, [2c] Great Plains Regional Office [2d]**
**Aberdeen, South Dakota [2e]**

**BOX NUMBER 1** [2f]

[The below section is in reference to 2f]

1 - (First file folder) FY 1985 - Contract No. 12345678A - Red Scaffold School Board - Lump Sum Incremental Cost Program

[The below bold section is an example for paragraphs 3 and 4]

**20 - (Last file folder) TR – FY** 1985 - Contract No. 23456781B - Three Affiliated Tribes - Jailer/Dispatcher Program

**BOX NUMBER 2**
1 - (First file folder) FY 1985 - Contract No. 87654321G - Three Affiliated Tribes - Social Service Program

25 - (Last file folder) FY 1985 - Contract No. 11145678L -- UTETC Operation of UTETC

Note: *Using this option of inventory will not allow you to identify whether the records in the boxes are trust records or not unless the first or last file is in fact a trust record according to the Trust Definition Matrices. If it is known that one file between the first and last file is a trust record, write on the face of that file folder "TR" and identify the entire accession as trust records.*

# UNITED STATES
# DEPARTMENT OF THE INTERIOR

## RECORD MOVE REQUEST
## OFFICE OF TRUST RECORDS APPROVAL

**1. ORIGINATING RESPONSIBLE OFFICIAL INFORMATION: (Please Print)**

| Date: | First Name: | MI: | Last Name: |
|---|---|---|---|
| Office: | Address: | | |

| Originating Responsible Official's Signature: | Telephone: | Fax: |
|---|---|---|

**2. RECORDS CATEGORY: (Check One)**

a. ☐ Inactive Trust Records to the American Indian Records Repository (AIRR)

NOTE: Paragraph 19 Cobell Records require Associate Deputy Secretary's approval
**DO NOT USE THIS FORM**

b. ☐ Inactive Trust Records within BIA, crossing regional boundaries

c. ☐ Inactive Indian/Non-Trust Records to the AIRR

**CERTIFICATION: I certify that these records and boxes being transferred across regional boundaries or to the American Indian Records Repository (AIRR) are NOT trust records.**

Originating Responsible Official's: **Phone #:** Signature: Date:

**3. MOVE AND CHAIN OF CUSTODY PLAN INFORMATION:**

| a. Address where records are currently located: | b. Quantity of boxes to be moved: (Attach description, e.g., inventory or box lists) |
|---|---|
| c. Schedule or Series Number: | d. Method of Transportation (Identify carrier and attach written chain of custody plan) |
| e. Accession Numbers (To be completed by ORO) | |
| f. Receiving Office Phone #:<br>Address: | g. Responsible Official's Name Receiving Box(es): |

**4. APPROVAL BY OTR:**

| Director, Office of Trust Records signature: | Date: |
|---|---|

**5. AIRR DESTINATION CERTIFICATION:** I certify all records and boxes have been moved successfully and were accounted for at the intended destination location.

Date Records Received at the AIRR:

| AIRR Destination Responsible Official's Signature: | Date: |
|---|---|

**TO BE COMPLETED BY OTR**

Date Record Move Request Received: ID#:

☐ Chain of Custody Plan ☐ Inventory or Box Lists

IARM Form 4004 Records Retention Instructions: Retain Record Move Request Form and copies of all supporting documentation (i.e., SF-135, Chain of Custody Plan, Inventory/Box List, etc) in accordance with GRS 16, item 2a(2). REVISION 2 (July 14, 2004).

# CHAIN OF CUSTODY PLAN

Upon receipt of approval of the Record Move Request form, the Responsible Officials at the originating and destination offices will ensure that the following procedures are followed during the transportation and transfer of the records being moved.

## Transporting Records Procedure (Chain of Custody)

1. Records are packed in appropriate storage boxes.

2. Box lists or inventory of records for each box are included inside the first box (box #1).

3. Each box is sealed with tape and boxes are numbered sequentially (e.g. box 1 of 5, box 2 of 5, etc.).

   Number of Boxes: Schedule or Series Number:

4. Check one box only:

   ☐ a. Boxes are taken to (Carrier) pick up location <u>or</u>

   ☐ b. (Carrier) is called to pick-up boxes at sender's office.

5. (Carrier) shipment form is completed and provided to carrier personnel.

6. The ORO, , (item 1 of form) will notify the DRO, Lena Mills at (913) 825-7869 (voice), (913) 825-7875 (fax) when shipment left location and approximate date of arrival at the AIRR.

7. The ORO, , (item 1 of form) retains a copy of the shipment form for tracking purposes in the event that a shipment item is missing.

8. The ORO, , contacts the DRO, Lena Mills at (913) 825-7869 to verify that the records and boxes have been moved successfully and are accounted for at the AIRR.

9. The DRO, Lena Mills is responsible for certifying the successful move by completing and signing item 5 of the Move Request form. ***Within two working days***, the DRO, Lena Mills must forward ***copies***, via fax, to the ORO, the RRL, and to the Division of Records Management Policies, Procedures, and Training, Attn: Marsha Ruiz at (505) 816-1631.

10. The ORO, and the DRO, Lena Mills, will create and maintain a file to document the records transfer process (by shipment). The Record Move Request form, records inventory, Chain of Custody plan and other supporting documentation will be maintained IAW GRS 16 item 2a (2).

# Exhibit 8 A

*National Archives and Records Administration*

CENTRAL PLAINS REGION
17501 WEST 98TH STREET
LENEXA, KANSAS 66219
http://www.nara.gov

# FACSIMILE COVER PAGE

DATE: 5/29/07 TIME: ____:____ (CENTRAL)

NUMBER OF PAGES including this page: ____

TO:
NGC,
Jason Baron

FROM:
CENTRAL PLAINS REGION
REGIONAL RECORDS SERVICES
LENEXA, KANSAS 66219
John Allshouse

PHONE NUMBERS:

FAX: (301) 837-0293

OFFICE: ________

PHONE NUMBERS:

FAX: 913.825.7822

OFFICE:

COMMENTS:
Per our conversation, the original MOU.

Regards,
John A.

**Memorandum of Understanding Between**

**The Department of the Interior and**

**The National Archives and Records Administration**

**Regarding an American Indian Records Repository**

**Located at NARA's Lenexa, Kansas, Regional Records Services Facility**

A Memorandum of Understanding (MOU) is made and entered into between the Department of the Interior (DOI) and the National Archives and Records Administration (NARA) for the purpose of consolidating and preserving on a continuing and long-term basis designated Indian records in the possession of DOI's Bureau of Indian Affairs (BIA) and the Office of the Special Trustee for American Indians (OST), and related DOI fiduciary trust records, as jointly agreed to, at NARA's regional records services facility in Lenexa, Kansas.

**Article I. Background and Objectives**

A. Within DOI, the mission of the BIA is to fulfill its trust responsibilities and promote self-determination for American Indian Tribes, individual American Indians and Alaska Natives (hereinafter collectively referred to as American Indians). BIA develops and implements, in cooperation with Tribal governments, Native American organizations, other federal agencies, state and local governments, and other interested groups, economic, social, educational and other programs for the benefit and advancement of American Indians.

B. Within DOI, OST was established to oversee and coordinate reforms within DOI of practices relating to the management and discharge of the Secretary's trust responsibilities to American Indians.

C. DOI, pursuant to the American Indian Trust Fund Management Reform Act of 1994 (1994 Act) and prior laws, is charged with management of the U.S. Government's trust responsibilities to American Indians, including with respect to records management. DOI established the Office of Trust Records in 1999 to develop and implement a program for the economical and efficient management of trust records, consistent with the 1994 Act, the Federal Records Act, other statutes and their implementing regulations.

D. A core mission of NARA is to assist agencies in the management of their records from the time those records are created, in order to ensure that essential documentation is available to the U.S. Government, today's citizens, and future generations. Pursuant to the Federal Records Act at 44 U.S.C. 2107, when it appears to the Archivist of the United States to be in the public interest, NARA will accept for deposit the records of a federal agency that have sufficient historical or other value to warrant their continued long-term preservation by the United States

Government. Additionally, through its Records Center Program, NARA provides secure, cost-efficient storage and servicing of non-active agency records in facilities that are compliant with 36 C.F.R. Part 1228, Subpart K.

E. NARA's new regional records services facility in Lenexa, Kansas (the Lenexa facility), can accommodate the archival storage of records in accordance with strict NARA facility standards for the preservation of archival records. The Lenexa facility has sufficient future capacity to hold all of the records of the American Indian Records Repository within the scope of the present MOU.

F. DOI and NARA jointly believe that it is in the public interest to consolidate designated, non-active Indian records, presently in the custody of DOI, in the Lenexa facility managed by NARA. It is in the further interest of all parties that the proposed consolidation include Indian records presently stored in NARA's regional records services facility in Lee's Summit, Missouri.

G. Haskell Indian Nations University (Haskell University), located in Lawrence, Kansas, is an accredited four-year college operated and funded by the BIA, with a core mission of being a national intertribal center for teaching, extension and research related to the study of American Indian Nations culture and affairs.

H. DOI and NARA agree that it is in the public interest for Haskell University to develop an archival and records management studies program. The resulting educational, outreach, and training programs to be conducted by the faculty and staff of Haskell University can lend support to the management of Indian records stored at NARA's Lenexa facility.

**Article II. Authority**

Authority for NARA to enter into this MOU is contained in the Economy Act, 31 U.S.C. 1535, the Federal Records Act, 44 U.S.C. 2107 and 2907, and NARA's Records Center Revolving Fund authority, Pub. L. 106-58, Title IV, 113 Stat. 460-61 (1999), codified at 44 U.S.C. 2901 note. The authority for DOI to enter into this MOU is contained in the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. 4001, *et seq.*, the Federal Records Act, 44 U.S.C. 3101, *et seq.*, and the Duties of the Commissioner of Indian Affairs, 25 U.S.C. 2.

**Article III. Framework of the Agreement**

A. NARA agrees to:

1. Establish an "American Indian Records Repository" at NARA's Lenexa facility within the framework of NARA's existing regulations governing regional records center facilities, 36 C.F.R. Part 1228. The American Indian Records Repository will consist of a consolidated collection of non-active Indian records currently residing in the legal and physical custody of DOI, which warrant continued preservation by the U.S. Government in order to

document rights and entitlements, the actions of government, and the national experience. Records to be transferred from DOI to NARA for inclusion in the American Indian Records Repository at the Lenexa facility will be as specified in a series of records transfers, as jointly agreed to by NARA and DOI, utilizing Standard Forms (SF's) 135 and 258. These transfers will be made in accordance with and pursuant to existing and future SF-115 records schedules governing the retention of records, consistent with NARA's practices and policies.

2. Relocate to the American Indian Records Repository at the Lenexa facility Indian records presently stored at NARA's Lee's Summit regional records services facility.

3. Preserve the integrity of the records collection in the American Indian Records Repository by maintaining these records as a separate entity within the Lenexa facility.

4. Build storage space at DOI's request and maintain records within the American Indian Records Repository at the Lenexa facility in accordance with NARA 1571, "Archival Storage Standards," which establishes structural, environmental control, fire safety, preservation, and security standards for appropriate archival storage conditions in NARA archival facilities, or any superseding guidance as authorized and approved by the Archivist.

5. Assist DOI in establishing a program to manage and provide continuing access to Indian records in electronic formats, including at the Lenexa facility.

6. Provide, upgrade, and/or build all facilities necessary at the Lenexa facility to support use of the American Indian Records Repository by DOI staff and contractors, Haskell University faculty and students, and other researchers, including a research room, work spaces, offices, conference room, copying equipment rooms, and additional space as required.

7. Provide for servicing of records in the American Indian Records Repository to DOI staff and to persons authorized by DOI (including Haskell University faculty, staff, and students), in accordance with applicable federal law, and NARA Records Center Program policies and practices.

8. Provide that for any records that have been transferred into the legal custody of NARA pursuant to an SF-258, questions on access to records in the American Indian Records Repository will be referred to the Archivist of the United States or his designated NARA representative.

9. Restrict access to original documents for reference purposes when those documents have been satisfactorily reproduced on microfilm and reference prints or other media are available.

10. Upon request, appropriate NARA components will, in accordance with NARA regulations, make available to researchers at the Lenexa facility copies (including, as appropriate, microfilm copies or scanned images) of existing Indian records in NARA's regional and

Washington, D.C., national headquarters archival collections. Copies of all such requested records will also be incorporated into the American Indian Records Repository at the Lenexa facility.

11. Foster an affiliated relationship with Haskell University, including authorizing NARA staff to participate, to the extent permitted by Federal law, in educational, outreach, and training programs involving DOI and Haskell University, and including NARA support of work-study employment, internships, and similar opportunities for Haskell University students to work at the American Indian Records Repository.

B. DOI agrees to:

1. Until such time as records are transferred to the Lenexa facility, continue to be responsible for the care and preservation of both inactive and current records in its physical custody.

2. Transfer agreed-upon collections of existing Indian records presently in the physical custody of DOI to NARA's Lenexa facility when no longer active or current, for continued maintenance in the American Indian Records Repository, in accordance with applicable NARA regulations and guidance, and in compliance with applicable court orders and DOI record move requirements.

3. Provide adequate funding for the establishment and maintenance of an American Indian Records Repository at the Lenexa facility, including (a) payment of fees for the storage and servicing of records at the facility in accordance with the provisions of NARA's Records Center Revolving Fund; b) reimbursement to NARA for the cost of moving the present collection of Indian records at Lee's Summit to Lenexa, in accordance with III.A.2, *supra*; (c) funding, upon DOI approval, for research room, work spaces, and other office space facilities associated with the American Indian Records Repository, as specified in III.A.6, *supra*; (d) funding, upon DOI approval, for NARA staff costs associated with the educational, outreach, and training programs contemplated under III.A.11, *supra*; and (e) funding, upon DOI approval, for other costs to NARA that arise in connection with continued usage and maintenance of the records within the American Indian Records Repository.

4. Subject to the availability of funds and resources and within existing laws and regulations, will work jointly with Haskell University to identify and create a series of programs and projects involving the study of and continued preservation of Indian records within the American Indian Records Repository at the Lenexa facility. These programs and projects, which will also involve utilization of NARA staff, are expected to include (but would not be limited to): providing for a general program of education, including training seminars and workshops, internships and other work study opportunities; conservation activities of archival materials, including holdings maintenance and preservation copying; archival description and reference functions; and public programs, exhibits and publications.

C. The parties agree:

1. That this MOU will terminate in the event of a lack of funding by DOI of the operations of the American Indian Records Repository, as specified in Article III.B.3, *supra*, or upon 180 days notice of either party.

2. That nothing in this agreement may be construed to obligate either party to any current or future expenditure of resources in advance of the availability of appropriations from Congress. This agreement does not obligate either party to spend funds on any particular project or purpose, even if funds are available. The parties will arrange for any transfer of funds, property or services in separate agreements under applicable authority.

3. That this MOU will be subject to formal periodic reevaluation and possible amendment by the parties at intervals of no less than every five years from original date of enactment.

4. That all press releases and public statements issued by DOI or NARA concerning or characterizing this MOU will be jointly reviewed and agreed to by delegated staff representing each of the undersigned signatories.

Gale A. Norton
Secretary of the Interior

Date: Sept. 12, 2003

John W. Carlin
Archivist of the United States

Date: 9-12-03