UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NAVAJO NATION<br>f.k.a. NAVAJO TRIBE OF INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-945 L<br>Judge Francis M. Allegra |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF RECORD RETENTION ORDER**

Plaintiff, the Navajo Nation, hereby replies in support of its motion for entry of a record retention order ("RRO"). Entry of such an order is necessary because Defendant's asserted recent rigorous record retention regime provides no more protection than its similar, inadequate prior policies and it allows significant relevant documented Indian trust record risks and losses. In turn, the Nation's proposed order is effective and neither overly broad nor unduly burdensome because it is reasonably adapted from prior orders, better assures compliance with existing fiduciary record-keeping duties, and facilitates flexible and proper discovery of Navajo trust records.

## I. ENTRY OF THE RRO IS NECESSARY BECAUSE DEFENDANT'S RECORD RETENTION REGIME IS INADEQUATE AND LEAVES IRREPLACEABLE NAVAJO TRUST RECORDS AT SIGNIFICANT RISK OF LOSS.

To satisfy the first requirement for entry of a record retention order, the Nation must show that it is necessary, because "absent a court order, there is significant risk that relevant evidence will be lost or destroyed—a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004). Defendant does not contest the documented breadth

and depth of its fiduciary record-keeping duties, but asserts that Navajo trust records are not at risk now because Defendant was only "in the process of developing a comprehensive record management program" at the time of the March 2004 *Laguna* RRO ruling, Resp. at 7, and that all examples since then of Indian trust records lost, stolen, destroyed, or at risk are irrelevant, unsupported, or were promptly and adequately resolved, *id.* at 14-27. Defendant improperly disregards that it had relied on the same ineffective program when this Court previously found Indian trust records to be at risk. Defendant also cannot explain away its own numerous admissions that it has since shredded Navajo trust records and lost, destroyed, or left unremediated numerous Indian trust records. Without entry of the requested RRO, Navajo Indian trust records will remain at significant risk.

**A. Defendant's Asserted New and Effective Record Retention Regime Is Neither.**

Defendant's assertion of a newly established and effective record retention regime is wholly undermined by the fact that Defendant made the same assertion based on similar policies in late 2003. In particular, Defendant here explains that the Department of the Interior ("Interior") has issued numerous directives to ensure indefinite preservation of Indian trust records since 2003, especially a March 2007 memo by the Deputy Solicitor. Resp. at 7-9, 18 & Exs. 1-5. Defendant also discusses the establishment and use of the American Indian Records Repository ("AIRR") in a Kansas cave and the training of personnel to preserve Indian trust records. *Id.* at 10-12, 18 & Def.'s Resp. Exs. ("DREs") 6-8. Defendant further discusses implementation of record retention policies at the Department of Treasury ("Treasury"). Resp. at 13-14 & DREs 10-16. All that sounds impressive until one notes Defendant's footnote admission that "[i]n *Jicarilla* and *Laguna*, Defendant pointed out that the agencies potentially affected by the proposed RRO *already had devised and implemented* sound procedures for maintaining the integrity and accessibility of records that were moved, whether electronically or physically[.]" Resp. at 4. n.1 (emphasis added).

Consistent with Defendant's current admission, its opposition to the *Jicarilla* and *Laguna* RROs confirms that the supposedly new and effective record regime is just more of the same failed policies. In opposing the prior RROs in November 2003, Defendant highlighted that "[s]ince 2002, Interior has issued a series of increasingly detailed and comprehensive directives requiring agency employees to preserve and protect all Indian fiduciary trust records." Def.'s Opp'n to Pl.'s Mot. for Entry of RRO at 3, *Jicarilla Apache Nation v. United States*, No. 02-25 (Fed. Cl. Nov. 5, 2003) ("Jicarilla RRO Resp."); *see also id.* at 4-5. Defendant contended that employees had been "thoroughly informed" of these policies and were all accountable. *Id.* at 3. Moreover, Defendant relied substantially on the newly established AIRR in Kansas. *Id.* at 3-6. Defendant also contended that "Treasury has long been operating under procedures that have proved to be effective at safeguarding and retaining its information[.]" *Id.* at 2. These assertions are strikingly similar to Defendant's current claims. Given that this Court previously found "ample support for the issuance of a document preservation order" notwithstanding Defendant's various policies and programs in place in late 2003, *Pueblo of Laguna*, 60 Fed. Cl. at 139, Defendant's current implementation of the same and similar internal policies provides no greater protection now for Navajo trust records, which are not protected by record retention orders in other cases, *see id.* at 139, 141.

For example, the currently highlighted March 2007 Deputy Solicitor memo is only slightly more detailed than the previously highlighted March 2002 Deputy Secretary memo and less detailed than the April 2003 Deputy Secretary memo. *Compare* Jicarilla RRO Resp. at 3, 22 & App. 8-14, 27-28 *with* DRE 5. The current Deputy Solicitor's memo is not inherently more effective than the prior Deputy Secretary's memos, unless it is because the latter is now a self-confessed, convicted felon. *See* Br. Supp. Pl.'s Mot. for Entry of RRO (May 21, 2007) ("Mot.") at 17-19. Moreover, Defendant cannot evade the relevance of the former Deputy Secretary's guilty plea for obstruction

of Congress given that Defendant still relies on six internal directives issued by him, DRE 1-1a, 2-4, 35. Finally, Defendant cannot ignore that Interior's Inspector General testified to Congress just last September that the departmental culture instituted by prior officials like the former Deputy Secretary still "'sustains managerial irresponsibility and a lack of accountability'" including "'intricate deviations from statutory, regulatory and policy requirements to reach a predetermined end[,]'" "'massive project collapses[,]'" and "'failure to hold the leadership of the Department accountable[, which] sets the stage for the remainder of the workforce.'" Mot. at 17 (quoting testimony). Given all this, a court order is needed here in large part because the Nation and the Court cannot safely rely on the old, empty, and unenforceable administrative commitments by Interior officials.

**B. Navajo Trust Records Were Destroyed Just Last Year and Remain at Risk.**

Defendant's second major basis for asserting that entry of an RRO is not necessary is to try to dismiss the numerous examples of Indian trust records lost, destroyed, and at significant risk since completion of briefing on the *Jicarilla* and *Laguna* RROs. This dissembling is no more successful than Defendant's rehashing of its previously failed internal record retention regimes.

Defendant first complains that the Nation cannot establish current risks based on examples from more than three years ago. Resp. at 14. That is true, and that is why the Nation has relied on more than twenty examples from within the last three years, including shredding of Navajo trust records just last year. *See* Mot. at 10-21. Defendant also claims that the AIRR renders moot deficient recordkeeping facilities elsewhere. Resp. at 10-12, 14-15. But this ignores that active Indian trust records are not transferred to the AIRR in Kansas and that inactive Navajo trust records currently remain at admittedly deficient facilities indefinitely, pending record readiness despite limited staff and space, weather conditions, contractor availability, and necessary coordination between Interior offices. *See* DRE 8 ¶¶ 9-10, 14, 16; DRE 9 ¶¶ 11-13, 16-17, 19, 31, 33.

Defendant also wrongly characterizes as "alleged" the shredding of original Navajo trust records last year, which Defendant itself had formally reported to a federal court. *Compare* Resp. 19-20 *with* DRE 28 at 22-23. If Defendant's own court filings cannot establish relevant facts, Defendant cannot be trusted to preserve Navajo trust records on its own, which it absolutely did not do here. And the assertion that there is no evidence that the shredded documents impact the Nation's claims, Resp. at 20, is irrelevant and unfounded. *See Laguna*, 60 Fed. Cl. at 138, 139 n.11. Holding training after the fact cannot recreate or eliminate the fact of shredded Navajo trust records.

**C. Defendant Has Not Promptly or Adequately Resolved Significant Recent Failures Concerning Contaminated and Destroyed Records and IT Security.**

Defendant contends repeatedly that it has promptly and fully mitigated or cured any harm to records involved in cited examples of record destruction. Resp. at 15-27. This is certainly not true. First, Defendant cannot reasonably assert "prompt" remediation of almost 300 boxes of Indian trust records damaged or contaminated by mold, mildew, mouse droppings, or other adverse elements, DRE 19 at 31, when that problem was first reported in April 2004, *Cobell v. Norton*, 224 F.R.D. 1, 2, 6 (D.D.C. 2004), and not concluded until April 2007, DRE 25 at 15-16; *cf.* Resp. at 17 (projecting completion by the third quarter 2007). Defendant also misleadingly asserts that less than 1% of the pages in those boxes were completely illegible. Resp. at 16. Defendant disregards that there may be many pages that were partially or even largely illegible, because the immediately preceding sentence of the supporting report notes that "[o]ut of 283 boxes assessed, 140 boxes were determined to have some records within them where portions . . . are illegible or unclear." DRE 21 at 30.

Next, Defendant cannot say that it fully remediated seven separate incidents of wanton record disposal at the headquarters of the National Records Administration ("NARA") in September 2005 because "25 or so" files of tribal trust records remained unrecovered. DRE 27. Defendant also

wrongly asserts that the *Jicarilla* and *Laguna* RROs were ineffective in preventing that record destruction, Resp. at 18, because the destroyed records concerned "Consolidated Chippewa" files. DRE 27 at 2. To the contrary, the fact that Defendant otherwise cannot even protect Indian trust records at NARA headquarters strongly indicates the insufficiency of Defendant's internal directives and the need for entry of a specifically applicable court order to prevent record destruction.

Defendant also wrongly contends that there is no substantive concern regarding the security of electronic Indian trust records. Out of 280 BIA data backup tapes sent to a contractor for email recovery in late 2005 or early 2006 concerning October 2003 to January 2005, 268 tapes were blank and 12 had only partial data, and the recovery work was only scheduled to begin in April 2007. DRE 25 at 43; DRE 28 at 5-6; DRE 38 at 9. This ongoing problem dating back almost four years concerning official records that may be subject to existing Indian trust litigation preservation orders, *see* DRE 35, is certainly not small and has not been either promptly or fully resolved.

Next, Defendant's submitted information technology ("IT") security declaration wholly fails to respond to the declaration relied on by the Nation from the Director of Information Security and Privacy for the BIA Chief Information Office. The Nation cited specific evidence that as of April 2007, "'BIA IT security is inadequate and ineffective'" and Indian trust data "'remain[s] dangerously insecure and vulnerable.'" Mot. at 20, 23-24 (quoting declaration and citing authority that all Indian trust assets use the same IT security systems). Defendant's failure to address these allegations essentially admits the inadequacy of Interior's IT security. *See* DRE 31 ¶¶ 12, 18. Defendant's declaration also evidences that electronic Navajo trust records are at significant risk because even with a high risk of unauthorized access to an IT system—as documented here for Indian trust records—Interior typically still allows the system to continue to operate. *Id.* ¶¶ 11-12.

Finally, Defendant cannot distinguish the ruling by the D.C. Circuit last year that "the evidence of flaws in Interior's IT security is extensive" and that "an individual with the requisite skills and resources could gain access to many of Interior's systems" and "may indeed . . . even alter" Indian trust data. *Cobell v. Kempthorne*, 455 F.3d 301, 315 (D.C. Cir. 2006); *see id.* at 308-11 (reviewing extensive district court fact findings that Interior did not challenge). While Defendant correctly notes that the injunctive relief standard was not met there, Resp. at 26, that standard does not apply to entry of a preservation order here. *Laguna*, 60 Fed. Cl. at 138 n.8. Instead, the recent appellate ruling shows that Defendant "has inadequate retention procedures in place[,]" *id.* at 138, which is enough to establish the necessity of a preservation order here.

**D. Additional Examples of Record Retention Failures and an Indian Trust Proposal Are Very Relevant to the Necessity of an RRO Here.**

Defendant wrongly disputes the relevance of the theft of computers, flash drives, and CDs from a tribal office operated on behalf of Interior's Office of Special Trustee ("OST"). Resp. at 20. Tribal activities on behalf of OST are relevant because those activities cannot abrogate federal trust duties and must assure adequate protection of trust resources. *See* 25 U.S.C. §§ 450f(a)(2)(B), 450n(2). Moreover, while thieves likely would not be influenced by a court order, Resp. at 20 & 21 n.12, "a preservation order will reemphasize that defendant needs to take extraordinary precautions . . . to prevent . . . destruction or loss of records." *Laguna*, 60 Fed. Cl. at 139.

Defendant also wrongly disputes the relevance of Treasury's loss of 37 boxes with unduplicated check-balancing records in December 2006 and water damage to approximately 324 boxes of check records in two cities in June and July 2006. *See* Resp. at 21-22 (concerning DRE 30 at 1 and DRE 37 at 1). The loss of and damage to numerous Treasury records just last year is surely relevant given Treasury's statutorily mandated role in managing Navajo trust funds. *See* 25 U.S.C.

§§ 161, 161a(a), 640d-30(a); Pub. L. 100-696, §§ 405(a), (c), 102 Stat. 4571, 4591. This is so regardless of whether some of the information may be available from other sources and even though some of it "should" no longer be needed. Resp. at 22 n.13. Indeed, one year later, approximately 2000 water-damaged microfilm cartridges still remain pending remediation. DRE 29 at 1.

Defendant finally misrepresents that the recent Indian trust legislation proposal by Interior and the Attorney General "would in no way modify any trust obligations at issue in the Navajo litigation." Resp. at 19. That proposal is expressly intended to require settlement of "all existing . . . tribal claims for trust accounting, cash and land mismanagement, and other related claims," to relieve the government of "all historical accounting obligations" to Indians, and to prevent claims for any "residual" federal duties. Letter from Dirk Kempthorne, Sec. of Interior, & Alberto R. Gonzales, Attorney General, to Byron Dorgan, Chairman, Comm. on Indian Affairs, U.S. Senate (March 1, 2007) at 1, encl., *available at* indian.senate.gov/public/_files/letterfromkempthorne.pdf. Defendant cannot be trusted on its own to respect tribal trust duties at the same time that it is overtly seeking to divest itself of those duties and unilaterally seeking to preclude adjudication of this case.

## II. THE PROPOSED RRO IS NOT BURDENSOME BECAUSE IT COMPORTS WITH GOVERNING LAW AND IS REASONABLY ADAPTED FROM PRIOR RROs.

In addition to being necessary, a proposed RRO must not be unduly burdensome, such that "the particular steps to be adopted will be effective, but not overbroad[.]" *Pueblo of Laguna*, 60 Fed. Cl. at 138. Here, the Nation's proposed RRO ("NPO") provision on obligation to preserve merely tracks governing law and prior RROs by reinforcing the automatic duty to preserve relevant evidence during litigation. *Compare id.* at 135, 141 *with* NPO ¶ 1. In turn, the NPO provision on indexation or inventorying of potentially relevant evidence similarly tracks but slightly improves on a baseline for compliance with record retention obligations in prior RROs. *Compare Laguna*, 60 Fed. Cl. at

141 *with* NPO ¶ 3.[1] These provisions therefore cannot be burdensome and should be approved and entered with only a slight edit. In addition, the Nation will accede to the comment that NPO ¶ 2(d) should allow inactive local BIA record movement after copying or imaging for the Nation, Resp. at 32, especially since actual record production sometimes has taken up to two years.

Unfortunately, Defendant further opposes the NPO with only hyperbolic misrepresentations that the NPO would reduce security, be impossible to comply with, impose "crippling" undue burdens on numerous federal agencies, and both improperly extend and shorten the time for record production. For example, Defendant complains that the NPO would untenably require NARA to locate, identify, index, and segregate all records related to the Nation, which they could not do and which would interfere with all other work. *Id.* at 34-37. Defendant asserts similar disastrous problems under the NPO concerning record inspection and production at the BIA Navajo Region and at Treasury. *Id.* at 37-39. Such speculative horrors are meritless.

Section 2 of the NPO merely facilitates orderly record production in a far more flexible manner than otherwise will be required by governing discovery rules. *Compare* NPO ¶ 2 *with* RCFC 26, 30, 34, 36. The proposed inspection protocol for BIA, OST, the AIRR, and the Office of Trust Records ("OTR") was reasonably adapted from prior RROs and incorporates Defendant's stated inspection preference. *Compare* NPO ¶ 2(a) *with* DRE 8 ¶¶ 1, 4-5 (Abeita decl.). Indeed, Defendant itself proposed BIA inspection protocols for the prior RROs, which this Court adopted, *e.g., Laguna*, 60 Fed. Cl. at 140-141, and the parties thereafter implemented. It is entirely proper to propose this protocol based on that history, following Defendant's prior refusal to negotiate a record retention order in this case. Moreover, the NPO expressly requires the parties to "coordinate inspection of

[1] Defendant complains that NPO ¶ 3(a) improperly adds advocacy language. Resp. at 32-33. The Nation stands by its statement of Defendant's fiduciary record-keeping duties, *see, e.g.,* 36 C.F.R. § 1239.20(d), but will delete the provision in the interest of seeking mutual agreement.

Navajo Trust Records in a manner that will minimize the disruption of ongoing governmental activities." NPO ¶ 2(f). Finally, the Nation's proposed inspection protocol is less burdensome than the prior RROs because it provides longer time frames with exceptions for when Defendant provides notice of intent to move records. *Compare Laguna*, 60 Fed. Cl. at 140-141 *with* NPO ¶ 2.

Defendant also unjustifiably complains that the NPO improperly requires "immediate" record production from Treasury, the Forest Service, the NARA, the Department of Energy, and the Nuclear Regulatory Commission. *See* Resp. at 29-30. The NPO nowhere requires expedited inspection from those agencies. The only provision on production from other agencies outside Interior merely directs the parties to "meet and confer to discuss a timetable" to make those records available. NPO ¶ 2(e). This is *far* more relaxed than the comprehensive initial disclosures that Defendant otherwise would be required to provide within 14 days after filing the Joint Preliminary Status Report under RCFC 26(a)(1). This is certainly neither immediate nor onerous.

Finally, Defendant wrongly complains that the NPO should be limited to inactive records and that it improperly requires federal agencies to seek permission from the Nation to move active records. Resp. at 29 n.19, 30. The NPO does not require tribal permission for record moves and the Court should not allow wanton destruction of active records that are legally required to be preserved under the Federal Records Act and recognized fiduciary duties. *See* Mot. at 5-8. In light of all the above, the Nation's proposed order should be slightly revised as noted above and entered.

Respectfully submitted,

*/s/ Alan R. Taradash*

Alan R. Taradash
Nordhaus Law Firm, LLP
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102

Dated: July 5, 2007

Attorney of Record for Plaintiff

Of Counsel for Plaintiff:

Thomas J. Peckham
Daniel I.S.J. Rey-Bear
Deidre A. Lujan
Dana L. Bobroff
Nordhaus Law Firm, LLP
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102
telephone: 505-243-4275
facsimile: 505-243-4464

Donald H. Grove
Nordhaus Law Firm, LLP
1401 K Street NW, Suite 801
Washington, DC 2006
telephone: 202-530-1920
facsimile: 202-530-1270