UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NAVAJO NATION<br>f.k.a. NAVAJO TRIBE OF INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-945 L<br>Judge Francis M. Allegra |

**PLAINTIFF'S NOTICE OF FILING**
**PROPOSED RECORD RETENTION ORDER**

Pursuant to this Court's order of July 20, 2007, Plaintiff the Navajo Nation hereby files the accompanying proposed record retention order ("RRO"). For the Court's reference in considering this proposed order, Plaintiff respectfully states as follows:

1. Plaintiff has revised its proposed RRO based on the oral argument on the RRO on July 20, 2007, and based on further discussions with Defendant. Plaintiff and Defendant have worked diligently to resolve their differences regarding the RRO but have not been able to reach agreement on a number of terms. Plaintiff accordingly hereby submits its own revised proposed RRO attached hereto as Exhibit 1.

2. During oral argument on the RRO on July 20, 2007, the Court asked about distinctions between definitions of "active" and "inactive" records. *E.g.,* Trans. at 41, 43-44. Those terms are defined in the Department of the Interior ("DOI") Departmental Manual chapter on "Indian Fiduciary Trust Records," 303 DM 6, available at http://elips.doi.gov/elips/release/3598.htm. Specifically, "Current records (also referred to as active records)" are defined there as "[r]ecords necessary to conduct the current business of an office and therefore generally maintained in office

space and equipment." 303 DM 6.7(A). In contrast, "Noncurrent records (also referred to as inactive records)" are defined there as "[r]ecords no longer required to conduct business and therefore ready for final disposition." 303 DM 6.7(L).

3. During oral argument on the RRO on July 20, 2007, the Court asked whether there is evidence that "active" Indian trust records in Defendant's possession, custody, or control have been lost or destroyed, and the Court directed Plaintiff to document any such examples. *E.g.,* Trans. at 46, 48, 64. There are at least two such probable examples just last year. First, in February 2006, the Office of Trust Records was notified that "approximately one cubic foot of documents, comprised of original incomplete sand and gravel permits (which were considered to be records) and non-record duplicate copies of archeological clearances and reports were shredded by Agency staff" at the BIA Fort Defiance Agency, within the BIA Navajo Regional Office. Def.'s Response Exhibit ("DRE") 28 at 22. Second, "[o]n December 28, 2006, four tribal computers, four tribal flash drives, and an unknown number of tribal CDs were stolen from a 638 tribal office operated on behalf of [DOI's Office of Special Trustee for American Indians ("OST"), containing]. . . . information regarding real property, lessees, and lessors[.]" DRE 25 at 43. The locations and descriptions of these destroyed and stolen Indian trust records strongly suggest that they were active records. *Cf.* DRE 8 ¶ 5 (Abeita declaration noting 2003 MOU under which all inactive BIA and OST records are to be stored at the American Indian Records Repository ("AIRR") in Lenexa, Kansas); DRE 9 ¶ 24 (Bradley declaration noting that part of the BIA Navajo "agencies' day-to-day work" includes "ensur[ing] that leases and permits are active and appropriately renewed"); 36 C.F.R. § 1228.270(c) (not providing for use of computer hard drives or flash drives for transfer of inactive records to National Archives facilities).

4. In further response to the Court's direction for Plaintiff to document that active Indian trust records are at risk of loss or destruction, Defendant's declarations concerning the RRO strongly suggest that all active Navajo trust records, which are necessarily maintained at various BIA Navajo offices, are at continuing risk of loss or destruction. *Compare* 303 DM 6.7(A) (providing that active records are "necessary to conduct the current business of an office and therefore generally maintained in office space and equipment") *with* DRE 8 ¶ 19 ("requir[ing] BIA to maintain documents on the Navajo reservation for up to five months . . . . would place the records at greater risk of destruction by accidental causes"); DRE 9 ¶¶ 18-19, 29, 32-33 (noting that BIA Navajo offices are not designed, built, staffed, or controlled for record storage and are at capacity for accommodating documents).

5. During oral argument on the RRO on July 20, 2007, the Court asked Plaintiff to justify conducting inspections of BIA records at the offices where they are currently located rather than first consolidating them in a central repository. Trans. at 48, 50. Conducting such record inspections before record transfers take place is justified in large part by the additional, inherent, and avoidable risk of transporting records. For example, just last year, Iron Mountain, a leading records storage and transportation company, lost in transit backup data tapes belonging to the U.S. Department of Veterans Affairs containing social security numbers for about 17,000 current and former transit employees. Associated Press, "Personal Data of NY Transit Employees Lost," April 26, 2006, available at www.msnbc.msn.com/id/12521884. Over the past couple of years, Iron Mountain or one of its third-party contractors also have lost data tapes belonging to Time Warner and the City National Bank in Los Angeles. Joy Maitland, "Iron Mountain's transport methods disturb some users," Storage Technology News, March 26, 2007, http://searchstorage.techtarget.com/originalContent/0,289142,sid5_gci1248828,00.html. More broadly, the number of large trucks

involved in property-damage-only crashes has increased by 22 percent over the last 10 years, and there were 423,000 police-reported crashes involving large trucks in 2005, representing almost 5 percent of the 8,481,999 large trucks registered in the United States in 2005. U.S. Dept. of Transportation, Large Truck Crash Facts 2006 (Feb. 2007) at 3, 4, 31, available at http://ai.fmcsa.dot.gov/CarrierResearchResults/PDFs/LargeTruckCrashFacts2005.pdf. In addition, "[a]t least 73,533 of roughly 607,363 bridges in the nation, or about 12 percent, were classified as 'structurally deficient,' including some built as recently as the early 1990s, according to 2006 statistics from the Federal Highway Administration." John C. Henry, "Inquiry Begun into Bridge Inspections," Washington Post, Aug. 3, 2007, available at http://www.washingtonpost.com/wp-dyn/content/article/2007/08/03/AR2007080300179.html.

6. During oral argument on the RRO on July 20, 2007, the Court expressed concern that Plaintiff submit affidavits, declarations, or other documentary support for factual statements to be considered by the Court. Trans. at 49. Therefore, in anticipation of a further oral argument to address remaining differences on the RRO, Plaintiff hereby submits two declarations, namely: (a) a declaration of Sonny Clark, attached hereto as Exhibit 2, concerning the viability of record production at the BIA Navajo Regional Office in Gallup, New Mexico, and at the BIA Navajo Regional Realty Office in Window Rock, Arizona; and (b) a declaration of Jimmy Ray "Jim" Parris, attached hereto as Exhibit 3, regarding deficiencies of record production at the AIRR, in large part due to deficiencies of Defendant's Box Inventory Search System ("BISS").

7. As of the date of this filing, Plaintiff's outstanding questions for Defendant relevant to the RRO include the following, among others:

a. how long will it take Defendant to index, move, and enter into the BISS inactive Navajo Trust Records that Defendant has proposed to move from BIA Navajo Offices to the AIRR in Lenexa, Kansas;

b. what levels of indexing will Defendant use for those records, both for pre-move-inventories and entry into the BISS; *see, e.g.,* DRE 8 ¶¶ 11-12 (variously stating that records at the AIRR or in the BISS are indexed at the document level or at the file level); DRE 8(3)(2) at 1 [Doc. 21-2 at 24] (providing for either "detailed" or "high-level" pre-move inventories); and

c. what are the status and type(s) of indexing for Navajo Trust Records already at the AIRR.

Plaintiff respectfully suggests that Defendant's responses to these inquiries may warrant a motion for leave by Plaintiff to submit an additional filing relating to those matters.

Respectfully submitted,

*/s Alan R. Taradash*
*by /s Daniel I.S.J. Rey-Bear*

Alan R. Taradash
Nordhaus Law Firm, LLP
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102
telephone: 505-243-4275
facsimile: 505-243-4464

Dated: Aug. 3, 2007

Attorney of Record for Plaintiff

Of Counsel for Plaintiff:

Thomas J. Peckham
Daniel I.S.J. Rey-Bear
Deidre A. Lujan
Dana L. Bobroff
Nordhaus Law Firm, LLP
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102

Donald H. Grove
Nordhaus Law Firm, LLP
1401 K Street NW, Suite 801
Washington, DC 2006
telephone: 202-530-1920
facsimile: 202-530-1270