UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NAVAJO NATION<br>f.k.a. NAVAJO TRIBE OF INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-945 L<br>Judge Francis M. Allegra |

**DECLARATION OF JIMMY RAY "JIM" PARRIS**

I, Jimmy Ray "Jim" Parris, hereby declare that I am more than eighteen years of age, the matters stated herein are based upon my personal knowledge, I have executed this Declaration within the United States and it has been made pursuant to 28 U.S.C. § 1746:

1. My name is Jimmy Ray Parris, though I am commonly known as Jim Parris. I am a member of both the Cherokee Nation and the Osage Nation of Oklahoma. I am also a Certified Public Accountant.

2. I served as the first Controller for the Osage Nation in 1978-1979. I also served as Acting Finance Director for the Pascua Yaqui Tribe of Arizona in 1998-1999, and then served as CFO and Treasurer for the Cherokee Nation during 1999-2000.

3. I also have extensive experience with the Bureau of Indian Affairs (BIA). Specifically, I served as the first Chief of the Branch of Trust Fund Accounting for the BIA from January 1985 until July 1991, when I became, as a member of the Senior Executive Service, the first Director of the Office of Trust Funds Management for the BIA. I also served as the Indian Service Special Disbursing Agent (ISSDA) for the Individual Indian Monies (IIM) accounts from 1986 until I left federal governmental employment in May 1995.



Exhibit 3

4. I have worked on a wide variety of financial matters of Indian Tribes since leaving BIA employment. Over the immediate past 12 years, I have worked as a consultant with various Indian Tribes around the United States, while working for KPMG, a national accounting firm, REDW, a regional accounting firm based in Albuquerque, and as a sole practitioner. I also have served as Treasurer of the Board of Directors for the InterTribal Monitoring Association on Indian Trust Funds, as Treasurer of the Board of the Native American Finance Officer's Association, and on the Board of Directors for the Council of Energy Resource Tribes. I currently serve as Treasurer on the Board of Directors for the Indian Land Working Group.

5. While working as a consultant to Indian Tribes, I have been retained as an expert consultant in the areas of BIA-Tribal trust fund management, investments, and all related activities by the Pueblo of Laguna, the Blackfeet Tribe, the Shoshone-Bannock Tribes, the Osage Nation, the Jicarilla Apache Nation, the Navajo Nation, and the Confederated Tribes of the Warm Springs Reservation, as well as several other Tribes, assisting them primarily with the acquisition and analysis of financial and trust related documents needed to determine whether they have bases for claims in their breach of trust lawsuits against the United States as trustee of their funds in lawsuits principally in the United States Court of Federal Claims. I also have assisted the Confederated Tribes of the Warm Springs Reservation and the Jicarilla Apache Nation in alternative dispute resolution processes between the Tribes and the United States arising out of their lawsuits.

6. I have personally made nine visits to the National Archives Records Administration records facility in Lenexa, Kansas, known as the American Indian Records Repository (AIRR), to perform record review in support of breach of trust cases against the United States for certain Indian Tribes, as listed below:

| Dates of AIRR Visits: | Review of Records on Behalf of: |
|---|---|
| December 28-29, 2004 | Confederated Tribes of the Warm Springs Reservation |
| January 5-7, 2005 | Confederated Tribes of the Warm Springs Reservation |
| April 19-20, 2005 | Osage Nation |
| May 3-4, 2005 | Osage Nation |
| August 3-5, 2005 | Osage Nation |
| August 8-12, 2005 | Osage Nation |
| August 12, 2005 | Shoshone-Bannock Tribes of Fort Hall, Idaho |
| September 12-16, 2005 | Shoshone-Bannock Tribes of Fort Hall, Idaho |
| October 26-27, 2005 | Shoshone-Bannock Tribes of Fort Hall, Idaho |

7. In connection with the above engagements, I have spent over 200 hours reviewing documents that Defendant has produced at various locations, including the AIRR. As a result, I have become familiar with the Box Index Search System (BISS), a database that the United States maintains to identify records that are stored at the AIRR facility and other locations. In each of my record review visits at the AIRR, which were all dependent on searches using the BISS database, repeated attempts to efficiently and accurately access certain records or even classes of records resulted in difficulty in locating the documents for which I was searching due to the serious deficiencies in the BISS.

8. Based on my personal experience in doing research at the AIRR, I have found that the BISS indexes Indian trust records at the file level, not at the document level. This is confirmed by a September 2005 Department of the Interior report entitled *Historical Accounting For Individual Indian Monies-A Progress Report* (available at www.doi.gov/indiantrust/iimaccounting.pdf), where it is stated in the text and a side bar on page 10 that, "boxes of records in the AIRR are electronically indexed to the file level, with the resulting data entered into the Box Index Search System."

9. The BISS is the database search tool made available to Indian Tribes, individual Indians, and other researchers that have obtained the approval of the Department of the Interior to

search records that have been entered into the database maintained at the AIRR. The BISS is the only index that the United States makes available to search the records and documents located at the AIRR. The BISS is supplemented by a software system called "ArchivalWare", which is the software used to access the BISS database. Selected data is entered into the BISS database by a contractor (at present that contractor is Labat Andersen) with the Office of Trust Records (OTR) on-site at the AIRR from files within each box that has been moved to the AIRR.

10. Based on testing and document research that I have performed with the BISS for various Indian Tribes, the BISS suffers from a number of defects that make it of limited value in searching Tribal trust records at the AIRR relevant to Tribal breach of trust claims. The BISS typically lists only the titles of the files in a particular box without further information. In addition, in some cases, file titles in the BISS are not detailed enough to locate specific relevant records or forms and, in other instances, some files have been omitted entirely from the listing. Furthermore, inconsistent file labels have been used in the BISS for the same kinds of documents. For example, mail logs—a standard form of document critical for tracking income, disbursements, and investment purchases and maturity notices to the Tribes and Banks—are also variously referred to in the BISS as "daily logs," "check logs," or "schedule of collections". This problem is further compounded by the fact that the BISS also uses the identical term "schedule of collections" for a completely unrelated form, the Schedule of Collections (SF-1041).

11. Based on testing and document research that I have performed with the BISS for various Indian tribes, the BISS suffers from a number of other deficiencies that make it virtually impossible, as a matter of routine, to locate specific documents at the AIRR relevant to Tribal breach of trust claims. In particular, the BISS database is **not** reliable for finding: (a) specific government

forms by form name or form number; (b) documents identified for specific Tribes; (c) documents identified to specific locations (i.e.-Agencies, Area Offices, etc.); (d) documents by date; (e) documents containing Tribal versus individual Indian Money (IIM) transactions; (f) specific transactions by transaction number; (g) specific reports; or (h) specific transaction types.

12. The following are examples of some of the problems that I have identified with the BISS based on my use of it:

a. Bills of Collections, Form Number DI-1040, could not be found for a specific Tribe because data is not indexed to distinguish between tribal, IIM, or BIA documents;

b. Summary and Detail of Trust Funds Reports—which were sent out to all Tribes with trust accounts as the official BIA accounting record from 1972 through 1995—could not be found for a specific Tribe Code and Agency Location Code for most years in any decade;

c. Manual Control Cards—critical historical official documents maintained by the BIA from approximately 1968 through 1987 on balances available for disbursement or investment in each Tribal account—could not be found for any years available;

d. Treasury account Deposit Tickets, Form SF-215, could not be identified by Tribe, and also could not be distinguished by the BISS from a deposit to a local bank account for a bank loan payment;

e. Production Reports, Form ADI530R1—issued and sent to the BIA by the Minerals Management Service—could not be found for a specific Agency Location Code and year, and in one instance the BISS identified a specific box even though, upon examination, the box did not contain the identified Report;

f. BIA CD Investment Reports by Tribe—a routine investment report—could not be found for specific periods;

g. Account statements for known Tribal IIM accounts for a specific Tribe and Agency Location Code could not be found;

h. Statement of Differences, Report Number BA6652—a routine Treasury report sent to accounting offices from the late 1960s through the present—could not be found, and the few boxes identified by the BISS to contain those reports did not, in fact, contain them;

i. Searches for documents related to income from uranium for any year only identified reports that mentioned "Uranium" in the title;

j. Forest Management Plans—standard documents governing the management of tribal forests by the BIA—could not be found for various relevant agencies;

k. Audit reports, known to exist, for a specific tribe could not be found; and,

l. A search for documents related to a specific tribe identified documents that upon inspection only referred to a member of the tribe.

13. The defects in the BISS are further illustrated by a joint discovery project conducted during July and August 2005 to locate missing records relevant to a particular Tribal trust case filed in the United States Court of Federal Claims:

a. For purposes of that joint effort, the plaintiff prepared a list of specific documents that were relevant to its claims. I then met for about two hours with Ms. Caren Dunne, who was identified by the United States as very knowledgeable about the BISS and who was and is a principal of Chavarria, Dunne, and Lamey, LLC (CDL). CDL is an accounting firm under contract with the United States concerning pending Tribal breach of

trust cases and consists in part of accountants, including Ms. Dunne, who had previously worked on the so-called Tribal reconciliation project for BIA in the 1990s while they were employed with Arthur Andersen. During our meeting, Ms. Dunne conducted a number of searches of the BISS in an effort to locate the boxes at AIRR that might contain the specific documents that the plaintiff had identified as relevant to its claims. Ms. Dunne's search resulted in a list of approximately 300 boxes that possibly contained those documents. As a result of my own searches of the BISS, I separately identified approximately 50 additional boxes that might contain those documents.

b. Out of the approximately 350 boxes identified as a result of these searches in the BISS, we subsequently located only a handful of relevant documents. During August 2005, a joint team of approximately six staff accountants employed by CDL, one local staff person from the AIRR, two paralegals from a Tribal law firm, and I worked at the AIRR to review all of the boxes that had been identified by either Ms. Dunne or by me as possibly containing the documents relevant to the plaintiff's claims. That joint review lasted about two weeks and involved over 300 staff hours for the one Tribal team alone that I worked with, in addition to the CDL staff time for the reviews. However, those joint search efforts resulted in locating only a small fraction of the records that had been identified in the BISS.

14. Apart from the above numerous and systemic problems with the BISS, my own experience at the AIRR indicates that document review there is also limited in other ways. For example, the AIRR imposes seemingly unnecessary and constraining prohibitions on the types of devices that are allowed to be taken inside the facility, such as voice recorders to document record review, cameras to document the condition of the facility, the boxes in which documents are stored,

and the condition of documents themselves. We also were required to have a representative of the Office of the Solicitor present while we were reviewing documents at the AIRR. This was required in addition to going through x-ray scanners and having security guards searching our bags both going in and leaving the AIRR.

15. On June 28, 2007, the Government submitted a declaration to this Court by Ms. Ethel Abeita, Director, Office of Trust Records (OTR), dated June 20, 2007. In that declaration, Ms. Abeita made certain statements concerning the BISS and the AIRR. She has stated in paragraph 12 of her declaration that, "Fiduciary trust program records are indexed at the document level, meaning that every document in a file folder, or where there are no folders, every document in a box is indexed." This is not the case, based on my own experience with the BISS and the AIRR based on the United States' own report (i.e.- the *Historical Accounting for Individual Indian Monies – A Progress Report*) about the AIRR.

16. I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3, 2007

Jimmy Ray "Jim" Parris