IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE NAVAJO NATION, formerly known as THE NAVAJO TRIBE OF INDIANS, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-945L |
| THE UNITED STATES OF AMERICA | ) | Judge Francis M. Allegra |
| Defendant. | ) | |

**DEFENDANT'S NOTICE OF FILING STATUS REPORT DESCRIBING RECORD RETENTION ORDER COMPLIANCE MONITORING MECHANISMS**

Pursuant to Paragraph 4 of this Court's record retention order dated September 10, 2007 ("RRO" or "September 10 Order"), Defendant submits its status report describing the steps that have been taken, and the plans and procedures that are being formulated and implemented, for complying with the record preservation requirements of the attached RRO. This status report consists of the declarations (with attachments) of officials or employees of the following agencies that have been determined to be the most likely to have the "documents, data, and tangible things," that are most relevant to the Plaintiff's claims in this case: the United States Department of the Interior, the United States Department of the Treasury, the Nuclear Regulatory Commission, and the National Archives and Records Administration. The Interior Department will continue working on its plans and procedures for complying with the record preservation requirements of the RRO and submit supplemental status reports to the Court, as appropriate. Also, the other agencies will continue reviewing its compliance plans and procedures and file additional status reports, as needed.

Respectfully submitted this 4th day of December, 2007,

RONALD J. TENPAS
Acting Assistant Attorney General

*s/Robert W. Rodrigues*
ROBERT W. RODRIGUES
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 353-8839
Fax: (202) 353-2021

Attorney of Record for Defendant

OF COUNSEL:

ELISABETH C. BRANDON
GLADYS COJOCARI
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20217

JASON BARON
Office of the General Counsel
National Archives and Records Administration
Washington, D.C. 20004

CAROL LAZAR
Office of the General Counsel
Nuclear Regulatory Commission
Rockville, M.D. 20852

# In The United States Court of Federal Claims

No. 06-945L

(Filed: September 10, 2007)

---

NAVAJO NATION
f.k.a. NAVAJO TRIBE OF INDIANS,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**ORDER**

---

This matter comes before the court on plaintiff's Motion for Entry of Record Retention Order. Pursuant to RCFC 26(c) as well as the court's inherent power to regulate its proceedings and maintain the integrity of its functions, *see Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-137 (2004), the court hereby **ORDERS** as follows:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant and its departments, agencies, employees, agents, and contractors must take reasonable steps to preserve every document, datum, or tangible thing in its possession, custody, or control containing information that is relevant to, or is reasonably calculated to lead to the discovery of admissible evidence relevant to, the subject matter involved in the pending litigation ("Relevant Records"). Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection and Production.**

   (a) Defendant shall move Relevant Records that, as of the date of this order, are inactive as defined by the Department of Interior ("Interior") Manual Part 303, Chapter 6, and located at the Bureau of Indian Affairs ("BIA") Navajo Regional ("Gallup") Office, the BIA Navajo Regional Realty Office, and the BIA Fort Defiance Agency, and any predecessor offices therefor to the Gallup BIA Warehouse in Gamerco, New Mexico, at which location such records shall be made available to plaintiff for purposes of inspection. At least 10 calendar days

before movement of the records from their present locations to Gamerco, defendant will provide plaintiff with an intermediate move plan or plans, which shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. The move process may be monitored by plaintiff or its representative.

(b) After reviewing the above inactive Relevant Records for privileged material, if necessary, defendant shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) Within 35 days after entry of this order, defendant shall provide to plaintiff any and all existing indices and inventories that include inactive Relevant Records or boxes thereof located at the above offices in the most useable form readily available. Defendant shall provide to plaintiff additional or supplemental indices or inventories of inactive Relevant Records within 21 days after the creation or discovery of such indices or inventories.

(ii) Within 35 days after receiving such indices or inventories from defendant or within some other time as agreed to by the parties, plaintiff shall designate boxes or records listed in the provided indices or inventories that plaintiff wishes to review for Relevant Records.

(iii) Within 63 days after the date on which plaintiff designates which boxes of one or more of the above offices it wishes to inspect, defendant will begin to make available, on a rolling basis, the boxes from such office(s) for plaintiff's inspection at the BIA warehouse in Gamerco.

(iv) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from defendant that the designated record has become available for inspection, during which process plaintiff may identify records for production. This inspection period may be extended by agreement of the parties or by the court for good cause shown. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including without limitation through the use of audio recorders, digital cameras, or document scanning, provided that no such recordings made by plaintiff shall constitute production of records. Plaintiff's documentation shall be subject to the Protective Order entered by this court on May 11, 2007.

(c) After plaintiff has inspected and identified records for production pursuant to paragraph 2(b) above, defendant may move those records to the American Indian Records Repository ("AIRR") in Lenexa, Kansas, in accordance with defendant's

procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual. After such move(s), defendant shall scan the records identified by plaintiff; code the scanned images at the document level, including data fields as agreed to by the parties; and provide such images and coding to plaintiff within such schedule as agreed to by the parties. For documents originating in media other than paper, defendant shall provide the document in a reasonably usable form, including any form reasonably requested by plaintiff, and also shall provide an opportunity to plaintiff to test or sample such documents upon reasonable request. Defendant shall expedite and prioritize the scanning, coding, and production to plaintiff of identified records.

(d) In accordance with defendant's procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual, defendant may move any boxes that have been either: not designated for inspection within the time period provided for in or agreed to under paragraph 2(b)(ii); or designated but not reviewed by plaintiff within the applicable period provided for under paragraph 2(b)(iv). Nothing herein prevents plaintiff from also seeking to inspect records from the above offices in whatever location they may be found in the future.

(e) Within such schedule as agreed to by the parties, defendant shall input into Interior's Box Inventory Search System ("BISS") data identifying the boxes, files, and documents containing all Relevant Records located as of the date of this order at the AIRR; provide plaintiff access to such BISS database at the Albuquerque office of plaintiff's counsel and the AIRR; and make those records available for plaintiff's inspection at the AIRR. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including, without limitation, through the use of audio recorders or digital cameras, provided that no such recordings made by plaintiff shall constitute production of records. Defendant also shall provide to plaintiff all manuals, training materials, and similar documents created by or for Interior which describe the BISS database and its manner of operation and access. Defendant shall provide to plaintiff additional or supplemental indices or inventories for the AIRR that include Relevant Records promptly after the creation of such indices or inventories.

(f) The parties shall meet and confer to discuss schedules and procedures to be used for defendant to make available to plaintiff, for purposes of inspecting active or inactive Relevant Records (determined as of the date of this order) of all of defendant's departments, agencies, offices, employees, agents, and contractors at offices other than those identified in paragraph 2(a) above, as follows:

(i) The parties shall expedite and prioritize inspection of Relevant Records that, as of the date of this order, are inactive and located at: (1) the offices

of the BIA Chinle Agency, the BIA Western Navajo ("Tuba City") Agency, the BIA Eastern Navajo ("Crownpoint") Agency, and the BIA Shiprock Agency, whether inspected at those offices, the BIA Gamerco warehouse, or other mutually agreed locations; (2) the Office of Trust Records ("OTR"), the Office of the Special Trustee ("OST"), and the BIA Land Titles and Records Office ("LTRO"), all located in Albuquerque, New Mexico; or (3) offices of the Department of the Treasury.

(ii) Defendant, after reviewing the records for privileged material, if necessary, shall make the respective record collections available to plaintiff for purposes of inspection and designation. Unless otherwise agreed by the parties, defendant shall provide existing indices or inventories for such records as soon as practicable and make such records available for plaintiff's inspection within 63 days of plaintiff's designation of them.

(iii) Plaintiff shall inspect the records upon receiving notification from defendant that the records have become available for inspection. If plaintiff identifies records for production, defendant shall make arrangements for scanned and coded images, or other data in a reasonably usable form, to be delivered to plaintiff as soon as practicable.

(iv) Unless otherwise agreed by the parties, moves of Relevant Records that are inactive as of the date of this order from the BIA Navajo Agencies identified in paragraph 2(f)(i) above, the OTR, the OST, and the LTRO to locations other than the AIRR shall be subject to the intermediate move plan requirement of section 2(a) above.

(g) The parties shall attempt to reach agreement on all matters related to document inspection and shall coordinate inspection of Relevant Records in a manner that will minimize the disruption of ongoing governmental activities.

3. **Indexation and Inventorying.**

(a) Within 126 days after entry of this order, the parties shall identify all of their respective repositories besides the AIRR and those addressed in section 2(a) above that are reasonably anticipated to be subject to discovery in this case and determine whether indices or inventories exist for each location. The parties also shall have ongoing duties to identify evidence relevant to this case in their respective possession, custody, or control.

(b) Within the same time period or as the parties may agree, the parties shall provide to each other existing indices and inventories for such repositories in the most

useful form readily available, except for indices and inventories previously provided pursuant to paragraph 2 of this Order.

(c) If a party is unable to provide the other with indices or inventories of its repositories containing evidence relevant to this case, then the parties shall meet and confer as soon as practicable about the possibility of using, as may be appropriate, a collection-by-collection approach, including on-site reviews, to address the sufficiency of existing indices or inventories and to discuss whether additional indexation of specific record collections is necessary and the scope, timing, and method of any additional indexation or elaboration of inventories at each location based on the particular facts relating to each repository and record characteristics. The parties shall provide additional or supplemental indices or inventories that include evidence relevant to this case within 21 days after the creation or discovery of such indices or inventories.

(d) The parties shall cooperate in good faith to attempt to reach agreement on all issues regarding the indexation and inventorying of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation and inventorying obligation, identifying the types of material to be indexed and inventoried, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation or inventorying;

(iii) whether indexation or inventorying will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation or inventorying process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index or inventory any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and inventorying and ways to reduce or share these costs; and

(vii) policies and procedures to review and modify the indexation and inventorying obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(e) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(d) of this order or on other material aspects of indexation, the parties shall file expeditiously with the court a statement of the unresolved issues together with each party's proposal for their resolution of the issues.

4. **Compliance.** The parties shall establish policies, procedures, and controls for monitoring compliance with this order and, on or before 63 days after entry of this order, file a status report with the court describing those policies, procedures, and controls. The parties' counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things, if such action would make that material incomplete or inaccessible.

6. **Further Instructions; Modification.**

(a) If, after counsel confer, unresolved issues remain but require resolution concerning matters arising under this order or other material aspects of preservation, inspection and production, or indexation and inventorying, the parties shall file with the court a statement of the unresolved issues together with each party's proposal for their resolution.

(b) Either party also may apply to the court for further instructions regarding, *inter alia*:

(i) defendant's obligation to preserve specific categories of documents, data, or tangible things;

(ii) any aspect of the inspection or indexation tasks not herein clearly defined; and

(iii) allocating copying costs and maintaining the confidentiality of information contained in various records.

(c) Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions. *See Pueblo of Laguna*, 60 Fed. Cl. at 135-137; *United Medical Supply Co., Inc. v. United States*, 77 Fed. Cl. 257 (2007).

8. **Dissemination.** This order shall be distributed by defendant and plaintiff to all relevant agencies, departments, offices, divisions, contractors, and individuals.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

# INDEX TO DECLARATIONS AND ATTACHMENTS

## I. DEPARTMENT OF INTERIOR

DECLARATION OF GLADYS COJOCARI, November 30, 2007

Exhibit A: Department of Interior's Memorandum to Employees Regarding the Preservation of Information in Tribal Trust Cases, March 12, 2007

Exhibit B: Declaration of Ethel Abeita, June 20, 2007

Exhibit C: Department of Interior's Memorandum to Employees Regarding Compliance with Record Retention Orders in Tribal Trust Cases: *Swinomish, Navajo, Round Valley, Pawnee, Kaw* and *Quechan*, November 20, 2007

DECLARATION OF OMAR BRADLEY, November 30, 2007

Exhibit A: Memorandum from Acting Regional Director, BIA Navajo Region to All Navajo Region Employees Regarding the Preservation of Information in *Navajo*, April 24, 2007

Exhibit B: Email to All Employees in the BIA Navajo Region Regarding the Preservation of Tribal Information in *Navajo*, April 24, 2007

Exhibit C: Email to All Employees in the BIA Navajo Region Record Retention Reminder, September 20, 2007

Exhibit D: Email to All Navajo Region Employees Regarding the Saving and Transcribing of all Voicemail Messages Relating to Trust Matters, November 28, 2007

DECLARATION OF RICHARD P. FIELITZ JR, December 4, 2007

DECLARATION OF LINDA LAUTIGAR, December 4, 2007

## II. DEPARTMENT OF TREASURY

DECLARATION OF LACHLAN W. SEWARD, December 3, 2007

Exhibit A: Declaration of Debra Diener, April 23, 2004

Exhibit B: Defendant's Supplemental Status Report Describing Compliance with the March 19, 2004 Order with the Department of Treasury's Excerpts

Declaration of Richard L. Gregg, March 4, 2005

Declaration of Anne M. Meister, March 17, 2005

Declaration of Rory D. Schultz, February 28, 2005

Exhibit C: Department of Interior Memorandum to Employees Regarding the Identification and Retention of Tribal Trust Fund Records, March 29, 2002

Exhibit D: Department of Treasury Memorandum to Employees Regarding the Obligation to Retain Materials for Indian Litigation, with attachment, August 6, 2007

Exhibit E: Financial Management Service Memorandum to Employees Regarding Record Retention Requirements and Attached Reference Guide, August 27, 2007

Exhibit F: Bureau of Public Debt Email to All Employees Regarding Record Retention of Email and Voicemail, with attachment, August 29, 2007

Exhibit G: Letter from FMS to National Archives Transmitting Record Retention Orders in *Navajo* and *Swinomish*, September 13, 2007

Exhibit H: Letter from BPD Reminding National Archives that it is Still under a Record Retention Order in *Cobell*, August 21, 2007

Exhibit I: Letter from FMS to The Federal Reserve Bank of St. Louis Regarding the Retention of Treasury Fiscal Agency Records in Compliance with Court order in *Swinomish* and *Navajo*, September 13, 2007

Exhibit J: Letter from FMS to Bank of America, Federal Government Banking Division, Regarding Retaining all Documents Relating to the Lockbox Account, September 13, 2007

Letter from FMS to Mellon Bank, Pittsburg, Regarding Retaining all Documents Relating to the Lockbox Account, September 13, 2007

Exhibit K: FMS Letter to U.S. Secret Service Regarding Document Retention Order in *Swinomish* and *Navajo*, September 13, 2007

**III. NUCLEAR REGULATORY COMMISSION**

DECLARATION OF CAROL LAZAR, November 29, 2007

Exhibit A: NRC Announcement, "Saving Documents Relevant to Lawsuit," October 9, 2007

Exhibit B: NRC Announcement, "Reminder: Saving Documents Relevant to Lawsuit," October 17, 2007

Exhibit C: NRC Announcement, "Reminder: Saving Documents Relevant to Lawsuit," October 31, 2007

Exhibit D: Email to all NRC Employees Regarding *Navajo Nation* Record Retention Order, October 24, 2007

**IV. NATIONAL ARCHIVES RECORDS ADMINISTRATION**

DECLARATION OF JASON R. BARRON, December 3, 2007

Exhibit A: List of Tribal Trust Accounting and Trust Mismanagement Cases, as of December 3, 2007

*Navajo Nation* RRO, September 10, 2007

*Pawnee Nation* Protective Order, October 22, 2007

*Round Valley* Protective Order, October 1, 2007

*Swinomish Tribe* RRO, August 24, 2007