# DECLARATION OF

# GLADYS COJOCARI

## NOVEMBER 30, 2007

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **NAVAJO NATION, f.k.a.**<br>**NAVAJO TRIBE OF INDIANS,**<br><br>Plaintiff<br><br>v.<br><br>**UNITED STATES,**<br>Defendant | ) | Case No. 1:06-cv-00945-L<br><br>Judge Francis Allegra<br><br>**DECLARATION OF**<br>**GLADYS COJOCARI** |

I, **Gladys Cojocari**, pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I am an Attorney-Advisor with the Indian Trust Litigation Office, Office of the Solicitor, Department of Interior ("Interior"). I am one of the agency counsel in the above-captioned case.

2. In March 2007, well before the filing of plaintiff's motion for the entry of a Record Retention Order ("RRO") in this case, I worked with the Division of General Law in the Solicitor's Office to develop a notice to all Interior offices and bureaus to preserve information potentially relevant to *any* tribal trust litigation, including the current case brought by the Navajo Nation ("Jensen Memorandum"). The obligation to preserve documents as expressed in this Memorandum was based on this Court's Orders issued in March 2004 in *Jicarilla Apache Tribe v. U.S.* and *Pueblo v. Laguna v. U.S.* The

Memorandum was signed by Lawrence Jensen, Deputy Solicitor, and was sent out to all Interior offices and bureaus on March 12, 2007.

Among its other provisions, the Memorandum specifically noted the possibility of sanctions in the event that its terms are not complied with by all addressees. The Jensen Memorandum also specifies common legal issues in tribal trust cases to establish a definition of "relevant documents." A copy is attached as Exhibit A.

3. The Jensen Memorandum also reiterated the preexisting Interior policy requiring the indefinite retention of all categories of Indian fiduciary trust records, regardless of the existence of any pending litigation. That policy is detailed in the record retention schedules contained in 16 Bureau of Indian Affairs ("BIA") Manual, expressly applicable to records maintained by BIA and ("OST.") Interior's records retention policy is supported by, among other measures, extensive records training conducted by the Office of Trust Records ("OTR"), and the policy of shipping all inactive records to the American Indian Records Repository ("AIRR"), an archival quality facility, when the period for these records to be retained on site has expired. See Declaration of Ethel Abeita, June 21, 2007, attached as Exhibit B.

4. On March 1, 2007, I had the first of several conversations with Deborah Benally, the designated liaison from the BIA's Navajo Regional Office ("NRO"), concerning the location, preservation and movement of records in BIA offices in the Navajo Region. In one of those conversations, Ms. Benally advised me of the document preservation directive issued in the Navajo region, as detailed in the November 30, 2007 Declaration

of Omar Bradley included herein as Exhibit 2.

5. I transmitted the Court's Order issued on September 10, 2007 to OTR, the Office of the Special Trustee ("OST"), and the Navajo Regional Office ("NRO") via fax, on September 12, 2007. It was accompanied by a letter I prepared that outlined the key provisions of the Order, including the requirement that it be distributed to all relevant personnel. I further advised the OTR, OST and the NRO addressees of my availability to answer any questions immediately and throughout the course of the litigation. In this regard, I am functioning as the contact person within the Solicitor's Office for purposes of the Order, assisted by Holly Clement and Tom Kearns of the Solicitor's Office who are co-counsel on this case. Following my transmission of the Order and the accompanying September 12 letter, I conducted a follow-up conference call with OST, OTR and NRO personnel, including among others, Ms. Benally and Ms. Abeita, on September 21, 2007.

6. On October 22, 2007, I prepared and sent a second letter focusing on the records preservation aspects of the Order and providing suggestions for possible compliance mechanisms to the NRO. I then held a follow-up conference call with Mr. Bradley and Ms. Abeita on November 6, 2007. I intend to meet with Mr. Bradley and other members of his staff concerning the implementation of additional policies and procedures to comply with the Court's Order when I travel to the NRO during the week of December 2, 2007. I am aware that the NRO is preparing a Compliance Action Plan, as detailed in the November 30, 2007 Declaration of Omar Bradley.

7. Since November 10, 2007, I have taken other steps to see that this Court's Order is disseminated to other Interior offices and bureaus in addition to BIA and OST. For example, I assisted in the preparation of the November 20 Memorandum from Paul Smyth, Counselor to the Solicitor, addressed to the Office of the Secretary and the heads of the various offices and bureaus within Interior. A copy of that memorandum is attached as Exhibit C.

Among other things, the Memorandum requested that each office and bureau appoint an RRO Compliance Coordinator with responsibility for documenting ongoing compliance measures. The Solicitor's Office will work with those individuals in providing guidance to each office and bureau in adopting compliance policies and procedures appropriate to the unique structures and functions of each such office and bureau within Interior.

8. I have also been working with Interior's Records Officer, Ed McCeney, to develop a notice that will remind the Chief Information Officers of the Interior trust offices and bureaus of the preservation obligations contained in this Court's Orders issued in *Jicarilla Apache Tribe v. United States* and *Pueblo Laguna v. United States*, especially as it pertains to the preservation of electronically stored information. This notice is going through the final review process within Interior and I expect it will be ready for dissemination the week of December 17, 2007.

9. Thus far, the compliance measures taken by Interior have focused most directly on the offices and bureaus that are the most likely repositories of records relevant to the

Navajo, namely BIA and OST. However, the NRO has provided me with a list of their contacts in other Interior and non-Interior offices and bureaus that are believed to also maintain information relevant to this case. I intend to contact those other Interior offices and bureaus (and I have advised the Department of Justice of the identities of other United States Government entities), with the goal of ensuring that all such offices and bureaus receive copies of this Court's Order, together with appropriate reminders of its requirements to preserve all information relevant to this litigation. My target date for accomplishing these tasks is December 30, 2007.

11. I will work with my colleagues in the Solicitor's Office to assist Interior's offices and bureaus in refining existing policies and procedures for ensuring that appropriate compliance measures are in place at all levels of Interior's organizational structure, as to this and other tribal trust record retention orders. Those further refinements, some of which are expected to be in place on or about December 21, 2007, will be reported to the Court in future filings.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on November 30, 2007.

Gladys I. Cojocari

GLADYS I. COJOCARI

# DECLARATION OF

# GLADYS COJOCARI

# EXHIBIT A

# United States Department of the Interior

OFFICE OF THE SOLICITOR

MAR 12 2007

MEMORANDUM

**To:** Office of the Secretary
Office of the Solicitor
Office of the Special Trustee
    Office of Historical Trust Accounting
Office of the Inspector General
Office of Assistant Secretary - Indian Affairs
    Bureau of Indian Affairs
Office of Assistant Secretary - Policy, Management, and Budget
    Office of Hearings and Appeals
Office of Assistant Secretary - Land and Minerals
    Minerals Management Service
    Office of Surface Mining
    Bureau of Land Management
Office of Assistant Secretary - Fish, Wildlife, and Parks
    Fish and Wildlife Service
Office of Assistant Secretary - Water and Science
    Bureau of Reclamation
    U.S. Geological Survey

**From:** Lawrence J. Jensen
Deputy Solicitor

**Subject:** Litigation Hold: Preservation of Information in Tribal Trust Cases

As you may know, eighty Tribal plaintiffs, including some Indian groups that are not federally recognized, recently filed actions against the Department of the Interior ("Department") asserting claims of breach of trust and/or asset mismanagement (collectively, "Tribal Trust cases"). This gives rise to an extremely important obligation under Federal law to preserve material that is or may be relevant to the Tribal Trust cases.

The purpose of this Litigation Hold is to inform you of the scope of this obligation and what actions are required to comply with it. The preservation of information will primarily be carried out by individual employees and contractors (any reference herein to "employees" includes contractor employees). **Therefore, it is imperative that a copy of this Litigation Hold reaches every employee who may possess relevant information in your bureau or office.**

**Information To Be Preserved:**

The information that must be preserved consists of all "documents, data, and tangible things" in the possession, custody, or control of your bureau or office that are or may be relevant to the subject matter of the Tribal Trust cases. "Documents, data, and tangible things" encompass paper documents, electronically stored information (discussed below), and other materials, such as maps, videos, calendars, charts, and similar items.

Attached is a list identifying the individual Tribal plaintiffs whose information must be preserved. Additionally, the Native American Rights Fund has filed an action purporting to be on behalf of all other Tribes that received materials as part of the Tribal Reconciliation Project. Therefore, this Litigation Hold covers information concerning any Tribe or group of Indians for which the Department administers or has administered assets in trust.

The Tribal Trust cases concern the management and accounting of tribal resources and funds held in trust by the Department. Accordingly, information that is or may be relevant to these cases includes, without limitation, anything reflecting, referring or relating to:

1. any asset, such as funds, land, minerals, forestry, sand and gravel, or other resources, that is, or at any time has been, held in trust by the United States or its agents for Tribes or Indian groups ("trust asset");
2. policies, procedures, guidelines, or correspondence relating to any aspect of the management or administration of trust assets;
3. proceeds, interest, or income from trust assets; or disbursement, distribution, disposition or transfer of any trust assets;
4. reports, appraisals, reconciliations, or evaluations of any trust assets; and
5. information that serves to identify, locate, or link any relevant information, such as file inventories, file folders, and indices.

The timeframe of information that must be preserved is from a yet-to-be-determined beginning date through the present, which means that information created in the future must also be preserved.

**General Preservation Requirements:**

Employees are required to take "reasonable steps" to preserve the information described above. Reasonable steps, at a minimum, include ensuring that information is not purged pursuant to a records disposition schedule or otherwise inadvertently destroyed. This obligation also extends to records maintained in off-site storage facilities, which may include, in some instances, Federal Records Centers. At the present time, this obligation is only to identify and preserve the information. You will be notified if anything additional is required as the Tribal Trust cases proceed.

**Preservation of Electronically Stored Information ("ESI"):**

Under new amendments to the Federal Rules of Civil Procedure, the preservation requirement explicitly relates to electronically stored information. ESI can include, but is not limited to:

- E-mail (including attachments);
- Instant messages;
- Electronic calendars, task lists, and other organizational aids;
- Word processing documents;
- Spreadsheets;
- Databases;
- Audio and video recordings; and
- Voicemail.

ESI may be located on network systems and servers, local hard drives, laptops, storage media, (including flash drives, diskettes, and CD-ROMs), as well as on PDAs (such as Blackberries) and cell phones. Note that home computers, cell phones, and other devices used for work may also contain relevant or potentially relevant information that must be identified and preserved. Further, the hard drive and network files of departing employees must be identified and preserved.

Your IT personnel will be responsible for taking steps to preserve ESI from a technical standpoint. Employees should seek assistance from the IT personnel as necessary to preserve their ESI, and in no case should they delete any relevant information.

**Conclusion:**

Immediate compliance with this Litigation Hold is essential to protect the Department from lengthy—and avoidable—discovery disputes that consume bureau time and resources and other negative consequences, such as monetary sanctions and evidentiary inferences that would limit the Department's ability to defend against the claims in the cases. This Litigation Hold also protects individual managers and employees by providing them basic guidance on how to comply with their legal requirements.

Thank you for your prompt attention to this matter. Please direct any questions about this memorandum to Paul Smyth, Counselor to the Solicitor, (202-208-4307).

Attachment

**Tribes and Indian Groups with Pending Tribal Trust Cases (As of 3/06/2007)**

Ak-Chin Indian Community

Alabama Quassarte Tribal Town

Assiniboine & Sioux

Gros Ventre Tribe and Assiniboine Tribe

Blackfeet Tribe of the Blackfeet Indian Reservation

Cheyenne River Sioux Tribe

The Chickasaw Nation and Choctaw Nation

Chippewa Cree ("Pembina")

Chippewa Cree Tribe of the Rocky Boy's Reservation

Coeur d'Alene Tribe

Colorado River Indian Tribes

The Confederated Tribes of the Colville Reservation

Confederated Tribes of the Goshute Reservation

Confederated Tribes of the Warm Springs Reservation of Oregon

Crow Creek Sioux Tribe

Delaware Tribe of Indians and The Delaware Trust Board

Delawares of Idaho, Inc.

Eastern Shawnee Tribe of Oklahoma

Gila River Indian Community

Haudenosaunee, Onondaga Nation

Hoopa Valley Tribe

Hopi Tribe

Iowa Tribe of Kansas and Nebraska

Jicarilla Apache Nation

Kaw Nation of Oklahoma

Makah Indian Tribe of the Makah Indian Reservation

Miami Tribe of Oklahoma

Muscogee (Creek) Nation of Oklahoma

Navajo Nation

Nez Perce, et al (Class Action)

- Mescalero Apache Tribe
- Tule River Indian Tribe
- Hualapai Tribe
- Yakama Nation
- Klamath Tribes
- Yurok Tribes
- Cheyenne-Arapaho Tribe
- Sac and Fox Nation
- Santee Sioux Tribe of Nebraska

Nez Perce Tribe

Northern Cheyenne Tribe of Indians

Northwestern Band of Shoshone Indians

Oglala Sioux Tribe

Omaha Tribe of Nebraska

Osage Nation and/or Tribe of Indians of Oklahoma

Otoe-Missouria Tribe of Indians of Oklahoma

Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, California

Passamaquoddy Tribe of Maine

Pawnee Nation of Oklahoma

Pechanga Band of Luiseno Mission Indians of California

Ponca Tribe of Indians of Oklahoma

Prairie Band of Potawatomi Nation

Pueblo of Laguna

Pueblo of Santa Ana

Quechan Tribe of the Fort Yuma Indian Reservation

Red Cliff Band of Lake Superior Chippewa Indians

Rosebud Sioux Tribe

Round Valley Indian Tribes

Salt River Pima-Maricopa Indian Community

San Manuel Band of Serrano Missions Indians

Seminole Nation of Oklahoma

Shoshone-Bannock Tribes of the Fort Hall Reservation

The Shoshone Indian Tribe and Northern Arapaho Tribe of the Wind River Reservation, Wyoming

Eastern Shoshone Tribe and Northern Arapaho Tribe

Soboba Band of Luiseno Indians

Sokaogon Chippewa Community (aka Mole Lake Band of Lake Superior Chippewa Indians)

Standing Rock Sioux

Stillaguamish Tribe of Indians

Swinomish Indian Tribal Community

Te-Moak Tribe of Western Shoshone Indians (Class Action)

Three Affiliated Tribes of the Fort Berthold Reservation

Tohono O'odham Nation

Tonkawa Tribe of Indians of Oklahoma

United Keetoowah Band of Cherokee Indians in Oklahoma.

Ute Indian Tribe of the Uintah and Ouray Reservation

Winnebago Tribe of Nebraska

Wyandot Nation of Kansas

Yankton Sioux

Yomba Shoshone Tribe

# DECLARATION OF

# GLADYS COJOCARI

# EXHIBIT B

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **NAVAJO NATION, f.k.a. NAVAJO TRIBE OF INDIANS,** Plaintiff | Case No. 1:06-cv-00945-L |
| | Judge Francis Allegra |
| v. | |
| **UNITED STATES,** Defendant | **DECLARATION OF ETHEL ABEITA** |

I, Ethel Abeita, as Director of the Office of Trust Records, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I have held the position of Director, Office of Trust Records (OTR), Office of the Special Trustee for American Indians (OST), Department of the Interior (Interior), since August 2002. OTR is responsible for the management of the Bureau of Indian Affairs (BIA) and OST records programs consistent with the requirements of 44 U.S.C. Chapter 31.

2. I have worked for the Federal Government for over twenty years. I was formerly the Assistant Regional Solicitor of the Southwest Regional Office in Albuquerque, New Mexico. In January 2000, I became the Deputy Regional Director for the BIA's Southwest Regional Office and held that position until I was detailed to the Office of Trust Records in August 2002.

3. In my new position at OTR, I immediately began working with the Assistant Deputy Secretary, Dr. Abraham Haspel, to develop a Strategic Plan ("OTR Work Plan") to identify and address specific weaknesses in BIA's and OST's records management programs.

4. A key component of the OTR Work Plan was to centralize all Indian Affairs records in a safe and secure storage facility. Centralization had already begun when I joined OTR. Indian Affairs records located at the various regional Federal Records Centers were being transshipped to the Federal Records Center at Lee's Summit, Missouri.

5. On September 12, 2003, Interior and the National Archives and Records Administration ("NARA") signed a Memorandum of Understanding ("MOU") to consolidate all inactive Indian records in the possession of BIA and OST, and related Interior fiduciary trust records at a new Federal Records Center, the American Indian Records Repository ("AIRR") in Lenexa, Kansas.

6. The AIRR was dedicated on May 4, 2004. It is a state-of-the-art facility, built to archive standards. This underground record center maintains the documents in a secure, climate-controlled environment, with controls for particulate matter and ultraviolet light. The AIRR has sufficient future capacity to hold Interior's American Indian records, as projected for the immediate future.

7. Access to the AIRR is strictly controlled. The stacks are closed to all but NARA staff members. An advance appointment is required to do research at the AIRR, and everyone is required to sign an agreement to handle the documents in accordance with

proper procedures. A copy of the Research Agreement is attached as Exhibit 1. All visitors must also watch a training video which advises on those procedures, and also the criminal penalties for theft or destruction of federal records.

8. All research at the AIRR is conducted in monitored rooms. Each researcher may work on only one box and one file at a time, to preserve the integrity of the boxes.

9. Because of the superior conditions for preserving records at the AIRR , Interior has a strong policy of shipping inactive records to the AIRR as soon as possible. This policy was articulated in a May 5, 2005 memorandum from James Cason, Associate Deputy Secretary, and reiterated in memoranda circulated in 2006 and 2007. Over 150,000 boxes of inactive BIA and OST records have been shipped to Lenexa, Kansas. These boxes have been indexed, including 14,086 boxes of records from the BIA Navajo Region.

10. Inactive records are moved from BIA and OST locations in compliance with "Guidance and Procedures" issued by OTR. A copy of The Guidance and Procedures is attached as Exhibit 3. These procedures include detailed instructions for completing a Move Request which must be approved before records can be sent to the AIRR and how each box is to be labeled, inventoried, and prepared for shipment.

11. When boxes of inactive records are received at the Lenexa Annex, the shipment is verified for completeness. The boxes are then indexed and the data is input in the Box Index Search System ("BISS"), an electronic file level index which lists the contents of the boxes. The index provides information at the file level for general trust program records (i.e., the Office of Law Enforcement Services).

12. Fiduciary trust program records are indexed at the document level, meaning that every document in a file folder, or where there are no folders, every document in a box is indexed. Each fiduciary trust document is assigned its own standard identifiers, such as document type, date and account number if available. The BISS classifies 5754 specific types of documents in 30 identified document categories.

13. Boxes of inactive records are shipped from the originating offices by accession, which could consist of a shipment of only one box. The indexers open each box within an accession, record box and file title information, determine the document types within the file/folder, and categorize these documents within the 30 document-type categories by date, when indexing trust records. All information on the outside of the box, typically including where it originated and its accession, is entered into the BISS as a part of the box title. The boxes undergo quality control as the indexers finish each box, and the contractor has a quality assurance process in place. Upon request, BISS training is provided to researchers at the AIRR.

14. OTR's contractor, Labat Andersen, provides assistance to the BIA and OST Offices in preparing inactive records for shipment to the AIRR. A move schedule is developed by OTR in consultation with the contractor. Several factors are considered in scheduling a site for shipping assistance, including readiness of the BIA/OST records in the field, any urgent needs to move documents at risk, and weather conditions as they relate to the working environment for the contractors that will be preparing the boxes for shipment. The BIA Navajo Region has communicated to OTR that it has approximately 2,000 boxes of inactive records to be transferred to the AIRR. Upon

availability of OTR contractor resources, we anticipate providing the BIA Navajo Regional staff with assistance to prepare the inactive records for shipment and arrange for delivery to the AIRR. This includes: inventorying, packing, shrink-wrapping and completion of move request paperwork. Once a firm moving date had been established for the Navajo inactive records, in part based on contractor availability, the contractor will be sent to complete those actions. Timely shipment to the AIRR of inactive records such as those currently in the BIA Navajo Region is an important priority of OTR.

15. Although the AIRR's principal purpose is not litigation-related, it provides a superior environment for the production and examination of documents in that context as well.

16. In addition to providing a safe storage and research facility for inactive records at the AIRR, OTR has taken steps to preserve and protect active records. 16 BIAM contains NARA-approved records retention schedules that call for the indefinite retention of all categories of Indian fiduciary trust records. Agency personnel are made well aware of this permanent institutional policy.

17. Additionally, in March 2007, I received a notice sent out by Larry Jensen, the Deputy Solicitor, advising of the new tribal trust litigation, including this case filed by the Navajo Nation. The notice was addressed to all employees and contractors at all Interior offices and bureaus that handle Indian trust documents, reminding them that all such records must be preserved, including electronically stored information.

18. OTR conducts records training for BIA and tribal personnel on the proper management of Indian trust records. Over 100 different training events were held last

year, at OTR headquarters and various locations around the country. Between October 2004 and May 2007, OTR trained 1,630 personnel from BIA and OST, and 586 tribal personnel. 156 records contacts were trained from the BIA Navajo Region. OTR trains new records contacts as they are identified, and also provides continuing training for those previously trained. An overview of OTR records training, the table of contents from OTR's records training manual, and a topical agenda are attached as Exhibit 2.

19. OTR has adopted and implemented policies and procedures that are intended to and succeed in preserving Indian trust records for future generations, and making them accessible in an organized way for all interested parties. These purposes would be thwarted by the entry of the order requested by plaintiff in this case, which would require BIA to maintain documents on the Navajo reservation for up to five months, whether or not OTR was ready to assist in moving them to the AIRR. Leaving the inactive records in the field locations would place the records at greater risk of destruction by accidental causes.

ETHEL J. ABEITA
Director
Office of Trust Records

Executed this 20th day of June, 2007

# DECLARATION OF

# GLADYS COJOCARI

# EXHIBIT C

# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

IN REPLY REFER TO.

NOV 2 0 2007

**MEMORANDUM**

**To:** **Office of the Secretary**
**Office of the Solicitor**
**Office of the Special Trustee**
**Office of Historical Trust Accounting**
**Office of the Inspector General**
**Office of Assistant Secretary - Indian Affairs**
**Bureau of Indian Affairs**
**Office of Assistant Secretary - Policy, Management, and Budget**
**Office of Hearings and Appeals**
**Office of Assistant Secretary - Land and Minerals**
**Minerals Management Service**
**Office of Surface Mining**
**Bureau of Land Management**
**Office of Assistant Secretary - Fish, Wildlife, and Parks**
**Fish and Wildlife Service**
**Office of Assistant Secretary - Water and Science**
**Bureau of Reclamation**
**U.S. Geological Survey**

**From:** Paul B. Smyth, Counselor to the Solicitor

**Subject:** Compliance with Records Retention Orders in Tribal Trust Cases: *Swinomish Indian Tribal Community v. United States*; *Navajo Nation v. United States; Round Valley Indian Tribes v. United States; Pawnee Nation of Oklahoma v. United States; Kaw Nation v. United States; Quechan v. United States*

In the last few months, two judges in the Court of Federal Claims, Judge Allegra and Judge Braden, have entered Records Retention Orders ("RROs") in the above cases. Copies of these, as well as of two earlier (2004) RROs, are attached for your reference.[1]

Although the RROs differ in some specific provisions, each of them imposes a broad duty on all U.S. Government employees, contractors, and volunteers to preserve all "documents, data, and tangible things" in their possession, custody or control containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation ("Relevant Information"). Each RRO also requires that mechanisms for ensuring compliance with the RRO be established, and that the Court be advised of the specific

[1] The 2007 RROs are in addition to those entered in 2004 by Judge Allegra in *Jicarilla Apache Tribe v. United States* and *Pueblo of Laguna v. United States*, which still remain in effect. To date, no other judges have entered RROs in any other tribal trust cases.

features of those mechanisms. Please note that some of the RROs expressly provide for individual sanctions for non-compliance. In addition (and as would be the case even if these RROs had not been entered in these cases), Interior could be subject to adverse findings on the merits of the underlying litigation if the Court determines that any Relevant Information has been destroyed or lost.

The staff attorneys assigned to these cases in the Indian Trust Litigation Office already have contacted the Bureau of Indian Affairs and/or the Office of the Special Trustee, by phone and/or mail, to inform them of the requirements of their respective RROs. These attorneys also have asked BIA and/or OST to assist them in identifying other U.S. Government repositories of Relevant Information for any of these tribes, with particular focus on any repositories that may exist within the Department of the Interior. Based on the information received to date, it appears likely that each of your bureaus and offices may have Relevant Information related to at least one of the tribes listed above.

**Conclusion:**

As a first step in documenting Department-wide efforts to put in place compliance measures that will enable all bureaus and offices to document their respective ongoing efforts to ensure that Relevant Information is appropriately safeguarded, please provide me with the name and contact information of the person or persons you wish to designate as the RRO Compliance Coordinator for your bureau or office. As some of these RROs will require compliance filings to be made with the Court as early as Friday, November 30, 2007, I ask that you provide me with this information **no later than the close of business on Thursday, November 29, 2007.**

Please direct any questions about this memorandum to Elisabeth Brandon, ITLO Tribal Trust Team Leader (at 202-208-4218).

Thank you very much for your prompt attention to this matter.

Sincerely,

Paul B. Smyth
Counselor to the Solicitor

Attachments

# DECLARATION OF

# OMAR BRADLEY

## NOVEMBER 30, 2007

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **NAVAJO NATION,**<br>**f.k.a. NAVAJO TRIBE OF INDIANS**<br><br>Plaintiff<br>v.<br><br>**UNITED STATES OF AMERICA**<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:06-cv-00945-L<br><br><br><br>**Declaration of Omar Bradley** |

I, **Omar Bradley,** as the Bureau of Indian Affairs Regional Director of the Navajo Region, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. As Regional Director, I am aware of my responsibility for overseeing the maintenance of documents related to the Navajo Nation for the Bureau of Indian Affairs ("BIA") Navajo Region. In February 2007, I designated Deborah Benally as liaison with the Solicitor's Office. Ms. Benally holds the position of Program Analyst for Trust Coordination in the Navajo Regional Office. Ms. Benally had previously worked for the Office of Trust Records ("OTR") and is familiar with the Department of Interior's policy, which requires that all Indian fiduciary trust records be preserved indefinitely, and forbids their destruction in any case. Additionally, two Records Liaisons, Lois Cunha and Claudeen Crank, are assigned by OTR to the Navajo Region to co-ordinate and advise on records management policy.

2. On April 24, 2007, Deputy Regional Director for Indian Services, Timothy DeAsis, issued a written directive to all Navajo Region Employees advising them of the lawsuit filed by the Navajo Nation, and directing them to preserve all potentially relevant material, including documents and electronically stored information ("Relevant Records"). A copy of the directive is attached as Exhibit A. At my direction, Ms. Benally distributed the notice by e-mail, attached as Exhibit B.

3. On September 12, 2007, I received a copy of this Court's Order concerning the retention of Relevant Records in this case from Ms. Cojocari of the Solicitor's Office. Consistent with those directions, Ms. Benally distributed the portions of the Order pertaining to records preservation to all BIA personnel in the Navajo Region on September 20, 2007. A copy of the e-mail notice is attached as Exhibit C.

4. In the last few months, I have had additional discussions with Ms. Cojocari concerning document preservation policies and procedures policies and procedures appropriate for the Navajo Regional Office and the other Navajo BIA Agencies. On November 5, 2007 I made the Order an agenda item at my regular staff meeting, for discussion and questions. At that time, I issued directions to my staff to avoid using voice mail as a means of communicating substantial information relevant to litigation or to trust matters, and if they do, to transcribe all such voice mail messages left for them. When technical problems appeared with our voice mail system on November 28, 2007, I used the opportunity to send a notice to all BIA Navajo Region personnel to transcribe trust-related e-mail. A copy of the notice is attached as Exhibit D.

5. I have also commenced the preparation of a Compliance Action Plan ("CAP") to be in the form of a chart assigning responsibility to individuals within NRO for carrying out designated tasks to ensure compliance with the Court's Order. These tasks are expected to include:

a. Putting compliance with the Order on the agenda of every monthly Branch Chiefs' meeting, to provide an opportunity for discussion and questions;

b. Sending monthly reminders through E-mail in a memo format to Program Managers to safeguard trust records, in accordance with Department of Interior policy;

c. Issuing E-mail reminders of the terms of the Court's Order to all Navajo Region BIA personnel on a quarterly basis;

d. Including compliance with the Order as an item in Records training for new staff members, and in refresher courses for staff members who work with trust records; and

e. Sending bi-monthly reminders to all personnel who are custodians of records.

6. In addition to the foregoing, I will require that staff members be reminded to direct any questions about records to the Records Liaisons from OTR, and to promptly report any incidents of destruction of Relevant Records to me. I will further report any such incidents of destruction to Gladys Cojocari or her co-counsel at the Solicitor's Office, and will refer any questions regarding compliance with the Court's Order to them as well.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on November 30, 2007.

OMAR BRADLEY

# DECLARATION OF

# OMAR BRADLEY

# EXHIBIT A

**United States Department of the Interior**
**Bureau of Indian Affairs**
**Navajo Region**
**P. O. Box 1060**
**Gallup, New Mexico 87305**

In response, reply to:
N101/Regional Director

TAKE PRIDE IN AMERICA

APR 2 4 2007

Memorandum

To ALL NAVAJO REGION EMPLOYEES

From : ACTING Regional Director, BIA Navajo Region

Subject: **Litigation Hold: Preservation of Information in Tribal Trust Case for the Navajo Nation v. United States**

As you are aware, the Navajo Nation recently filed their complaint against the United States, claiming a breach of trust and mismanagement of tribal resources. Consequently, the Department of Interior Solicitor's Office issued a memo dated March 12, 2007, (see attached) emphasizing the importance for individual employees, including contractor employees to preserve material that is or may be relevant to this litigation.

All DOI employees are directed to preserve materials or information which consists of "all documents, data, and tangible things" in the possession, custody or control of program offices that are or may be relevant to this litigation. Tribal trust assets are identified as the management and accounting of tribal resources and funds held in trust by the Department. As such, information or materials that is or may be relevant to this case includes, without limitation, anything reflecting, referring or relating to:

1. any asset, such as funds, land, minerals, forestry, sand and gravel, or other resources, that is or at any time has been, held in trust by the United States or its agents for Tribes or Indian groups ("trust asset");
2. policies, procedures, guidelines, or correspondence relating to any aspect of the management or administration of trust assets;
3. proceeds, interest, or income from trust assets; or disbursement, disbursement, distribution, disposition or transfer of any trust assets;
4. reports, appraisals, reconciliations, or evaluations of trust assets; and
5. information that serves to identify, locate, or link any relevant information, such as file inventories, file folders, and indices.

Information include electronically stored information (ESI), including, but not limited to: E-mail (including attachments); Instant messages; Electronic calendars, tasks lists, or other organizational aids; Word processing documents; Spreadsheets; Databases; Audio and video recordings; and Voicemail. ESI may be stored on network systems and servers, local hard drives, laptops, storage media (including flash drives, diskettes,

# DECLARATION OF

# OMAR BRADLEY

# EXHIBIT B

Deborah Benally/ALBUQUERQUE/BIA/DOI
04/24/2007 02:56 PM

To NAVAJO_REGION_ALL EMPLOYEES
cc Lois Cunha/OST/OS/DOI@DOI, Claudeen Crank/OST/OS/DOI@DOI, Alley David/OST/OS/DOI@DOI
bcc
Subject Litigation Hold: Preservation on Tribal Information Re: Navajo Nation v. United States

Supervisors, please provide a hard copy of this email and it's attachments to those individuals within your programs that do not have access to Lotus Notes.

Memo to Employees re Litigation Hold.pdf  Litigation Hold.pdf

Deborah S. Benally
BIA Navajo Region
Fone 505.863.8394
Facsimile 505.863.8324

# DECLARATION OF

# OMAR BRADLEY

# EXHIBIT C

Deborah Benally/ALBUQUERQUE/BIA/DOI
09/20/2007 02:30 PM

To NAVAJO_REGION_ALL EMPLOYEES
cc Lois Cunha/OST/OS/DOI@DOI, Claudean Crank/OST/OS/DOI@DOI, Alley David/OST/OS/DOI@DOI
bcc
Subject Preservation on Tribal Information Re: Navajo Nation v. United States

**Supervisors, please provide a hard copy of this REMINDER and it's attachments to those individuals within your programs that do not have access to Lotus Notes.**

Please be informed that Judge Allegra of the Court of Federal Claims issued a Court Order on September 10, 2007 regarding the *Navajo Nation vs, United States*, which outlines the following:

The move and inspection apply to Relevant Records that are <u>inactive as of the date of this Order.</u> Relevant Records are those that contain information relating to the issues in the litigation, generally the trust funds and trust properties of the Navajo [Tribe] Nation, and records that might lead to the discovery of that information. ***The movement of Relevant Records located at Chinle, Tuba City, Shiprock, or Crownpoint, whether there, or at the Gamerco warehouse, or other mutually agreed upon locations; also records at OTR, OST, and LTRO in Albuquerque, NM to any other place than the AIRR is subject to the move plan requirement of Court Order. This Order supersedes all existing policies and procedures, directives and/or guidance thereof.***

**Indian Trust Assets** refers to particular lands, natural resources, monies, or other assets held in trust at a particular time by the Federal Government for an Indian tribe, Alaska natives, or Indian individuals. Some lands or other natural resources may be owned by a tribe or Indian individual, subject to restraints on alienation imposed by Federal law. For the purposes of this definition, ITA includes lands or other natural resources.

**General Obligation to Preserve:** "During the pendency of this litigation or until further order of the Court, the defendant and its departments, agencies, employees, agents, and contractors must take reasonable steps to preserve every document, datum or tangible thing in its possession, custody or control containing information that is relevant to, or is reasonably calculated to lead to the discovery of admissible evidence relevant to, the subject matter involved in the pending litigation ("Relevant Records"), Plaintiffs is reminded that it also has a similar duty to preserve evidence relevant to this case."

Preservation is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps <u>to prevent partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data or tangible things</u>, if such action would make that material incomplete or inaccessible.

**Sanctions:** Failure to comply with this order may lead to the imposition of sanctions. *See Pueblo of Laguna, 60 Fed Cl. at 135-137; United Medical Supply Co., v. United States. 77 Fed Cl. 257 (2007).*

If you have any questions regarding the subject matter, please do not hesitate to contact your OTR Regional Records Liaisons at (505) 863-8240/8422 or myself at your convenience. Thank you!

Deborah S. Benally
BIA Navajo Region
Fone 505.863.8394
Facsimile 505.863.8324
----- Forwarded by Deborah Benally/ALBUQUERQUE/BIA/DOI on 09/20/2007 01:36 PM -----

and CD-ROMs), as well as PDAs (such as Blackberries) and cell phones. Personal home computers, cell phones, and other devices used for work may also contain relevant or potentially relevant information that must be identified and preserved.

The timeframe of preserving and safeguarding information relevant to this case has a yet-to-be-determined beginning date to the present; therefore, any information created in the future must also be preserved. In general, **in no case shall BIA NRO employees delete nor destroy any relevant information related to the Navajo Nation v. United States.**

Supervisors are directed to provide a copy of this memorandum to each employee within their program offices as it is imperative to ensure that all BIA NRO employees are informed that relevant litigation records are preserved and safeguarded.

For technical assistance regarding preserving records, please contact Lois Cunha or Claudeen Crank, OTR Regional Records Liaisons for the Navajo Region at (505) 863-8240/8422. If you have questions pertaining to the litigation, please contact Deborah S. Benally at (505) 863-8394. Thank you.

Attachment

cc: OTR Regional Records Liaisons, BIA Navajo Region
Program Analyst (Trust Coordination), BIA Navajo Region

# DECLARATION OF

# OMAR BRADLEY

# EXHIBIT D

Omar Bradley/ALBUQUERQUE/BIA/DOI
11/28/2007 04:47 PM

To NAVAJO_REGION_ALL EMPLOYEES
cc
bcc
Subject Re: Help - Messages need to be deleted

Folks- Those of you that have voice mail need to be considerate of others and manage your voice mail. As a matter of protocol, any voice mails containing information relative to trust matters need to be transcribed and kept as part of your electronic record.

Omar Bradley
Regional Director
Navajo Region
(505) 863-8314
(505) 870-4791 (cell)
Vivian Yazza/ALBUQUERQUE/BIA/DOI

Vivian Yazza/ALBUQUERQUE/BIA/DOI
11/28/2007 04:32 PM

To Omar Bradley/ALBUQUERQUE/BIA/DOI@BIA
cc
Subject Help - Messages need to be deleted

Hi Omar, My telphone will not take messages as of this PM. I asked Perry Schanefelt about problem and he said that Larry is on leave for a couple of days. Others have called with same problem. It appears that some employees need to delete their messages in order to free up message center.

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **NAVAJO NATION,**<br>**f.k.a. NAVAJO TRIBE OF INDIANS**<br><br>Plaintiff<br>v.<br><br>**UNITED STATES OF AMERICA**<br><br>**Defendant** | ) ) ) ) ) ) ) ) ) ) | Case No. 1:06-cv-00945-L<br><br>**DECLARATION OF**<br>**RICHARD P. FIELITZ, JR.** |

I, Richard P. Fielitz, Jr., pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I am the Chief of Staff for the Office of the Special Trustee for American Indians ("OST") in the Department of the Interior. I have held this position since October 28, 2007, and I have been employed by OST since May 2004. My duties include oversight responsibilities for various OST functions, including litigation support. As explained in more detail below, I am also the Records Retention Orders (RRO) Compliance Coordinator for OST.

2. In March 2007, OST received a Memorandum dated March 12, 2007, signed by Larry Jensen, Deputy Solicitor, which was addressed to all Interior offices and bureaus and directed those offices and bureaus to, among other things, preserve information potentially relevant to *any* tribal trust litigation, including but not limited to this case. The Memorandum identified common issues in tribal trust cases and directed

the continued preservation of electronic and paper records potentially relevant to these cases, including the Navajo litigation. A copy of the Jensen Memorandum then was circulated to Records Liaisons for OST, including its Office of Trust Records ("OTR"). Margaret Treadway, my predecessor as Chief of Staff, sent an email to OST Senior Managers directing them to ensure each employee read the Memorandum. On April 4, 2007, OTR certified to the Office of the Chief Information Officer that all OTR employees had read the Memorandum. The Memorandum also was placed on OST's internal Trust Portal for ready access by OST employees. The Jensen Memorandum was discussed again in a regularly scheduled Senior Managers Meeting on December 4, 2007, and copies of the Memorandum were again handed out and compliance issues were discussed.

3. The Jensen Memorandum further reiterated Interior's preexisting policy requiring the indefinite retention of all categories of Indian fiduciary trust records, regardless of the existence of any pending litigation. That policy is detailed in the record retention schedules contained in 16 Bureau of Indian Affairs (BIA) Manual, expressly applicable to records maintained by BIA and OST. The Indian Affairs Records Management Manual specifically states that BIA and OST records retention policy for all records is permanent for all records, including any identified as temporary. In other words, no records may be destroyed. OST further supports and carries out Interior's records retention policy by, among other measures, extensive records training for Interior employees that is conducted by OTR and by the policy of shipping all inactive records from various Interior facilities to the American Indian Records

Repository ("AIRR"), an archival-quality facility, when the period for these records to be retained onsite has expired.

4. OST first received a copy of the Navajo RRO, along with an explanatory memorandum from Gladys Cojocari of the Office of the Solicitor, by fax on September 13, 2007. On or about September 17, 2007, OTR Director Ethel Abeita then circulated copies of both documents to OTR's Navajo Region Records Liaisons. OTR and other OST personnel also have had several follow-up conferences with Ms. Cojocari that were designed to ensure compliance with the Navajo RRO. In addition, OST has begun drafting a Microsoft Project plan for further compliance measures to be taken throughout OST (including but not limited to OTR). OST expects to coordinate with the Solicitor's Office as it works to finalize and implement such additional compliance measures.

5. On or about November 29, 2007, OST received a copy of a November 20, 2007, Memorandum from Paul Smyth, Counselor to the Solicitor, addressed to the Office of the Secretary and the heads of the various offices and bureaus within Interior. As directed by that November 20 Memorandum, and as stated in paragraph 1 above, I have been assigned to be the RRO Compliance Coordinator for OST.

6. I understand that the Solicitor's Office expects to hold a teleconference during the week of December 3, 2007, with all of the RRO Compliance Coordinators throughout Interior, as part of the process of developing additional measures to ensure Interior's compliance with all of the Court of Federal Claims RROs, and that written guidance to memorialize those additional measures then is expected to be issued by the Solicitor's Office on or about December 21, 2007. As a RRO Compliance

Coordinator, I understand that upon receipt of that guidance I then will be responsible to ensure that those measures are implemented throughout OST.

RICHARD P. FIELITZ, JR.

Executed this 4th day of December, 2007.

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NAVAJO NATION, f.k.a. NAVAJO TRIBE OF INDIANS, Plaintiff; | ) | Case No. 1:06-cv-00945-L |
| v. | ) | DECLARATION OF LINDA LAUTIGAR |
| UNITED STATES OF AMERICA, Defendant. | ) | |

I, Linda Lautigar, pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I am an Enforcement Specialist for the Office of Enforcement, Minerals Revenue Management, within the Minerals Management Service (MMS) in the Department of the Interior. I have been employed in various capacities at the MMS since January 1984. My duties since November 2002 in the Office of Enforcement include participation in records management for litigation support. Given MMS' mission, many of these documents include oil and gas records, particularly royalty data. Additionally, I serve as the backup Records Retention Orders (RRO) Compliance Coordinator.

2. On or about April 4, 2007, MMS received a Memorandum signed by Larry Jensen, Deputy Solicitor, which was addressed to all Interior offices and bureaus and directed all Interior offices and bureaus to, among other things, preserve information potentially relevant to *any* tribal trust litigation. The Jensen Memorandum also reiterated the preexisting Interior policy requiring the indefinite retention of all categories of Indian

fiduciary trust records, regardless of the existence of any pending litigation. Also on or about April 4, 2007, MRM Associate Director Lucy Querques Denett distributed the Jensen Memorandum via email. Additionally, MMS Records Officer employees, such as my colleague Nola Freeman, work to ensure, among other things, that MMS employees understand and comply with all applicable requirements for the preservation of Indian trust records within MMS possession, custody or control. This is accomplished in part by preparation of a periodic newsletter emphasizing the critical importance of preservation of Indian trust records.

3. On or about November 21, 2007, MMS received the November 20, 2007, Memorandum from Paul Smyth, Counselor to the Solicitor, addressed to the Office of the Secretary and the heads of the various offices and bureaus within Interior. That Memorandum was accompanied by copies of various Records Retention Orders (RROs) issued in the Court of Federal Claims, including in this case, and the Smyth Memorandum requested that each addressee appoint a Compliance Coordinator. On November 29, 2007, I was assigned to be the backup RRO Compliance Coordinator for MMS. (The primary RRO Compliance Coordinator for MMS, until she retires at the end of 2007, is Nola Freeman.)

4. I understand that the Solicitor's Office expects to hold a teleconference during the week of December 3, 2007, with all of the RRO Compliance Coordinators throughout Interior as part of the process of developing additional measures to ensure compliance with all the RROs that were attached to the Smyth Memorandum, and that written guidance to memorialize those further measures is expected to be issued by the Solicitor's Office

to all RRO Compliance Coordinators, on or about December 21, 2007. I understand that, as backup RRO Compliance Coordinator for MMS, I then will be expected to assist in implementing those measures throughout MMS.

LINDA LAUTIGAR

Executed this 4 day of December, 2007.