# DECLARATION OF

# JASON R. BARRON

## DECEMBER 3, 2007

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NAVAJO NATION<br>f.k.a. NAVAJO TRIBE OF INDIANS<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | No. 06-945L<br>Judge Francis M. Allegra |

# DECLARATION OF JASON R. BARON

I, Jason R. Baron, pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I serve as the Director of Litigation in the Office of General Counsel, National Archives and Records Administration ("NARA"), with my office located at Archives II in College Park, Maryland. I have been employed in this capacity since May 2000. Previously, between 1988 and 2000, I served as Trial Attorney and Senior Counsel in the Federal Programs Branch of the Civil Division of the Department of Justice. I am also a member of the Bar of the District of Columbia (D.C. Bar No. 366663).

2. I am generally familiar with the *Navajo Nation* lawsuit. I am specifically aware of the Order of this Court, dated September 10, 2007, requiring preservation of documents, data or tangible things that are relevant or may reasonably lead to the discovery of information relevant to the subject matter involved in the pending lawsuit. I am filing this Declaration based on my personal knowledge of NARA's holdings, as supplemented with information obtained from NARA archivists and staff.

3. Under the Federal Records Act ("FRA"), the Archivist of the United States is responsible for the custody of all records transferred to NARA, and by statute is required to maintain adequate facilities for the housing of those records. 44 U.S.C. §§ 2108(a) & 2110. The FRA provides the authority by which records of Federal agencies that have "sufficient historical or other value to warrant their continued preservation by the United States government" are transferred into the legal custody of NARA. 44 U.S.C. 2107. NARA's archival record holdings, by operation of statute, and in accordance with regulations promulgated thereunder, *see* 36 C.F.R. Part 1200 *et seq.,* represent records *being permanently retained by the United States government.*

4. Accordingly, any and all archival records relevant to the proceedings in the *Navajo Nation* action are being so held on a permanent basis. Undersigned counsel nevertheless has alerted key staff in NARA's Office of Records Services, Washington, D.C. (covering our headquarters holdings) and NARA's Office of Regional Records Services (covering our regional holdings nationwide), that the Court's Order in *Navajo Nation* is in effect, and I have taken reasonable steps to ensure that copies of the Order are transmitted to those components of NARA known to hold Indian and tribal records including records relevant to the *Navajo Nation* litigation. NARA employees are thus on notice that a preservation Order is in effect for these archival holdings.

5. More specifically, based on the inventorying of NARA's Indian and tribal collections undertaken by NARA staff to date, I can report that substantial collections of open, publicly available records of the Navajo Nation may be found both in NARA's regional archives in Denver, Colorado, as well as in NARA's Pacific Region regional archives in San Francisco. Other NARA regional archives facilities may also hold

publicly available Navajo Nation records. Additionally, Navajo Nation records may be found in NARA's Washington, D.C. area archival holdings, both in our Main building on the Mall in Washington, D.C., as well as at Archives II situated in College Park, Maryland. Relevant NARA holdings appear to include records catalogued under the supervising Bureau of Indian Affairs agency that had jurisdiction over a particular tribe, which in the case of the Navajo would include both the New Mexico Superintendency and the Colorado Superintendency, for specific time periods. NARA holds both 19th and 20th century records in various records series known by such titles as "Letters Received by the Office of Indian Affairs," and "Central Classified Files." Additionally, NARA has many additional archival series of Indian and tribal records that may contain relevant records to this litigation, including a series known under the generic name "General Services Files." Numerous finding aids exist for these various collections, and NARA staff are available to provide reasonable assistance to researchers with respect to their use of these open and publicly available collections of permanent records wherever they may reside.

6. Beyond NARA's archival holdings, I am confident that NARA does not possess any operational or active records, either in textual (i.e., hard-copy) or electronic form, that would be considered relevant or material to the underlying proceedings in the *Navajo Nation* case. The only contact NARA archivists have with respect to archival records are requests they may receive from time to time for access to such records; they do not themselves generate records of any kind that would be relevant to the matters being litigated in this case, including involving a damage action for breaches of trust duties by the United States or its components or agencies.

7. Nevertheless, in further response to this Court's Orders in both the present case and in related cases, and in light of the many related tribal trust cases pending in courts throughout the country, NARA has prepared the attached Notice 2008-046, "Holds on NARA Operational Records Relevant To "Tribal Trust" Lawsuits," issued by NARA's Assistant Archivist for Information Services Martha Morphy (see Tab A). This Notice, dated December 3, 2007, is set for distribution this week via electronic dissemination to the heads of *all* NARA components nationwide, with further distribution to staff. The Notice is intended to alert staff both to the existence of the records retention order entered in *Navajo Nation* (as attached to the Notice), as well to related orders which have been entered and which may yet be entered in tribal trust lawsuits. Accordingly, the NARA Notice goes further with respect to observing preservation obligations, by placing all NARA staff on notice "of each person's duty to preserve relevant records and information across the board for *all* tribes currently pursuing tribal trust claims" (emphasis in original). Attached to the Notice is a list of all known tribal trust cases, *whether they currently have a retention order in place or not.* The Notice goes on to state that NARA staff "must take reasonable steps to preserve every document, all data or tangible thing in its possession, custody or control" concerning five categories of information corresponding to the allegations of trust mismanagement involved in the pending tribal trust lawsuits. The Notice specifically calls for NARA staff to preserve both traditional paper documents that are relevant to the lawsuits, as well as electronic documents, including in the form of email, word processing, and voice mail, and provides specific instructions for the forwarding of electronic documents to central email and voice mail repositories for continuous preservation during the pendency of this and

related lawsuits. The NARA Notice also specifically reminds employees that periodic reminders and update notices will be issued to fulfill NARA's obligations in compliance with existing court orders. Finally, the Notice states that failure to comply with the Court's Orders may lead to the imposition of sanctions.

8. Additionally, undersigned counsel, working with NARA's records officer, has directed that NARA's technical staff responsible for the maintenance of our computer equipment and electronic communications systems act to preserve a set of disaster recovery backup tapes created contemporaneously with the Court's record retention Order. These backup tapes contain electronic mail and other documents created or received by NARA staff nationwide that were residing on our electronic systems as of September 14, 2007. They will be held indefinitely pending resolution of the proceedings in this case and at the further direction of NARA counsel and NARA's records officer.

9. With these compliance measures with the Court's preservation Order in place, NARA's Office of the General Counsel intends to coordinate the efforts of the various NARA components to monitor compliance with the Court's Orders. To this end, NARA's Records Officer will be working in tandem with an attorney in my office who has been specifically assigned to monitor the central repositories of relevant e-mail and voice mail messages, to ensure that proper archiving of such electronic records is taking place. Both myself and the staff attorney assigned to monitor NARA's preservation actions will be expected to participate in upcoming meetings and nationwide conference calls initiated by NARA headquarters staff to remind NARA staff in both regional and headquarters components of their continuing compliance obligations. We intend to

continue to participate in such meetings and conference calls on a periodic basis during the pendency of this and related lawsuits. Additionally, as has previously been done during the course of my tenure, should any issues arise involving allegations of missing or damaged records relevant to this action, NARA's Office of the General Counsel will continue to take a leading role in working with any and all appropriate components of this agency, as well as with the Department of Justice and other affected federal agencies, in an effort to resolve outstanding issues.

10. NARA does also operate federal record centers ("FRC") around the country, including Indian and tribal records of the Department of Interior ("DOI") presently consolidated at our facility in Lenexa, Kansas. Records in the Lenexa FRC remain in the legal custody of DOI, and DOI as a party defendant in the litigation controls access to such records. However, all relevant DOI records have been under a "freeze" on disposition (equivalent to a legal preservation hold) since 2004, and there are no plans to lift the freeze with respect to records identified as tribal trust records. Nevertheless, I have taken steps to alert appropriate NARA staff at the Lenexa facility of the existence of the Court's preservation Order, and the need to preserve all records relevant to this litigation.

11. As stated above, all appropriate components of NARA holding records in their legal custody related to the Navajo Nation tribe have been alerted to the Court's Order. NARA will continue to take reasonable steps to monitor compliance with the Court's orders, including issuing periodic reminders of NARA's record retention obligations, until such time as the present litigation is resolved. I will also ensure that NARA's

Office of General Counsel will continue to monitor NARA's obligations under the Court's Order into the foreseeable future.

12. Finally, NARA's Office of the General Counsel will immediately notify the Department of Justice should there be any violation of the Court's Orders by a NARA employee.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

JASON R. BARON

Executed on this 3rd day of December 2007

# DECLARATION OF

# JASON R. BARRON

# EXHIBIT

# A

# TRIBAL TRUST ACCOUNTING AND TRUST MISMANAGEMENT CASES
**(December 3, 2007 version)**

Alabama-Quassarte Tribal Town v. Kempthorne

Ak-Chin Indian Community v. United States

Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Kempthorne

[Eastern] Shoshone Indian Tribe of the Wind River Reservation, Wyoming v. United States / [Northern] Arapahoe Indian Tribe of the Wind River Reservation, Wyoming v. United States

Blackfeet Tribe of the Blackfeet Indian Reservation v. United States

Cheyenne River Sioux Tribe v. United States

The Chickasaw Nation and The Choctaw Nation v. Department of the Interior

Chippewa Cree Tribe of the Rocky Boy's Reservation; Little Shell Tribe of Chippewa Indians; Turtle Mountain Band of Chippewa Indians; White Earth Band of Chippewa Indians v. United States **(Pembina Judgment Fund)**

Coeur d'Alene Tribe v. United States

Colorado River Indian Tribes v. United States

Confederated Tribes of the Colville Reservation v. Kempthorne

Confederated Tribes of the Goshute Reservation v. United States

Confederated Tribes of the Warm Springs Reservation of Oregon v. United States

Crow Creek Sioux Tribe v. United States

Delaware Tribe of Indians and the Delaware Trust Board v. United States

Eastern Shawnee Tribe of Oklahoma v. United States

Eastern Shoshone Tribe v. United States, Northern Arapaho Tribe v. United States

[Eastern] Shoshone Indian Tribe of the Wind River Reservation, Wyoming v. United States / [Northern] Arapahoe Indian Tribe of the Wind River Reservation, Wyoming v. United States

Gila River Indian Community v. Kempthorne

Gros Ventre Tribe and Assiniboine Tribe v. United States

Haudenosaunee v. United States

*Haudenosaunee, Onondaga Nation v. Kempthorne*

Hoopa Valley Tribe v. United States

Hopi Tribe v. United States

Iowa Tribe of Kansas and Nebraska v. Kempthorne

Iowa Tribe of Kansas and Nebraska v. United States

Jicarilla Apache Nation v. United States

Kaw Nation of Oklahoma v. United States

Kaw Nation v. Kempthorne

Lower Brule Sioux Tribe v. United States

Makah Indian Tribe of the Makah Indian Reservation v. United States

Miami Tribe of Oklahoma v. Kempthorne

Miami Tribe of Oklahoma v. United States

Muscogee (Creek) Nation of Oklahoma v. United States

Navajo Nation v. United States

Nez Perce Tribe v. United States

Nez Perce Tribe, Mescalero Apache Tribe, Tule River Indian Tribe, Hualapai Tribe, Yakama Nation, Klamath Tribes, Yurok Tribes, Cheyenne-Arapaho Tribe, Pawnee Nation of Oklahoma, Sac and Fox Nation, and Santee Sioux Tribe of Nebraska v. Kempthorne

Northern Cheyenne Tribe of Indians v. Kempthorne

Northwestern Band of Shoshone Indians v. United States

Oglala Sioux Tribe v. Kempthorne

Oglala Sioux Tribe v. United States

Omaha Tribe of Nebraska v. United States

Osage Nation of Oklahoma v. United States

Otoe-Missouria Tribe of Indians of Oklahoma v. United States

Otoe-Missouria Tribe of Oklahoma v. Kempthorne

Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, California, v. United States

Passamaquoddy Tribe v. United States

Passamaquoddy Tribe of Maine v. Kempthorne

Pawnee Nation of Oklahoma v. United States

Pechanga Band of Luiseno Mission Indians v. Kempthorne

Ponca Tribe of Indians of Oklahoma v. Kempthorne

Prairie Band of Potawatomi Indians v. United States

Pueblo of Laguna v. United States

Pueblo of Santa Ana v. United States

Quechan Tribe of the Fort Yuma Indian Reservation v. United States

Red Cliff Band of Lake Superior Chippewa Indians v. United States

Red Cliff Band of Lake Superior Indians v. Kempthorne

Rosebud Sioux Tribe v. Kempthorne

Rosebud Sioux Tribe v. United States

Round Valley Indian Tribes v. United States

Salt River Pima-Maricopa Indian Community v. Kempthorne

Salt River-Pima-Maricopa Tribes v. United States

San Manuel Band of Serrano Missions Indians v. United States

Seminole Nation of Oklahoma v. Kempthorne

Seminole Nation of Oklahoma v. United States

Shoshone-Bannock Tribes of the Fort Hall Reservation v. Kempthorne

Soboba Band of Luiseno Indians v. United States

Sokaogon Chippewa Community v. Kempthorne

Sokaogon Chippewa Community (aka Mole Lake Band of Lake Superior Chippewa Indians) v. United States

Standing Rock Sioux Tribe v. Kempthorne

Stillaguamish Tribe of Indians v. Kempthorne

Stillaguamish Tribe of Indians v. United States

Swinomish Indian Tribal Community v. United States

Te-Moak Tribe of Western Shoshone Indians v. Kempthorne

Three Affiliated Tribes of the Fort Berthold Reservation v. Kempthorne

Three Affiliated Tribes of the Fort Berthold Indian Reservation v. United States

Tohono O'Odham Nation v. Kempthorne

Tohono O'odham Nation v. United States

Tonkawa Tribe of Indians of Oklahoma v. United States

Tonkawa Tribe of Indians v. Kempthorne

United Keetoowah Band of Cherokee Indians in Oklahoma v. United States

United Keetoowah Band of Cherokee Indians in Oklahoma v. United States

Ute Indian Tribe of the Uintah and Ouray Reservation v. United States

Winnebago Tribe of Nebraska v. Kempthorne

Winnebago Tribe of Nebraska v. United States

Wyandot Nation of Kansas v. Kempthorne

Wyandot Nation of Kansas v. United States

Yankton Sioux Tribe v. Kempthorne

Yankton Sioux Tribe v. United States

Yomba Shoshone Tribe v. United States

# In The United States Court of Federal Claims

No. 06-945L

(Filed: September 10, 2007)

NAVAJO NATION
f.k.a. NAVAJO TRIBE OF INDIANS,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**ORDER**

This matter comes before the court on plaintiff's Motion for Entry of Record Retention Order. Pursuant to RCFC 26(c) as well as the court's inherent power to regulate its proceedings and maintain the integrity of its functions, *see Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-137 (2004), the court hereby **ORDERS** as follows:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant and its departments, agencies, employees, agents, and contractors must take reasonable steps to preserve every document, datum, or tangible thing in its possession, custody, or control containing information that is relevant to, or is reasonably calculated to lead to the discovery of admissible evidence relevant to, the subject matter involved in the pending litigation ("Relevant Records"). Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection and Production.**

   (a) Defendant shall move Relevant Records that, as of the date of this order, are inactive as defined by the Department of Interior ("Interior") Manual Part 303, Chapter 6, and located at the Bureau of Indian Affairs ("BIA") Navajo Regional ("Gallup") Office, the BIA Navajo Regional Realty Office, and the BIA Fort Defiance Agency, and any predecessor offices therefor to the Gallup BIA Warehouse in Gamerco, New Mexico, at which location such records shall be made available to plaintiff for purposes of inspection. At least 10 calendar days

before movement of the records from their present locations to Gamerco, defendant will provide plaintiff with an intermediate move plan or plans, which shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. The move process may be monitored by plaintiff or its representative.

(b) After reviewing the above inactive Relevant Records for privileged material, if necessary, defendant shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) Within 35 days after entry of this order, defendant shall provide to plaintiff any and all existing indices and inventories that include inactive Relevant Records or boxes thereof located at the above offices in the most useable form readily available. Defendant shall provide to plaintiff additional or supplemental indices or inventories of inactive Relevant Records within 21 days after the creation or discovery of such indices or inventories.

(ii) Within 35 days after receiving such indices or inventories from defendant or within some other time as agreed to by the parties, plaintiff shall designate boxes or records listed in the provided indices or inventories that plaintiff wishes to review for Relevant Records.

(iii) Within 63 days after the date on which plaintiff designates which boxes of one or more of the above offices it wishes to inspect, defendant will begin to make available, on a rolling basis, the boxes from such office(s) for plaintiff's inspection at the BIA warehouse in Gamerco.

(iv) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from defendant that the designated record has become available for inspection, during which process plaintiff may identify records for production. This inspection period may be extended by agreement of the parties or by the court for good cause shown. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including without limitation through the use of audio recorders, digital cameras, or document scanning, provided that no such recordings made by plaintiff shall constitute production of records. Plaintiff's documentation shall be subject to the Protective Order entered by this court on May 11, 2007.

(c) After plaintiff has inspected and identified records for production pursuant to paragraph 2(b) above, defendant may move those records to the American Indian Records Repository ("AIRR") in Lenexa, Kansas, in accordance with defendant's

procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual. After such move(s), defendant shall scan the records identified by plaintiff; code the scanned images at the document level, including data fields as agreed to by the parties; and provide such images and coding to plaintiff within such schedule as agreed to by the parties. For documents originating in media other than paper, defendant shall provide the document in a reasonably usable form, including any form reasonably requested by plaintiff, and also shall provide an opportunity to plaintiff to test or sample such documents upon reasonable request. Defendant shall expedite and prioritize the scanning, coding, and production to plaintiff of identified records.

(d) In accordance with defendant's procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual, defendant may move any boxes that have been either: not designated for inspection within the time period provided for in or agreed to under paragraph 2(b)(ii); or designated but not reviewed by plaintiff within the applicable period provided for under paragraph 2(b)(iv). Nothing herein prevents plaintiff from also seeking to inspect records from the above offices in whatever location they may be found in the future.

(e) Within such schedule as agreed to by the parties, defendant shall input into Interior's Box Inventory Search System ("BISS") data identifying the boxes, files, and documents containing all Relevant Records located as of the date of this order at the AIRR; provide plaintiff access to such BISS database at the Albuquerque office of plaintiff's counsel and the AIRR; and make those records available for plaintiff's inspection at the AIRR. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including, without limitation, through the use of audio recorders or digital cameras, provided that no such recordings made by plaintiff shall constitute production of records. Defendant also shall provide to plaintiff all manuals, training materials, and similar documents created by or for Interior which describe the BISS database and its manner of operation and access. Defendant shall provide to plaintiff additional or supplemental indices or inventories for the AIRR that include Relevant Records promptly after the creation of such indices or inventories.

(f) The parties shall meet and confer to discuss schedules and procedures to be used for defendant to make available to plaintiff, for purposes of inspecting active or inactive Relevant Records (determined as of the date of this order) of all of defendant's departments, agencies, offices, employees, agents, and contractors at offices other than those identified in paragraph 2(a) above, as follows:

(i) The parties shall expedite and prioritize inspection of Relevant Records that, as of the date of this order, are inactive and located at: (1) the offices

of the BIA Chinle Agency, the BIA Western Navajo ("Tuba City") Agency, the BIA Eastern Navajo ("Crownpoint") Agency, and the BIA Shiprock Agency, whether inspected at those offices, the BIA Gamerco warehouse, or other mutually agreed locations; (2) the Office of Trust Records ("OTR"), the Office of the Special Trustee ("OST"), and the BIA Land Titles and Records Office ("LTRO"), all located in Albuquerque, New Mexico; or (3) offices of the Department of the Treasury.

(ii) Defendant, after reviewing the records for privileged material, if necessary, shall make the respective record collections available to plaintiff for purposes of inspection and designation. Unless otherwise agreed by the parties, defendant shall provide existing indices or inventories for such records as soon as practicable and make such records available for plaintiff's inspection within 63 days of plaintiff's designation of them.

(iii) Plaintiff shall inspect the records upon receiving notification from defendant that the records have become available for inspection. If plaintiff identifies records for production, defendant shall make arrangements for scanned and coded images, or other data in a reasonably usable form, to be delivered to plaintiff as soon as practicable.

(iv) Unless otherwise agreed by the parties, moves of Relevant Records that are inactive as of the date of this order from the BIA Navajo Agencies identified in paragraph 2(f)(i) above, the OTR, the OST, and the LTRO to locations other than the AIRR shall be subject to the intermediate move plan requirement of section 2(a) above.

(g) The parties shall attempt to reach agreement on all matters related to document inspection and shall coordinate inspection of Relevant Records in a manner that will minimize the disruption of ongoing governmental activities.

3. **Indexation and Inventorying.**

(a) Within 126 days after entry of this order, the parties shall identify all of their respective repositories besides the AIRR and those addressed in section 2(a) above that are reasonably anticipated to be subject to discovery in this case and determine whether indices or inventories exist for each location. The parties also shall have ongoing duties to identify evidence relevant to this case in their respective possession, custody, or control.

(b) Within the same time period or as the parties may agree, the parties shall provide to each other existing indices and inventories for such repositories in the most

useful form readily available, except for indices and inventories previously provided pursuant to paragraph 2 of this Order.

(c) If a party is unable to provide the other with indices or inventories of its repositories containing evidence relevant to this case, then the parties shall meet and confer as soon as practicable about the possibility of using, as may be appropriate, a collection-by-collection approach, including on-site reviews, to address the sufficiency of existing indices or inventories and to discuss whether additional indexation of specific record collections is necessary and the scope, timing, and method of any additional indexation or elaboration of inventories at each location based on the particular facts relating to each repository and record characteristics. The parties shall provide additional or supplemental indices or inventories that include evidence relevant to this case within 21 days after the creation or discovery of such indices or inventories.

(d) The parties shall cooperate in good faith to attempt to reach agreement on all issues regarding the indexation and inventorying of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation and inventorying obligation, identifying the types of material to be indexed and inventoried, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation or inventorying;

(iii) whether indexation or inventorying will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation or inventorying process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index or inventory any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and inventorying and ways to reduce or share these costs; and

(vii) policies and procedures to review and modify the indexation and inventorying obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(e) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(d) of this order or on other material aspects of indexation, the parties shall file expeditiously with the court a statement of the unresolved issues together with each party's proposal for their resolution of the issues.

4. **Compliance.** The parties shall establish policies, procedures, and controls for monitoring compliance with this order and, on or before 63 days after entry of this order, file a status report with the court describing those policies, procedures, and controls. The parties' counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things, if such action would make that material incomplete or inaccessible.

6. **Further Instructions; Modification.**

(a) If, after counsel confer, unresolved issues remain but require resolution concerning matters arising under this order or other material aspects of preservation, inspection and production, or indexation and inventorying, the parties shall file with the court a statement of the unresolved issues together with each party's proposal for their resolution.

(b) Either party also may apply to the court for further instructions regarding, *inter alia*:

(i) defendant's obligation to preserve specific categories of documents, data, or tangible things;

(ii) any aspect of the inspection or indexation tasks not herein clearly defined; and

(iii) allocating copying costs and maintaining the confidentiality of information contained in various records.

(c) Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions. *See Pueblo of Laguna*, 60 Fed. Cl. at 135-137; *United Medical Supply Co., Inc. v. United States*, 77 Fed. Cl. 257 (2007).

8. **Dissemination.** This order shall be distributed by defendant and plaintiff to all relevant agencies, departments, offices, divisions, contractors, and individuals.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

Case 1:07-cv-00002-EGB Document 17 Filed 10/22/2007 Page 1 of 3

# In the United States Court of Federal Claims

No. 07-002L

Filed October 22, 2007

| | |
|---|---|
| PAWNEE NATION OF OKLAHOMA, | |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

## PROTECTIVE ORDER

Pursuant to Rule of the Court of Federal Claims 26(c) ("RCFC"), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

### 1. Obligation to Preserve Certain Documents, Data, and Tangible Things

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, shall take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

### 2. Mechanism for Ensuring Compliance With This Order

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to appropriate document repositories by a date to be determined by the Court and then every six months

thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Central California Agency and Pacific Regional Office of the Bureau of Indian Affairs (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this

Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

The court, however, reserves the right, after reviewing the record and other information submitted by the parties, to modify this Protective Order in the event such information is not confidential, privileged, proprietary, or would adversely affect national defense and/or national security upon public disclosure.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

Case 1:06-cv-00900-MSGB Document 41 Filed 12/04/2007 Page 1 of 31

# In the United States Court of Federal Claims

No. 06-900L
Filed October 1, 2007

***********************************
ROUND VALLEY INDIAN TRIBES, *

Plaintiff, *

v. *

THE UNITED STATES, *

Defendant. *
***********************************

**PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Rules of the Court of Federal Claims (RCFC), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

**1. Obligation to Preserve Certain Documents, Data, and Tangible Things**

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, shall take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

**2. Mechanism for Ensuring Compliance With This Order**

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to appropriate document repositories by a date to be determined by the Court and then every six months thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the

parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Central California Agency and Pacific Regional Office of the Bureau of Indian Affairs (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a

mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

# In The United States Court of Federal Claims

No. 06-899L

(Filed: August 24, 2007)

SWINOMISH INDIAN TRIBAL COMMUNITY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**ORDER**

On July 31, 2007, the court ordered the parties in this case to file a proposed document preservation order. On August 8, 2007, the parties filed a joint stipulation regarding preservation of documents, data, and tangible things. Pursuant to RCFC 26(c) as well as the court's inherent power to regulate its proceedings and maintain the integrity of its functions, *see Pueblo of Laguna v. United States*, 60 Fed.Cl. 133, 135-137 (2004), the court adopts the parties' stipulation with minor changes, and hereby **ORDERS** as follows:

1. **General Obligation to Preserve**. During the pendency of this litigation or until further order of the court, defendant, its agencies, and its employees must take reasonable steps to preserve every document, data or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation ("Swinomish documents"). Plaintiff is reminded that it also has the same duty to preserve evidence relevant to this case.

2. **Definitions**. For purposes of this order:

   (a) "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as

tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

(b) "Preserve" is to be interpreted broadly to include, without limitation, taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, migration, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible. The term also includes taking reasonable steps to prevent the relocation of documents, data, and tangible things if such relocation would result in the documents, data, or tangible things no longer being in the possession, custody, or control of the party from whom the documents, data, and tangible things are relocated.

3. **Movement of Documents, Data, and Tangible Things.**

(a) On August 6, 2007, defendant represented to plaintiff that it does not anticipate moving or transferring Swinomish documents from the Department of the Interior within the immediate future. Defendant shall provide plaintiff with written notice at least thirty (30) days prior to moving or transferring Swinomish documents from the Puget Sound Agency of the BIA to the American Indian Records Repository (AIRR).

(b) Defendant has represented that it is determining the location of Swinomish documents held in other Department of the Interior facilities. Within thirty (30) days after the completion of that investigation, defendant shall meet and confer with plaintiff concerning its findings with respect to any collections of Swinomish documents that are found in other Interior facilities, and shall provide plaintiff any existing finding aids or indices of such collections, so as to allow plaintiff to determine whether it wishes to review the records at the facilities. Such review, if any, will be according to the rules and procedures of the facilities in which the records are located. During the aforementioned meeting, the parties shall also discuss how plaintiff will be notified should

any of the collections of Swinomish documents be considered for movement or transfer to the AIRR.

(c) Should, at any point, the parties' consultations reveal a need to modify this order, the parties' shall file an appropriate motion seeking that modification.

4. **Compliance**. Defendant, in consultation with plaintiff, shall establish a mechanism for monitoring compliance with this order, providing, *inter alia*, for periodic reminders of record retention obligations to be sent to Swinomish document repositories, BIA Puget Sound Agency, Northwest Regional Office and the Office of Trust Records. On or before September 17, 2007, defendant shall file a status report with the court describing this compliance mechanism. Counsel shall immediately notify opposing counsel if, at any time, they become aware of a violation of paragraph 1 of this order (*e.g.*, the destruction or loss of documents, data, and/or tangible things).

5. **Dispute Resolution.** If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this order, or believes that the opposing party has violated any term of this order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute within a period of 20 days of the aforementioned written notice, either party may file a motion with the court seeking a ruling regarding the parties' obligations under, and compliance with, this order.

6. **Sanctions**. Failure to comply with this order may lead to the imposition of sanctions. *See Pueblo*, 60 Fed.Cl. at 135-137; *United Medical Supply Co., Inc. v. United States*, 77 Fed.Cl. 257 (2007).

7. **Dissemination**. This order shall be distributed by defendant to all relevant agencies, departments, offices, divisions, and individuals.

**IT IS ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge