# United States Court of Federal Claims

| | | |
|---|---|---|
| NAVAJO NATION<br>f.k.a. NAVAJO TRIBE OF INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-945L<br>Judge Francis M. Allegra |

## FIRST JOINT STATUS REPORT

Plaintiff, the Navajo Nation, and Defendant, the United States, (collectively, the "parties") hereby submit this first Joint Status Report regarding the progress of alternative dispute resolution ("ADR") proceedings as required by the Court's Order of October 10, 2007.

## I. ADR AGREEMENT AND CAPO

Since entry of the Order of October 10, 2007, which referred this case to Senior Judge Bruggink to conduct ADR proceedings, the parties have negotiated an ADR Agreement and an ADR Confidentiality Agreement and Protective Order ("CAPO") to govern the conduct of, and the production of, records within the ADR proceedings.

The parties have worked cooperatively in this and currently have only one issue outstanding, which affects both documents. Specifically, the parties are researching and discussing whether they legally can agree to produce privileged and protected materials within the context of ADR proceedings, i.e., settlement negotiations, to facilitate speedy and less expensive discovery without waiving application of relevant privileges and protections from disclosure both in case the parties withdraw from ADR proceedings and as applied to third parties. Defendant's position is that the production of privileged material within the context of ADR proceedings would waive any relevant

privileges under the law of privilege in the U.S. Court of Appeals for the District of Columbia Circuit. Although Defendant understands the efficiencies Plaintiff seeks, Defendant has represented that it is unable to pursue a course of action that would result in a potential waiver of its privileges. Defendant maintains that its interest in encouraging government officials to seek appropriate legal guidance in the performance of their duties by protecting the confidentiality of these communications pursuant to the attorney-client privilege is paramount to any efficiencies to be gained by the approach currently proposed by Plaintiff in its draft ADR CAPO and ADR Agreement.

The parties have discussed some legal authorities provided by Defendant relevant to this issue. The discussions have included a conference call on January 9, 2008 (the date of this filing).

## II. DISCOVERY PROGRESS

### A. Records Within the Bureau of Indian Affairs ("BIA") Navajo Region

Pursuant to paragraph 2(a) of the Record Retention Order ("RRO") of September 10, 2007, Defendant on October 5, 2007 provided to Plaintiff an intermediate move plan for 373 boxes of records from the BIA Navajo Regional Office. In further compliance with RRO ¶ 2(a), Defendant currently anticipates providing to Plaintiff additional intermediate move plans for records from the BIA Navajo Regional Realty Office at Window Rock ("Navajo Realty Office") and the BIA Fort Defiance Agency by February 9, 2008.

Defendant will not provide to Plaintiff any more intermediate move plans for records from the Navajo Regional Office because that office is located in the Federal Building in Gallup, New Mexico ("Gallup Federal Building"), and is the intermediate move-to and review location that replaced Gamerco in RRO ¶ 2(a), per the Order of November 30, 2007.

Pursuant to RRO ¶ 2(b)(i), Defendant, on October 12, 2007, timely provided to Plaintiff five existing indices and inventories for a total of 373 identifiable boxes concerning records from the

Navajo Regional Office and the Navajo Realty Office. Included in this first set of inventories were inventories captioned "Invalid Inventories" concerning an indeterminate number of boxes from both offices. Defendant represents that the term "Invalid Inventories" was used to reflect that these "existing" inventories were superseded by a reorganization of these record series done as part of Defendant's normal procedure to prepare records for archiving at the American Indian Record Repository ("AIRR"). These records will be moved to the AIRR in Lenexa, Kansas, after Plaintiff has an opportunity to identify records for production at the Gallup Federal Building pursuant to RRO ¶ 2(c). Plaintiff plans to ask Defendant to clarify certain issues regarding those inventories that the Parties will address. Defendant has provided Plaintiff with a copy of 16 Bureau of Indian Affairs Manual containing a listing and description of the National Archives-approved record series categories used by the Department of the Interior ("Interior").

Also pursuant to RRO ¶ 2(b)(i), on January 4, 2008, Defendant provided to Plaintiff a second set of five inventories for a total of 245 boxes for the Navajo Regional Office. Defendant currently anticipates providing additional inventories for records for the Navajo Regional Office, the Navajo Realty Office, and the Fort Defiance Agency on a rolling basis within the next 25 days concerning approximately 674 boxes of inactive records that are pending preparation of inventories before intermediate moves for Plaintiff's inspection and subsequent transfer to the AIRR. Thereafter, additional inventories will be provided to Plaintiff.

Pursuant to RRO ¶ 2(b)(ii), Plaintiff on November 16, 2007 timely provided to Defendant designations from Defendant's first set of indices or inventories for inspection at the Gallup Federal Building. Plaintiff will provide to Defendant designations from Defendant's second set of inventories by February 8, 2008. Plaintiff will provide designations from additional sets of indices or inventories for further records as Plaintiff receives them from Defendant.

Pursuant RRO ¶ 2(b)(iii), Defendant on January 23, 2008 will begin making approximately 200 boxes of records from Plaintiff's designations of Defendant's first set of inventories available for Plaintiff's inspection at the Gallup Federal Building. In order to comply with the 63-day time limit for inspection under RRO ¶ 2(b)(iv), Plaintiff is currently assembling its review team and preparing to begin its initial inspection at the Gallup Federal Building on January 23, 2008.

Additional record inspections will take place following designation of additional indices or inventories. The parties also are discussing the terms under which Plaintiff will inspect records at the Gallup Federal Building as provided for under RRO ¶ 2(b)(iv), including whether Plaintiff may identify records for production via the use of audio recorders. The parties also have discussed the possibility of agreeing in the future to alter the rolling index, designation, and review schedule to allow significant numbers of boxes to accumulate for review at the Gallup Federal Building but have elected to proceed with that schedule for the boxes designated for review by Plaintiff to date.

The parties discussed issues relating to the terms under which Plaintiff will inspect records in Gallup during a conference call on January 9, 2008.

**B. RRO ¶ 2(e) Compliance**

Since entry of the RRO, the parties have discussed numerous issues and exchanged correspondence about the steps required for Defendant's compliance with its obligations under RRO ¶ 2(e) to: (1) input into its Box Inventory Search System ("BISS") data on relevant records located at the AIRR as of September 10, 2007; (2) provide Plaintiff access to the BISS at the Albuquerque office of Plaintiff's counsel and the AIRR; (3) make those records available for Plaintiff's inspection at the AIRR; and (4) provide to Plaintiff all manuals, training materials, and similar documents concerning the BISS.

For the first requirement, Defendant reported on November 1, 2007 that data for all except 45 boxes of the above records had been entered into the BISS as of October 23, 2007. Defendant is determining when data for the remaining boxes of records has been, or will be, entered into the BISS. Defendant will communicate the status of the 45 boxes to Plaintiff within 20 days of this report.

For the second requirement, Defendant will provide Plaintiff with access to the BISS database at the Albuquerque office of Plaintiff's counsel by CD within approximately 30 days of this Status Report. Updates to the BISS database will be provided to Plaintiff as they become available, typically every 30 to 45 days.

For the third requirement, Defendant has provided Plaintiff with a copy of the AIRR's Research Agreement concerning the terms and conditions of access to boxes at the AIRR and the parties are discussing terms under which Plaintiff will access records at the AIRR, including the terms of Defendant's research agreement and whether Plaintiff may use small, portable audio recorders to identify records for production and other purposes. It is Plaintiff's position that the RRO, logic, and the mandate of RCFC 1 to secure the just, speedy, and inexpensive determination of every action support the use of audio recorders to identify records for production. It is Defendant's position that the RRO contemplated use of such device only to document the condition of documents.

For the fourth requirement, Defendant on December 4, 2007 provided to Plaintiff a three-page "discussion" of the BISS and a pre-BISS video overview of trust documents associated with Indian money transactions. On December 20, 2007, Defendant provided to Plaintiff a copy of the Office of Trust Records' May 2004 Draft Box Indexing Manual and reported that Defendant was not aware of any other manuals, training materials, and similar documents concerning the BISS.

The parties discussed the second and third requirements above during a conference call on January 9, 2008.

**C. Discovery Sharing**

By letter of November 30, 2007, Plaintiff here and the Plaintiffs in two other cases pending before the same trial judge in this Court (*Pueblo of Laguna v. United States*, No. 02-24, and *Jicarilla Apache Nation v. United States*, No. 02-25) proposed to modify the materially identical CAPOs entered in each of these indirectly related cases to allow all three Plaintiffs to share discovery materials produced by Defendant in any one of these cases, to avoid duplicative discovery and promote judicial economy. The parties subsequently discussed this proposal during an ADR Status Conference with Senior Judge Bruggink on December 5, 2007. By letter of December 21, 2007, Plaintiff provided to Defendant additional legal support for its proposal.

The parties discussed these matters further during a conference call on January 9, 2008. If the parties cannot resolve this issue on their own, they intend to seek the assistance of Senior Judge Bruggink during an ADR Status Conference scheduled for January 18, 2008. If the parties are not able to resolve this matter through that process, Plaintiffs in all three of these cases will promptly file a motion with the Court in all three cases to modify the respective CAPOs to allow for discovery sharing among the Plaintiffs.

**D. RRO ¶ 2(f) Compliance**

Because the parties thus far have focused their attention on the matters discussed above, they have not yet met to confer as required by RRO ¶ 2(f) to discuss schedules and procedures to be used for Defendant to make available to Plaintiff active and inactive relevant records of all of Defendant's departments, agencies, offices, employees, agents, and contractors at offices other than those identified in RRO ¶ 2(a). The parties will begin discussion of this matter during the next 30 days

and report to the Court concerning their progress in the next status report. The parties anticipate this discussion to continue concurrently with progress on resolution of all matters discussed above, especially following production of additional existing indices and inventories as required by RRO ¶¶ 3(a)-(b), as discussed below.

## III. INDEXATION AND INVENTORYING PROGRESS

Pursuant to RRO ¶¶ 3(a)-(b), the parties each have worked on identifying their respective repositories that are reasonably anticipated to be subject to discovery in this case and compiling their respective existing indices and inventories for those repositories to provide to each other by January 14, 2008. Provision of these indices and inventories will largely facilitate the parties' compliance with RRO ¶ 2(f), regarding production of Defendant's relevant records from locations other than those identified in RRO ¶ 2(a).

Pursuant to and in compliance with RRO ¶ 3(c), the parties anticipate that, in the next 30 days, they will begin discussion of the possibility of and need for using other approaches to, and potential additional indexation for, identifying materials in repositories containing evidence relevant to this case for which the parties are unable to provide indices or inventories. The parties anticipate this discussion to continue concurrently with progress on resolution of all matters discussed above. The parties anticipate reporting to the Court in their next status report the progress of these discussions.

## IV. RRO COMPLIANCE MONITORING

On December 4, 2007, as required by RRO ¶ 4, the parties filed separate status reports advising the Court of the policies, procedures, and controls they respectively had established to monitor compliance with the record preservation requirements set forth in the RRO. No issues have arisen or been identified concerning those matters since the filing of those reports.

## V. RESOLVING DISAGREEMENTS OVER MATTERS DISCUSSED HEREIN

The parties will continue conferring in an effort to resolve of all unresolved matters discussed above, if possible, including via a conference call scheduled for January 11, 2008. To the extent that the parties cannot resolve any unresolved matters as discussed above, they intend to seek the assistance of Senior Judge Bruggink during an ADR Status Conference scheduled for January 18, 2008. If the parties are not able to resolve issues through that process, one of the parties will file a motion with the Court to resolve relevant outstanding issues.

## VI. CONCLUSION

The parties will continue to work together to advance the ADR proceedings and resolve issues as they arise. Unless otherwise directed by the Court, the parties will file their next status report on April 9, 2008.

Respectfully submitted this 9th day of January, 2008.

s/Alan R. Taradash
by s/Daniel I.S.J. Rey-Bear
Alan R. Taradash
Nordhaus Law Firm, LLP
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102
telephone: 505-243-4275
facsimile: 505-243-4464

Attorney of Record for Plaintiff

s/Robert W. Rodrigues
by s/Daniel I.S.J. Rey-Bear
Robert W. Rodrigues
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
telephone: 202-353-8839
facsimile: 202-353-2021

Attorney of Record for Defendant