# United States Court of Federal Claims

| | | |
|---|---|---|
| NAVAJO NATION<br>f.k.a. NAVAJO TRIBE OF INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-945L<br>Judge Francis M. Allegra |

**SECOND JOINT STATUS REPORT**

Plaintiff, the Navajo Nation, and Defendant, the United States, (collectively, the "parties") hereby submit this Second Joint Status Report regarding progress on proceedings, discovery, and indexation and inventorying since the parties' last joint status report filed on January 9, 2008 [Doc. 42].

## I. ADR AGREEMENT AND CAPO

Since the last status report, the parties have completed negotiation of an Alternative Dispute Resolution ("ADR") Agreement and an ADR Confidentiality Agreement and Protective Order ("ADR CAPO"). The ADR Agreement governs the conduct of the ADR proceedings and has been executed by the parties and the Settlement Judge to whom this case was referred by the Order of October 10, 2007 [Doc. 35]. The ADR CAPO was entered by the Court on February 5, 2008 [Doc. 45], and authorizes and governs production of privileged records within the ADR proceedings without waiving privileges. However, Defendant generally takes the position that such production would waive relevant privileges under the law of privilege in the U.S. Court of Appeals for the District of Columbia Circuit. Therefore, the Parties do not anticipate the routine exchange of privileged documents in the absence of a change in applicable law.

## II. DISCOVERY PROGRESS

### A. Inactive Trust Records Movement and Designation in the Navajo Region

Since the last status report, Defendant is continuing to comply with paragraph 2(a) of the Record Retention Order ("RRO") of September 9, 2007 [Doc. 33], as modified by the Order of November 30, 2007 [Doc. 39], regarding movement of inactive trust records to the Federal Building in Gallup, New Mexico ("Gallup Federal Building"), where such records are made available to Plaintiff for inspection. Specifically, Defendant provided to Plaintiff an intermediate move plan and box description list for 709 boxes of inactive trust records scheduled for transfer from the U.S. Bureau of Indian Affairs ("BIA") Navajo Regional Realty Office ("Navajo Realty Office") in Window Rock, Arizona to the Gallup Federal Building. The transfer was effectuated without incident on March 5, 2008.

The parties have worked cooperatively to resolve all issues related to the intermediate move and designation of those documents. The parties identified one issue which largely affected Plaintiff's designations for inspections. Plaintiff objected to Defendant's assertion that the macro-level box description list constituted an "existing ind[ex] or inventor[y]" for purposes of triggering Plaintiff's box designation obligations per RRO ¶ 2(b)(ii). Plaintiff expressed its concern that Defendant's list merely stated how many boxes fit within generically described record schedule categories as set forth in 16 Bureau of Indian Affairs Manual. Without file- or document-specific information, Plaintiff designated all 709 boxes for inspection.

Defendant maintains its position that its box description list constitutes an index or inventory as required under the RRO. However, Defendant has prepared and made available to Plaintiff a "high level" index as is used for transmittal of the documents to the American Indian Records Repository ("AIRR"), in Lenexa, Kansas, as required by the Office of Trust Record's

Instructions for Preparing a Records Inventory. The parties contemplate additional discussions concerning Plaintiff's review of these boxes, since Plaintiff might be able to modify its designations based on information in the recent "high level" index. Pursuant to RRO ¶ 2(b)(iii), Defendant will begin to make the above boxes available for Plaintiff's inspection by May 20, 2008, and will provide a privilege log for these records by June 16, 2008, in accordance with ¶ 3 of the CAPO entered on May 11, 2007 [Doc. 13], unless the parties agree to modify the designations based on the "high level" index.

On April 3, 2008, Defendant discovered records contained in some of the boxes discussed above that exhibit signs of water damage, mold or both. Defendant notified Plaintiff on April 8. 2008. Defendant is seeking additional information regarding this matter and will follow up with Plaintiff by April 14, 2008. Defendant also will provide separate notice to the Court.

In the last status report, Defendant stated that it would provide Plaintiff an intermediate move plan for records from the BIA Fort Defiance Agency by February 8, 2008. Defendant currently plans to provide that intermediate move plan at least 10 days in advance of the move, which is still pending.

**B. Inactive Trust Records Review in the Navajo Region**

The parties continue their efforts to fulfill their respective obligations under RRO ¶¶ 2(b)(i)-(iv). Since the last status report, Plaintiff has assembled and trained a team of seven reviewers to review boxes at the Gallup Federal Building. Plaintiff's expanded review team enabled it to complete the review of 239 boxes designated from Defendant's so-called first wave of records at the Gallup Federal Building within the 63 days provided under RRO ¶ 2(b)(iv). Plaintiff has designated 232 boxes for inspection the second wave of boxes designated for inspection. Defendant has until April 14, 2008 to make these boxes available and until May 8,

2008 to provide Plaintiff with a privilege log for these boxes in accordance with ¶ 3 of the CAPO.

During review of the first wave of boxes, Plaintiff identified an issue concerning records Defendant had withheld as privileged. On March 13, 2008, Defendant provided to Plaintiff a privilege log for these boxes, which contained 99 entries. By physically comparing the records Defendant designated as privileged against Defendant's privilege log entries, Plaintiff identified boxes containing withheld records that were not reflected in Defendant's privilege log. Since Plaintiff has not seen records that Defendant asserts are privileged and Defendant's privilege designation sheets do not contain any record descriptions, Plaintiff did not have the information necessary to determine which records had not been properly logged. Defendant provided Plaintiff with a revised privilege log on March 21, 2008, and has given access to any documents not on the revised list.

Defendant has issued record access procedures governing document inspection at the Gallup Federal Building. Those rules were negotiated with Plaintiff. Defendant has endeavored to flexibly apply those rules. Recently, Plaintiff has expressed concerns regarding certain of those rules in so far as they may impede speedy, just, and efficient discovery.

**C. BISS and AIRR Access**

Since the last status report, the parties have discussed the steps required for Defendant's compliance with its obligations under RRO ¶ 2(e) to: (1) input into its Box Inventory Search System ("BISS") data on relevant records located at the AIRR as of September 10, 2007; (2) provide Plaintiff access to the BISS at the Albuquerque office of Plaintiff's counsel and the AIRR; (3) make those records available for Plaintiff's inspection at the AIRR; and (4) provide to Plaintiff all manuals, training materials, and similar documents concerning the BISS. For the

first requirement, Defendant is currently determining whether any boxes of relevant records have not been entered into the BISS as of the date of this report and will inform Plaintiff as to its findings upon identifying that information. For the second requirement, Defendant provided Plaintiff with a CD of data from the BISS database on February 20, 2008. No updates to the BISS database have yet been provided to Plaintiff, but Defendant represents that one will be provided as soon as it is available. For the third requirement, the parties will discuss terms under which Plaintiff will access records at the AIRR, including the terms of Defendant's research agreement. For the fourth requirement, Defendant has not identified or provided any manuals, training materials, and similar documents concerning the BISS other than the three items provided to Plaintiff in December 2007 as reported in the last status report nor has Defendant become aware of any such information.

**D. Discovery Sharing**

During an ADR Status Conference on January 18, 2008, the parties discussed with Senior Judge Bruggink the proposal by Plaintiff here and the Plaintiffs in two other cases pending before the same trial judge in this Court (*Pueblo of Laguna v. United States*, No. 02-24, and *Jicarilla Apache Nation v. United States*, No. 02-25) to modify the materially identical CAPOs entered in each of these indirectly related cases to allow all three Plaintiffs to share discovery materials produced by Defendant in any one of these cases. On February 19, 2008, Defendant provided proposed revised language to address this issue in lieu of the language that Plaintiff had proposed by letter on November 30, 2007. The parties discussed these matters further during an ADR Status Conference on February 22, 2008. Plaintiff is continuing to assess options for and alternatives to CAPO modifications to avoid or minimize duplicative discovery and to promote judicial economy. Going forward, the parties will need to consider the impact of recent

developments including the substitution of Holland & Knight as counsel for the Jicarilla in the tribal trust case noted above.

**E. Active and Inactive Records Outside the Navajo Regional and Realty Offices and the Fort Defiance Agency**

Because the parties have focused on the matters discussed above and the production of indices and inventories discussed below, the parties have not yet met and conferred per RRO ¶ 2(f) regarding schedules and procedures to be used for Defendant to make available to Plaintiff active and inactive relevant records of all of Defendant's departments, agencies, offices, employees, agents, and contractors at offices other than those identified in RRO ¶ 2(a). The parties have agreed to meet and confer per RRO ¶ 2(f) in the next 90 days. The parties also have made initial progress in complying with the exchange of information pursuant to RRO ¶¶ 2(f)(i)-(ii).

Specifically, on January 14, 2008, Defendant provided Plaintiff with an index of documents from the Office of the Special Trustee and inventories of document types that may contain tribal trust information from the Department of the Treasury's Financial Management Service and Bureau of Public Debt. (Although not location-specific, the inventories—which identify those Financial Management Service ("FMS") and Bureau of the Public Debt ("BPD") documents considered to be potentially subject to the retention orders that have issued in the tribal trust cases—were provided to convey to Plaintiff information about the nature of those FMS and BPD documents that potentially contain tribal trust information.) It is Plaintiff's position that similar to the box description list described in section 2 above, the index and inventories lack the requisite amount of information for Plaintiff to determine which boxes may contain relevant records. Thus, Plaintiff designated all of the materials listed in the index and inventories for inspection lest it forgo review of relevant records. Defendant's position is that it

has turned over the indices or inventories called for in the RRO in connection with the foregoing collections of documents and has satisfied that requirement of the RRO. Pursuant to RRO ¶ 2(f)(ii), Defendant will begin to make the Office of the Special Trustee boxes available for Plaintiff's inspection at a mutually agreed upon date and will provide a privilege log for these records also at a mutually agreeable time. Defendant intends to provide a binder of exemplars of the BPD documents to Plaintiff and to confer further with Plaintiff concerning the FMS and BPD documents.

## III. INDEXATION AND INVENTORYING PROGRESS

The parties have made progress in the production to each other of information identifying their respective repositories that are reasonably anticipated to be subject to discovery in this case and compiling their respective existing indices and inventories for those repositories to provide to each other pursuant to RRO ¶¶ 3(a)-(b). On January 15, 2008, Plaintiff provided to Defendant specific information concerning 44 tribal repositories that may contain records subject to discovery in this case and eight inventories attached thereto. On January 28, 2008, Plaintiff forwarded to Defendant an electronic database containing the existing listings of Navajo Nation Council resolutions. And on February 12, 2008, Plaintiff provided to Defendant an electronic database containing supplemental repository information and 206 additional indices and inventories identified to date, including the eight inventories produced with Plaintiff's January 15, 2008 correspondence.

Defendant has similarly provided information regarding document repositories that may contain relevant documents or records to discovery in this case along with a description of the document categories in each location. This was accomplished in Defendant's January 14, 2008 correspondence which identified several repositories of the Department of the Interior, the

Department of the Treasury, the National Archives and Records Administration, and the Nuclear Regulatory Commission. On January 15, 2008, Defendant forwarded a CD to Plaintiff which contained document collection information, indices, and inventories. Complying with their obligations under the RRO, the parties will continue to provide to each other any newly identified material relevant to this case in their respective custody, possession, and control.

Because the parties have focused on the matters discussed above, they have not commenced discussions pursuant to RRO ¶ 3(c) to discuss the possibility of and need for using other approaches to, and potential additional indexation for, identifying materials in repositories containing material relevant to this case for which the parties are unable to provide indices or inventories. The parties anticipate this discussion to begin and continue concurrently with the discussion required by RRO ¶ 2(f). The parties anticipate reporting to the Court in their next status report the progress of these discussions.

## IV. RRO COMPLIANCE MONITORING

On December 4, 2007, as required by RRO ¶ 4, the parties filed separate status reports advising the Court of the policies, procedures, and controls they respectively had established to monitor compliance with the record preservation requirements set forth in the RRO. Through the present time, no issues have arisen or been identified concerning those matters.

## V. CONCLUSION

The parties will continue to work together to advance the proceedings and to resolve all matters discussed above and additional issues as they arise. To the extent that the parties cannot resolve any issues, they intend to seek the assistance of Senior Judge Bruggink. If the parties are not able to resolve issues through that process, one or both of the parties will file a motion with

the Court to resolve relevant outstanding issues pursuant to RRO ¶ 6. Regardless, unless otherwise directed by the Court, the parties will file their next status report on July 9, 2008.

Respectfully submitted this 9th day of April, 2008.

s/Alan R. Taradash

by s/Thomas J. Peckham
Alan R. Taradash
Nordhaus Law Firm, LLP
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102
telephone: 505-243-4275
facsimile: 505-243-4464

Attorney of Record for Plaintiff

s/Robert W. Rodrigues

by s/Thomas J. Peckham
Robert W. Rodrigues
United States Department of Justice
Environment and Natural Resources Div.
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
telephone: 202-353-8839
facsimile: 202-353-2021

Attorney of Record for Defendant