# Exhibit 1

United States Department of the Interior
OFFICE OF THE SOLICITOR
1849 C Street N.W.
Washington, DC 20240

Indian Trust Litigation Office
Mail Stop 6343

May 8, 2008

**MEMORANDUM**

**TO:** Robert Rodrigues, Department of Justice

**FROM:** Gladys Cojocari, Attorney Advisor, Office of the Solicitor

**RE:** Report on Discovery of Damaged Documents at the Navajo Regional Office

**Background**

On March 5, 2008, 709 boxes of documents were moved from the Window Rock Realty Office to the Navajo Regional Office ("NRO") in Gallup, New Mexico. The move was accomplished pursuant to the terms of the Court's Order entered in *Navajo Nation v. United States*, No. 0694L (CFC), on September 10, 2007. I supervised the move on behalf of the Solicitor's Office, and a representative of plaintiff also monitored the process. I counted the boxes individually as they were being loaded at the Window Rock Realty Office (the "WRRO"), and again when they were unloaded at the Navajo Regional Office. I did not observe any external damage to any of the boxes which were moved.

**1. The nature of the damage to documents.**

In anticipation of the plaintiff's review, the Solicitor's Office began its privilege review of the boxes moved from Window Rock (the "Window Rock boxes") on or around March 20, 2008. To date, approximately 100 boxes have been reviewed. Out of those 100 boxes, eleven have been identified which show signs of mold and/or water damage. The mold appeared to be dried on the paper records I observed in the nine boxes I was able to review. I am advised that when contractors for the Navajo Regional Division of Environmental, Cultural, and Safety Management ("DECSM") conducted additional testing (described more fully below), they identified two additional boxes containing mold spores. See Declaration of George Padilla ("Padilla Dec."), ¶ 7. That would bring the total of known affected boxes to eleven. I was not able to inspect these boxes personally.

Following is a description by accession number of the contents of the boxes and the damage that I observed to them:

- N00-07-8124 Box 63 of 258

Indian Land Lease Case Files, FY 1978-1992. Of the (approximately) 33 folders in the box, most of the documents in most of the files have black mold stains along the edges. The documents are legible; some pages may be stuck together.

- N00-07-8124 Box 69 of 258

USGS Oil and Gas Statements of Account, August 1975 – April 1976
The box contains approximately 26 folders. Documents in several folders showed black spots, although they were still legible. Some pages may be stuck together.

- N00-07-8124 Box 75 of 258

Documents relating to Peabody Coal, 1974-1981. One folder shows slight water damage, and mold or mildew on the inside of the file folder.

- N00-07-8124 Box 89 of 258

Mineral leases, prospecting permits and related correspondence, FY 1960-1970. The box contains approximately 22 folders, all of which show some sign of water damage. Some folders have mold or mildew on the inside edges. All documents are legible; some pages may be stuck together.

- N00-07-8124 Box 92 of 258

Oil and gas agreements, FY 1958-FY1977. Two folders show slight water damage; there is no visible mold or mildew.

- N00-07-8124 Box 93 of 258

Uranium leases and related documents, by company name. At least some of them are cancelled. Approximately 24 folders date from 1981 and two folders date from 1983. There is some water damage and mildew along the edge of the documents, but all are legible.

- N00-07-8124 Box 96 of 258

Mineral and grazing leases, some cancelled, and related correspondence, 1948-1979. The box contains approximately 22 folders. A few folders show evidence of water damage, and mold on the inner margins. The documents are legible, but some pages are stuck together.

- N00-07-8124 Box 107 of 258

Leases and prospecting permits, date range, FY 1964-FY1987. The box contains approximately 35 folders. Almost all of them show evidence of water damage. The inside crease of the file folder is mildewed on some. The documents are legible, but the edges show evidence of water damage.

- N00-07-8124 Box 190 of 258

Realty chrono files relating to oil and gas, 1960-1972. The box contains approximately 15 folders, all of which show water damage. There is mold along the inside of the folders. The documents are legible, but some pages may be stuck together.

For the reasons explained below, the Solicitor's Office halted its review of the remaining Window Rock boxes, and no additional boxes have been opened until more information is

learned about potential health risks. It is presently undetermined whether any more boxes are affected.

**2. The best estimate of when the damage to documents occurred.**

As detailed in the Declaration of Ethel Abeita ("Abeita Dec."), since May 2005, the Office of Trust Records ("OTR") has been implementing a policy of shipping the backlog of inactive records from various Bureau of Indian Affairs ("BIA") agencies to the American Indian Records Repository ("AIRR"). In the judgment of OTR, that is the best way to safeguard records which no longer need to be immediately accessible to BIA personnel or to the tribe of reference. Abeita Dec., Exhibit A, ¶ 4. As of June, 2007, OTR was notified that the WRO had an estimated 754 boxes of inactive records to be moved to the AIRR. Some of the backlog documents date back several decades, and the mold and/or water damage could have occurred in any of those years, especially if the affected documents were stored in boxes. Padilla Dec, ¶ 8.

**3. The circumstances regarding the damage to the documents and the discovery of the damage.**

The morning of Friday, April 4, I received a voicemail message left the previous evening by my colleague, Holly Clement, who was then at the NRO. Ms. Clement's message informed me that one of the boxes she had opened on April 3 contained documents which appeared to have been damaged by mold. Ms. Clement also advised that since she was returning to Washington, D.C. on the following day, and I would be at the NRO the following week, she would defer action on the matter until I had evaluated the situation further.

I arrived at the NRO on Monday, April 7, and that afternoon, I looked at the box Ms. Clement had indicated. By that time, the attorney-contractors for the Solicitor's Office had found three or four additional boxes containing documents showing signs of mold and/or water damage.

On Tuesday, April 8, I advised Robert Rodrigues, of the Department of Justice, that the Solicitor's Office had discovered documents which had suffered mold and/or water damage. Ethel Abeita, of the Office of Trust Records ("OTR"), was also on the call. At present, 11 boxes have been found to contain documents with damage ranging from slight to moderate. In most cases, damage was not evident until individual files were opened, and in some boxes, as detailed above, only a few documents were affected.

Later that day, I also advised the Division of Environmental, Cultural and Safety Management ("DECSM") of the Bureau of Indian Affairs at Navajo of this situation. The Solicitor's Office also suspended its review of the documents until more was learned about any potential health risks. At the recommendation of the DECSM, samples from three of the affected boxes were sent to a laboratory for "speciation," that is, for a determination whether there were types of mold present which constitute a potential danger to human health. Padilla Dec., ¶ 3. I was present when documents were swabbed for samples, and personally sealed them in a Federal Express envelope to be sent to the laboratory.

The testing was performed by Assaigai Analytical Laboratories ("Assaigai") of Albuquerque, New Mexico. Their report, which DESCM received the afternoon of April 14, is

attached to the Padilla Dec. as Exhibit A. The report reveals the presence of *aspergillius penicillium*, a species of mold which, in the opinion of DESCM, can be associated with health concerns for humans. Padilla Dec., ¶ 4.

At the request of the BIA, Assaigai performed air quality testing in the area around the Window Rock boxes. Padilla Dec., ¶ ¶ 6-7. The report indicated that the spore concentration in the air when the boxes were left undisturbed did not pose a health hazard for individuals with a normally functioning immune system. Padilla Dec., ¶ 7. However, Assaigai recommended that the remainder of the Window Rock boxes be opened in a containment area using negative pressure air. Padilla Dec., ¶ 9. It further recommended that the boxes be screened by individuals wearing appropriate protective gear. *Id.* The BIA has asked vendors for informal proposals for doing this work, as a basis for funding it. Padilla Dec., ¶ 10.

**4. The steps the agency has taken or will take to ensure that there is no further damage to documents.**

The further management of the Window Rock boxes will consist of two separate activities: screening of the 600 boxes which have not yet been opened and remediation of the eleven boxes identified as containing damaged documents, along with any others in need of remediation discovered during the screening.

OTR has engaged Joanne Kilgore-Martinez, of Carino Conservation, who has several years of experience in records remediation to examine and remediate any damaged documents from Window Rock. Abeita Dec., ¶ 9. The Certified Industrial Hygienist at Assaigai also recommended that the boxes found to contain mold should be cleaned off site in a specialty area. Padilla Dec., ¶ 9. OTR is evaluating whether, given all the considerations of safety and efficiency, it would be better to do both the screening and the remediation at a single location. OTR has identified suitable space at a warehouse on 12th Street in Albuquerque, and is negotiating a lease with the General Services Administration. The finalization of this arrangement will inform the precise recommendation and request to the Court for permission to move boxes for remediation activities. Abeita Dec., ¶ 9.

Due to the safety precautions required to screen the records, we have not yet been able to review them to determine how many are actually affected. Once we have identified a vendor to screen the 600 boxes which have not yet been opened, and we know how many documents are affected, we will be able to provide the Court a more definitive time frame for the duration of this work.

On May 7, 2008 , OTR detailed one of its Regional Records Liaisons ("RRLs") to the Navajo Region, who are based in Gallup, to conduct a site visit to the WRRO for the express purpose of assessing current conditions there. Abeita Dec., ¶ 10. The RRL reported back that no records were in jeopardy. *Id.*

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **NAVAJO NATION, f.k.a. NAVAJO TRIBE OF INDIANS,** Plaintiff | Case No. 1:06-cv-00945-L |
| | Judge Francis Allegra |
| v. | |
| **UNITED STATES,** Defendant | **DECLARATION OF ETHEL ABEITA** |

I, Ethel Abeita, as Director of the Office of Trust Records, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I have held the position of Director, Office of Trust Records (OTR), Office of the Special Trustee for American Indians (OST), Department of the Interior (Interior), since August 2002. OTR is responsible for the management of the Bureau of Indian Affairs (BIA) and OST records programs consistent with the requirements of 44 U.S.C. Chapter 31. I was detailed to OTR in August 2002, after serving as Assistant Regional Solicitor of the Southwest Regional Solicitor's Office in Albuquerque, and then holding the position of Deputy Regional Director for the BIA's Southwest Regional Office.

2. After coming to OTR, I began working on plans to strengthen BIA's and OST's records management programs. One identified issue was the accumulation of inactive records in BIA offices and agencies. The facilities housing BIA offices and agencies are principally selected for convenience of providing services and access to the tribes, not for

long-term records storage. In the experience of OST, when document damage has occurred, it is most likely to occur to inactive records, defined as records no longer required to conduct business. Because inactive records are often stored in places out of public view and access, adverse conditions that come about - such as water leaks or rodent activity - may not immediately be observed and addressed. Thus, centralizing inactive Indian Affairs records in a safe and secure storage facility became an important priority of the records management program. This is one of OTR's key efforts to avoid or mitigate damage to documents on an ongoing basis.

3. To meet this priority, a new Federal Records Center, the American Indian Records Repository ("AIRR") was dedicated on May 4, 2004 in Lenexa, Kansas. The AIRR is an underground state-of-the-art facility, built to archive standards, and maintains the documents in a secure, climate-controlled environment.

4. Interior has determined that the best way to protect inactive Indian Affairs Records, is to ship them to the AIRR, all this in an effort to avoid damage to Native American Records. This policy was stated in a May 5, 2005 memorandum by James Cason, Associate Deputy Secretary, urging all BIA managers to comply with OTR's request to prepare all inactive records at their agency for shipment to the AIRR. A copy of this memorandum is attached as Exhibit A.

5. As a result of Interior's initiative to gather inactive trust records at the AIRR, more than 170,000 boxes of inactive BIA and OST records have been shipped there, including 14,086 boxes of records from the BIA Navajo Region. However, some inactive records still remain in field offices and storage facilities. OTR has sent and is sending teams from

Labat-Anderson, its contractor, to BIA agencies nationwide to assist in identifying inactive records and preparing them for storage at the AIRR. As of June 2007, OTR had identified an estimated 754 cubic feet of inactive records at the Window Rock Realty Office of the Navajo Region ("WRRO") to prepare for moving to the AIRR. Some of these documents were still in file cabinets and desk drawers, while others had been boxed for some time.

6. When preparing records for shipment to and storage at the AIRR, if file folders from different record series have been commingled, Labat will sort the file folders in accordance with the record series listed in 16 Bureau of Indian Affairs Manual ("BIAM"). The record series designations are approved by the Archivist of the National Archives and Records Administration ("NARA"), and organize records by program and subject matter. In the course of this sorting process, files from different filing cabinets that fell within the same record series could be combined, while files falling in different record series which may have been boxed together for storage would be sorted by the correct record series, and could end up in different boxes. Therefore, it can be difficult to trace where a file folder was originally stored. Files will be reboxed as needed in boxes of the correct measurements for acceptance at Federal Record Centers, including the AIRR. The WRRO records were reboxed in preparation for the intermediate move to the Navajo Regional Office ("NRO") in Gallup, New Mexico.

7. OTR's procedures call for files to be "fast-packed" for shipment to the AIRR as soon as possible, meaning that files may be moved from one box or filing cabinet into another box, and individual files are not opened for inspection. If document damage is noted at all during the sorting and packing process, the appropriate action taken depends

on the circumstances. If minimal remediation is required, the boxes are shipped on to the AIRR, and OTR will work with NARA for any required cleaning and remediation. For those that require more extensive remediation, arrangements will be made to send them to experienced document remediation contractors.

8. On March 5, 2008, 709 boxes were moved from the WRRO to Gallup. On April 3, some of the documents in one of those boxes were discovered to be damaged by mold. By April 7, additional boxes containing water damaged documents had been identified. I immediately began to arrange for remediation of the documents. The total number of boxes containing some documents discovered to have been damaged by mold or water at this time is eleven. I immediately began to contact contractors and had arranged for the remediation of the boxes, but it was determined that these efforts had to be co-ordinated with the workplace safety concerns expressed by the Division of Environmental, Cultural and Safety Management ("DECSM") of the NRO.

9. DECSM has recommended that remediation of the documents in these boxes be conducted off site, and that screening of the remaining boxes in Gallup from the WRRO be conducted with precautions to minimize any potential health risks to workers at the NRO. I have contacted Joanne Kilgore-Martinez, of Carino Conservation, to examine the documents in the eleven boxes from Window Rock that have been identified as showing signs of mold or water damage, as well as any additional damaged documents discovered during the screening process. In consultation with DECSM and other Department staff, I am continuing to evaluate information in order to make further decisions regarding the screening and remediation. OTR has identified a warehouse on 12th Street in Albuquerque

as a suitable location for these projects to take place, and is negotiating with the General Services Administration for a three month lease, if needed.

10. The stated duties of OTR's Regional Records Liaisons (RRL's), who are posted to many BIA agencies, include reporting records in danger to OTR, and to work with BIA staff to correct the situation. On May 7, 2008, I sent one of the RRL's at Navajo, who are based at the NRO in Gallup, to assess conditions at the WRRO. The RRL reported that no records are in jeopardy there.

ETHEL J. ABBITA
Director
Office of Trust Records

Executed this 8th day of May, 2008

# Exhibit A

THE ASSOCIATE DEPUTY SECRETARY OF THE INTERIOR
WASHINGTON, D.C. 20240

Andy
Joe
Ailey
Tish
Len

MAY 5 2005

Memorandum

To: Director, Bureau of Indian Affairs
Director, Office of Indian Education Programs
Director, Office of Law Enforcement Services
Regional Directors, BIA
Central Office Directors, BIA
Agency Superintendents, BIA

From: James E. Cason James E Cason
Associate Deputy Secretary

Subject: ASIA Records Backlog Project

Attached please find a memorandum from the Assistant Deputy Secretary regarding the shipment of inactive records to the Office of Trust Records facility, the American Indian Records Repository (AIRR), in Lenexa, Kansas. This memorandum is to direct your compliance with the request from the Office of Trust Records (OTR). It is important that we adequately protect our records and moving them to the state-of-the-art records archive in Kansas is the best way to do that.

As the attached memorandum indicates, inactive records are those records that have met their retention date according to the approved 16 BIAM Records Schedule. I am concerned that there appears to be a considerable number of cubic feet (i.e., boxes) of inactive records at field locations and the number is continuing to grow, creating a backlog situation. I am very interested in seeing that as many inactive records as possible are moved to safe and secure storage at AIRR. However, if you have records which have met the retention date according to the Records Schedule but the records are still being used on a regular basis for conducting current business and the BIA/OIEP line officers do not want to send them to the AIRR, then they can be retained onsite, but the line officers must certify this in writing to the Director, OTR.

To expedite the retirement of these inactive records, OTR has modified the normal retirement of inactive record procedures for <u>this records backlog project only</u>. The procedures are attached. OTR will be contacting each field location to schedule a time when OTR can come to that location to assist in the preparation of the records for shipment to the Annex. **<u>However, each field office should not wait for OTR to assist in the preparation of inactive records for shipment to the Annex/AIRR. Field offices should begin the preparation as soon as possible.</u>**

Each BIA/OIEP regional and agency program should have a designated Records Contact who is familiar with and/or aware of their program's records and the attached procedures. OTR is requesting that the Records Contact or designee for each OST IIM program office be available during the scheduled project time. OTR's Regional Records Liaisons and other staff will be available to assist your offices in meeting our shared goal of retiring these records.

The attached procedures provide specific instructions and list the responsibilities for BIA, the Office of Indian Education Programs and OTR. BIA/OIEP program offices may contact their Regional Records Liaison or OTR Albuquerque for any questions relating to this project. OTR will coordinate all aspects of the records backlog project with BIA/OIEP regions and agency offices and will pay all shipping costs.

I appreciate your personal support and cooperation in retiring these inactive records from the field to AIRR in Lenexa, Kansas. Questions regarding this project can be directed to the Director, OTR, Ms. Ethel Abeita at (505) 816-1600.

Attachments

cc: Director, OTR ✓

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NAVAJO NATION,<br>f.k.a. NAVAJO TRIBE OF INDIANS<br><br>Plaintiff<br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:06-cv-00945-L<br><br><br><br>**Declaration of George Padilla** |

I, **George Padilla,** as Environmental Scientist of the Navajo Region, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I have been an employee of the Bureau of Indian Affairs ("BIA") since September 2001, and have held the position of Regional Environmental Scientist of the Navajo Region since June, 2006. I hold a Bachelor of Science degree in Environmental Resources, and a Master of Science Degree in Environmental Management and Policy. As a Regional Environmental Scientist, I oversee the work of the Division of Environmental, Cultural, and Safety Management ("DECSM") of the Bureau of Indian Affairs ("BIA"). The mission of DECSM is to provide technical assistance and project management on environmental and safety matters.

2. On April 8, Omar Bradley, the Regional Director of the Navajo Region of BIA, advised the Solicitor's Office to contact the DESCM to assist in remedial actions for six

records boxes found to be impacted by suspected mold growth. Several hundred of these boxes had been received from the Navajo Region Real Estate Services, located in Window Rock, Arizona. (the "Window Rock documents"). They are kept in an area adjacent to the Property Department at the Navajo Regional Office ("NRO").

3. The discovery of mold growth on some of the files was brought to the attention of DESCM on April 8, 2008. Rose Duwyenie, an Environmental Protection Specialist under my supervision, recommended that, as a precaution, a speciation test be taken to determine if there were any species of mold present that could cause concern for human health. Ms. Duwyenie took three wipe samples from three boxes on April 10, and sent them to Assaigai Analytical Laboratories ("Assagai") for speciation.

4. On April 10, 2008, DECSM staff collected wipe samples from three of the mold impacted boxes. Assagai reported the results of the speciation test on April 14, 2008. A copy of the report is attached as Exhibit A. The report states that 50-75% of the mold in the wipe samples was *aspergillius penicillium*, a species of mold which can be associated with adverse health effects, particularly in susceptible individuals. .

5. The regulations of the Occupational Health and Safety Administration require that work be conducted in a safe environment, and that workers be informed of any hazards in the workplace. Therefore, on the same day we learned of these results, Alfred Abeita, the Regional Safety Officer, Calvin Quimayousie, the Regional Property Manager, and I held a meeting of all employees and contractors working in the area near where the Window Rock documents are kept. We advised them of respiratory

problems which can result from concentrated exposure to those species of mold in what we described as a "worst case" scenario.

6. After DECSM reviewed the initial analyses from Assaigai, it was determined to schedule a second sampling event following the discovery of the *aspergillius penicillium* spores. The decision was based on the fact that the boxes had been opened in the work area, and the possibility that mold had been transported to common work areas and some offices. The area around where the mold impacted boxes are kept was temporarily closed down for air quality testing and additional wipe testing.

7. On April 16, 2008, a certified industrial hygienist from Assaigai performed the air and wipe samples in the area where the Window Rock documents were kept, and the remainder of the Property Management area. Assaigai took eleven air samples, including one background sample. Four wipe samples were taken in common use areas, and two additional wipe samples were taken from two other Window Rock boxes. Results of the April 16 wipe sample analyses found two additional boxes from Window Rock to have mold growth in the files. These tests indicated there was no imminent risk to healthy workers from the mold spores inside the boxes and the mere presence of the boxes. However, opening additional boxes in the Window Rock group could potentially cause more mold spores to be released in an enclosed space. At present, the conditions of records in the remaining boxes are unknown. Therefore, since some boxes containing *aspergillius penicillium* were discovered, precautionary measures need to be taken to avoid any potential risk to human health.

8. How the mold came to be in the boxes cannot be stated with certainty. As noted above, the impacted boxes have all come from the Window Rock Real Estate Services office ("WRRO"). The WRRO is located in a historic building in Window Rock, Arizona, the capital of the Navajo Nation. The building is of traditional sandstone construction and has a flat roof. As a result of the flat roof and the porous nature of sandstone, moisture percolates throughout. Mold needs three elements to grow: food source-organic material (paper); accommodating degrees of temperature; and moisture. Without knowing when these three conditions were present during the storage of these aged records, it is impossible to determine when the records were impacted by mold.

9. William J. Biava, a Certified Industrial Hygienist with Assaigai Laboratories, has recommended certain precautions in handling the Window Rock documents to minimize additional health risks. First, he recommends that boxes which have already been identified as containing elevated levels of *aspergillius penicillium* mold spores be segregated from the work area, and be cleaned and treated off-site in a specialty area or in containment. Second, he recommends that the 600 Window Rock boxes that have not yet been reviewed be opened in a containment area using negative pressure air and opened by a trained person wearing suitable protective clothing.

10. DECSM has determined that the appropriate entity to conduct this work would be a trained professional contractor. DECSM also recommends that any document remediation to take place at the NRO or another location be conducted by professional remediators working in containment to prevent exposure to other staff

members. DECSM is working with the Office of Trust Records to identify vendors and obtain cost estimates for performing a remediation project.

GEORGE PADILLA
Regional Environmental Scientist
Navajo Region

Executed this 8 day of May, 2008

# Exhibit A

**ASSAIGAI**
ANALYTICAL LABORATORIES, INC. • 4301 Masthead NE, Ste. A • Albuquerque, New Mexico 87109

U.S. Department of the Interior
Office of the Special Trustee for American Indians
4400 Masthead St. NE
Albuquerque, NM 87109
Gladys Cojocari

**Lab Identification:** A28557
**Date Received:** 04/11/2008
**Date Reported:** 04/14/2008

**Sample Location:** Gallup Records Review

**Bulk Microscopic Analysis**

| Lab Number | A28557-1 | A28557-2 | A28557-3 |
|---|---|---|---|
| Location | NOO-07-8124-95 | NOO-07-8124-60 | NOO-07-8124-63 |
| | RESULTS | RESULTS | RESULTS |
| % Surface Area Observed to have Mold Contamination* | > 75% | > 75% | > 75% |
| **Composition of Mold Contaminated Area** | | | |
| Fungal Spores | 60-70% | 60-70% | 60-70% |
| Mycelial Fragments | 30-40% | 30-40% | 30-40% |
| **Genera of Mold Contaminated Area** | | | |
| *Alternaria* | | | > 60% |
| *Aspergillus/Penicillium* | > 75% | > 60% | < 40% |
| *Acremonium* | | | |
| *Aureobasidium* | | | |
| *Bipolaris/Dreschlera* | | | |
| *Botrytis* | | | |
| *Chaetomium* | | < 30% | |
| *Chrysosporium* | | | |
| *Cladosporium* | | < 20% | < 10% |
| *Curvularia* | | | |
| *Epicoccum* | | | |
| *Fusarium* | | | |
| *Nigrospora* | | | |
| *Oidium/Peronospora* | | | |
| *Pithomyces* | | | |
| *Stachybotrys* | | | |
| *Stemphylium* | | | |
| *Torula* | | | |
| *Ulocladium* | | | |

*Estimated result specific only to the particular bulk sample submitted for testing and subject to influence by the texture and shape of the sample.

Analyst: Amanda L. Rector, Microbiologist

Reviewed By: William P. Biava, President



THIS REPORT MUST NOT BE USED IN ANY MANNER BY THE CLIENT OR ANY OTHER THIRD PARTY TO CLAIM PRODUCT ENDORSEMENT BY THE NATIONAL VOLUNTARY LABORATORY ACCREDITATION PROGRAM OR ANY OTHER AGENCY OF THE UNITED STATES GOVERNMENT.