# United States Court of Federal Claims

| | | |
|---|---|---|
| NAVAJO NATION<br>f.k.a. NAVAJO TRIBE OF INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-945L<br>Judge Francis M. Allegra |

**THIRD JOINT STATUS REPORT**

Plaintiff, the Navajo Nation, and Defendant, the United States, (collectively, the "parties") hereby submit this Third Joint Status Report regarding progress on proceedings, discovery, indexation and inventorying, and record retention order compliance monitoring since the parties' last joint status report filed on April 9, 2008 [Doc. 48].

## I. PROCEEDINGS

On April 15, 2008, Defendant filed a notice of discovery of document damage [Doc. 49], apprising the Court that the Department of the Interior's Office of the Solicitor had, in the course of privilege reviews, discovered certain records and file folders that displayed water damage and/or mold in a collection of boxes stored at the Bureau of Indian Affairs ("BIA") Navajo Region Realty Office in Window Rock, Arizona ("WRRO"). The next day, the Court ordered [Doc. 50] that Defendant file a detailed status report explaining: (1) the nature of the document destruction or damage; (2) the best estimate of when the destruction or damage occurred; (3) the circumstances regarding the destruction or damage and the discovery thereof; and (4) the steps the agency had taken or would take to ensure no further document damage. After seeking an unopposed extension [Doc. 51], Defendant filed its status report on May 8, 2008 [Doc. 53].

The Court thereafter held a telephonic status conference on June 6, 2008, to discuss the document damage brought to the Court's attention. Pursuant to discussions during that conference call, the same day the Court ordered [Doc. 56] that Defendant file (1) a motion to modify the Court's previously entered record retention order ("RRO") of September 10, 2007 [Doc. 33], as modified by the Order of November 30, 2007 [Doc. 39], and (2) a plan for an external evaluation of the remaining boxes of records kept at relevant storage facilities. Defendant also has filed a supplemental notice of discovery of document damage on July 8, 2008 also involving boxes originally stored at the BIA WRRO [Doc. 60].

Since entry of that order, the parties have negotiated the terms of an agreed proposed order modifying the RRO, which Defendant intends to file for entry by July 18, 2008. Among other things, the proposed RRO modification will allow for transfer of boxes of inactive relevant records from certain offices and agencies within the BIA Navajo Region covered by RRO ¶ 2(a)—specifically records from the Navajo Regional Office in Gallup, the Regional Realty Office in Window Rock, and the Fort Defiance Agency—to a U.S. General Services Administration ("GSA") warehouse in Albuquerque for mold, water, or other damage assessment, appropriate remediation as needed, and privilege review by Defendant, and inspection and identification of records by Plaintiff for production.

On June 27, 2008, Defendant also provided Plaintiff a proposed plan for an external damage evaluation of remaining records within the BIA Navajo Region. Plaintiff provided comments on the plan on July 2, 2008. The parties will seek to reach agreement on this matter, and the proposed plan will be filed as soon as possible. Any issues regarding this matter that cannot be resolved by the parties will be presented to the Court for adjudication, since the matter

involves an interpretation, amendment, or revision of the trial judge's previously entered order and directions provided to the parties by the trial judge at a status conference.

Since the last status report, the parties also have participated in monthly Alternative Dispute Resolution ("ADR") status conferences with Senior Judge Bruggink on April 23, May 23, and June 26, 2008. During these ADR status conferences, the parties have updated Senior Judge Bruggink on their progress on discovery and other matters and worked to address any pending issues. The next ADR status conference is scheduled for July 29, 2008.

## II. DISCOVERY PROGRESS

### A. Records Movement, Inspections, and Privilege Claims for the Navajo Region

Pursuant to RRO paragraphs 2(a)-(b) and paragraphs 3 and 7 of the Confidentiality Agreement and Protective Order ("CAPO") entered in this case on May 11, 2007 [Doc. 13], the parties have continued to work on intermediate box moves, designations, inspections and identifications for production, and privilege claims for inactive records within the BIA Navajo Region. On May 16, 2008, Plaintiff provided objections regarding all 105 privilege claims asserted by Defendant regarding the Wave 1 production of 239 boxes of inactive records from the BIA Navajo Region office in Gallup, which previously had been moved by Defendant to the Gallup Federal Building and inspected there by Plaintiff for production. These objections concerned application of the fiduciary exception to all privilege claims and additional objections regarding insufficient information, non-legal and non-confidential materials, and lack of identification of specific adversarial litigation for work-product claims.

On June 25, 2008, Defendant provided an initial response to the objections, including a revised privilege log containing 55 entries, based on additional information and deletions of entries for records that will be produced or that are now being withheld based on claims of

irrelevance rather than privilege. By July 9, 2008, Defendant will provide copies of records for which privilege claims have been withdrawn. On July 25, 2008, Defendant will provide a further revised log including additional information. The parties will work together to address outstanding issues regarding this log, including the possible production of redacted records as provided for in CAPO ¶¶ 3, 7.

Because the resolution of privilege claims will require interpretation and application and perhaps amendment or revision of the trial judge's previously entered CAPO, Plaintiff believes it is only fitting and proper to present to the trial judge for adjudication any privilege claims that cannot be resolved by the parties. Defendant has expressed a preference for resolution of all privilege claims on a sampling basis within the ongoing ADR proceedings.

For the Wave 2 intermediate move of additional records from the BIA Navajo Region office in Gallup, Plaintiff conducted inspections and identifications for production regarding 232 boxes, from April 14 through June 13, 2008. Defendant provided a privilege log for those records in three parts with 313 claims total, from May 15 through June 3, 2008. The parties have discussed issues relating to this three-part privilege log, including duplicate entries and missing and added information, especially regarding document attachments. Defendant will provide either a revised and consolidated privilege log for the Wave 2 production or a memorandum setting out updates to the original log by July 29, 2008 to facilitate the parties's review and resolution of those privilege claims. The parties thereafter will work to identify and address outstanding matters for that privilege log.

Through the Wave 1 and 2 record review, the parties also have identified an anomaly between record inspection and privilege log schedules. Specifically, RRO ¶ 2(b)(iii) requires that record inspections begin 63 days after box designations, while CAPO ¶ 3 requires that

privilege logs be provided 90 days after the same designations. Defendant also has required additional time to prepare privilege logs, including "re-privileging" records—namely, designating some records as privileged after Plaintiff has inspected them, as contemplated by RCFC 26(b)(5)(B) and CAPO ¶ 18 regarding inadvertent disclosures. To avoid these problems, Plaintiff has proposed and Defendant has agreed to extend the deadline for starting record inspections—by 35 days, to 98 days total—to ensure that privilege logs will be provided before record inspections begin. This will be reflected in the pending RRO modification motion noted above in Section I.

The Wave 3 intermediate record move involves 709 boxes from the WRRO, which were previously moved to the Gallup Federal Building by Defendant and all designated for inspection by Plaintiff. Of those boxes, 581 have been identified as potentially being at risk of having mold or water damage, and 128 have been identified as not having evidence of mold or water damage. Defendant will transfer the 581 boxes of damaged or at risk records to the GSA warehouse in Albuquerque for evaluation and remediation if needed by Defendant and inspection by Plaintiff for production, pursuant to the pending RRO modification noted above. Plaintiff on July 1, 2008, began inspection of the remaining 128 boxes at the Gallup Federal Building. Defendant will provide its privilege log for the 128 boxes by July 18, 2008.

Defendant also has identified 32 boxes of records at the BIA Fort Defiance Agency that Defendant wants to move to the GSA Albuquerque warehouse for evaluation and remediation if needed by Defendant and inspection by Plaintiff for production, as well as approximately 140 additional boxes of records at the BIA Fort Defiance Agency that Defendant will want to move to the GSA Albuquerque warehouse. Those matters will be addressed in the pending RRO modification.

The parties will discuss further intermediate moves, designations, and inspections for inactive records of the BIA Navajo Region in conjunction with the evaluation plan noted above.

**B. BISS and AIRR Access**

Pursuant to RRO ¶ 2(e), the parties have continued to work on matters relating to production at Defendant's American Indian Records Repository ("AIRR"), in Lenexa, Kansas, of inactive records from the BIA Navajo Region located at the AIRR as of September 10, 2007. On April 30, 2008, Defendant confirmed that all of the above-referenced records have been entered into Defendant's Box Inventory Search System ("BISS"). On June 24, 2008, Defendant provided proposed terms under which Plaintiff will access records at the AIRR. Plaintiff provided comments on the document inspection rules on July 8, 2008. The parties will work together to address issues regarding this matter, and to resolve this matter by agreement within the ADR proceedings. For any such issues that cannot be so resolved by the parties, Plaintiff intends to present them to the Court for adjudication, since the matter involves interpretation, amendment, or revision of the trial judge's previously entered RRO.

**C. Records Beyond BIA Offices in Gallup, Window Rock, and Fort Defiance**

Defendant previously had identified two to three boxes of active records at the Gallup field office of the Department of the Interior's Office of the Special Trustee for American Indians ("OST"). Defendant had provided an inventory for those records that Plaintiff had designated entirely for inspection, as reported in the Second Joint Status Report. Plaintiff will inspect those records at the Gallup Federal Building following completion of inspection of the 128 cleared Wave 3 boxes, as noted above.

Pursuant to RRO ¶ 2(f), the parties held a teleconference on June 25, 2008, regarding schedules and procedures to be used for Defendant to make available to Plaintiff active and

inactive relevant records of all of Defendant's departments, agencies, offices, employees, agents, and contractors at offices other than those identified in RRO ¶ 2(a). This discussion concerned offices for which RRO ¶ 2(f)(i) requires "expedite[d] and prioritize[d] inspection": (1) the BIA Chinle Agency, the BIA Western Navajo ("Tuba City") Agency, the BIA Eastern Navajo ("Crownpoint") Agency, the BIA Shiprock Agency, and (2) Albuquerque offices of the OST, the Office of Trust Records ("OTR"), and the Land Title Records Office ("LTRO"). The parties agreed to discuss the Department of the Treasury records in the future.

Among other things, Plaintiff indicated that it would like to conduct document inspections for records from various offices within the BIA Navajo Region at those offices. Defendant expressed concerns about the increased distance and inconvenience to the Solicitor's Office attorneys and contractors, and the adequacy of space to accommodate Plaintiff's reviewers. Defendant is continuing to look into space and facilities issues. Defendant is also concerned that leaving these inactive documents boxed and palletized for extended periods awaiting Plaintiff's review is harmful to them. Plaintiff notes that the records are not awaiting review by Plaintiff since Defendant has not yet provided indices or inventories therefor, and that Plaintiff is ready and willing to inspect records for production where they are located promptly upon receiving adequate indices or inventories from Defendant.

During the discussion, Defendant reported that there were no inactive records at the BIA Shiprock Agency. Defendant also reported then that it did not yet know whether any such records existed at the OST, the OTR, or the LTRO.

In a follow-up on that discussion, Defendant will provide existing indices and inventories for inactive records at all of the above-referenced offices except for those of the Department of the Treasury (which were previously provided) within the next 30 days. Performance of

privilege reviews and inspections for all those records will be scheduled in coordination with other ongoing record inspections noted above, with a priority on records regarding financial matters and from the OST and the OTR. For Treasury, Defendant had provided exemplars of types of potentially relevant documents from the Bureau of Public Debt ("BPD") on April 18, 2008. Plaintiff will notify Defendant regarding appropriate follow-up on those after receiving and reviewing indices and inventories for the other offices referenced above.

**D. Records for Arthur Andersen, tribal IIM, SDA, IMPL, and Other Matters**

In follow-up to the parties' initial focus on fiscal claims, Plaintiff on February 26, 2008 and April 10, 2008, sent Defendant informal requests for production of records related to the 1996 Arthur Andersen Reconciliation Report, tribal Individual Indian Money ("IIM") accounts, Special Deposit Accounts ("SDA"), Indian Money Proceeds of Labor ("IMPL") accounts, and related matters. On April 24, 2008, Defendant provided an initial narrative response, proposing a schedule for rolling production. On May 6, 2008, Defendant provided six CD-ROMs containing the statements of account that accompanied the 1996 Anderson report as well as the post-1996 Chavarria, Dunne & Lamey supplemental reconciliation work. On June 3, 2008, Defendant provided two CD-ROMs containing the Common Data Set and the Completeness Validation Report for certain accounts of the Navajo Nation and certain joint accounts for the Navajo Nation, the Ute Mountain Ute Indians, and the Hopi Tribe. Defendant will continue providing on a rolling basis outstanding responsive documents and information, including without limitation concerning tribal IIM accounts, SDAs, and IMPL accounts. Defendant will at least provide a list of all relevant accounts by August 1, 2008.

## III. INDEXATION AND INVENTORYING PROGRESS

The parties continue to produce to each other information identifying their respective repositories that are reasonably anticipated to be subject to discovery in this case and gathering their respective existing indices and inventories for those repositories to provide to each other pursuant to RRO ¶¶ 3(a)-(b). Among other things, the parties have discussed the need for and production of indices and inventories from the OST and the OTR, as noted above regarding compliance with RRO ¶ 2(f)(i).

Because the parties have focused on the discovery matters discussed above, they have not begun discussions pursuant to RRO ¶ 3(c) regarding the possibility of and need for using other approaches to, and potential additional indexation for, identifying materials in repositories containing material relevant to this case for which the parties are unable to provide indices or inventories. The parties anticipate this discussion taking place in conjunction with further discussions undertaken pursuant to RRO ¶ 2(f), after Defendant provides all relevant existing indices and inventories and the parties identify additional repositories with relevant records but without indices or inventories. The parties will report to the Court in their next status report the progress of these discussions.

## IV. RRO COMPLIANCE MONITORING

As required by RRO ¶ 4, Defendant filed a notice of discovery of document damage on April 15, 2008 [Doc. 49], regarding boxes stored at the BIA WRRO. Defendant then filed a more detailed report on that matter on May 8, 2008 [Doc. 53], which was the subject of a status conference on June 6, 2008. Defendant also has filed a supplemental notice of discovery of document damage on July 8, 2008 [Doc. 60].

## V. CONCLUSION

The parties will continue to work together to advance the proceedings and to resolve all matters discussed above and additional issues as they arise. To the extent that the parties cannot resolve any issues, they intend to seek the assistance of Senior Judge Bruggink. If the parties are not able to resolve issues through that process, one or both of the parties will file a motion with the Court to resolve relevant outstanding issues pursuant to RRO ¶ 6. Regardless, unless otherwise directed by the Court, the parties will file their next status report on October 8, 2008.

Respectfully submitted this 9th day of July, 2008.

s/Alan R. Taradash

by s/Daniel I.S.J. Rey-Bear
Alan R. Taradash
Nordhaus Law Firm, LLP
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102
telephone: 505-243-4275
facsimile: 505-243-4464

Attorney of Record for Plaintiff

s/Robert W. Rodrigues

by s/Daniel I.S.J. Rey-Bear
Robert W. Rodrigues
United States Department of Justice
Environment and Natural Resources Div.
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
telephone: 202-353-8839
facsimile: 202-353-2021

Attorney of Record for Defendant