# Exhibit 1
# and
# Attachment A

# United States Department of the Interior

OFFICE OF THE SOLICITOR
1849 C Street N.W.
Washington, DC 20240

Indian Trust Litigation Office
Room 6422

July 10, 2008

**MEMORANDUM**

**TO:** Robert Rodrigues, Department of Justice

**FROM:** Gladys Cojocari, Attorney Advisor, Office of the Solicitor

**RE:** Plan for Review of Inactive Records on the Navajo Reservation

**Background:** The Court convened a status conference call on June 6, 2008, with plaintiff and the government to discuss the government's Report to the Court on Discovery of Document Damage, filed May 8, 2008. On the call, held June 6, the Court expressed its concern about whether inactive records pertaining to the Navajo Nation located at other Bureau of Indian Affairs ("BIA") agencies on the Navajo Reservation are at risk for damage. The Court ordered the Department of the Interior ("Interior") to prepare a plan and a timetable for "an external evaluation of the remaining boxes of record[s] kept at relevant storage facilities." Order of June 6, 2008, *Navajo Nation v. U.S.,* No. 06-945L (Fed. Cl. filed December 29, 2006).

In fulfillment of the Court's directive, the government has taken or proposes to take the following actions, which comprise the Plan:

1. Representatives of the Office of Trust Records ("OTR") and BIA have canvassed the various BIA facilities on or near the Navajo Reservation to determine whether they are housing any tribal trust records presently determined to be inactive, which are potentially relevant to this case ("Records"). The Solicitor's Office has assisted in this process. The locations currently possessing such Records, along with the approximate volume of inactive records, are listed in Attachment A (the "Locations"). In the event the OTR, BIA, or the Solicitor's Office learn of any additional sites housing inactive Records, those sites will be added to the current list of seven.

2. Beginning ten days after the Court's approval of this Plan, Interior will send a team of individuals from OTR, BIA and the Solicitor's Office (the "Site Team") to commence visits to each of the Locations. The personnel for these teams may depend on the timing of the site visits, but each team will include at least one individual who has had records management training. The seven visits are expected to be completed within thirty days of commencement.

3. The Site Team will conduct the following activities:

(A) inspect the facilities where inactive Records are stored to determine whether any Records are in jeopardy, *i.e.*, subject to risk of damage from mold, water, rodents or other causes; and

(B) inspect the exteriors of boxes of Records to determine whether there is any evidence of damage. In cases where Records have recently been reboxed in preparation for shipment to the American Indians Records Repository, the Site Team will sample a number of boxes, approximately one in twenty within the discretion of OTR, to determine if any damage exists inside the boxes not visible from the exterior.

4. After the conclusion of the site visits, the Site Team will report all of the information in Attachment A to the Court and plaintiff. If conditions are observed at any facility that would place Records in jeopardy of damage from water, mold, rodents or other causes, or Records showing damage are found, Interior will provide a full description of the situation. In the event that the site teams detect any records in jeopardy, or damaged records, OTR shall develop an appropriate plan for remediation on a priority basis and provide a copy of Attachment A to the Court.

ATTACHMENT A

| **Agency** | Navajo Regional Office<br><br>Gallup, NM | Window Rock Regional Realty Office<br>Window Rock, AZ | Western Navajo<br><br>Tuba City, AZ | Fort Defiance, AZ | Chinle, AZ | Pinon AZ (Navajo Partitioned Lands "NPL) | Eastern Navajo* Crownpoint, NM |
|---|---|---|---|---|---|---|---|
| Type of structure; BIA Owned or Leased | | | | | | | |
| Approximate number and types of inactive Records* | 1189 boxes including 574 boxes to be moved to Albuquerque, pending the Court's permission | 30 boxes Realty | 211 boxes<br><br>Natural Resources | 30 boxes Realty<br>79 boxes Fire Management<br>30 boxes Forestry | 158 boxes (NPL) Rights of Way | 65 boxes (NPL) Rights of Way | 181 boxes (Natural Resources)<br><br>100 boxes (Probate)<br><br>52 boxes (Realty) |
| Location at the facility where inactive Records* are kept | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Water stains, mold growth, rodent droppings or other visible evidence of conditions in facilities putting records in jeopardy (if any) | | | | | | | |
| Water stains, mold growth, rodent droppings or other visible evidence damage to records (if any) | | | | | | | |

* "Records" means tribal trust records for the Navajo Nation potentially relevant to this case.

# Exhibit 2

NORDHAUS LAW FIRM, LLP

ATTORNEYS AT LAW

ALBUQUERQUE, NM
SANTA FE, NM
PHOENIX, AZ
WASHINGTON, DC

405 DR. MARTIN LUTHER KING, JR. AVE. NE
ALBUQUERQUE, NEW MEXICO 87102
TELEPHONE 505-243-4275
FACSIMILE 505-243-4464

DANIEL I.S.J. REY-BEAR
BOARD CERTIFIED SPECIALIST
FEDERAL INDIAN LAW
drey-bear@nordhauslaw.com

July 2, 2008

**VIA FEDEX AND ELECTRONIC MAIL**

Mr. Robert Rodrigues
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW, Room 3116
Washington, DC 20004

Re: ***Navajo Nation v. United States*, No. 06-945L (Fed. Cl.)**

Dear Bob:

This letter provides the Navajo Nation's comments on Defendant's proposed record evaluation plan as stated in Gladys Cojocari's memo to you of June 26, 2008, as transmitted by your letter of June 27, 2008. Thank you for sharing this with us and seeking our comments before filing the plan with the Court, as Judge Allegra specifically directed during the June 6 conference call on this matter. Trans. at 22:14-19; 26:8-13. As explained below, the Nation has concerns regarding each enumerated part of the plan.

**1. The Evaluation Plan Must Not Be Limited to Inactive Records.**

As you know, on June 6, 2008, the Court conducted a conference call in this case to discuss the damage to documents brought to the Court's attention by Defendant's April 15, 2008 notice. "Pursuant to discussions during this conference call," the Court the same day ordered that Defendant file "a plan for an external evaluation of the remaining boxes of record[s] kept at relevant storage facilities." Order (June 6, 2008) [Doc. 56]. Thus, the scope and nature of the record evaluation plan must be guided by the June 6 conference call.

Relevant here, Judge Allegra introduced the substantive discussion during the June 6 conference call by noting that it concerned "making sure that we've done everything we need to do to safeguard . . . all the documents that are related to this case." Trans. at 5:4-7. Judge Allegra further asked about "anything else that might be involved in this *Navajo* case that might have similar types of problems?" *Id.* at 14:25-15:2. And at the conclusion of the call, you noted that "I just want to underscore that as I understand the Court's direction here . . . we should go to the various facilities where there are relevant records to this case . . . ." *Id.* at 31:24-32:2. These passages thus made clear that the plan was intended and understood to include all relevant records within the BIA Navajo Region—active and inactive.

Additional considerations also confirm the need to include active records within the scope of the evaluation plan. First, the BIA Navajo Region Director has previously stated that inactive records within the BIA Navajo Region are stored onsite along with active records "at the regional office and the five agencies." Bradley Decl. ¶ 11 (June 21, 2007), filed with Def.'s Opp'n to P.'s Mot. for Entry of RRO (June 21, 2007) [Doc. 19-4 at 4]. Second, the Director for the Office of Trust Records ("OTR") similarly confirmed recently that "some inactive records still remain in field offices and storage facilities" and even noted that some inactive trust records at the BIA Window Rock Realty Office ("WRRO") "were still in file cabinets and desk drawers" at least as of June 2007. Abeita Decl. ¶ 5 (May 8, 2008), filed with Def.'s Resp. to Order of April 16, 2008 (May 8, 2008) [Doc. 53-2 at 7-8]. Third, the concerns that Defendant has noted regarding the WRRO apply to that entire historic building of traditional, porous sandstone construction with a flat roof, Bradley Decl. ¶ 8, not just areas where only inactive records are located. Fourth, the Record Retention Order ("RRO") entered in this case recognizes that the scope of relevance is a separate consideration from whether a document is active, and that both inactive and active records from the various BIA Navajo offices are relevant to this case. *See* RRO ¶¶ 1, 2(a), 2(f)(i).

Finally, in addition to including identified active and inactive records, the evaluation plan also must address unfiled records that are not yet identified as either active or inactive. As you may know, the BIA has substantial backlogs regarding probates, appraisals, and leasing decisions. See, e.g., *Backlogs at the Department of the Interior: Land into Trust Applications; Environmental Impact Statements; Probate; Appraisals and Lease Approvals: Hearing Before S. Comm. on Indian Affairs*, 110th Cong., S. Hrg. 110-224, at 5, 7 (2007) (statement of Carl Artman, Assistant Secretary for Indian Affairs). Also, the Special Trustee has estimated that validation of information in TAAMS will not be completed until December 2009. GAO, The Office of the Special Trustee Has Implemented Several Key Trust Reforms Required by the 1994 Act, but Important Decisions about Its Future Remain, GAO 07-104, at 9 (2006). Sadly, these backlogs have existed for many years. *See, e.g.,* EDS, DOI Trust Reform: As-Is Trust Business Model Report 4-122 (March 21, 2003) (noting that LTROs have significant workload queues); Consent Decree, *Lee v. Watt*, No. 81-052-C (D. N.M. filed Aug. 9, 1981) (ordering completion of all pending probates for the Eastern Navajo Agency by December 31, 1982 and commencement of future probates there within 90 days are required by regulation). To the extent that any of those matters affect the filing of trust records for the Navajo Nation, such relevant records must be included within the evaluation plan.

Given all the above, Defendant's plan must include both active and inactive records, as well as unfiled relevant records, at offices, agencies, and storage facilities within the BIA Navajo Region. This will require revision of items 1 and 3(A) of the plan.

**4. Plaintiff Must Be Allowed to Monitor the Site Visits.**

As you know, RRO ¶ 2(a) provides that Plaintiff may monitor intermediate record moves. The same concerns that have been previously stated regarding the need to assure the integrity of that process applies equally to the proposed evaluation plan site visits. This is also consistent with Judge Allegra's admonition on June 6 that the parties "have some discussions about this and work out the details." Trans. at 33:11-12.

Most fundamentally, Plaintiff must be allowed to participate in the evaluation site visits because the trust records are Plaintiff's own trust records. As you may recall from the briefing on the RRO, Defendant must generate and preserve all records that document Defendant's management of Plaintiff's trust assets. *See, e.g.*, 25 U.S.C. § 162a(d)(1)-(5) (concerning funds); 25 C.F.R. §§ 115.1001 (funds), 162.112 (leases), 163.22(c) (timber), 211.46 (minerals), 225.35 (minerals); 30 C.F.R. §§ 212.50, .50, .200 (minerals). Because "'[t]he records are the base for the entire trust operation,'" *Cobell v. Babbitt* ("*Cobell II*"), 91 F. Supp. 2d 1, 43 (D.D.C. 1999) (quoting trial testimony of the Acting Special Trustee), *aff'd sub nom. Cobell v. Norton* ("*Cobell III*"), 240 F.3d 1081 (D.C. Cir. 2001), a trustee such as Defendant here has a fundamental duty "to keep full, accurate, and orderly records of the status of the trust administration and of all transactions thereunder." George G. Bogert & George T. Bogert, The Law of Trusts & Trustees § 962, at 18 (2d ed. rev. 1983).

In other words, "Interior is under the duty to retrieve and retain all information . . . necessary to render an accurate accounting of all . . . [Indian assets] held in trust by the United States." *Cobell II*, 91 F. Supp. 2d at 42, 58, and those who administer Indian trust assets must, among other things, "maintain and complete existing records" and "recover missing records where possible[.]" *Cobell III*, 240 F.3d at 1105. Thus, "it is basic hornbook law that the trustee has the duties of retaining trust documents, keeping records, [and] furnishing information to the beneficiary . . . ." *Cobell v. Babbitt* ("*Cobell I*"), 37 F. Supp. 2d 6, 23 (D.D.C. 1999) (citing George T. Bogert, Trusts §§ 14-142 (Practitioner's ed. 1987)). As DOI's Indian timber regulations provide, the preparation and filing of records regarding the disposition of Indian trust assets "must allow the Secretary to maintain [her] trust responsibility through written verification that all required deposits, payments, and disbursements have been made." 25 C.F.R. § 162.22(c). These trust responsibilities plainly exist for the benefit of the Navajo Nation, which certainly is entitled to see the status of its own trust records.

Defendant's proposed plan accordingly must be revised to allow for Plaintiff to monitor the site visits to be performed as part of the evaluation plan.

**5. The Plan Must Include a Definite Timetable for Completion.**

Near the conclusion of the June 6 conference call, Judge Allegra gave the following direction to Defendant and received the following response:

> THE COURT: .... The plan should include some sort of timetable so that I would know when to expect to see, for example, the results of an audit if you want to call it that, and that would probably also provide a basis for the timing of a status report. So if you make sure that your plan includes that feature, Mr. Rodrigues.
>
> MR. RODRIGUES: I will do so, Your Honor.

Trans. at 31:16-23. The given plan does not include such a timetable, and therefore must be revised to include one.

**Conclusion**

In summary, Defendant's proposed plan could be performed in some indeterminate timeframe by having just one person with only minimal, irrelevant training briefly look at inactive boxes, without any review of active relevant records stored in the same facilities, and without any participation or even monitoring by the trust beneficiary. This may only confirm that there is a problem, which we already know, but it might not even do that, and it certainly will not provide any assurance or accuracy regarding the scale of any further potential problems. Defendant, Plaintiff, and the Court be far better served by Defendant engaging in an evaluation that would more accurately and completely determine the scope of active and inactive record damage requiring remediation, including participation by Plaintiff, and within a definite timeframe.

Thank you for your attention to these matters. Please let us know if you have any questions or comments, or provide a revised proposed plan for our review.

Very truly yours,

NORDHAUS LAW FIRM, LLP

Dan Rey-Bear