# United States Court of Federal Claims

| | | |
|---|---|---|
| NAVAJO NATION<br>f.k.a. NAVAJO TRIBE OF INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-945L<br>Judge Francis M. Allegra |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED RECORD EVALUATION PLAN**

Plaintiff, the Navajo Nation, hereby responds to Defendant's Motion to Approve Its Plan for External Review of Boxes of Inactive BIA Records and Walkthrough of Storage Facilities on the Navajo Reservation ("Defendant's Proposed Plan"), filed on July 11, 2008 [Doc. 63]. Defendant's Proposed Plan must be modified because it is improperly excludes active, unclassified, and unboxed records that are subject to the same conditions as inactive record boxes, it fails to assure that evaluating personnel will be knowledgeable about record damage issues, and it fails to provide a definite time for reporting, all contrary to the Court's direction during a June 6, 2008 status conference. Defendant's Proposed Plan also should be revised to provide that any sampling will not be limited to recently reboxed records, so as not to irrationally exclude many other records that also may be damaged. Finally, as Defendant admits, the Proposed Plan should be revised to provide expressly for Plaintiff's monitoring of site visits.

## BACKGROUND

### I. Defendant Has Many Active and Inactive Trust Records in File Cabinets, Drawers, and Boxes, in Moisture-Prone or Unsafe Offices Throughout the Navajo Nation.

Defendant assertedly maintains the following offices of the U.S. Bureau of Indian Affairs ("BIA") to serve the Navajo Nation: (1) the BIA Navajo Regional Office in Gallup, New Mexico

("Gallup Regional Office"); (2) the BIA Navajo Regional Realty Office ("WRRO") in Window Rock, Arizona, the capital of the Navajo Nation, about 25 miles northwest of Gallup; (3) the Fort Defiance Agency, in Fort Defiance, Arizona, which also houses some regional program offices, about 7 miles north of Window Rock; (4) the BIA Chinle Agency, in Chinle, Arizona, about 67 miles northwest of Window Rock; (5) the BIA Eastern Navajo Agency, in Crownpoint, New Mexico, about 65 miles east of Window Rock; (6) the BIA Shiprock Agency, in Shiprock, New Mexico, about 103 miles northeast of Window Rock; (7) the BIA Western Navajo Agency in Tuba City, Arizona, about 155 miles west of Window Rock; and (8) the BIA office for Navajo Partitioned Lands ("NPL") in Piñon, Arizona, about 96 miles northwest of Window Rock.[*]

All these offices have active and inactive Navajo trust records, "includ[ing] correspondence, memoranda, leases, permits, and other records required to carry on the business of the BIA on the reservation." Bradley Decl. ¶ 3; *see id.* ¶ 11 (noting all except NPL office); Def.'s Proposed Plan Attachment [Doc. 63-2 at 4] (noting NPL office but not Chinle Agency). As of June 2007, there were approximately 2,600 boxes of active trust records and approximately 1,000 boxes of inactive trust records within the BIA Navajo Region scattered among all these offices except the NPL office. Bradley Decl. ¶¶ 11, 29. As of July 2008, Defendant has identified 2,125 boxes of inactive records at those offices, including the NPL office but not the Chinle Agency. Def.'s Proposed Plan Attachment [Doc. 63-2 at 4].

---

[*] *See* Decl. of Omar Bradley ("Bradley Decl.") ¶ 3 (June 21, 2007), filed as Ex. 9 to Def.'s Opp'n to Pl.'s Mot. for Entry of Record Retention Order (June 21, 2007) [Doc. 19-4 at 2-3] (BIA Navajo Regional Director noting all except NPL office); Decl. of George Padilla ("Padilla Decl.") ¶ 8 (May 8, 2008), filed as Ex. 1 attach. to Def.'s Resp. to Court's Order of April 16, 2008 Regarding Dep't of the Interior's Discovery of Document Damage (May 8, 2008) ("Def.'s Resp. to April 16 Order") [Doc. 53-2 at 17] (noting capital); Def.'s Mot. for Approval of Def.'s Proposed Plan, Ex. 1(A) [Doc. 63-2 at 4] ("Def.'s Proposed Plan Attachment") (noting NPL office but not Chinle Agency); http://maps.google.com/ (visited July 23, 2008) (providing distances); Amended Record Retention Order ("RRO") ¶¶ 2(a), 2(f)(i) (July 11, 2008) [Doc. 64] (listing offices).

Many of the above records are located at the WRRO, which handles all the realty functions for the Navajo Nation. Bradley Decl. ¶ 11. These realty functions include maintenance and oversight of the Navajo Nation's rights of way, leases, permits, unresolved rights, mortgages, trespasses, and minerals. *Id.* The WRRO is located in a historic building constructed of porous sandstone and a flat roof, such that moisture percolates throughout. Padilla Decl. ¶ 8. Defendant has not described conditions at the other seven BIA Navajo offices where Navajo trust records are located other than noting that "the safety and security of the records might be compromised" in those offices and that "nor can the integrity of individual boxes be preserved [at those offices] to the extent it can" elsewhere. Bradley Decl. ¶¶ 18, 19.

As of June 2007, approximately 1,500 boxes of active and inactive Navajo trust records were located at the WRRO. Bradley Decl. ¶ 33. "Some of these [inactive] documents were still in file cabinets and desk drawers, while others had been boxed for some time." Decl. of Ethyl Abeita ("Abeita Decl.") ¶ 5 (May 8, 2008) (Office of Trust Records Director), filed as Ex. 1 attach. to Def.'s Resp. to Court's Order [Doc. 53-2 at 8]. While it is not known how many of those inactive records remain in file cabinets and desk drawers, there are now only 30 boxes of inactive records at the WRRO following intermediate record moves pursuant to the RRO, *see* Def.'s Proposed Plan Attachment [Doc. 63-2 at 4].

## II. Defendant Has Notified the Court of Damage to Navajo Trust Records and Identified Officials Assigned to Identify and Address Such Records in Danger.

In April 2008, in accordance with the requirement of RRO ¶ 4, Defendant notified the Court of the discovery of water damage and/or mold affecting records that had been stored at the WRRO. Def.'s Notification of Discovery of Document Damage (April 15, 2008) [Doc. 49]. Pursuant to Court order [Doc. 50], Defendant then provided a status report regarding the nature and age of the damage and related matters, Def.'s Resp. to April 16 Order [Doc. 53]. Defendant

reported that it was impossible to determine when the "aged" records were impacted by mold caused by "accommodating degrees of temperature" and "moisture percolat[ing] throughout" the WRRO. Padilla Decl. ¶ 8. Defendant also reported that the Office of Trust Records ("OTR"), which is responsible for records programs for the BIA and the Office of the Special Trustee for American Indians ("OST"), has Regional Records Liaisons, whose duties include reporting records in danger to OTR and working with BIA staff to correct such situations. Abeita Decl. ¶¶ 1, 10. More than one of these Regional Records Liaisons is based at the Gallup Regional Office, and in May 2008 the OTR Director sent one of them to assess conditions at the WRRO. *Id.* ¶ 10. That Regional Records Liaison reported that no records there were in danger. *Id.*

## III. The Court Has Required that a Knowledgeable Official Evaluate and Report in a Timely Manner on the Integrity of Facilities and All Relevant Records within the BIA Navajo Region.

On June 6, 2008, the Court held a status conference call to follow up regarding the document damage recently brought to the Court's attention. The Court introduced the discussion by noting that it concerned "making sure that we've done everything we need to do to safeguard . . . *all* the documents that are related to this case." Tr. (June 6, 2008) ("Tr.") at 5:4-7 (emphasis added). The Court further asked about "anything else that might be involved . . . in this *Navajo* case that might have similar types of problems[.]" *Id.* at 14:25-15:2. And at the conclusion of the call, Defendant "underscore[d] . . . the Court's direction here . . . that we should go to the various facilities where there are relevant records to this case . . . ." *Id.* at 31:24-32:2.

In addition, the Court characterized the required evaluation as "some level of inspection of the places where these records are stored[,]" *id.* at 18:6-8, to determine whether "any of these facilities could be affected by environmental conditions[.]" *Id.* at 19:6-7. The Court further characterized the required evaluation as "sort of a walk-through the facilities by a knowledgeable

person, so not someone that wouldn't know what to look for[,] but someone who's knowledgeable enough to be able to look at the documents, look at the storage situation, [and] be able to detect moisture." *Id.* at 22:21-23:1. Furthermore, near the end of the status conference, the Court gave the following direction and received the following response:

> THE COURT: . . . . The plan should include some sort of timetable so that I would know when to expect to see, for example, the results of an audit if you want to call it that, and that would probably also provide a basis for the timing of a status report. So if you make sure that your plan includes that feature, Mr. Rodrigues.
>
> MR. RODRIGUES: I will do so, Your Honor.

Trans. at 31:16-23. "Pursuant to discussions during this conference call," the Court the same day ordered that Defendant file "a plan for an external evaluation of the remaining boxes of record[s] kept at relevant storage facilities." Order (June 6, 2008) [Doc. 56].

**ARGUMENT**

**I. The Evaluation Plan Must Not Be Limited to Inactive Record Boxes Because Active, Unclassified, and Unboxed Records Also are At Risk of Damage.**

Defendant's motion to approve its Proposed Plan is expressly captioned as concerning boxes of inactive records. Def.'s Mot. at 1. Moreover, while Defendant in the text of its motion says that Defendant will review "any records, active or inactive, located in any storage facility in which records are kept[,]" *id.* at 3, the actual plan for which Defendant seeks approval is expressly captioned and described as only concerning inactive records. *Id.*, Ex. 1 at 1. This is not consistent with the Court's direction or other governing considerations.

The above-quoted passages of the recent status conference establish that the evaluation plan must address all relevant records in the BIA Navajo Region. This includes active, inactive, unclassified, and unboxed records. Numerous additional considerations confirm this. As noted above, the BIA Navajo Region Director has stated that inactive records within the BIA Navajo

Region are stored onsite along with active records throughout the regional offices. Bradley Decl. ¶ 11. Also, the OTR Director has confirmed that inactive records remain in field offices and storage facilities and that some inactive trust records were still in file cabinets and desk drawers at least as of last year. Abeita Decl. ¶ 5. Further, the concerns that Defendant has noted regarding the WRRO apply to that entire historic, moisture-prone building with a flat roof, Padilla Decl. ¶ 8, not just areas where inactive record boxes are located. Likewise, record storage concerns for other BIA Navajo facilities apply to those entire facilities, not just inactive record boxes. Bradley Decl. ¶¶ 18, 19. In addition, the RRO recognizes that relevance is a separate consideration from whether records are active, and that both inactive and active records from the various BIA Navajo offices are relevant to this case. *See* RRO ¶¶ 1, 2(a), 2(f)(i).

Finally, in addition to including identified active and inactive records, the evaluation plan also must address unfiled records that are not yet classified as either active or inactive. The BIA has substantial backlogs for probates, appraisals, and leasing decisions. *See, Backlogs at DOI: Land into Trust Applications; Envtl. Impact Statements; Probate; Appraisals & Lease Approvals: Hearing Before S. Comm. on Indian Affairs*, 110th Cong., S. Hrg. 110-224, at 5, 7 (2007) (statement of Assistant Secretary for Indian Affairs). Also, DOI has estimated that validation of updated Indian trust asset management information will not be completed until December 2009. *See* GAO, OST Has Implemented Several Key Trust Reforms Required by the 1994 Act, but Important Decisions about Its Future Remain, GAO 07-104, at 9 (2006). BIA also has significant workload queues for recording documents at Land Title Records Offices. EDS, DOI Trust Reform: As-Is Trust Business Model Report 4-122 (March 21, 2003). Sadly, these backlogs have existed for many years. *See, e.g., id.*; Consent Decree, *Lee v. Watt*, No. 81-052-C (D. N.M. filed Aug. 9, 1981) (ordering completion of all pending probates for Eastern Navajo

Agency by December 31, 1982 and commencement of future probates there within 90 days as required by regulation). To the extent that these backlogs affect trust records within the BIA Navajo Region, those unfiled and unclassified records must be evaluated for damage.

Given all the above, the record evaluation plan must include both active and inactive records, as well as unboxed records and unfiled or otherwise unclassified relevant records at offices, agencies, and storage facilities within the BIA Navajo Region. This will require revision of items 1 and 3(A) of Defendant's Proposed Plan.

## II. The Evaluation Plan Must Involve Someone with More than Just an Unspecified Amount of Records Management Training So the Evaluation will be Useful.

Defendant states in its motion and in item 2 of Defendant's Proposed Plan that at least one of the individuals who will participate in the evaluation will have had "records management training" and that if the participating personnel conclude that they need assistance to complete their inspection, they will consult with other knowledgeable people at the agency or regional level. Def.'s Mot. at 4, Ex. 1 at 1. This is not acceptable because there is no specified amount or type of training, which could be *de minimis* and irrelevant, nor any requirement that anyone involved in the evaluation have any actual experience regarding record storage requirements, damage, contamination, or remediation. It also could cause a substantial waste of time, money, and effort for both Plaintiff and Defendant's personnel who will participate in the evaluation if on-site consultation is required with the Gallup Regional Office while the evaluation team is at any one of the five relevant offices located more than 60 miles away from Gallup.

Instead, the site visits should involve direct participation by one of OTR's Regional Records Liaisons, whose duties include reporting records in danger and working with BIA staff to correct the situation. As noted above, there is more than one such official based at the Gallup Regional Office, and such an official already has been sent to assess record storage conditions at

the WRRO. *See* Abeita Decl. ¶ 8. Such an official also should assess conditions at other BIA Navajo offices, agencies, and storage facilities. Defendant's request for deference to its discretion in this is deficient given that qualified, knowledgeable officials are needed and already assigned this duty at the Regional Office. Item 2 of the plan must be revised accordingly.

## III. Record Sampling Must Not Be Limited to Recently Reboxed Records Because Other Records are Equally at Risk of Damage.

Defendant notes in its motion that the Court's comments during the June 6, 2008 status conference made clear that Defendant must undertake only an external inspection of boxes. Def.'s Mot. at 4 (citing Tr. at 20:15-20). Plaintiff readily acknowledges this point, and that the evaluation also necessarily must include facilities where unboxed records are located, *see* Tr. at 18:6-8, 19:6-7, 22:21-23:1 (Court comments); *cf.* Def.'s Mot. at 1 (seeking approval of "walkthrough of storage facilities"). Nonetheless, in voluntarily going beyond that requirement in item 3(B) of Defendant's Proposed Plan, the sampling of records must not be limited to records that "have recently been reboxed in preparation for shipment to the [AIRR.]" This will be counterproductive, because there is no rational basis for limiting sampling in this manner, when any category of records—whether new, old, recently-reboxed, long-ago reboxed, not reboxed, or not boxed at all—could be subject to damage due to the uniformly bad conditions that Defendant has identified at its offices throughout the BIA Navajo Region.

For example, the proposed limit improperly excludes records that may have been damaged and reboxed years ago. Yet the BIA Navajo Region Environmental Scientist recently stated that "it is impossible to determine when the records were impacted by mold" at the WRRO. Padilla Decl. ¶ 8. Also, during the June 6, 2008 status conference, Defendant acknowledged that "it may well be that this damage occurred in antiquity." Tr. at 15:21-22. Any such records damaged a long time ago might easily have been reboxed shortly thereafter, so

there is no logical reason to limit the proposed sampling to only recently reboxed records. Finally, damage assessment must be done for all damaged records regardless of vintage. Therefore, all record categories should be subject to a court-approved sampling plan as part of the evaluation. Item 3(B) of the plan should be revised accordingly.

**IV. The Plan Must Include a Definite Timetable for Filing a Report on Results of the Evaluation.**

Defendant has proposed only to begin inspections within 10 days after approval and to complete the inspections within 30 days thereafter. Def.'s Mot. at 5; *id.*, Ex. 1 at 2 (item 4). Defendant does not specify any time limit after completion of the physical evaluation for filing with the Court a status report on the results of the evaluation. This directly contradicts the Court's specific direction at the status conference for a "timetable so that I would know when to expect to see . . . the results[,]" to which Defendant expressly assented. Tr. at 31:17-23. Item 4 of Defendant's Proposed Plan does not include such a timetable, and therefore must be revised to include one. Failure to make this revision could leave the Court and Plaintiff unnecessarily waiting indefinitely to learn of the result of the evaluation.

**V. The Plan Must Specifically Provide for Plaintiff to Monitor the Site Visits.**

Defendant's motion for approval of Defendant's Proposed Plan notes that "Defendant agrees that a representative of Plaintiff accompany the Interior and Justice personnel for the walkthroughs. The [Plaintiff] representative may take photos and notes for the walkthroughs and will make the walkthroughs with the government participates according to an advance schedule." Def.'s Mot. at 5. Plaintiff appreciates this concession in the motion, but the actual plan for which Defendant has sought approval does not contain any such provision. Accordingly, such a provision must be expressly included in the final evaluation plan approved by the Court. Logically, this monitoring should be on the same terms that the parties have

already agreed and the Court already has entered in Amended RRO ¶ 2(a)(ii) for intermediate record moves, namely, "[a]t least ten calendar days" advance notice and "monitor[ing] by plaintiff or its representative using hand-held voice recorders, digitial camera, or note taking."

## CONCLUSION

For the foregoing reasons, the Plaintiff hereby opposes approval of Defendant's Proposed Record Evaluation Plan as offered by Defendant. Instead, Defendant's Proposed Plan must be revised: (1) to apply to all records, not just inactive ones; (2) to require participation of an individual knowledgeable about relevant records management issues; (3) to require record sampling for more than just recently reboxed records; (4) to require a definite timetable for filing a report on the evaluation; and (5) to fully and fairly permit Plaintiff to monitor site visits.

Respectfully submitted this 27th day of July, 2008.

s/Alan R. Taradash
by s/Daniel I.S.J. Rey-Bear
Alan R. Taradash
Nordhaus Law Firm, LLP
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102
telephone: 505-243-4275
facsimile: 505-243-4464

Attorney of Record for Plaintiff