# In The United States Court of Federal Claims

No.  06-945L

(Filed:  October 17, 2012)

_____

NAVAJO NATION
f.k.a. NAVAJO TRIBE OF INDIANS,

                        Plaintiff,

      v.

THE UNITED STATES,

                    Defendant.

_____

**ORDER**

_____

On October 10, 2012, the parties filed a joint status report discussing proposed orders on clawback issues and e-discovery in this matter.  In that joint status report, the parties were unable to come to complete agreement as to the terms of those orders, requiring this court to resolve the parties' differences.

Pursuant to RCFC 1, 16, and 26, as well as Fed. R. Evid. 502(d), and in order to facilitate discovery and avoid delays, the court hereby **ORDERS** as follows:

1.      This order supplements this court's discovery rules and the provisions contained in the Confidentiality Agreement and Protective Order ("CAPO") entered in this case on May 11, 2007.

2.      Generally, the costs of discovery shall be borne by each party, subject to the provisions of RCFC 26(b)(2)(B) and (C), and 37.

## PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")

3.      All documents that originally existed in native electronic form that are produced by the parties in this action shall be produced in electronic image form in the manner provided herein.  Each document's electronic image shall convey the same image as the original document.  Documents that present imaging or formatting problems shall be promptly identified by the

receiving party; the parties shall meet and confer to attempt to resolve the problems.

4.      All emails, email attachments, word processing documents (e.g., Word, Word Perfect, etc.), presentation documents (e.g., PowerPoint, Presentations, etc.), PDF documents, and TIFF documents shall be saved electronically (or "printed") in a single page tagged image file format ("TIFF") image that reflects how the source document would have appeared if printed out to a printer using the print settings that match how the document was last saved by the document's custodian. Email attachments shall be ordered to immediately follow the email to which each is attached. The parties shall produce a Concordance-compatible "load file," including an image cross-reference file, to accompany the images, which load file shall facilitate the use of the produced images by a document management or litigation support database system and shall identify document breaks for each document.

5.      In responding to a discovery request propounded under the RCFC in this lawsuit, neither party is required to search for responsive materials from the following categories of ESI, absent a showing of good cause:

      a.      Data in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

      b.      Voicemail messages, instant messages (such as messages sent on AOL Instant Messenger or Microsoft Communicator), and text messages (such as cell-phone to cell-phone SMS messages, or other similar services including, but not limited to, Blackberry "PIN" messages);

      c.      Data stored on a Personal Digital Assistant or smartphone (e.g., Blackberry handheld), including electronic mail sent to or from such devices, as well as calendar or contact data, provided that a copy of such data is routinely duplicated elsewhere in a manner that would be subject to searching;

      d.      Logs of calls made from cellular phones;

      e.      Deleted computer files, whether fragmented or whole;

    f.      Temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

    g.      Server, system, or network logs;

    h.      Electronic data that is temporarily stored but not preserved by scientific equipment or attached devices in their ordinary course of operation, other than the data that is ordinarily preserved as part of any reports or analyses created by such equipment;

    i.      Messages that are posted on social media sites (including, but not limited to, Facebook) or micro-blogging sites (including, but not limited to, Twitter); and

    j.      Data stored on printers, copy machines, or fax machines.

6.    Each page of a document produced under paragraph 4 above, shall be electronically saved into a separate image file.  If a document is more than one page, the order of the images constituting the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file.

7.    If an original document contains color, upon request of either party, the parties shall meet and confer regarding whether there is a reasonable need for that document to be produced in color images.

8.    Each page of a document produced under paragraph 4 above, shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document, preferably located at the bottom right hand corner of the document.  There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of the CAPO entered in this litigation, or has been redacted in accordance with applicable law or court order.  In the case of confidential materials or materials redacted in accordance with applicable law or court order, a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.  The Bates Number sequence shall be entirely alphanumeric, with no spaces or symbols.

9.    Each such document image file shall be named with the unique Bates Number of the single-page TIFF image, followed by the extension ".tif."

10.    The parties shall produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily

accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media").  Each item of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "NN001" or "US001," "NN002" or "US002"), as well as the volume of the material in that production wave (e.g., "-001," "-002").  For example, if the first production wave by a party comprises document images on three hard drives, a party shall label each hard drive in the following manner: "NN001-001" or "US001-001," "NN001-002" or "US001-002," "NN001-003" or "US001-003."  Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in No. 06-945L, (2) the producing party's name, (3) the type of materials on the media (e.g., "Documents," "OCR Text," "Objective Coding," etc.), (4) the production date, and (5) the Bates Number range of the materials contained on the Production Media.  In addition, the document custodian for each Bates Number range of materials shall be identified in a cover letter enclosing the Production Media.

11.     The parties shall meet and confer regarding the format of production for databases and other dynamically-stored ESI.

12.     The parties shall meet and confer to determine whether certain files, including video files and audio files shall be produced in native format. The parties agree to produce Excel and spreadsheet files in native format.

13.     General ESI production requests shall not include metadata absent a showing of good cause.  However, the parties shall retain and preserve the original native electronic source documents in a manner so as to preserve the metadata associated with these electronic materials in the event review of such metadata is warranted.

14.     By preserving information for the purpose of any litigation on plaintiff's claims, the parties are not conceding that such material is discoverable in any litigation between the parties in this or any other lawsuit, nor are they waiving any claim of privilege.

15.     Production of materials in compliance with this order also shall be deemed compliant with the requirements of RCFC 34.

## PRIVILEGES AND FED. R. EVID. 502

16.     The provisions of this order shall apply to all information produced in this litigation.

17.    Pursuant to Fed. R. Evid. 502, the production of documents and data pursuant to this order shall not result in the waiver of the attorney-client privilege or work-production protection as to those documents and data. Also, the production of privileged or protected documents or data under this order shall not result in the waiver of the attorney-client privilege or work-product protection as to those documents and data in any other federal or state proceeding.

18.    If the producing party determines that it has produced a document or data to which it wishes to assert a claim of privilege or protection, the counsel for the producing party shall notify the recipient promptly of its claim.  As part of the notification, the producing party's counsel shall identify, by Bates Number(s), the document(s) as to which the producing party is asserting a claim of privilege or protection.

19.    Upon receiving notice of a claim of privilege or protection by the producing party regarding a produced document or data, the recipient shall segregate, with promptness and in accordance with RCFC 26(b)(5)(B), the specified document or data, as well as any copies thereof, and the recipient shall not use the information in the specified document or data, except as provided by RCFC 26(b)(5)(B), until after the claim is resolved.  If the court upholds – or if the recipient does not challenge within a reasonable time – the producing party's claim or privilege as to the produced document or data, the recipient shall return or dispose of the specified document or data, as well as any copies thereof.

20.    The recipient shall notify the producing party's counsel upon identification of any document(s) or data which appears to be potentially privileged or protected.  Such notification shall not waive the recipient's ability to challenge any assertion of privilege or protection made by the producing party as to the identified document(s).  As part of the notification, the recipient shall identify, by Bates Number(s), the document(s) or data at issue.  The recipient shall segregate the specified document(s) or data, as well as any copies thereof, from the other materials, and the recipient shall not use the information in the potentially privileged or protected document(s) or data, except as provided by RCFC 26(b)(5)(B), for a period of 14 days after the date on which the recipient notifies the producing party's counsel.  Within the 14-day period, or any other period of time agreed to by the parties, the producing party shall determine whether it will assert a claim of privilege or protection as to the identified document(s), and its counsel shall notify the recipient of its determination.

21.     This order may be modified by the court for good cause.  The court will be inclined to grant any modification jointly proposed by the parties.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge